IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., solely as Attorney-In-Fact for the participating companies of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No.   07 C 2898 |
| v. | ) ) | Judge Robert W. Gettleman |
| AMERICAN INTERNATIONAL GROUP, INC., AIG CASUALTY COMPANY F/K/A BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA, AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AMERICAN INTERNATIONAL PACIFIC INSURANCE COMPANY F/K/A AMERICAN FIDELITY COMPANY, AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY F/K/A AMERICAN GLOBAL INSURANCE COMPANY, AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY F/K/A ALASKA INSURANCE COMPANY, COMMERCE AND INDUSTRY INSURANCE COMPANY, INC., GRANITE STATE INSURANCE COMPANY, ILLINOIS NATIONAL INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, NEW HAMPSHIRE INDEMNITY COMPANY, and NEW HAMPSHIRE INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff National Council on Compensation Insurance, Inc. ("NCCI"), solely as

Attorney-In-Fact for the participating companies of the National Workers Compensation

Reinsurance Pool ("NWCRP"), has brought an eight-count complaint against defendants American International Group, Inc. ("AIG") and its affiliates and subsidiaries, AIG Casualty Company f/k/a Birmingham Fire Insurance Company of Pennsylvania, AIU Insurance Company, American Home Assurance Company, American International Pacific Insurance Company f/k/a American Fidelity Company, American International South Insurance Company f/k/a American Global Insurance Company, American International Specialty Lines Insurance Company f/k/a Alaska Insurance Company, Commerce and Industry Insurance Company, Inc., Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, New Hampshire Indemnity Company, and New Hampshire Insurance Company (the "AIG Companies"), collectively the "AIG Defendants." The complaint alleges: violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d) ("RICO") (Counts I and II); fraud (Count III); accounting (Count IV); action on an open, current and mutual account (Count V); breach of contract (Count VI); promissory estoppel (Count VII); and unjust enrichment (Count VIII). Defendants have moved for abstention under the Colorado River doctrine or, alternatively, to dismiss on forum non conveniens grounds or to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, the court denies defendants' motion.

## FACTS

Every state requires employers to provide workers compensation insurance for their employees. Most employers are able to find an insurance company willing to provide them with

2

coverage. These employers are known in the insurance industry as the "voluntary market." Some employers are unable to find an insurance company willing to provide them with workers compensation insurance. To resolve this problem, many states have created a separate insurance pool for employers who are otherwise unable to obtain workers compensation insurance. This pool is called the "residual market."

Any insurer who writes workers compensation policies for the voluntary market in a state with a residual market is required to provide reinsurance for a portion of that state's residual market. The amount of reinsurance an insurer is required to provide to the residual market is directly proportional to the amount of premiums it collects for the workers compensation policies it writes for the voluntary market.

The NWCRP was established to provide insurance companies with a means of complying with the requirement that they participate in the residual market. Since 1970, the NWCRP has facilitated the proportional sharing of residual market costs in more than 40 states. Through the NWCRP mechanism, an insurance company, or "Participating Company," is assigned to provide reinsurance for a particular employer. The Participating Company, known as a "servicing carrier," then provides certified financial reports to the NWCRP, which allocates the costs of the reinsurance to the other Participating Companies on a proportional basis. Plaintiff NCCI acts as the administrator of the NWCRP and as Attorney-In-Fact for the NWCRP Participating Companies in the instant case.

In 2005, an investigation indicated that defendants had, over several decades, engaged in a series of false premium reporting practices to evade their residual market obligations, as well as state insurance taxes. Defendant AIG's senior management, including the Chairman and

3

CEO, directed AIG affiliates to submit false financial statements that deliberately underreported workers compensation premium information, generally by reporting the revenue as general liability or reinsurance assumed premium.

The investigation also disclosed that defendants' false reports had been the subject of an internal investigation in 1991 and 1992. That investigation, led by defendant AIG's senior legal officer, produced a formal report acknowledging defendants' unlawful conduct and determining that the amount of workers compensation premium that had gone unreported totaled approximately $300-400 million annually and yielded "an unlawful benefit in the range of $60-$80 million or more annually." The AIG report admitted that defendants' reporting practices were unlawful and exposed them to civil liability and potential criminal prosecution. Specifically, the report stated, "Potential plaintiffs who could take advantage of this and other causes of action are the other insurance companies who have to pick up AIG's share of residual market assessment and other assessments...." After learning of these improper actions, AIG officials destroyed evidence and relevant records and chose not to disclose the information to other insurance companies. According to plaintiff, defendants have continued to file false financial reports.

In 2006, defendant AIG entered into settlement agreements with several enforcement authorities. As part of a $1.6 billion settlement with New York and federal authorities, defendant AIG paid $100 million to the state of New York and approximately $42 million to various states. Defendant AIG also agreed to pay at least $301 million to victims of its false workers compensation premium reporting through a fully funded settlement fund. Pursuant to an agreement, the fund is to be distributed in three stages. Before September 1, 2007, a

participating state (as defined in the agreement) can recover by tendering a release to defendant AIG for all claims that state's residual market pool may have related to defendants' underreporting.  Between September 2, 2007, and October 31, 2009, defendant AIG can use the fund to settle claims directly with affected parties.  After November 1, 2009, remaining funds will be distributed on a pro rata basis to the participating states.  No portion of the fund can revert to defendant AIG.

The NWCRP Participating Companies did not believe that the settlement agreements entered into by defendant AIG offered full and fair restitution.  According to plaintiff, total damages exceed $1billion.  For that reason, the NWCRP has refused to allow any state to tender a release on its behalf, which precludes those states from participating in the settlement fund.  On May 24, 2007, upon the expiration of a "stand still" agreement between the parties (during which they exchanged information regarding the settlement fund), defendant AIG filed suit against NWCRP and NCCI as its attorney-in-fact in the New York State Supreme Court.  That action seeks: (1) a declaration of the liability defendant AIG has to the NWCRP as a result of its underreporting; (2) a declaration that recovery from the settlement fund is the NWCRP's sole remedy for defendants' underreporting; and (3) an order requiring the NWCRP to permit the states within which it operates to participate in the settlement fund. Within hours of the filing of the New York suit, plaintiff filed the instant suit.

**DISCUSSION**

Motion For Abstention

*Colorado River*

Defendants have filed a motion to stay the instant suit under the abstention doctrine set forth in Colorado River Conservation Dist. v. United States, 424 U.S. 800 (1976). "Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." AAR Int'l, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001), quoting Colorado River, 424 U.S. at 817. Because courts are concerned with "conservation of judicial resources," however, this court may, under "limited" and "exceptional" circumstances, stay or dismiss[1] an action when there is an ongoing parallel action in state court. Id. at 818; LaDuke v. Burlington Northern Railroad Co., 879 F.2d 1556, 1558 (7th Cir. 1989).

"A federal court cannot lightly abjure its responsibility to assert jurisdiction." Lumen Constr., Inc. v. Brant Constr. Co. Inc., 780 F.2d 691, 694 (7th Cir. 1985). Thus, "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation. AAR Int'l, 250 F.3d at 518 (internal citations omitted).

To determine whether Colorado River abstention is appropriate, the court must first address whether the state and federal actions are parallel. Id. If the actions are parallel, the court

---

[1] A stay, rather than a dismissal, is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment. J&A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 WL 653897, *2 (N.D. Ill. Apr. 19, 2002), citing Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir. 1988).

then considers the factors articulated in Colorado River and its progeny to determine whether exceptional circumstances exist to warrant abstention. Id.

Actions are parallel if "substantially the same parties are litigating substantially the same issues in two fora." Id. A court does not ask whether the suits are "formally symmetrical" or identical, but rather if there is "a substantial likelihood that the foreign litigation 'will dispose of all claims presented in the federal case.'" Id., quoting Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988).

Notwithstanding defendants' arguments to the contrary, the court is not persuaded that the instant action and the New York suit are parallel. Although the parties are the same, the actions do not arise out of the same set of facts. The New York suit seeks a declaration that the settlement fund is a sufficient resolution of the NWCRP's claims. The instant suit, however, seeks different remedies, including compensatory and punitive damages, for the actions taken by defendants that, among other things, ultimately led to the establishment of the settlement fund. Further, the instant suit involves a federal RICO claim, which would not likely be disposed of in the New York action.[2] The court therefore concludes that the New York suit and the instant suit are not parallel.

Even if the court concluded that the actions were parallel, abstention is still not warranted in the instant case because exceptional circumstances to not exist to justify staying the instant suit. The court must analyze the following factors to determine whether "exceptional circumstances" exist to justify deference to the state court under Colorado River: (1) whether the

---

[2]Defendants argue that plaintiff's RICO claim is facially deficient. As discussed below, plaintiff has stated a sufficient RICO claim against defendant AIG, its affiliates, and its executives.

7

state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent fora; (5) the source of governing law; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. Lumen, 780 F.2d at 694-95.

The decision to abstain is based on an "assessment of the totality of the circumstances." Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 700 (7th Cir. 1999). The court's decision to abstain should therefore not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary from case to case, depending on the particular setting of the case at hand. LaDuke, 879 F.2d at 1559, citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). Because the court considers the totality of the circumstances, it may also consider any other "special factors counseling for or against the exercise of jurisdiction in the case before it." LaDuke, 879 F.2d at 1559.

According to defendants, New York's pre-existing interest in the litigation constitutes such a "special factor." Defendants claim that New York has a paramount interest in this litigation because it has expended time and resources in creating the settlement fund. While defendants may be correct that New York has devoted considerable resources to investigating defendants' conduct, New York has already received $42 million from defendants and will not receive additional money from the settlement fund. Further, New York is one of the few states that does <u>not</u> participate in the NWCRP, which leads the court to believe that New York has less of an interest in the outcome of this suit than the states participating in the NWCRP, including

8

Illinois. For that reason, the court finds that New York does not have a "paramount interest" in this litigation.

The court also finds that the ten traditional factors set out in Lumen weigh against abstention. The first factor is inapplicable, since there is no property at issue in the New York suit. The second factor, inconvenience of the federal forum, disfavors abstention, because defendants cannot credibly claim that the Northern District of Illinois is an inconvenient forum. Defendants' only argument is that it would be "difficult and expensive" to move paper documents to Illinois. Moving these documents to Chicago would be no more difficult or expensive than moving them to a courtroom in another district, and the court is not persuaded by this argument.

The third factor, the desire to avoid piecemeal litigation, does weigh in favor of abstention. The New York suit and the instant case overlap and involve similar issues. Nevertheless, as discussed below, a complete resolution of the New York action will not necessarily dispose of plaintiff's RICO claims. Further, "it is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy – in having two active lawsuits instead of one." Accordingly, although this factor favors abstention, the court's inquiry does not end here. See, e.g., AXA Corp. Solutions v. Underwriters Reinsurance Co., 2002 WL 31260009, *9 ("[P]iecemeal litigation, in and of itself, can hardly be called 'exceptional circumstances.'").

The fourth factor, the order in which jurisdiction was obtained, is neutral; it has "little independent relevance...especially [] in cases like this one, in which the respective complaints are filed within hours of each other, making priority of filing mostly serendipitous." J&A Sales

9

& Marketing, Inc. v. J.R. Wood, Inc., 2002 WL 653897, *4 (N.D. Ill. 2002). As discussed above, the parties were subject to a "stand still" agreement during which they agreed not to initiate any litigation. That agreement expired on May 24, 2007, and both parties filed suit on that day.

The fifth factor, the source of governing law, weighs against abstention. Defendants argue that because New York has the greatest connection to this dispute, New York law should govern the state law claims brought in both suits. As already discussed, however, New York has no interest in these suits, as the state has already reached a settlement agreement with defendants and will not receive any additional money from the settlement fund. Further, plaintiff's RICO claims are governed by federal statute; "[p]articular weight must be given to the presence of a federal question in the case; that factor weighs heavily against abstention." Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7, 125 F.3d 546, 549 (7th Cir. 1997). The fifth factor is balanced, to some extent, by the sixth factor, the adequacy of the state court action, and the eight factor, the presence of concurrent jurisdiction. Plaintiff does not dispute that the state court could exercise jurisdiction over the civil RICO claims if plaintiff asserted them in the New York suit. See, e.g., Tafflin v. Levitt, 493 U.S. 455, 467 (1990) (holding that state courts have concurrent jurisdiction to consider civil claims arising under RICO). On balance, though, these three factors are at least neutral and do not favor abstention.

The seventh factor, the relative progress of proceedings, is neutral, given that the actions were filed on the same day and are at the same stage of litigation. The ninth factor, the availability of removal, weighs against abstention. The New York suit is not removable to federal court, and as a result, if the instant case is stayed, plaintiff will be precluded from

10

adjudicating its claims in a federal forum. See, e.g., J&A Sales and Marketing, Inc., 2002 WL 653897 at *5.

*Sufficiency of RICO Count*

Finally, the tenth factor, whether the federal claim is vexatious or contrived, weighs against abstention. Defendants argue repeatedly that plaintiff's RICO claims are contrived and that the complaint does not allege RICO violations sufficiently. Their arguments, however, fly in the face of the warnings of the report drafted by their own legal counsel, which states, "A jury could find that the above conduct constitutes various kind of State and Federal civil and criminal violations, including...RICO violations." Whether defendants' actions actually constituted a RICO violation is not for the court to decide at this time; what the court must decide is whether plaintiff's RICO claims are contrived. The court finds that they are not.

To state a claim under RICO, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Jennings v. Auto Meter Products Inc., --- F.3d ---, 2007 WL 2120337 (7th Cir. July 25, 2007), citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481 (1985). Defendants do not dispute that plaintiff alleges conduct establishing a pattern of racketeering activity in the complaint. They argue, however, that plaintiff has not alleged a sufficient "enterprise" separate and distinct from the AIG companies named as racketeering defendants. As plaintiff points out, however, a holding company and its affiliates can constitute an "enterprise" for RICO purposes if the complaint alleges that the parent company used the affiliate companies to perpetrate and hide its fraudulent actions. Bucklew v. Hawkins, Ash, Baptic & Co., LLP, 329 F.3d 923, 934 (7th Cir. 2003). Further, "RICO is to be read broadly"

when construing claims. Sedima, 473 U.S. at 497. The court therefore finds that plaintiff's RICO claims are not contrived or vexatious.

As outlined above, the factors set out in Lumen weigh against abstention in the instant case. "If there is any substantial doubt that the parallel litigation will be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." AAR Int'l, 250 F.3d at 518, quoting Moses H. Cone, 460 U.S. at 28. Therefore, even if the court had found that the case pending in New York paralleled the instant case, the doubt the court has regarding the adequacy of that New York litigation requires this court to deny defendants' motion for abstention.

Forum Non Conveniens

Defendants next ask the court to dismiss the instant suit for forum non conveniens. In a motion to dismiss for forum non conveniens, defendants must show that (1) there is an adequate, available forum elsewhere, and (2) the balance of private and public interests favors dismissal. Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981). An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction. Kamel v. Hill-Rom Co., 108 F3d 799, 803 (7th Cir. 1997). Further, an adequate form mandates that the parties will not be deprived of all remedies or treated unfairly. ISI Intern, Inc. v. Borden Ladner Gervais, LLP, 2001 WL 1382572, *3 (N.D. Ill. 2001).

In the instant case, plaintiff concedes that New York is an adequate and alternative forum. Plaintiff disputes, however, defendants' claim that the balance of private and public

12

interests favors dismissal of the instant suit. The court agrees with plaintiff. Private interest factors considered in ruling on a form non conveniens motion include: (1) ease of access to sources of prof; (2) the availability of compulsory process for hostile witnesses and the cost of obtaining the attendance of willing witnesses; (3) the possibility of viewing the premises, if appropriate; and (4) all other practical problems that make trial of the case easy, efficient, and economical. Kamel, 108 F.3d at 803. The pertinent public interest factors are: (1) the court's own docket congestion; (2) the preference for having a forum apply law with which it is familiar; (3) the local interest in resolving the controversy; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. Piper, 454 U.S. at 241 n. 6; Kamel, 108 F.3d at 803. A district court has "substantial flexibility" in considering the relative importance of these factors. Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1245 (7th Cir. 1990).

Defendants have provided little evidence in favor of dismissal based on the private interest factors. At most, defendants have asserted that transporting their documents to Illinois would be burdensome. Defendants have also not made a compelling case with regard to the public interest factors, especially given the fact that this case arises from their own admitted fraudulent actions. Defendants claim that Illinois and its potential jurors have no interest in hearing the instant suit. Illinois, however, participates in the NWCRP, and its citizens have allegedly been harmed by higher insurance prices stemming from defendants' fraudulent reporting. The court therefore finds that the public and private interest factors weigh against dismissal and denies defendants' motion to dismiss for forum non conveniens.

§ 1404(a) Transfer of Venue to the Southern District of New York

Finally, defendants ask the court to transfer the instant suit to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Transfer is appropriate when the moving party demonstrates that: (1) venue is proper in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. Coffee v. Van Dorn Iron Works, 796 F.2d 217, 219 n.3 (7th Cir. 1986). As the moving parties, defendants must show that the "transferee forum is clearly more convenient" than the transferor forum." Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989), citing Coffee, 796 F.2d at 219-20. Defendants must also show that a transfer will promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other. See, e.g., Black v. Mitsubishi Motors Credit of America, Inc., 1994 WL 424112, *1 (N.D. Ill. Aug. 10, 1994).

The parties do not dispute that venue is proper in both the Northern District of Illinois, the proposed transferor court, and the Southern District of New York, the proposed transferee court. This court therefore has the power to transfer the case if doing so is in the interest of justice and for the convenience of the parties and witnesses. In evaluating the convenience and fairness of a transfer, the court must consider relevant private and public interests. The private interests include: (1) plaintiff's initial choice of forum; (2) the situs of material events; (3) ease of access to sources of proof; (4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and (5) the

convenience to the parties, specifically their respective residences and their ability to bear the expense of litigation in a particular forum. Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997).

*Private Interests*

Defendants concede that plaintiff's initial choice of forum is entitled to deference, but they argue that such deference is not warranted when the operative facts giving rise to the claim did not take place in plaintiff's chosen forum. Defendants consistently argue that plaintiff has no connection to Illinois, but defendants are mistaken; as plaintiff points out, defendants caused injury to more than 160 NWCRP participating companies licensed to write workers compensation insurance policies in Illinois. Plaintiff has therefore demonstrated a sufficient nexus to Illinois as a location where material events took place, and its choice of forum is entitled to deference. Although the remaining factors may weigh slightly in favor of defendants, given that the witnesses listed thus far by defendants live in New York, these factors do not outweigh plaintiff's choice of forum.

*Public Interests*

In addition to the private interest factors, which weigh in favor of plaintiff, the court must also consider the public interest factors, which include: (a) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving the controversies in their locale; (b) the court's familiarity with the applicable law; and (c) the congestion of respective court dockets and the prospect for earlier trial. Georgouses, 963 F. Supp. at 730. Once again,

because more than 160 companies were injured in Illinois, this state has a strong connection to the litigation and an interest in resolving the dispute here. Further, this court is competent to hear both federal claims and any underlying state law claims, and defendants concede that the congestion of respective court dockets does not weigh in favor of either party. For that reason, the court finds that the public interest factors weigh in favor of plaintiff.

Because both the private and public interest factors weigh in favor of plaintiff, the court denies defendants' motion to transfer this case to the Southern District of New York.

## CONCLUSION

For the reasons discussed above, the court denies defendants' motion to abstain under Colorado River, to dismiss on forum non conveniens grounds, and to transfer to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Defendants are directed to file an answer to the complaint or otherwise respond on or before September 5, 2007. The parties are directed to prepare and file a Joint Status Report using this court's form on or before September 12, 2007. This matter is set for a report on status September 19, 2007, at 9:00 a.m.

**ENTER: August 6, 2007**

_____
**Robert W. Gettleman
United States District Judge**