IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., solely as Attorney-In-fact for the participating companies of the National Workers Compensation Reinsurance Pool, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN INTERNATIONAL GROUP, INC., *et al.* <br> Defendants. | No. 07 C 2898 <br><br> Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

National Council on Compensation Insurance, Inc. ("NCCI"), solely as attorney-in-fact for the participating companies of the National Workers Compensation Reinsurance Pool ("the Pool"), has filed an eight-count complaint against defendants (collectively "the AIG Companies"). The complaint alleges that over a period of several decades, the AIG Companies (to the detriment to other participating companies in the Pool) engaged in a fraudulent scheme to avoid paying their proportional share of the insurance costs in the residual market for workers compensation insurance. The complaint alleges two counts for violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) (Counts I and II), and six supplemental state law claims (Counts III-VIII).

On September 20, 2007, this Court entered a comprehensive scheduling order for discovery in the case (doc. # 63). During the following two months, the parties discussed, but were unable to reach full agreement upon, the terms of a protective order to govern the exchange of the confidential information that all sides agree will be exchanged during discovery. The parties' inability to reach

agreement has led to plaintiffs' motion for entry of a protective order in plaintiffs' preferred form (doc. # 72).[1] Plaintiffs' motion includes the form of protective order that plaintiffs ask the Court to enter (Mot., Ex. A). Plaintiffs also attached to their motion the form of protective order advocated by defendants (Mot., Ex. C). During a telephone conference with the parties prior to briefing on the motion, defense counsel confirmed that Exhibit C to plaintiffs' motion to compel reflected the protective order proposed by the defense.

Unfortunately, the briefing submitted by the parties has generated more heat than light with respect to their disputes concerning the protective order. For example, defendants' memorandum took issue with a provision that plaintiffs had proposed in an earlier version of the protective order concerning inadvertent disclosure (Defs.' Mem. at 12), which was not in the version of the protective order that plaintiffs now ask the Court to enter (*See*, Mot., Ex. A, ¶ 1). For their part, plaintiffs attached with their reply memorandum a redlined version of the competing protective order provisions, as required by the Court in an order on December 4, 2007 (doc. # 78) – but which contained, for example, an inadvertent production provision that does not match the inadvertent production provision in the proposed protective order attached to plaintiffs' motion (*Compare* Mot. Ex. A, ¶ 1 *and* Pls.' Reply Mem., Ex. C, ¶ 1).

After sifting through these inconsistencies, as well as the various recriminations that the parties bandy about, three overarching disputes emerge: (1) the terms of an inadvertent production clause; (2) whether there should be a two-tiered confidentiality provision, with corresponding differentiations as to whom "confidential" and "highly confidential" material may be shown; and

---

[1]The motion is denominated as being brought only by plaintiff (singular) NCCI. In a separate Memorandum Opinion and Order issued December 11, 2007, we have explained that in fact there are two plaintiffs in the case: NCCI and the Pool. In this Opinion, we thus refer to plaintiffs (plural) to reflect that fact.

(3) whether there should be a provision specifying that damages shall be awarded for any breach of the protective order. In addition to these overarching disputes, there are a variety of minor differences in the language that the parties propose. Those differences appear to be more linguistic than substantive, and the parties' briefs do not identify those differences as being of significance. We are disappointed that each side appears to have meaninglessly insisted on pride of authorship with respect to those differences. But, because they have chosen to do so, it falls to the Court to resolve these language differences, insignificant though they may be.

Accordingly, we review each provision where there is any difference (substantive or linguistic) between the parties' proposals, and we resolve those differences. By a separate order of this same date, we will enter a protective order that is consistent with the rulings herein.[2]

## I.

Each proposed form of protective order contains of an "inadvertent production" provision to deal with the possibility that information subject to a claim of privilege or work product protection may be inadvertently produced in this lawsuit (Mot., Ex. A, ¶ 1; Ex. C, ¶ 1). Given the scope of the case and the volume of documents that likely will be produced, we agree that this is a legitimate concern that should be addressed in the protective order. We adopt the form of inadvertent production provision that is contained in the version proposed in plaintiffs' motion (Mot., Ex. A ¶

---

[2]In their memorandum, defendants say that the parties have expended "significant effort" negotiating terms of a protective order, but that the proposal that plaintiffs submitted with their motion did not reflect the various compromises and agreements that they had reached and instead "reverts to the original proposal" plaintiffs made (*Id.*). Defendants propose that the Court refrain from entering any form of protective order at this time, and ask that we direct the parties "to submit to the Court a proposed protective order consistent with the Court's rulings and consistent with the provisions to which they have already reached agreement" (Defs.' Mem. at 5 n.1). We see no need to pursue this course, which would further delay the entry of a protective order that already has been the subject of bickering between the parties far too long.

1), which is consistent with Fed.R.Civ.P. 26(b)(5)(B).[3] Defendants offered two criticisms of plaintiffs' proposal, each of which is without merit.

*First,* defendants argue that the inadvertent production clause should contain a requirement that the party receiving materials that the producing party claims were inadvertently produced must return or destroy the information, prior to any Court adjudication or agreement that the information is privileged and that the privilege has not been waived (Defs.' Mem. at 12-13). However, Rule 26(b)(5)(B) provides that the receiving party must promptly "return, *sequester*, or destroy" the information that the producing party claims has been inadvertently produced (emphasis added). The option of sequestration was added in the 2006 Amendments to Rule 26. The Advisory Committee Notes make clear that this addition was purposeful: "[t]he option of sequestrating or destroying the information is included in part because the receiving party may have incorporated the information in protected trial-protected materials." Advisory Committee Notes to 2006 Amendment. Rule 26(b)(5)(B) also allows the receiving party to keep the information so that it "may promptly present the information to the Court under seal for determination of the claim." This is precisely what plaintiffs' proposal provides. Defendants' interest are protected by the provision that a receiving

---

[3]This provision we will include in the protective order reads as follows:

1.      Inadvertent production or disclosure of any Discovery Material in this action as to which a Producing Party claims a privilege, or Discovery Material as to which a Producing Party claims is governed by the work-product doctrine ("Privileged Material"), will not be deemed to be a waiver of those protections. If a Producing Party believes that Privileged Material was inadvertently produced, the Producing Party shall so notify all parties in writing and state the basis for the claim of privilege or work-product protection. After receiving notice of the inadvertent production, a party must promptly return, sequester or destroy the inadvertently produced Privileged Material and any copies it has and may not use or disclose the Privileged Material or information contained therein until the claim is resolved. A receiving party may promptly present the information to the Court under seal for a determination of the claim. If the receiving party disclosed the Privileged Material before being notified of the inadvertent production, it must take responsible steps to retrieve it. The Producing Party must preserve the information until the claim is resolved. Nothing in this paragraph will modify any obligation a party otherwise has with respect to inadvertent production under the law or the ethical rules.

party "must not use or disclose the information [subject to a claim of inadvertent production] until the claim is resolved." We reject defendants' claim that plaintiffs' proposal, which tracks Rule 26(b)(5)(B), is somehow "contrary to counsel's legal and ethical obligations" (Defs.' Mem. at 12).

*Second*, defendants argue that plaintiffs' form of inadvertent production provision is defective because it lacks a statement that "nothing in this paragraph will modify any obligation a party otherwise has with respect to inadvertent production under the law or ethical rules" (Defs.' Mem. at 13). In fact, plaintiffs' proposal that we adopt contained precisely that language (*see* Mot., Ex. A, ¶ 1). Thus, whatever the reason for defendants making this objection, we reject it.

## II.

Each side has proposed a protective order that defines "confidential information," for which the scope of distribution is limited. Moreover, the parties' respective proposals largely are in agreement as to what information is to be deemed "confidential":

> Any Producing Party may designate as "Confidential" any non-public Discovery Material that the Producing Party produces which counsel for the Producing Party *has determined* in good faith contains, reflects or reveals: (1) trade secret information (which *is* a formula pattern device for compilation of information which is used in one's business, and which gives the business an opportunity to obtain an advantage over competitors who do not know or use the trade secret information), or (2) proprietary confidential information such as research and development information, or commercially or competitively sensitive information, or (3) confidential, non-public personal information concerning individuals. In addition, all Discovery Material that is in the form of a audio or video recording (whether analog or digital), including but not limited to video recordings of depositions, shall be "Confidential" without regard to the content of the recording.

(Mot., Ex. A, ¶ 2) (emphasis added).[4]

Where the sides part company is on whether there should be a separate definition of material that may be designated as "highly confidential – outside counsel's eyes only," as defendants' propose (Mot. Ex. C, ¶ 2(b)). Defendants explain that the purpose for this separate designation of confidentiality is to prevent direct competitors (the Pool, its Board of Governors, and its participating members) from having access to information that might afford them a competitive advantage over the AIG Companies (Defs.' Mem. at 7-10). Plaintiffs do not quarrel with the characterization of the Pool and its participating members as competitors of the AIG Companies, and thus we acknowledge that the AIG Companies have a legitimate concern that provides a basis for a two-tier definition of confidentiality.

The difficulty we have is with the breadth of defendants' proposed definition, which reads as follows:

> (b) "Highly Confidential – Outside Counsels' Eyes Only" any nonpublic Discovery Material which counsel for the Producing party believes in good faith will more likely than not (1) cause harm to the business operations of the disclosing party, or (2) improperly disadvantage the disclosing party, or (3) is a trade secret within the meaning of the Uniform Trade Secrets Act, or (4) is proprietary information that concerns or relates to: (i) business/strategic plans, (ii) sales, cost and price information including sales/financial projections, (iii) non-public marketing information, (iv) detailed sales and financial data, (v) customer lists, (vi) technical information, or (vii) other information of competitive, financial, or commercial significance comparable to the items listed in this paragraph.

---

[4] The italicized language reflects certain differences in the competing proposals (*Compare* Mot., Ex. A, ¶ 2 *and* Ex. C, ¶ 2(a)). The language we set forth above is the definition of confidential information we will adopt, with one addition: we will amend the first line to provide that the good-faith determination of confidentiality must be made by counsel "of record" for the producing party. We note that defendants seek to add to the parenthetical clause defining trade secret information the prefatory phrase "including but not limited to." We decline to do so, as addition of that phrase would render "trade secret" too open-ended a term to provide a clear standard for designating information as confidential.

6

Defendants seek the right to claim heightened protection for any discovery material that would "cause harm to the business operations of the disclosing party." Information that could "cause harm to business operations of the disclosing party" would include information that might be embarrassing and could diminish a company's reputation, but is not commercially sensitive. Protective orders are not designed to protect the parties from "harm" that results from public disclosure of embarrassing or improper conduct. *Culinary Foods, Inc. v. Rachem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993). Thus, we reject a definition that would allow a party to designate as "highly confidential" information that they cannot even designate as "confidential," and thus keep from the public eye.

Likewise, defendants' request for the ability to designate as "highly confidential" information that would "improperly disadvantage" the disclosing party seeks a standard that is ambiguous, and that would allow concealment of non-commercial information. Defendants' proposal of that standard does not explain the difference between discovery material that would "improperly disadvantage" the disclosing party and thus be subject to a highly confidential designation, and that which would be trade secret information that would give a business "an opportunity to obtain an advantage over competitors who do not know or use the trade secret information," and thus be subject only to a "confidential" designation. We reject this proposed definition as too ambiguous to create a workable standard.

Defendants' proposal also seeks to accord "highly confidential" status to discovery material that is "a trade secret within the meaning of the Uniform Trade Secrets Act." However, defendants fail to explain why that type of information is entitled to more protection than trade secret information which may be accorded "confidential" status. Thus, we do not deem that category of information suitable for a "highly confidential" designation.

Finally, defendants ask for the right to accord highly confidential status to "proprietary information that concerns or relates to: (i) business/strategic plans, (ii) sales, costs and price information including sales/financial projections, (iii) non-public marketing information, (iv) detailed sales and financial data, (v) customer lists, (vi) technical information or (vii) other information of competitive, financial or commercial significance comparable to the items listed in this paragraph." This articulation of a standard for designating selected information as "highly confidential" comes closer to the mark. Plainly, this type of information could be used to defendants' disadvantage if in the hands of competitors.[5]

However, the ability of that kind of information to be used to defendants' commercial detriment depends on that information being commercially useful, and not merely of historical relevance to this lawsuit. Defendants point out that plaintiffs' pending discovery requests seek information concerning customer lists, pricing information and customer agreements for a period from January 1, 1970 to the present (Defs.' Mem. at 2). Clearly, current financial information of that type could be used to defendants' commercial disadvantage if placed in the hands of competitors. On the other hand, the more dated the financial information, the less likely that it could be used to cause competitive harm to defendants. We would be hard pressed to imagine that information going back to 1970 would be entitled to highly confidential (or, indeed, confidential) status.

---

[5]Plaintiffs tacitly acknowledge this point. While they protest that a two-tier protective order is unnecessary and thus did not propose it in their motion (Mot., Ex. A, ¶ 2), in the redlined version plaintiffs submitted with their reply memorandum they noted that they had offered a two-tier approach during pre-motion discussions with defendants that provided for designation of these types of information as "highly confidential" (Pls.' Reply Mem., Ex. C., ¶ 2(b)) – albeit with certain restrictions not set forth in defendants' version.

The parties have not provided the Court with a means to determine some bright-line date for separating information that still is commercially useful from that which is not.[6] Rather than arbitrarily select a date, we instead will put into the protective order a standard: to be entitled to highly confidential status, the proprietary information (a) must have current applicability to defendants' business operations, and (b) more likely than not would cause competitive harm to the business operations of the disclosing party.

Accordingly, consistent with our comments above, the Court will enter as part of the protective order a two-tiered provision for designating information as "confidential" and "highly confidential" – outside counsel's eyes only.[7]

### III.

Each side offers a provision that allows deposition transcripts to be deemed confidential for a period of 30 days after the producing party receives the final transcript. During that 30-day period, the producing party must then designate the specific portions of the transcript to be treated as confidential. The competing proposals attached to plaintiffs' motion have minor variations (*Compare*, Mot. Ex. A, ¶ 3 and Ex. C, ¶ 3). The redlined version offered with plaintiffs' reply memorandum contains differences from each of those two versions (Pls.' Reply Mem., Ex. C, ¶ 3). We adopt the version offered by defendants (Mot., Ex. C, ¶ 3), with three revisions: (a) the 30-day period will run from the date the final transcript is available to the producing party (whether the producing party orders a copy or not); (b) any portions of the transcript not designated as confidential

---

[6] Plaintiffs' redlined version picks a date of January 1, 2004 as the dividing line (Pls.' Reply Mem., Ex. C, ¶ 2(b)), without explaining the basis for selecting that date.

[7] There are a number of provisions to which the parties agreed, but which refer solely to the generic term "confidential." Because we have adopted a two-tier protective order that allows for designation of "confidential" and "highly confidential" information, we will revise those provisions to refer to both designations where appropriate.

by the producing party at the end of the 30-day period will be treated as non-confidential; and (c) after the designation, the court reporter will mark "Confidential" or "Highly Confidential – Outside Counsel's Eyes Only" not only on the face of the transcript, but at the beginning and end any portions so designated.

## IV.

Each side has proposed provisions to govern who may view discovery material that is designated as "confidential" or "highly confidential." Their dispute on this point centers on the question of who may see the various categories of information (*Compare*, Mot. Ex. A., ¶ 8 *and* Ex. C, ¶¶ 8-9).

With respect to information designated as confidential, plaintiffs seek a provision that expressly allows confidential information to be shown to "the individual representatives and alternates of the members of the Board of Governors of the [Pool] and counsel advising them, solely for purposes of carrying out their duties and responsibilities under the Articles of Agreement." Defendants oppose that request. We think defendants' proposed restriction is excessive given the broad scope of information that defendants may designate as "confidential," and the Court's approval of a separate provision allowing the defendants to designate as "highly confidential" a more targeted subset of information that more likely than not would cause harm to defendants' business operations if revealed to competitors. We see no basis, for example, to bar the Board of Governors, who are directing this litigation for plaintiffs, from seeing non-public personnel information concerning individuals or other confidential information that does not meet the "highly confidential" standard. Thus, we will adopt plaintiffs' proposal that confidential information may be shown to the

10

"individual representatives and alternates of the members of the Board of Governors of the [Pool], solely for purposes of carrying out their duties and responsibilities in directing this lawsuit.[8]

Plaintiffs also seek a provision allowing confidential information to be revealed to those "who authored or received the documents or material, whose review of the [information] is necessary for the prosecution or defense of this action." That provision is appropriate. Information that individuals wrote or received is not confidential as to them. In addition, disclosure to those individuals will be subject to safeguards: they will not be permitted to retain copies of confidential information (to the extent they do not already possess them), and will have to sign an undertaking to maintain the confidentiality of the information.

Defendants seek a separate provision creating additional limitations on who may see "highly confidential – outside counsel's eyes only" information. Defendants argue that in-house counsel and company representatives, deponents, and insurance companies and other indemnitors be precluded from seeing this "highly confidential" information. Plaintiffs' motion contained a form of protective order that did not have this limitation; however, in the redlined version they submitted, plaintiffs indicate that if there is a two-tiered protective order, they would agree to that limitation (*see* Pls.' Reply Mem., Ex. C, ¶ 9). We agree that those restrictions are appropriate for the (now) more limited information that may be designated as highly confidential, and we will incorporate those restrictions

---

[8]This reflects a revision of plaintiffs' proposed language in several ways. *First*, it eliminates a provision authorizing disclosure of information not only to the Board of Governors but to "counsel advising them." Other provisions of the proposed protective order to which the parties have agreed authorize disclosure of confidential information to outside counsel and to in-house counsel for any party who is "actively engaged in connection with the prosecution or defense of this action." We assume that those outside and in-house counsel are the counsel who would be advising the Board of Governors. *Second*, we have indicated that confidential information may be shown to the Board of Governors so that they may carry out their duties and responsibilities in connection with the lawsuit, as opposed to "under the Articles of Agreement" as plaintiffs proposed. The Board of Governors have numerous responsibilities under the Articles of Agreement that extend beyond this litigation. The Court's revision is consistent with an agreed provision by the parties that confidential discovery material may be used only for purposes of the prosecution or defense of this action or any appeal therefrom.

11

into the protective order. This limitation also will preclude members of the Board of Governors and those who wrote or received the documents from seeing information that is designated as highly confidential.

## V.

Each side has proposed that persons who are allowed access to confidential or highly confidential material be advised of the requirements of the protective order, and sign an undertaking acknowledging they will protect the confidentiality of the information (Pls.' Mot. Ex. A, ¶ 9, Ex. C., ¶ 10). We adopt the form of that provision proposed by defendants, which omits a proviso that plaintiffs offered but that we deem unnecessary.[9]

## VI.

Each side has proposed provisions allowing for objections to designation of discovery material as confidential or highly confidential. (Pls.' Mot. Ex. A, ¶ 10, Ex. C, ¶ 11). We adopt the defendants' version. We reject plaintiffs' proposal that the producing party, rather than the objecting party, bring a motion challenging a confidentiality designation, and related language that would deem discovery material as non-confidential if the producing party failed to file such a motion. However, if a receiving party objects to a confidentiality designation, the producing party that made the designation will have the burden of defending it.

---

[9]Although each side has proposed that certain persons who see confidential or highly confidential information must sign an undertaking, neither side has submitted a proposed form of an undertaking with their respective proposed protective orders. The protective order that we enter today will include an undertaking that is in the form that appears in a separate protective order from another lawsuit that plaintiffs submitted with their motion (Pls.' Mot., Ex. B).

## VII.

Each party has offered a provision for the filing of information designated as confidential or highly confidential under seal (Pls.' Mot. Ex. A, ¶ 11, Ex. C, ¶ 12). We adopt the provision proposed by plaintiffs, which contains a necessary clause that the defendants' proposal omits: "an interested member of the public may challenge the confidential designation of particular documents that have been filed under seal in accordance with the provisions of this Paragraph, and in such event the party asserting confidentiality has the burden of demonstrating the propriety of that designation." That provision, which is identified on the Court's website as a necessary part of a protective order that provides for filing documents under seal, is required under Seventh Circuit law. *Citizen's First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999).

## VIII.

Each side proposes a provision governing the disposition of confidential and highly confidential information after the conclusion of the litigation (Pls.' Mot., Ex. A, ¶ 14; Ex. C, ¶ 15). The respective proposals have a minor difference in language concerning the certification that is to be supplied after material is destroyed or returned to the producing party. We are not entirely satisfied with either side's formulation, and so we will include the following provision: "within 21 days after destruction or return, the receiving party shall certify in writing its compliance with this paragraph."

## IX.

The only remaining dispute involves defendants' request to include a provision in the protective order that would require the Court to award damages for any breach of the protective order (Pls.' Reply Mem., Ex. C, ¶ 25). We are not persuaded that a damages provision is necessary. Upon

entry, the protective order is a Court order, the violation of which will subject an offending party to a wide array of possible sanctions. We believe the availability of those sanctions should provide ample disincentive to violate the order, and ample means to remedy damages from any violation that might occur.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for entry of a protective order (doc. # 78) is granted in part, and denied in part. The Court will enter through separate minute order a protective order that is consistent with the rulings set forth herein.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: December 11, 2007