IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., solely as Attorney-In-fact for the participating companies of the National Workers Compensation Reinsurance Pool, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN INTERNATIONAL GROUP, INC., *et al.* <br> Defendants. | No. 07 C 2898 <br><br> Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

National Council on Compensation Insurance, Inc. ("NCCI"), solely as attorney-in-fact for the participating companies of the National Workers Compensation Reinsurance Pool ("the Pool"), has filed an eight-count complaint against defendants (collectively "the AIG Companies"). The complaint alleges that since 1970, the Pool has operated in more than 40 states in what is called a "residual market" for workers compensation insurance, a market consisting of employers who are otherwise unable to obtain workers compensation insurance. The complaint alleges that the Pool assigns a participating insurance company (known as a "servicing carrier") to provide reinsurance for a particular employer; that the servicing carrier then provides certified financial reports to the Pool; and that the Pool then spreads the cost of the reinsurance among the participating companies on a proportional basis.

The complaint alleges that over a period of several decades, the AIG Companies (to the detriment of the other participating companies in the Pool) engaged in a fraudulent scheme in order to evade paying their proportional share of the residual market obligations. Based on these

allegations, the complaint asserts violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d) (Counts I and II), and various supplemental state law claims (Counts III-VIII). The matter has been referred to this Court for discovery supervision (doc. ## 42, 46).

On August 6, 2007, the presiding district judge denied a motion by the AIG Companies to abstain, to dismiss on grounds of forum non conveniens, or to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (doc. # 55). After receiving the proposals of the parties, on September 20, 2007, the Court established a comprehensive schedule for discovery, which provides for the completion of non-expert discovery by July 15, 2008 and the completion of expert discovery by December 31, 2008 (doc. # 63).[1] The commencement of written discovery has brought to a head a dispute between the parties concerning the discovery obligations of NCCI and the Pool, a dispute that has led to defendants' motion to compel (doc. # 68).

The AIG Companies assert that because the participating companies in the Pool (and not NCCI, the Pool's attorney-in-fact) hold the sole plaintiffs' interest in the lawsuit, each of the participating companies of the Pool is in fact a plaintiff and each should be required to respond to document requests served under Fed.R.Civ.P. 34 (Defs.' Mem. at 5-8). The AIG Companies alternatively argue that NCCI, as attorney-in-fact for the Pool, is obligated to produce relevant documents in the possession of the participating members in the Pool because those documents are within NCCI's "possession, custody or control" within the meaning of Rule 34 (*Id.*, at 8-10). NCCI opposes both arguments. NCCI contends that the AIG Companies may not seek discovery under

---

[1] Currently pending before the presiding district judge is a motion by the AIG defendants to dismiss the RICO counts for failure to state a claim, and then to relinquish supplemental jurisdiction over the remaining state law claims (doc. # 57). No party has urged that discovery in the case be stayed pending ruling on the motion to dismiss.

Rule 34 from anyone other than NCCI (NCCI Mem. at 3). NCCI further argues that it possesses all information "necessary to fairly and completely litigate this dispute," and that it lacks possession, custody or control over documents that are in the files of the participating companies in the Pool (*Id.* at 6-11).

For the reasons set forth below, we grant defendants' motion to compel in part. As we explain below (Part I), we conclude that both NCCI and the Pool are parties to this lawsuit – but that each participating member of the Pool is not. We further explain (Part II) how this ruling affects the procedures through which defendants may seek discovery.

I.

Rule 10(a) of the Federal Rules of Civil Procedure requires that a complaint "include the names of all parties." Fed. R. Civ. P. 10(a). The caption of the complaint in this case identifies NCCI as plaintiff, but solely in a representative capacity as attorney-in-fact. The caption goes on to identify the entity for which NCCI is the attorney-in-fact: that is, "the participating companies of the National Worker's Compensation Reinsurance Pool."

The allegations of the complaint further confirm that NCCI's status is solely as a representative, or agent, of the Pool. The complaint alleges that the Board of Governors of the Pool has designated it as attorney-in-fact to bring the lawsuit (Compl., ¶ 1). The complaint further alleges that it brings this suit on behalf of the participating companies in the Pool; that recovery is sought for injuries allegedly sustained by the participating companies in the Pool; and that any damages recovered through this lawsuit will be distributed to participating companies (*Id.* at 1, 20, 76, Count V (Prayer for Relief ¶ B)). There is no dispute the Pool (through its governing board) will be responsible for directing the litigation (*see* Defs.' Mem. Ex. A, ¶ 2). NCCI does not allege that the

3

participating members in the Pool have assigned their litigation interests against AIG Companies to NCCI. Nor does NCCI allege any injury of its own, or any right to relief of its own.

Thus, it is clear that NCCI proceeds not as an assignee, but rather as an agent for the participating members in the Pool. NCCI has not disclosed why the Pool chose to proceed in this manner. As an unincorporated entity, the Pool would have the capacity to sue in its own behalf in this court if the Pool would have the capacity to do so under Illinois law. Fed. R. Civ. P. 17(b)(3) (for a partnership or other unincorporated association, the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."). Under Illinois law, it appears that the Pool would qualify as a "voluntary unincorporated association," which is defined as "any organization of 2 or more individuals formed for a common purpose, excluding a partnership or corporation." 735 ILCS 5/2-209.1. The Pool is a creature of contract, with the rights and obligations of the participating companies set forth in the Articles of Agreement into which they voluntarily entered. Section 5/2-209.1 states that a voluntary unincorporated organization, such as the Pool, "may sue and be sued in its own name, and may complain and defend in all actions."

In any event, the fact that the Pool chose to sue through an attorney-in-fact does not change the fact that the Pool is the real party in interest. *See generally Curry v. United States*, ___ F.3d ___, 2007 WL 3287070, *1 (8th Cir. Nov. 8, 2007) (held that a prisoner "'cannot avoid the . . . rules [governing federal post-conviction remedies] by inventive captioning. . . . [T]he name makes no difference. It is substance that control'"). If NCCI's attorneys had chosen to caption the case by identify the Pool first (that is, as "participating companies of the National Workers Compensation Reinsurance Pool, acting by their attorney-in-fact, National Council on Compensation Insurance, Inc."), then perhaps the Pool's status as a plaintiff would be more plain. *See, e.g., Lumbermans*

*Underwriting Alliance v. Hills*, 413 F.Supp. 1193, 1195-96 (D.C. Mo. 1976) (in a suit where a plaintiff was denominated "Lumbermans Underwriting Alliance, acting by its attorney-in-fact, U.S. Epperson Underwriting Company," the court found that Lumbermans, a reciprocal interinsurance exchange that was treated as an unincorporated association, had capacity to sue by its attorney-in-fact). *See also RTC Mortgage Trust 1994-S3 v. Guadalupe Plaza*, 918 F.Supp. 1441, 1451 (D.N. Mex. 1996) (in a case where plaintiff was captioned as "RTC Mortgage Trust 1994-S3, by its attorney-in-fact Trotter Kent, Inc.," court rejected as "disingenuous" the argument that Trotter Kent was a non-party to the action; RTC Mortgage Trust "chose to bring this action through Trotter Kent as its attorney-in-fact"). We do not believe that the Pool is any less a party here merely because of the sequence in which the attorney-in-fact and the Pool appear in the caption. Here, we hold that both the Pool and NCCI, its attorney-in-fact, are party plaintiffs in this case.

## II.

We now turn to the question of what affect our ruling that the Pool is a party plaintiff has on the manner in which defendants may seek discovery. Although the only discovery served thus far involves Rule 34 document requests, we also consider how our ruling will affect other discovery procedures that defendants may use.

### A.

Defendants have served a document request seeking discovery of certain information, whether it exists in the files of NCCI or in the files of the participating members of the Pool. Under Rule 34(a), "[a]ny party may serve on any other party" a request to produce documents "within the possession, custody or control of the party upon whom the request is served." A party may seek production of documents by non-parties, but only by way of a subpoena under Fed.R.Civ.P. 45. As

we have explained, NCCI and the Pool are both parties; thus, each is obligated to respond to document requests under Rule 34.

That obligation includes producing responsive documents that, while not in the physical possession of NCCI or the Pool, are within their control by virtue of their ability to obtain those documents from the participating members. It is "'well-settled that a party need not have actual possession of the documents to be deemed in control of them;'" rather, the "'test is whether the party has a legal right to obtain them.'" *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal citations omitted). When the person from whom documents are sought "'has practical and actual managerial control over, . . . [a] corporate organization[,]' then that person is said to have 'control' sufficient to order production of corporate documents.'" *Id.* (internal citations omitted). This concept of control has equal applicability outside the corporate organization setting to other forms of organization such as the Pool, which appears in substance to be an unincorporated association.

We have no question that the Pool has "control" sufficient to require the participating members to provide documents relevant to a lawsuit that the Pool has authorized. The Pool operates under Articles of Agreement, which NCCI attached to the Complaint (Compl., Ex. A). "[T]he operation, business and affairs of all matters arising under these Articles of Agreement shall be managed and controlled by a board of governors composed of twelve (12) non-affiliated participating companies" (Compl., Ex. A: Articles of Agreement, Art. V, § 1). The Articles of Agreement provide that certain powers may be granted to an Administrator (*Id.*), who in this case is NCCI. The Articles of Agreement provide that "[u]pon direction by the Board of Governors, the Administrator is empowered to act as attorney-in-fact for each participating company to prosecute, to defend, to

submit to arbitration, to settle, and to propose or to accept a compromise with respect to any claim existing in favor of, or against, such participating company based on or involving any matter relating to this Agreement or to intervene in any action or proceeding related thereto" (*Id.*, Art. V, § 12). The complaint specifically alleges that the Board of Governors has exercised that power by authorizing NCCI to act as attorney-in-fact for purposes of proceeding with this litigation (Compl. ¶ 20). And, it is undisputed that it is the Board of Governors that will direct the course of litigation for the participating members of the Pool.

By authorizing this litigation on behalf of the participating members of the Pool, the Board of Governors has exhibited that it has "practical and actual managerial control" over the Pool. *Dexia*, 231 F.R.D. at 542. We conclude that the control necessarily extends to obtaining from the participating members documents relevant to the litigation, whether they are documents and information that the Pool would affirmatively use and thus voluntarily disclose, *see* Fed.R.Civ.P. 26(a)(1), or instead is information that defendants seek through Rule 34 document requests. The right to initiate and prosecute a federal lawsuit carries with it the obligation to do so consistent with governing rules, including the rules of civil procedure. Having exercised the right to initiate federal litigation through the acts of the Board of Governors, the Pool is no more exempt from the duty to comply with the rules of procedure than is any other organization of whatever form – be it corporation, partnership or unincorporated association.

Moreover, even if we considered NCCI to be the only party, we would conclude that it possesses control over the documents in the files of the Pool's participating companies. The Board of Governors has given NCCI, as attorney-in-fact "for each participating company," the power to prosecute and defend litigation. That grant of authority is not an assignment by the participating

companies, for they have retained in full their exclusive right to any recovery that may be achieved. Rather, the grant of authority empowers NCCI to act solely as agent for, or in the shoes of, "each participating company" in prosecuting this lawsuit. This grant of authority to NCCI includes the authority to produce relevant documents, including those that are in the physical possession of the participating members and not in the possession of NCCI. *See* Rest. 3d Agency § 2.02(1) (West 2007) (agent has authority to take all actions "necessary or incidental to achieving the principal's objectives").

On this issue, we find persuasive the discussion in *JP Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005). In that case, JPM sued as administrative agent on behalf of a consortium of some 50 lenders who were allegedly defrauded by misrepresentations by the defendants. The consortium consisted of a number of the original lenders who still retained their interest in a lawsuit, and assignees of the original lenders who had acquired the interests of certain of the original lenders against the defendants. JPM argued that it could not be required to provide in discovery documents that it did not possess, but that were in the hands of the members of the consortium.

The district court rejected that argument. The district court explained that because the claims being asserted were those of the participating members, "[t]hey cannot be asserted by an agent or assignee without the concomitant obligation to produce relevant discovery to defendants." 228 F.R.D. at 507. The court reasoned that it would be "both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim," as that would "shift [] onto defendants the cost of third-party discovery, where the third-parties are the very institutions asserting that they were defrauded." *Id.* at 506-07. The Court thus

companies, for they have retained in full their exclusive right to any recovery that may be achieved. Rather, the grant of authority empowers NCCI to act solely as agent for, or in the shoes of, "each participating company" in prosecuting this lawsuit. This grant of authority to NCCI includes the authority to produce relevant documents, including those that are in the physical possession of the participating members and not in the possession of NCCI. *See* Rest. 3d Agency § 2.02(1) (West 2007) (agent has authority to take all actions "necessary or incidental to achieving the principal's objectives").

On this issue, we find persuasive the discussion in *JP Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005). In that case, JPM sued as administrative agent on behalf of a consortium of some 50 lenders who were allegedly defrauded by misrepresentations by the defendants. The consortium consisted of a number of the original lenders who still retained their interest in a lawsuit, and assignees of the original lenders who had acquired the interests of certain of the original lenders against the defendants. JPM argued that it could not be required to provide in discovery documents that it did not possess, but that were in the hands of the members of the consortium.

The district court rejected that argument. The district court explained that because the claims being asserted were those of the participating members, "[t]hey cannot be asserted by an agent or assignee without the concomitant obligation to produce relevant discovery to defendants." 228 F.R.D. at 507. The court reasoned that it would be "both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim," as that would "shift [] onto defendants the cost of third-party discovery, where the third-parties are the very institutions asserting that they were defrauded." *Id.* at 506-07. The Court thus

held that both JPM and the original lenders who retained their interest in the lawsuit "have the duty to produce documents" in response to discovery requests under Rule 34. *Id.* at 507. We are persuaded that the Pool's attorney-in-fact here, NCCI, has that responsibility as well.

Our discussion thus far has addressed defendants' right to obtain documents from NCCI and the Pool through document requests under Rule 34, even if those documents are in the possession of the Pool members. That right, however, does not extend to permitting defendants to serve Rule 34 document requests on each of the 500-plus participating members of the Pool. We are mindful that when considering diversity of citizenship, "[g]eneral partnerships, limited partnerships, joint stock companies, and unincorporated membership associations all are treated as citizens of every state of which any partner or member is a citizen." *Indiana Gas Company, Inc. v. Home Insurance Company*, 141 F.3d 314, 317 (7th Cir. 1998). Thus, in a lawsuit against an unincorporated association, it is the citizenship of the members of that association, and not the citizenship of the attorney-in-fact for that association, that is relevant for determining diversity of citizenship. *Massey v. State Farm Lloyd's Insurance Co.*, 993 F.Supp. 568, 570 (S.D. Tex. 1998).

Of course, this case is premised on federal question subject matter jurisdiction and not diversity jurisdiction. That said, even if diversity of citizenship was the basis for subject matter jurisdiction, and we were required to determine the citizenship of each participating member of the Pool in order to determine complete diversity, that would not mean that each participating member is a "party" against whom the defendants may directly serve discovery requests under Rule 34. The Articles of Agreement make clear that the Board of Governors, along with the administrator (NCCI), manage and control the activities of the Pool. Under Illinois law, it appears that the Pool has a sufficient status apart from its members to confer upon the Pool standing to sue. Thus, while the

Board of Governors and NCCI have an obligation to respond to discovery requests for relevant information that is in the possession of the participating members, that does not make the participating members themselves parties who are subject directly to document requests under Rule 34(a). The defendants may serve Rule 34 document requests on the Pool, but they may not serve Rule 34 document requests on each participating member of the Pool.

We have considered NCCI's arguments that information in the files of the participating members should not be subject to discovery through Rule 34 requests served upon NCCI or the Pool. For the reasons we have explained above, we already have rejected one of those arguments: the argument that NCCI does not have "control" over those documents. We have considered NCCI's other arguments as well, and find them unpersuasive. In our view, three of them warrant brief discussion.

*First*, NCCI argues that the position of the Board of Governors to the participating companies in the Pool are "hardly distinguishable from the legal fictions of a corporation, which acts only for the interest of its shareholders and at the direction of its officers and board," but does not allow a party to seek discovery under Rule 34 from the shareholders of the corporation (NCCI Mem. at 7). This argument ignores the legal distinction between corporations and unincorporated associations. "A corporation is a form of business association, having the rights, relations and characteristic attributes of a legal entity distinct from that of the persons who compose it or act for it in exercising its functions." 1 Fletcher Cyc. Corp. § 1 (2007). Thus, "[a] shareholder is not, by virtue of his or her status as such, an agent of the corporation or a creditor, and his or her relationship to the other shareholders is not that of a partner." 13 Ill. Law and Prac. Corporations § 130. The participating members of the Pool, by contrast, do not have this degree of legal separation from the Pool. A non-

incorporated association has "no legal existence separate" from its members. Moreover, while shareholders do not manage or control the operations of the corporation, under the Articles of Agreement, the Board of Governors are the ones who manage and control the activities of the Pool. For these reasons, we find unpersuasive NCCI's attempt to analogize its discovery obligations and those of the Pool with respect to materials in the files of the participating members of a Pool to a corporation's obligation to produce materials that may be in the possession of its shareholders.

*Second*, NCCI argues that it is premature to address the question of the manner in which defendants seek discovery of information in the possession of the participating members. NCCI says that it is premature to consider this question because responses to defendants' discovery requests under Rule 34 were not due at the time that the motion was filed, and there has not yet been a showing that defendants need any information beyond the information that NCCI maintains in its files and will produce, which NCCI says constitutes all the information "necessary to fairly and completely litigate this dispute" (NCCI Mem. at 1, 3). We disagree with both prematurity arguments.

NCCI does not dispute that it has unequivocally told defendants that the participating companies "are not parties and will be required to be addressed by a third-party subpoena" (Defs.' Mem. Ex. A ¶ 3). Thus, even though responses to defendants' Rule 34 requests for document production were not due at the time the motion was filed, we believe it salutary for the parties, at the earliest possible time, to have direction from the Court on the procedural question of whether document discovery must proceed by Rule 34 requests or by subpoenas under Rule 45.

NCCI's argument that defendants have not yet established a need for discovery from the files of the participating members misconceives the nature of the discovery process established by

11

Fed.R.Civ.P. 26(b). The threshold question with respect to any party's obligation to respond to discovery is whether the requested discovery is "relevant" within the meaning of Rule 26(b)(1). Thus, in the first instance, a requesting party need not show that the discovery sought is "necessary," but only that it is relevant. Of course, even relevant discovery may be foreclosed or limited if, on an analysis under Rule 26(b)(2)(c)(iii), "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the party's resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." As NCCI recognizes (NCCI Mem. at 11), the Court "should consider 'the totality of the circumstances' when deciding whether to limit or foreclose otherwise relevant discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal citations omitted). So that we are fully apprised of the "totality of the circumstances" if called upon to determine the appropriateness of any particular document request, we deem it prudent to await formal response to defendants' Rule 34 document requests and the parties' good-faith efforts to resolve any disputes, as required by Fed.R.Civ. P. 37(a)(2)(A) and Local Rule 37.2, before weighing in on the propriety of any specific requests. Thus, we reject plaintiffs' prematurity argument as premature.[2]

*Third*, NCCI complains that it is impractical for it and its counsel to obtain responsive documents from 500-plus participating companies (NCCI Mem. at 12). We do not believe that to be any more daunting of a task than, for example, the task confronted by a lawyer who represents a large corporation in nation-wide litigation. In many of those instances, trial counsel is responsible for responding to discovery requests that may involve investigation into hundreds of offices that the

---

[2] We emphasize that by our ruling today, we do not approve the substance of any specific document request that defendants have made. We only rule on the procedural question of the manner in which defendants may request information in the possession of participating companies.

corporation maintains throughout the country. We have no reason to believe that NCCI's counsel here is inadequate to that task.

On the other hand, accepting NCCI's position would require that defendants use subpoenas if they wish to seek documents from the files of participating members of the Pool. We agree with defendants' observation that requiring defendants to resort to the subpoena process to obtain that information would embroil numerous federal courts throughout the country in disputes over the scope of subpoenas to participating companies. The Pool consists of participating members in more than 40 states. Production of documents would be required to take place at the location of the participating member. Thus, any subpoenas to the participating companies would have to be issued by the court in the district where production is to be made, Fed.R.Civ.P. 45(a)(2)(c), and any motions to quash or modify a subpoena would have to be presented to the "issuing court" Fed.R.Civ.P. 45(c)(2)(B)(i), 45(c)(3)(A). This would require actions by numerous courts that are not familiar with the substance of the lawsuit, which would result in the inefficient use of judicial resources and the possibility of inconsistent results. Those concerns provide further reasons for the Court to reject the course that NCCI recommends. See also *JP Morgan Chase*, 228 F.R.D. at 507 (court observed that requiring defendants to subpoena information from a consortium of 50 banks, rather than allowing them to obtain the information through Rule 34 requests, would require courts in other districts, "unfamiliar with the litigation, to enforce subpoenas," and would shift "onto defendants the cost of third-party discovery, where the third-parties are the very institutions asserting that they were defrauded").

To summarize, we hold that defendants may direct Rule 34 discovery requests to NCCI and to the Pool. Both NCCI and the Board of Governors of the Pool have the responsibility to produce

responsive documents (to the extent that they are subject to a proper objection) that are not only within their possession, but also within their custody and control – and that includes documents maintained in the files of the participating members. However, defendants may not serve Rule 34 discovery requests directly on the participating members.

**B.**

Defendants' motion to compel specifically addresses their pending Rule 34 document requests. However, we agree with NCCI that underlying defendants' motion is their desire to have the participating companies participate directly in all aspects of discovery (NCCI Mem. at 14). Thus, we set forth below guidance on how the above ruling with respect to Rule 34 document requests applies to other aspects of party discovery.

As is true with document requests under Rule 34, interrogatories under Fed.R.Civ.P. 33(a) and requests to admit under Fed.R.Civ.P. 36(a) may be served by "any party . . . [on] any other party." These discovery devices may be used by defendants to seek information from NCCI and the Pool in the same fashion we have described above with respect to Rule 34 document requests; however, defendants may not serve interrogatories or requests to admit on the participating members of the Pool.[3]

By contrast, depositions – whether on oral examination under Fed.R.Civ.P. 30 or on written questions under Fed.R.Civ.P. 31 – may be taken of either parties or non-parties. Thus, there is no procedural bar to defendants taking depositions of NCCI, the Pool, or its participating members,

---

3 NCCI expresses the concern that defendants "have demanded that IT personnel from each of the hundreds of Participating Companies take part in the parties' discussion concerning electronically stored information" (NCCI Mem. at 14). Given that we have held that the participating companies in the Pool are not themselves parties, we are unaware of a rule that would require them to participate in that discussion. However, NCCI and the Pool remain responsible for ensuring that relevant information held by the participating companies is preserved and produced as required.

14

irrespective of their party status. Rather, the question is which entities or persons defendants may depose on simple notice under Rule 30, and which defendants must depose pursuant to subpoena under Rule 45.

As for NCCI, the attorney-in-fact whom the Board of Governors of the Pool has authorized to bring this action, defendants may depose by notice its corporate representative under Rule 30(b)(6) or persons at NCCI who fall within the category of officers, directors, or managing agents. However, absent agreement of the parties, any employees of NCCI who do not fall within one of those categories must be "treated in the same way as any other witness," and "[h]is or her presence must be obtained by subpoena rather than by notice." WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2103 at 37 (West 2007).

We follow the same approach with respect to the Pool. On that score, we note that the managing agent concept applies both to "a corporation or other organization that is a party to the suit." WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2103, at 37. *See also*, Fed.R.Civ.P. 32(a)(2) (the deposition of a managing agent of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose). "[T]he question of whether a particular person is a 'managing agent' is to be answered pragmatically." WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2103, at 39.

We have no difficulty in concluding that the twelve members of the Pool's Board of Governors qualify as managing agents. The Articles of Agreement state that, with limited exceptions, "the operation, business and affairs of all matters arising under these Articles of Agreement shall be managed and controlled by a Board of Governors composed of twelve (12) non-

15

affiliated participating companies" (Compl., Ex. A: Articles of Agreement, Art. V, §1). Pursuant to this authority, the Board of Governors has the power – which it has exercised – to authorize NCCI to act as attorney-in-fact to pursue this litigation (*Id.*, Art. V, §12). It is undisputed that the Board of Governors will "be responsible for directing the litigation" (Defs.' Mem. Ex. A, ¶ 2). Thus, to the extent that defendants wish to depose members of the Board of Governors, they may do so by way of notice rather than subpoena.[4]

However, the authority to proceed with depositions by notice does not extend to the participating members of the Pool. While the participating members elect the Board of Governors, the Articles of Agreement do not give the participating members any role in the management of the Pool. Indeed, the authority of the Board of Governors extends to the power to expel participating companies for violations of the Articles of Agreement (Comp., Ex. A: Articles of Agreement, Art. IV, § 3). We see no basis to conclude that the participating members of the Pool fall within the definition of officers, directors, or managing agents of the Pool. To the extent that defendants seek to depose participating companies or their officers, directors or employees, defendants must do so by way of a Rule 45 subpoena.[5]

---

[4] Under the Articles of Agreement, companies are elected to the Board of Governors for three-year terms. Each company elected to the Board of Governors is then required to "designate a knowledgeable representative of the suitable senior standing and shall select two (2) alternates of similar standing to attend board meetings and vote on matters brought before the Board" (Comp., Ex. A, Art. V, Sec. 1). Any notice of deposition directed to the Board of Governors must be directed to one of these representatives or alternates who serves on the Board at the time of deposition.

[5] We are aware that there a large number of participating members (more than 500, according to the parties). The direction we provide in this opinion about the procedure to be used if defendants wish to depose certain categories of persons or entities should not be read as any endorsement or authorization of any particular deposition program that defendants may have in mind. At the request of both parties, the Court's scheduling order (doc. # 63) approved the taking of more than ten depositions by each side. Relaxing the ten-deposition per side limit does not mean that there is no limit on the number of depositions that may be taken. At this point, the Court will leave it to the parties, whom we expect to exercise good faith and reasonableness, to reach agreements on how many depositions are appropriate in this case. To the extent that agreement cannot be reached, the Court will not hesitate to impose firm limits on the numbers of depositions.

## CONCLUSION

For foregoing reasons, defendants' motion to compel (doc. # 68) is granted in part and denied in part, consistent with the discussion and ruling above.

                   **ENTER:**

                   _____
                   **SIDNEY I. SCHENKIER**
                   **United States Magistrate Judge**

**Dated: December 11, 2007**