IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL COUNCIL ON         )
COMPENSATION INSURANCE, INC.,   )
solely as Attorney-In-Fact for the participating  )
companies of the National Workers Compensation  )
Reinsurance Pool,                )
                                  )
            Plaintiff,           )
                                  )    No.  07 C 2898
      v.                        )
                                  )    Judge Robert W. Gettleman
AMERICAN INTERNATIONAL GROUP, INC.,  )
AIG CASUALTY COMPANY F/K/A     )
BIRMINGHAM FIRE INSURANCE COMPANY  )
OF PENNSYLVANIA, AIU INSURANCE    )
COMPANY, AMERICAN HOME ASSURANCE  )
COMPANY, AMERICAN INTERNATIONAL   )
PACIFIC INSURANCE COMPANY F/K/A    )
AMERICAN FIDELITY COMPANY,      )
AMERICAN INTERNATIONAL SOUTH    )
INSURANCE COMPANY F/K/A AMERICAN   )
GLOBAL INSURANCE COMPANY,      )
AMERICAN INTERNATIONAL SPECIALTY  )
LINES INSURANCE COMPANY F/K/A    )
ALASKA INSURANCE COMPANY,       )
COMMERCE AND INDUSTRY INSURANCE   )
COMPANY, INC., GRANITE STATE      )
INSURANCE COMPANY, ILLINOIS       )
NATIONAL INSURANCE COMPANY,      )
INSURANCE COMPANY OF THE STATE OF   )
PENNSYLVANIA, NATIONAL UNION FIRE  )
INSURANCE COMPANY OF PITTSBURGH,   )
NEW HAMPSHIRE INDEMNITY COMPANY,  )
and NEW HAMPSHIRE INSURANCE      )
COMPANY,                          )
                                  )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff National Council on Compensation Insurance, Inc. ("NCCI"), solely as attorney-in-fact for the participating companies of the National Workers Compensation Reinsurance Pool ("the Pool"),[1] has brought an eight-count complaint against defendants American International Group, Inc. ("AIG Inc.") and its affiliates and subsidiaries, AIG Casualty Company f/k/a Birmingham Fire Insurance Company of Pennsylvania, AIU Insurance Company, American Home Assurance Company, American International Pacific Insurance Company f/k/a American Fidelity Company, American International South Insurance Company f/k/a American Global Insurance Company, American International Specialty Lines Insurance Company f/k/a Alaska Insurance Company, Commerce and Industry Insurance Company, Inc., Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, New Hampshire Indemnity Company, and New Hampshire Insurance Company (collectively "AIG").

The complaint alleges: violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO") (Counts I and II); fraud (Count III); accounting (Count IV); action on an open, current and mutual account (Count V); breach of contract (Count VI); promissory estoppel (Count VII); and unjust enrichment (Count VIII). All of the counts of the complaint are based on alleged intentional fraudulent conduct by defendants. In the answer to the AIG has raised twelve affirmative defenses: "Statute of Limitations;" "Laches;" "Unclean

---

[1]On December 11, 2007, Magistrate Judge Schenkier, in the context of a discovery dispute, held that both NCCI and the Pool are plaintiffs in this case (Docket No. 84), although the individual members of the Pool are not. NCCI v. AIG, No. 07 CV 2898 (Dec. 11, 2007). Because the caption of the case has not yet been changed, the court will refer to NCCI and the Pool herein collectively as "plaintiff."

Hands;" "Attorney's Fees Unwarranted;" "Standing;" "Parens Patriae;" "In Pari Delicto;"

"Estoppel;" "Contributory Wrongful Conduct;" "Failure to Mitigate Damages;" "Payment;" and

"Setoff."[2] AIG has also filed counterclaims for an equitable accounting and an action on an

open, current, and mutual account. Additionally, AIG has filed a third-party complaint against

twenty-four named companies and numerous unnamed companies. Claims I through V of the

counterclaim are directed against ACE INA Holdings, Inc. ("Ace"), Advantage Workers

Compensation Insurance Company ("Advantage"), Alaska National Insurance Company

("Alaska"), Amtrust Group ("Amtrust"), Berkley Risk Administrators Co. LLC ("Berkley"),

Chubb Group Insurance Companies ("Chubb"), Cincinnati Insurance Company ("Cincinnati"),

Companion Property & Casualty Insurance Company ("Companion"), The Covenant Group

("Covenant"), Crum & Forster, Guard Insurance Company (Guard"), General Casualty Insurance

Companies ("General Casualty"), Hanover Insurance Group ("Hanover"), Harleysville Insurance

Group ("Harleysville"), The Hartford Financial Services Group, Inc. ("The Hartford"), Liberty

Mutual Group ("Liberty Mutual"), Memic Indemnity Company ("Memic"), Safeco Corp

("Safeco"), Travelers Insurance Group ("Travelers"), Truck Insurance Group ("Truck"), Utica

National Insurance Co. ("Utica"), Aetna, Inc. ("Aetna"), CIGNA Group, Inc. ("CIGNA"), Sentry

Insurance Group ("Sentry"), and Doe Corporations 1-50.[3] Claims VI through XII are directed

---

[2]AIG has since voluntarily withdrawn its affirmative defenses of "attorney's fees unwarranted" and "standing," although it has recently filed a motion to dismiss based on lack of standing.

[3]Third party defendants ACE, Advantage, Alaska, Amtrust, Berkley, Chubb, Cincinnati, Companion, Covenant, Crum & Forster, Guard, General Casualty, Hanover, Harleysville, The Hartford, Liberty Mutual, Memic, Safeco, Travelers, Truck and Utica are herein collectively referred to as the "Pool Board Members."

against defendant Liberty Mutual, Travelers, The Hartford, Aetna, Ace, CIGNA, Sentry, and Does Corporations 1-50, collectively referred to as the "Underreporting Participating Companies."

The third party complaint alleges: violations of RICO, 18 U.S.C. §§ 1962(c) and (d) (Claims 1 and 2); civil conspiracy (Claim 3); fraud (Claim 4); breach of fiduciary duty (Claim 5); fraud - premium underreporting (Claim 6); fraud - Workers Compensation Fund (Claim 7); negligent misrepresentation (Claim 8); breach of contract (Claim 9); contribution (Claim 10); unjust enrichment (Claim 11); and equitable accounting (Claim 12).[4]

Plaintiff has filed a motion to strike all twelve affirmative defenses pursuant to Fed. R. Civ. P. 12(f) and a motion to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b). In addition, NCCI has filed a separate motion to dismiss the counterclaims. Finally, the third-party defendants have filed a motion to dismiss the third-party complaint pursuant to Fed. R. Civ. P. 12(b) and 20(a). For the reasons explained below, the motions are granted in part and denied in part.

## FACTS[5]

All states require employers to provide workers compensation insurance for their employees. Most employers find insurers willing to provide them with coverage; these

---

[4] AIG does not oppose third party defendants' motion to dismiss Claim 8.

[5] For a more complete recitation of the facts, please see the court's opinions of August 6, 2007 and December 26, 2007 (unpub.). For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

employers participate in what is known as the "voluntary market" for workers compensation insurance. Insurers that provide coverage to the voluntary market are also required to provide coverage to the "residual market" – the market for employers who cannot obtain coverage on the voluntary market – through a state's assigned risk plan. Under that plan, the amount of insurance an insurer is required to provide to the residual market is directly proportional to the amount of premiums it collects for the policies it writes for the voluntary market.

The National Workers' Compensation Reinsurance Pool ("the Pool") is an unincorporated association active in more than forty states. Established in 1970, the Pool provides insurance companies with a means of complying with their residual market requirements. The Pool is organized and governed by the Articles of Agreement, a contract to which all participating insurers ("Participating Companies") have agreed and are signatories.

Plaintiff NCCI is the administrator of the Pool, as well as the attorney-in-fact for the Pool. NCCI assigns each Participating Company specific employers to which they must provide insurance coverage. The Participating Companies each provide annual certified financial reports to NCCI who uses the data to calculate each company's "reinsurance participation rate" which reflects a company's proportional share of the residual market. A company's annual reinsurance participation rate is the ratio of the amount of voluntary market workers compensation premiums billed by that company (numerator) to the total amount of workers compensation premiums billed in the voluntary market by all Participating Companies (denominator). Consequently, any company that underreports its premiums to NCCI decreases its reinsurance participation rate and the overall total used to calculate all the rates.

In 2005 a New York state investigation revealed that AIG had, over several decades, provided false reports of its workers compensation premiums to NCCI and state tax authorities to evade its residual market obligations. The investigation found that AIG: (1) filed inaccurate responses to financial data calls, statistical reports, and other financial reports; (2) booked certain workers compensation premiums as reinsurance assumed premiums; (3) booked certain workers compensation premiums as general liability premiums; and (4) used unapproved policy forms. AIG's underreporting reduced its share of responsibility in the residual market and increased the liability of other insurers participating in the Pool.

The 2005 investigation also revealed that the false reporting scheme had been the subject of a 1991-92 internal investigation led by AIG Inc.'s senior legal officer. That investigation resulted in a formal report acknowledging AIG's unlawful conduct and determining that the unreported workers compensation premium totaled $300-400 million annually and gave AIG "an unlawful benefit in the range of $60-80 million or more annually." The report admitted that AIG's reporting practices were unlawful and exposed them to civil liability and potential criminal prosecution. According to plaintiff, AIG officials destroyed evidence and relevant records after reading the report and did not disclose the information to other insurance companies and have continued to file false financial reports.

In 2006 AIG entered into settlement agreements with several enforcement authorities. As part of a $1.6 billion settlement with New York and federal authorities, AIG paid $100 million to the state of New York and approximately $42 million to various states. AIG also agreed to pay at least $301 million to victims of its false workers compensation premium reporting through a fully funded settlement fund ("the Workers' Compensation Fund" or "the Fund"). Pursuant to an

agreement, the Fund is to be distributed in three stages.  Before September 1, 2007, a

participating state (as defined in the agreement) can recover by tendering a release to AIG for all

claims that state's residual market pool may have related to AIG's underreporting.  Between

September 2, 2007, and October 31, 2009, AIG can use the fund to settle claims directly with

affected parties.  After November 1, 2009, remaining funds will be distributed on a pro rata basis

to the participating states.  No portion of the Fund can revert to AIG.

The Participating Companies did not believe that the settlement agreements entered into

by AIG offered full and fair restitution.  According to NCCI, total damages exceed $1 billion.

For that reason, the Pool has refused to allow any state to tender a release on its behalf, which

precludes those states from participating in the settlement fund.  On May 24, 2007, upon the

expiration of a "stand still" agreement between the parties (during which they exchanged

information regarding the settlement fund), AIG filed suit in New York State Supreme Court

against the Pool and NCCI as its attorney-in-fact.  That action seeks: (1) a declaration of the

liability defendant AIG has to the Pool as a result of its underreporting; (2) a declaration that

recovery from the settlement fund is the Pool's sole remedy for defendants' underreporting; and

(3) an order requiring the Pool to permit the states within which it operates to participate in the

settlement fund.  Within hours of the filing of the New York suit, plaintiff filed the instant suit.

Specific to the instant motions, plaintiff alleges that from 1970 to 2005, AIG Inc. and

several AIG Inc. executives engaged in a pattern of racketeering activity by agreeing to operate

and actually operating an enterprise consisting of AIG Inc. and the related AIG Companies by

repeatedly committing mail fraud in connection with the insurance underreporting discussed

above.  According to plaintiff, AIG Inc. and certain of the AIG Companies engaged in eight

racketeering acts by mailing fraudulent annual reports of workers compensation premiums to NCCI on eight occasions from February 1974 through March 2006. Plaintiff also alleges that AIG Inc. and several of its executives agreed to commit at least two acts of mail fraud to further the insurance underreporting.

The counterclaim and third party complaint are based on the AIG's allegations that there was widespread underreporting of workers' compensation premiums by Participating Companies and, beginning in 2005, the Board of Directors of the Pool (the "Pool Board") conspired to conceal this underreporting to exploit the regulatory inquiry into AIG's business practices. AIG alleges that upon the direction of the Pool Board, NCCI knowingly issued false invoices to the Participating Companies based on the fraudulent underreporting, collected payment on these invoices, and suppressed any investigation into the underreporting. Additionally, according to AIG, the Pool Board members blocked any states or the Pool from making claims against the Fund, effectively preventing the Fund from fulfilling its purpose.


## DISCUSSION

Motion to Strike Affirmative Defenses

Motions to strike affirmative defenses are generally disfavored in this circuit because often times they are employed for the sole purpose of causing delay. See Heller Fin., Inc. v. Midwhey Powder Co. Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." Williams

v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (internal citations and quotation marks omitted).

It is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case.  See Household Fin. Serv., Inc. v. Northeastern Mortgage Inv.  Corp., 2000 WL 816795, at *1 (N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295).  It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a "short and plain statement" of all the material elements of the defense asserted; bare legal conclusions are not sufficient.  See Heller, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000).

All of this boils down to a three-part test that is applied to affirmative defenses subject to a motion strike:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge -- in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

Renalds, 119 F. Supp. 2d at 802-03 (citing Heller, 883 F.2d at 1294).

Plaintiff's motion to strike AIG's affirmative defenses raises three main arguments.  First, plaintiff argues that three of AIG's affirmative defenses are improperly pled as affirmative defenses.  Second, plaintiff argues that AIG has not adequately pled several of its other affirmative defenses under Fed. R. Civ. P. 8 and 9.  Third, plaintiff argues that AIG's remaining affirmative defenses do not withstand challenge under Fed. R. Civ. P. 12(b)(6).

I.  <u>Plaintiff's Improper Pleading Argument</u>

Plaintiff argues that AIG has not properly pled contributory wrongful conduct and setoff as affirmative defenses because they are not recognized by courts as such.  AIG contends that both contributory wrongful conduct and setoff are properly raised because they are relevant to the proper allocation of loss among the parties.

An affirmative defense is a "reason[] why defendants are not liable even if they admit the facts alleged in the complaint."  <u>Native American Arts, Inc. v. The Waldron Corp.</u>, 253 F. Supp. 2d 1041, 1045 (N.D. Ill. 2003).  Federal Rule of Civil Procedure 8(c) provides a non-exhaustive list of possible affirmative defenses a party can assert in a responsive pleading.  The list includes: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, and waiver.  Fed. R. Civ. P. 8(c).  If an affirmative defense is not named in Rule 8(c), "courts must analyze whether they are affirmative defenses."  <u>Native American Arts</u>, 253 F. Supp 2d at 1045.


**Contributory Wrongful Conduct**

AIG's affirmative defense of "contributory wrongful conduct" states:  "Plaintiffs' claims . . . are barred based on Plaintiffs' own contributory wrongful conduct, because certain Participating Companies engaged in conduct that had the intent and/or effect of improperly reducing their residual market obligations."  Plaintiff argues that this affirmative defense should be stricken because there is no precedent for such an affirmative defense in federal case law.

Further, plaintiff argues that even if AIG intended "contributory wrongful conduct" to function as an affirmative defense of "contributory negligence," it is still not a viable defense because the complaint alleges fraud-based claims, "intentional torts ... to which comparative fault is not a defense."  See Casio Computer Co., Ltd. v. Noren, No. 01-3250, 2002 WL 552350, *3 (7th Cir. 2002).  Finally, plaintiff argues that the affirmative defense as pled does not provide proper notice of the elements of the claim.

AIG counters that it has made particularized allegations that fairly place plaintiff on notice as to the nature of the defense.  Specifically, AIG's allegations include: (a) reporting workers compensation premium under different lines; (b) failing to account for residual market expenses as premium; (c) failing to conduct timely premium adjustments; (d) suppressing payroll for premium audits; and (e) masking workers compensation premium as negative dividend payments.   AIG further argues that Illinois law permits an affirmative defense of comparative fault where a plaintiff's contributory negligence can be compared to the defendant's willful and wanton misconduct.  Finally, AIG argues that plaintiff has failed to establish that there is no set of facts under which contributory wrongful conduct could be sustained, or that its presence as an affirmative defense will unfairly prejudice plaintiff.

"Contributory wrongful conduct" is not among the affirmative defenses listed in Fed. R. Civ. P. 8(c), nor is there any precedent for this defense.  AIG attempts to substitute the affirmative defense of comparative fault for "contributory wrongful conduct," but does not plead the necessary elements of this defense.  Further, even if this court were to allow AIG to make such a substitution, AIG has failed to allege that plaintiff engaged in conduct that would rise to the level of misconduct necessary to "cancel out" the intentional fraud alleged in the complaint.

See Sundstrand Corp. v. Sun Chem. Corp., 553 F.2d 1033, 1048 (7th Cir. 1977) (finding that in securities fraud case, a plaintiff's contributory fault may "cancel out wanton or intentional fraud . . . [if it is] . . . gross conduct somewhat comparable to that of defendant." [internal citations omitted]); see also Poole v. City of Rolling Meadows, 167 Ill. 2d 41 (1995) (holding that "a Plaintiffs' contributory negligence may be compared to a defendant's willful and wanton misconduct, if that willful and wanton misconduct was committed recklessly, rather than intentionally."). All that AIG provides in its answer are general allegations of underreporting rather than fraudulent or other wanton or intentional fraud. These claims are vague as to which participating companies committed which acts and how these acts are attributable to plaintiff. Therefore, AIG's affirmative defense of "contributory wrongful misconduct" is stricken.


**Setoff**

Plaintiff argues that AIG's affirmative defense of setoff should be stricken because, (1) the majority of courts do not recognize setoff as an affirmative defense, and (2) the setoff alleged arises from "a transaction different from that giving rise to plaintiff's claim." Cipa Mfg. Corp. v. Allied Golf Corp., No. 94 C 6574, 1995 WL 337022, *2 (N.D. Ill. May 24, 1995). AIG counters that courts do recognize setoff as an affirmative defense and that AIG is entitled to offset from the damages they may owe plaintiff the harm that plaintiff (including the Pool members) have caused by "improperly reducing their residual market obligations."

Where setoff does not destroy a plaintiff's cause of action, a claim for setoff is not an affirmative defense. Cipa Mfg. Corp., 1995 WL 337022 at *1-2. Further, setoff is not properly pled as an affirmative defense where the setoff alleged arises out of a transaction separate from

that raised in the plaintiff's cause of action, potentially reducing recovery rather than eliminating the liability altogether.  Id.  This type of setoff claim is "properly characterized as a permissive counterclaim under Federal Rule of Civil Procedure 13(b)." Id. (holding that a permissive counterclaim arises from a different transaction than the main claim); Coplay Cement Co. Inc. v. Willis & Paul Group, 983 F.2d 1435, 1441 (7th Cir. 1993) (holding that a permissive counterclaim arises from a different transaction from the main claim, and a setoff, is a subset of the permissive counterclaim.).

In the instant case, AIG has alleged that the Pool members reduced their share of the residual market obligations through a variety of reporting and accounting failures.  Though this conduct is similar to the underreporting alleged by plaintiff in its complaint, it apparently arises from wholly separate transactions.  Therefore, AIG's affirmative defense of setoff is stricken, with leave to file a permissive counterclaim alleging this claim in sufficient detail.

## II.  Plaintiff's Inadequate Pleading Argument

Plaintiff argues that several of AIG's affirmative defenses must be stricken because they are not adequately pled under the requirements of Fed. R. Civ. P. 8 and 9(b).   Rule 8 requires that "the party raising the affirmative defense provide enough facts to place its opponent on notice of the events on which the claim is based."  Fed. R. Civ. P. 8.  Rule 9(b) requires that in alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

**Statute of Limitations & Laches**

NCCI moves to strike AIG's statute of limitations defense and laches defense because they fail to provide fair notice under Fed. R. Civ. P. 8. AIG's statute of limitations defense states that the complaint "is barred because Plaintiffs have failed to file their claims within the applicable statute of limitations." AIG does not provide any factual predicate for asserting this defense either in the "General Allegations" preceding the affirmative defenses, or in the text of the defense itself. Therefore, the statute of limitations defense fails to meet the minimal pleading standard and is consequently stricken.

Similarly, AIG's laches defense does not meet the minimal standard because AIG neither offers any factual basis for the defense, nor summarizes the necessary elements. Laches is an equitable defense and must be pled "with particularity." Microthin.com, Inc. v. Siliconezone USA, LLC, 2006 WL 3302825, *10 (N.D. Ill. Nov. 14, 2006). In addition, the laches defense requires defendants to allege a "detrimental change that makes it inequitable to grant relief." Id. at *10 (quoting Bobbit v. Victorian House, Inc., 532 F. Supp 734, 738 (N.D. Ill. 1982)). Here, the affirmative defense does not meet these requirements. It merely provides a conclusory statement that NCCI has unreasonably delayed in bringing the instant action and its right to recovery is barred by the doctrine of laches. See Israel Travel Advisory Serv. v. Israel Identity Tours, Inc., 1992 WL 330023, *5-6 (N.D. Ill. Nov. 5, 1992) (striking affirmative defenses of statute of limitations and laches for being "bare-bones" and conclusory). As with the statute of limitations defense, the "General Allegations" section does not provide any further insight into the factual underpinnings of this defense. Therefore, AIG's affirmative defense of laches is stricken.

***Parens Patriae***

In pleading its *parens patriae* defense, AIG states: "Plaintiffs' claims for punitive damages are barred by the recovery of fines and penalties by state governments acting *parens patriae*." Plaintiff argues that AIG has not identified the government entities which obtained punitive damages against AIG. AIG counters that such specificity in the pleadings is not required.

*Parens patriae* is not a recognized affirmative defense. Rather, *parens patriae* is a form of standing by a state government suing for recovery on behalf of state residents. The affirmative defense as pled would more properly be raised as a res judicata defense. Even if AIG were to rename this defense, it has not provided an adequate factual predicate for the defense, and consequently, has failed to provide plaintiff with fair notice under Fed. R. Civ. P. 8. Therefore, AIG's affirmative defense of *parens patriae* is stricken.


**Failure to Mitigate Damages**

AIG's affirmative defense of failure to mitigate damages states: "Any amount that Plaintiffs purport to be able to recover from Defendants must be offset for Plaintiffs failure to mitigate their damages." Plaintiff argues that this defense must be stricken because AIG has not adequately pled this claim with requisite facts. AIG argues that the defense is pled sufficiently because the nature and meaning is readily apparent from the title and text of the defense as well as the context within its answer to the complaint.

The affirmative defense of failure to mitigate damages is appropriate where a plaintiff's conduct aggravates or increases its damages. To prevail on an affirmative defense of failure to

mitigate, the defendant must prove by a preponderance of the evidence that, (1) plaintiff failed to exercise reasonable care to mitigate its damages, and (2) plaintiff's failure to exercise reasonable care caused it "to suffer an identifiable item of harm not attributable to the defendant's negligent conduct."  Lasley v. Moss, 500 F.3d 586, 590 (7th Cir. 2007).

In the instant case, AIG has failed to plead with the required specificity.  The General Allegations section provides facts about the underreporting misconduct of "certain" and "some" Participating Companies, but fails to indicate which of these actions gave rise to  failure to mitigate damages, or sufficient facts to support a failure to mitigate damages defense to put plaintiff on notice of the course of action that the Participating Company or Companies were legally obligated to pursue, or how these alleged actions affected AIG's damages.  See Franklin Cap. Corp. v. Baker & Taylor, No. 99 C 8237, 2000 WL 1222043 (N.D. Ill. Aug. 22, 2000) (striking an affirmative defense for failure to mitigate damages where the defendants fail to plead sufficient facts to put the opposite party on notice).  Therefore, AIG's affirmative defense of failure to mitigate damages is stricken.

### *In Pari Delicto*; Unclean Hands; Estoppel

Plaintiff has moved to strike AIG's affirmative defenses of *in peri delicto*, unclean hands, and estoppel because they are claims based on allegedly fraudulent conduct and have not been pled adequately under the heightened pleading standard of Fed. R. Civ. P. 9(b).  These defenses are all based on AIG's claim that "certain Participating Companies engaged in conduct that had the intent and/or effect of improperly reducing their residual market obligations."

Fed. R. Civ. P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994). The reference to "circumstances" requires "the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" Id.; DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) (Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story").

The equitable defense of in peri delicto, or "in equal fault," is rooted in the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct. Pinter v. Dahl, 486 U.S. 622, 632 (1988). Traditionally, the in peri delicto defense was limited to situations were the plaintiff bore at least substantially equal responsibility for its injury, and where the parties' culpability arose out of the same illegal act. Id. Contemporary courts have expanded application of the defense to situations more closely analogous to those encompassed by the "unclean hands" doctrine, where the plaintiff has participated in some of the same sort of wrongdoing as the defendant. Id. (citing Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138 (1968)). In Perma Life, the Court concluded that such a broadened construction should not be applied to litigation arising under federal regulatory statutes, concluding (in a plurality opinion) that a narrow, more traditional formulation should apply to private actions under the antitrust laws. Perma Life, 392 U.S. at 145.

"Unclean hands," a companion principle to in peri delicto.  In re Olympia Brewing Co. Securities Litigation, 1985 WL 3928 at *3 (N.D. Ill. 1985), prevents a party from obtaining equitable relief if he himself has engaged in misconduct.  See Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814-15 (1945).  As the Seventh Circuit has noted, an unjust enrichment claim or other equitable relief is denied to a plaintiff whose recklessness caused his claimed injury.  "If the unclean hands defense tells us one thing, it is that equity does not find a benefit unjust where a plaintiff, through his own misconduct, intentionally places himself at risk. TRW Title Insurance Co. v. Security Union Title Insurance Co., 153 F.3d 822, 829 (7th Cir. 1998).

To allege equitable estoppel under Illinois law, defendants must aver that: (1) plaintiff misrepresented or concealed material facts; (2) plaintiff knew at the time that it made its representations that the representations were untrue; (3) defendants did not know that the representations were untrue when they were made and acted upon; (4) plaintiff intended or reasonably expected the representations to be acted upon by defendants or by the public generally; (5) defendants reasonably relied upon the representations in good faith and to their detriment; and (6) defendants have been prejudiced by their reliance on the representations. Parks v. Kownacki, 193 Ill. 2d 164 (Ill. 2000) (citing Vaughn v. Speaker, 126 Ill. 2d 150, 533 (Ill. 1988)).

AIG bases all three of these defenses on its claim that "the Underreporting Participating Companies" (as AIG defines them) engaged in the same wrongful conduct in which AIG was allegedly involved.  There are two problems with these defenses as pled.  First, although AIG provides general information about when, where, and how the alleged fraudulent scheme

operated, it does not provide adequate information as to the participants to put plaintiff on notice. Second, even if AIG was able to provide more information about the identities of the "Underreporting Participating Companies" allegedly at fault, none of the these companies are a party plaintiff in this suit and cannot be the subject of an affirmative defense. As noted previously, there are only two plaintiffs in this case: NCCI and the Pool. Accordingly, plaintiff's motion to strike AIG's affirmative defenses of in peri delicto, unclean hands, and estoppel is granted.


**Payment**

In its affirmative defense for payment, AIG states that it has "created a Workers Compensation Fund into which it has made payment of $301,216,234 for the settlement of claims with workers compensation residual market pools, including Plaintiffs, for the injuries alleged in the Complaint." Plaintiff argues that defendants cannot prove this defense because AIG has not made payment to the Participating Companies.

To prevail on an affirmative defense of payment, a defendant must show, (1) that payment was made upon its obligation, and (2) that this payment was made to the plaintiff. Here, AIG avers that it has made funds available in the Workers Compensation Fund. AIG, however, cannot show that it has made payment to NCCI or the Pool. Therefore, NCCI's motion to strike the affirmative defense of payment is granted.

**Counterclaims**

AIG has asserted two counterclaims against plaintiff: an equitable accounting (Claim 1); and an open, current, and mutual account (Claim 2). Plaintiff has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss AIG's counterclaims. In considering a Rule 12(b)(6) motion, the court is obligated to accept all well-pleaded facts in the counterclaim as true and draw all reasonable inferences in favor of the non-moving party. Northern Trust Co. V. Peters, 69 F. 3d 123, 129 (7th Cir. 1995).[6]

Plaintiff has moved to dismiss both of AIG's counterclaims, arguing that AIG does not dispute plaintiff NCCI's calculations of the annual share of losses each Participating Company must assume, and that AIG has failed to allege a need for an accounting.[7] AIG argues that it does challenge plaintiff NCCI's math; rather, its has alleged a need for an accounting, and that it has a right to an accounting.

The court finds that AIG has sufficiently alleged a need for an accounting. In its counterclaim, AIG states:

> AIG has a compelling need for access to the information possessed by Plaintiffs so it can understand the scope and the consequences of the premium underreporting by the Underreporting Participating Companies, Plaintiff's involvement and knowledge of the same, and the impact of the foregoing on the residual market obligations of the other Participating Companies, including AIG.

---

[6] Because the parties seem to agree that the choice of law question is not outcome determinative because both Illinois and New York law are the same with respect to the issues involved in the counterclaims, the court will not make a choice of law determination regarding the counterclaims at this time.

[7] Plaintiff does not discuss the sufficiency of the pleadings by analyzing the elements of the individual claims, but merely attack the lack of an underlying need for the accounting. Therefore, the court limits its discussion to this issue in evaluating the instant motion to dismiss.

This language is sufficient to allege a need for purposes of the claim, and plaintiff's arguments fail to convince this court otherwise.

To the extent that plaintiff extends its general arguments against an accounting to AIG's counterclaim for an open, current, and mutual account, the court rejects them.[8] AIG's counterclaims closely mirror the language and content of plaintiff's claim for an accounting. If there are errors in the reported premium data, and consequently errors in the computations of Participating Companies' proportional shares, then both parties are entitled to request an accounting. Plaintiff's motion to dismiss the counterclaim is denied.

**NCCI's Individual Motion to Dismiss Counterclaims as Counterdefendant**

NCCI moves to dismiss AIG's counterclaims against it arguing that NCCI cannot be sued in its "individual corporate capacity" because it filed this action solely in its capacity as attorney-in-fact for the members of the Pool. In support of its argument, NCCI relies on the language Fed. R. Civ. P. 13(a), which states that a pleading must state a counterclaim against "an opposing party." According to NCCI, the prevailing view in the federal courts is that a counterclaim can be brought only against an opposing party in the same capacity in which that party filed the underlying lawsuit. AIG responds that NCCI is properly sued as a counterdefendant because NCCI is not acting simply as agent of the Pool. AIG also contends that NCCI is properly sued as a counterdefendant because, (1) NCCI will benefit from recovery if it prevails in the suit against AIG, and (2) the counterclaims will promote judicial economy and resolve all controversies

_____

[8]Plaintiff has raised a number of other issues that need not be addressed.

between the parties in a single suit. In the alternative, AIG argues that its counterclaims should not be dismissed because under Rule 13(h) persons not parties to the original action may be made parties to a counterclaim if the requirements of either Rule 19 or Rule 20 are met.

The court need not consider these various arguments because a previous ruling in the instant matter disposes of this issue. Rule 13 of the Federal Rules of Civil Procedure governs counterclaims. Under subparagraph (a), a defendant may state a counterclaim against "any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Although NCCI describes its role in this suit as "attorney-in-fact," Magistrate Judge Schenkier has previously held that NCCI is a party plaintiff as the agent of the Pool. Therefore, pursuant to Rule 13(a), AIG can assert a counterclaim against NCCI in its capacity as an agent of the Pool. Accordingly, NCCI's motion to dismiss AIG's counterclaims against it are denied.

**Motion to Dismiss Third Party Complaint**

Third-party defendants have moved to dismiss the third-party complaint filed by AIG in its entirety under Fed. R. Civ. P. 14(a). In the alternative, third-party defendants move to dismiss all counts under Fed. R. Civ. P. 12(b)(6).

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In analyzing the motion, the court must accept the well-pleaded allegations as true, and view those allegations in the light most favorable to third-party plaintiff. McMillan v. Collection Prof'ls, Inc., 455 F.3d

754, 758 (7th Cir. 2006). To survive a Rule 12(b)(6) motion, a plaintiff need not provide

detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic

recitation of the elements of the cause of action." Bell Atlantic Corp. v. Twombly, 550U.S. 544,

127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise

a right to relief above the speculative level." Id. at 1965. Additionally, allegations of fraud are

subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). Fraud must be pled with

particularity, which means the complaint must allege the "who, what , when, where and how" of

the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

AIG has filed a twelve claim third party complaint pursuant to Rule 14(a) against the

Pool Board Members, five "Underreporting Participating Companies" that allegedly

underreported their premiums – Liberty Mutual, Travelers, The Hartford, CIGNA/Ace, and

Sentry, and 1-50 Doe defendant corporations. As against the Pool Board Members, AIG alleges:

civil racketeering in violation of 18 U.S.C. § 1962(c) (Claim 1); civil racketeering in violation of

18 U.S.C. § 1962(d) (Claim 2); civil conspiracy (Claim 3); fraud (Claim 4); and breach of

fiduciary duty (Claim 5). The remaining claims are against the Underreporting Participating

Companies and 1-50 Doe defendant corporations for: fraud - premium underreporting (Claim 6);

fraud - workers compensation fund (Claim 7); contribution (Claim 10); unjust enrichment (Claim

11); and equitable accounting (Claim 12).

Fed. R. Civ. P. 14(a), which governs third-party practice, provides:

At any time after commencement of the action, a defending party, as a third party
plaintiff, may cause a summons and complaint to be served upon a person not a
party to the action *who is or may be liable to the third party plaintiff for all or
part of the plaintiff's claim against the third party plaintiff.* (Emphasis added)

Third party defendants argue that the third party complaint fails as a matter of law because none of the third party defendants could be responsible for AIG's own underreporting. Specifically, third party defendants contend that even if, hypothetically, some of the other Underreporting Participating Companies underreported their premiums, thereby changing the reinsurance participation rate of all companies, such conduct would not render any of the third party defendants liable for AIG's underreporting.

A third party action presupposes the original defendant's liability, which the defendant third party plaintiff is attempting to pass on to the third party defendant. U.S. General, Inc. v. City of Joliet, 598 F.2d 1050, 1053 (7th Cir. 1979). "The fact that the third party claim arose out of the same transaction or set of facts is irrelevant, since impleader cannot be used as a way of combining all controversies having a common relationship." Forum Ins. Co. v. Ranger Ins. Co., 711 F. Supp 909, 915 (N.D. Ill. 1989). If the third party claim is "separate or independent" from the underlying claim, impleader is improper. 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1446, at 356-58 (1990). However, impleader is construed liberally to reduce multiplicity of litigation and promote judicial efficiency. Id.

The third-party defendants argue that impleader is improper here because any liability the individual third party defendants may have for their alleged underreporting would be separate and distinct from AIG's liability to NCCI for its own underreporting. Notwithstanding this argument, the circumstances here lend themselves to impleader because of the interrelatedness of Participating Companies' market-share liability. Each company's reinsurance participation rate is dependent on the common denominator used to calculate the pro-rata shares. As a result, underreporting by any company necessarily affects the liability of every other company.

24

Therefore, it is impossible to determine AIG's liability without considering the impact of the "Underreporting Participating Companies" on the common denominator. Further, the Pool Board Members who are not alleged to have underreported are quintessential third party defendants. They allegedly intentionally and fraudulently failed to investigate or take action to curtail widespread underreporting by Participating Companies. Therefore, through their allegedly collusive omissions, the Pool Board Members allowed the common denominator to remain artificially low, thereby increasing AIG's liability to the Pool. Consequently, impleader is proper here.


**RICO (Claims 1 and 2)**

Claims 1 and 2 of AIG's third party complaint allege that Pool Board Members violated RICO, 18 U.S.C.§ 1962(c), and RICO conspiracy, 18 U.S.C. § 1962(d), respectively. The third party defendants argue that AIG's civil RICO claims fail "to state a claim upon which relief can be granted and because AIG has not pled the allegations of mail and wire fraud with the requisite specificity under Rule 9(b)."

To state a RICO claim under § 1962(c) or (d), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Jennings v. Auto Meter Products Inc., 495 F.3d 466, 2007 WL 2120337 (7th Cir. July 25, 2007), citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). "Pattern of racketeering activity" is defined in 18 U.S.C. § 1961(5) as the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten year period. Although "precious little" guidance is given in the RICO statute about what constitutes a pattern of activity, courts have expanded

upon this requirement, instituting what is referred to as the "continuity plus relationship" test to limit the application of RICO to long-term criminal conduct.  <u>Midwest Grinding Co., Inc. v. Spitz</u>, 976 F.2d 1016, 1022 (7th Cir. 1992).  That is, a RICO plaintiff must establish that the predicate acts are related to one another and pose a threat of continued criminal activity.  <u>See H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989); <u>Vicom, Inc. v. Hardbridge Merchant Services, Inc.</u>, 20 F.3d 771, 779 (7th Cir. 1994).

The theory of AIG's RICO claim against the Pool Board Members is that 21 Pool Board Members collectively concealed and failed to investigate the underreporting of premiums by participating companies and conspired to harm AIG's reputation and financial integrity by not participating in the Workers' Compensation Fund.  AIG alleges two fraudulent schemes:

> The first, in which the Pool Board Members caused AIG to be fraudulently overbilled for it share of Pool liabilities, involved at least 50 inaccurate statements the Pool Board Members knowingly caused NCCI to send AIG through the mail and Internet.  The second scheme, to deprive AIG of its right to honest services from the Pool Board and NCCI, was also furthered by the sending of those fraudulent statements."  "Moreover, it also involved at least one other mailing or wire communication through which the Pool Board, in furtherance of its bad faith effort to undermine AIG's settlement with the New York Authorities, caused its counsel to warn state regulators that they could not release any claims against AIG on behalf of the Pool.

To establish a civil RICO claim, a plaintiff must adequately allege that defendants engaged in predicate acts of racketeering activity.[9]  Third party plaintiffs allege numerous

---

[9] Mail and wire fraud are among the indictable offenses included in 18 U.S.C. section 1961(1)(B).

predicate acts of mail and wire fraud, mail and wire fraud arising out of an alleged deprivation of "honest services,"[10] and a violation of the Illinois Intimidation Statute, 720 ILCS Section 5/12-6.

AIG alleges numerous predicate acts of mail and wire fraud by the Pool Board Members beginning in 2005 and continuing to the present in each financial quarter. The acts alleged are the issuance of "false and materially misleading invoices every quarter to AIG and other Participating Companies" in various states "via the mails and via the internet" and the acceptance of payment on these invoices.

Acts of mail and wire fraud must be plead with particularity under Fed. R. Civ. P. 9(b). The pleading party must explain how the predicate act of mail or wire fraud constitutes "racketeering activity." Williams v. Aztar Indiana Gaming Corp., 351 F.3d 294, 298 (7th Cir. 2003). The elements of mail fraud under 18 U.S.C. § 1341 are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." Id. at 299 (quoting United States v. Walker, 9 F.3d 1245, 1249 (7th Cir. 1993); see also Uni*Quality, Inc. v. Infrotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) (Plaintiff must plead the 'who, what, when, and where' of the alleged fraud."). The defendant's participation in a scheme to defraud with intent to defraud is

---

[10]Third party plaintiffs claim that the schemes at issue defrauded them of both property, pursuant to 18 U.S.C. Section 1341, and honest services, pursuant to 18 U.S.C. Section 1346. Section 1346 adds to the definition of a "scheme or artifice to defraud" any "scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. Section 1346. In order to establish that the scheme or artifice to defraud involved the deprivation of the intangible right honest services, pursuant to 18 U.S.C. Section 1346, plaintiff must prove misuse of position (such as public office) for private gain. United States v. Sorich, 523 F.3d 702, 707 (7th Cir. 2008).

also an element of an "honest services" mail or wire fraud claim under 18 U.S.C. Section 1346. See U.S. v. Fernandes, 272 F.3d 938, 944-45 (7th Cir. 2001).

At issue is whether AIG has sufficiently alleged that the Pool Board Members as a group knew that Underreporting Participating Companies other than AIG were underreporting their workers' compensation premiums to avoid paying their proper share of residual market charges. Third party defendants argue that AIG has failed to properly plead mail and wire fraud pursuant to 18 U.S.C. §§ 1341 or 1346 because it does not sufficiently allege that the Pool Board Members had such knowledge. AIG contends that it has pled numerous facts about the Pool Board Members' knowledge of underreporting that exceed the requisite specificity required under Rule 9(b).

Under that rule, a party alleging fraud "must state with particularity the circumstances constituting fraud." Rule 9(b) does not require "particularity" with respect to a defendant's mental state, but the complaint must allege facts from which it could be inferred that the defendants engaged in the scheme with fraudulent intent. Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994) (citing McDonald v. Schencker, 18 F.3d 491, 495 (7th Cir. 1994)). Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of its alleged participation in the scheme. Goren v. New Vision Intern., Inc., 156 F.3d 721, 726 (7th Cir. 1998).

AIG has pled numerous facts suggesting that a sub-set of companies serving as Pool Board Members "were involved in and aware of widespread premium underreporting among themselves." From these facts, AIG urges the court to infer that the Pool Board Members collectively shared this knowledge. When considering a motion to dismiss, the court will "draw

all reasonable inferences in favor of the [pleading party]." <u>Savory v. Lyons</u>, 469 F.3d 667 (7th Cir. 2006).

Despite AIG's detailed allegations, there is nothing in the pleadings that supports the reasonable inference that, because some Pool Board Members engaged in and were aware of underreporting of premiums within their own companies, that all of the Pool Board Members were similarly knowledgeable and also aware of widespread underreporting among Underreporting Participating Companies. What AIG is essentially asking the court to do is to extrapolate the findings of particularized reports onto the entire operations of the Pool and each of the Pool Board Members. This does not fit within the limited allowance of drawing reasonable inferences. The three reports that AIG describes in its pleadings provide support for the allegation that premium data was not accurately reported by some of the Pool Board Members, but as third party defendants correctly observe, there is nothing in the third party complaint that specifically alleges that all the Pool Board Members were privy to the information in these reports (since two of three reports were more than 15 years old) or were aware of widespread underreporting more generally among Participating Companies. Knowledge is a critical element of alleging mail or wire fraud under both 18 U.S.C. §§ 1341 and 1346, and this is where AIG fails to state a claim.[11]

_____

[11] AIG's claim for fraud fails for similar reasons. To state a claim for fraud under New York law a plaintiff must allege that: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendants intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." <u>Juman v. Louse Wise Servs.</u>, 608 NYS2d 612, 616 (N.Y. Sup. Ct. 1994), affd 620 NYS2d 371 (N.Y. App. Div 1st Dep't 1995). AIG does not allege knowledge of premium underreporting among the Underreporting Participating Companies, which is required to allege intent to deceive.

(continued...)

Therefore, Claim 1 is dismissed without prejudice. AIG is granted leave to amend its third party complaint to allege that the specifically named Pool Board Members collectively knew about widespread underreporting among Participating Companies if it can do so without violating Fed. R. Civ. P. 11.[12]

## RICO Claim 2

To state a racketeering conspiracy claim under section 1962(d), a plaintiff must allege that the defendant agreed to commit an actionable RICO violation. Goren, 156 F.3d at 732. To state a claim for RICO conspiracy, the pleading party must allege: "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity; and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." Id. If a plaintiff does not allege conduct that constitutes "participation in the affairs of an enterprise through a pattern of racketeering activity" in a section 1962(c) claim, a RICO conspiracy claim based on the same allegations also fails. Numerous courts have held that "[a]ny claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." Lightning Lube, Inc. v. Witco

---

[11](...continued)
Therefore, Claim 4 is dismissed pursuant to Rule 12(b)(6).

[12] Third party defendants raise numerous meritorious arguments in support of their motion to dismiss Claims 1 and 2 of the third party complaint that third party plaintiffs should consider in filing an amended third party complaint.

Corp., 4 F.3d 1153, 1191 (3d Cir 1993); <u>Turner v. Cook</u>, 362 F.3d 1219, 1231 n.17 (9th Cir.

2004); <u>Edwards v. First Nat'l Bank</u>, 872 F.2d 347, 352 (10th Cir. 1989).

In the instant case, AIG's RICO conspiracy claim is based on the same facts alleged in

their section 1962(c) claim.  Consequently, because AIG has failed to state a claim under section

1962(c), its RICO conspiracy claim is also deficient.  For the foregoing reasons, Claim 2 of the

third party complaint is dismissed without prejudice and with leave to file an amended third

party complaint.


**Choice of Law Analysis for State Law Claims: Claims 3 through11**

In the instant case, third party defendants argue that New York law likely applies to the

state law claims in the third party complaint.  AIG does not make a choice of law analysis. When

this court exercises supplemental jurisdiction it must apply state law to substantive issues.

<u>Timmerman v. Modern Indus., Inc.</u>, 960 F.2d 692, 696 (7th Cir. 1992).  The court must

determine the content of state law as that state's supreme court would determine it. <u>Allstate Ins.

Co. v. Menards, Inc.</u>, 285 F.3d 630, 636 (7th Cir. 2002) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304

U.S. 64, 78, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)).

Illinois has adopted the most significant relationship test for deciding among conflicting

laws.  <u>Ingersoll v. Klein</u>, 46 Ill. 2d 42, 47, 262 N.E.2d 593 (1970).  Under this test the law of the

place of the injury controls unless Illinois has a more significant relationship with the occurrence

and with the parties.  <u>Id.</u> at 45. When applying the most significant relationship test, the court

considers four factors: (1) where the injury occurred; (2) where the injury-causing conduct

occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered.

Id. at 47.  The court must look at the contacts of each jurisdiction under these factors and then evaluate those contacts in light of the policies underlying the laws of those jurisdictions.

Here, AIG's principal place of business is in New York, and the third party defendants have their principal places of business in various states.  The third party complaint does not specify where the conduct alleged in the state law claims occurred, but it is likely that correspondence between the parties, including the allegedly fraudulent invoices and payments, were directed to third party plaintiffs' New York offices.  In addition, the Workers' Compensation Fund was created out of a settlement with the New York authorities and based in New York.  Thus, the court finds that New York law applies to AIG's state law third party claims.

**Claim 3: Civil Conspiracy**

AIG's claims for civil conspiracy fails for the same reasons as articulated above in the analysis of Claims 1 and 2 of the third party complaint.  AIG has not pled the fraud allegations that underlie the alleged conspiracy with the particularity required by Rule 9(b).  Further, as discussed below, AIG has not sufficiently supported its allegations of fraud against the Pool Board Members, and where the torts underlying a civil conspiracy claim are subject to dismissal, the civil conspiracy claim cannot withstand a motion for dismissal.  Therefore, Claim 3 of the third party complaint is dismissed without prejudice pursuant to Rule 12(b)(6).

**Claim 4: Fraud against the Pool Board Members**

AIG's claim for fraud fails for similar reasons as articulated above in the analysis of Claims 1 and 2 of the third party complaint. To state a claim for fraud under New York law a plaintiff must allege that: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendants intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." Juman v. Louse Wise Servs., 608 NYS2d 612, 616 (N.Y. Sup. Ct. 1994), affd 620 NYS2d 371 (N.Y. App. Div 1st Dep't 1995). AIG does not allege knowledge of premium underreporting among the Underreporting Participating Companies, which is required to allege intent to deceive. Therefore, Claim 4 is dismissed without prejudice pursuant to Rule 12(b)(6).

**Claim 5: Breach of Fiduciary Duty**

To state a claim for breach of fiduciary duty under New York law, plaintiff must allege: "(1) the existence of a fiduciary duty between the parties; (2) breach of that duty; and (3) damages suffered as a result of the breach." People of the State of New York v. H & R Block, Inc., 847 N.Y.S.2d 903, 2007 WL 2330924, at *7 (NY Sup. Ct. July 9, 2007).

In Claim 5, AIG alleges that the Pool Board Members breached their fiduciary duty to it by:

> (a) conspiring to undermine and disable the Workers Compensation Fund; (b) conspiring to prevent NCCI from following its standard practices with respect to calculating AIG's residual market assessments and directing NCCI to engage in conduct inconsistent with its contractual obligations, including through

33

disseminating false account statements; and (c) failing to investigate and assert claims for the fraudulent conduct of the Underreporting Participating Companies and assisting in the concealment of that conduct.

Third party defendants argue that AIG fails to adequately plead breach of fiduciary duty because the allegations are facially implausible, there is no allegation that the Pool Board Members knew of underreporting, and the third party defendants were free to reject the Workers' Compensation Fund and instead to sue to recover for damages stemming from third party plaintiffs' underreporting. The court rejects all of these arguments.

Breach of fiduciary duty is not among the special matters that must be pled with particularity under Rule 9(b). AIG has pled that: (1) the Pool Board Members owed them a fiduciary duty as members of the Pool; (2) the Pool Board Members breached that duty, as described above, and (3) AIG suffered damages as a result of that breach. Accordingly, AIG has met the minimum pleading requirements of Rule 8 and the motion to dismiss Claim 5 is denied.

Claims Against the Individual Defendants

As a preliminary matter, third party defendants move to dismiss Claims 6 through 11 because AIG has purportedly assigned to the Pool Board its right to pursue claims based on any matter related to the Pool's Articles of Agreement; thus the Pool Board has the exclusive right to pursue such claims. AIG argues that no assignment has occurred as evidenced by the plain language of the Articles of Agreement and the conduct of the third party defendants during the instant proceedings.

The relevant provisions in the Articles of Agreement state:

Except for those powers specifically granted to the Administrator or an administrator under any Authorized Insurance Plan, these Articles of Agreement and the Administrative Agreement, the operation, business and affairs of all matters arising under these Articles of Agreement shall be managed and controlled by a Board of Governors... Article V, Section 1

Upon direction by the Board of Governors, the Administrator is empowered to act as attorney-in-fact for each participating company to prosecute, to defend, to submit to arbitration, to settle, and to propose or accept a compromise with respect to, any claim existing in favor of, or against, such participating company based on or involving any matter relating to this Agreement or to intervene in any action or proceeding related thereto. Article V, Section 12

Although it is possible to assign one's legal claim to another, the court finds that no such assignment exists here. Contrary to third party defendants' characterization of the Agreement, nothing in the text suggests an explicit or implicit assignment of *sole* authority from Participating Companies to the Pool Board to bring legal claims arising from the Agreement. The Agreement generally gives the Pool Board management and control of the business and affairs of all matters arising under the Agreement, and it allows the Pool Board to *empower* NCCI, the Administrator, to bring certain claims. This language does not evidence an intention by the signers to *assign* all their legal rights to the Pool Board. This is especially true given that third party defendants have offered no other evidence of intentionality to support their theory of assignment. Further, the Magistrate Judge has stated in a prior opinion in this matter related to discovery issues: "it is clear that NCCI proceeds not as an assignee, but rather as an agent for the participating members in the Pool." <u>NCCI v. AIG</u>, No. 07 CV 2898 (Dec. 11, 2007). Therefore, the court denies third party defendants' motion to dismiss Claims 6 through 11 on the theory that AIG assigned its right to prosecute these claims to the Pool Board when it signed the Articles of Agreement.

**Claim 6: Fraud - Premium Underreporting**

Third party defendants move to dismiss Claim 6 as against each named alleged Underreporting Participating Company (Liberty Mutual, Sentry, Travelers, The Hartford, and CIGNA/ACE) for failure to plead with specificity.

Contrary to third party defendants' arguments, AIG has sufficiently pled its fraud claim as to each third party defendant as required by Rule 9(b). Although AIG does not set forth the names of specific people involved in each independent act, its third-part complaint sets forth company names, dates, statements, conduct, and other specific allegations that support its claim of fraudulent inducement. This is sufficient given the scope and duration of the alleged fraud and the number of entities allegedly involved. Therefore, the motion to dismiss as to Claim 6 is denied.

**Claim 7: Fraud - Workers' Compensation Fund**

Third party defendants argue that Claim 7 for fraud related to the Workers' Compensation Fund should be dismissed for failure to state a claim because: (1) AIG has not alleged proximate cause; (2) the injury alleged was not reasonably foreseen by the individually named third party defendants; and (3) fraud has not been alleged with requisite specificity under Rule 9(b).

The essential elements of a claim for common law fraud are outlined in the discussion of Claim 4 above. In its complaint, AIG has alleged that the individually named third party defendants intentionally made false reports about its workers compensation premiums to NCCI

and state regulators so as to reduce their own share of the burden of the residual market. AIG also alleges that it relied on the accuracy of these reports in its calculations with the New York authorities and "as a result of the Underreporting Participating Companies' intentional underreporting," it agreed to an inflated value for the Workers Compensation Fund which has caused it financial harm.

These allegations are sufficient to state a claim for fraud under New York law and meet the specificity requirements of Rule 9(b). Contrary to third party defendants assertions, it is not necessary at the pleading stage for AIG to provide a showing of proximate cause. For the foregoing reasons, the motion to dismiss as to Claim 7 is denied.


**Claim 10: Contribution**

Third party defendants move to dismiss Claim 10 for contribution, arguing that AIG has not alleged injury to property as required under New York's contribution statute, and the Underreporting Participating Companies did not allegedly contribute to the "same injury" as third party plaintiffs. AIG argues in response that under New York law an underlying claim of fraud can be the basis for a claim for contribution, and the underlying claims against AIG and the third party claims both arise from alleged premium underreporting that resulted in the Underreporting Participating Companies paying incorrect shares of the residual market liabilities.

New York's contribution provides in relevant part:

[T]wo or more persons who are subject to liability for damages for the same ...
injury to property ... may claim contribution among them whether or not an action

has been brought or a judgment has been rendered against the person from whom
contribution is sought.

N.Y. C.P.L.R. § 1401 (2008).

Third party defendants' first argument fails because the New York courts have
recognized an "expansive definition of injuries to property for which contribution can be
sought," including actions arising from fraud.  Massachusetts Mut. Life Ins. Co. v. Weinbach,
635 F. Supp 1460 (S.D.N.Y 1986) (citing Primoff v. Duell, 381 N.Y.S.2d 947, 950 (N.Y.Co.
1976).  However, they prevail on their second argument because "[a] precondition of
contribution between two parties is that they be joint tortfeasors, the absence of which precludes
any claim for contribution."  Stratton Group, Ltd. v. Sprayregen, 466 F. Supp. 1180 (SDNY
1979).  Here, AIG seems to be arguing that its claim is sufficiently pled because it includes an
allegation of a joint injury from cumulative underreporting by many Underreporting
Participating Companies.  This is incorrect.  The third party complaint fails to state a cognizable
claim for contribution because there is no allegation of joint participation between AIG and the
individually named third party defendants in the alleged fraudulent underreporting.  Therefore,
Claim 10 of the third party complaint is dismissed.


**Claim 11: Unjust Enrichment**

Third party defendants move to dismiss Claim 11 on the ground that AIG fail to plead its
unjust enrichment claim with requisite particularity.  The court agrees with third party
defendants that heightened pleading is required here because the unjust enrichment claim relies
of theories of fraud.  The court, however, denies third party defendants' motion to dismiss Claim

11 because the averments of fraud are sufficiently pled as articulated in the discussion of Claim 7 above.

## <u>CONCLUSION</u>

For the reasons explained above, defendants' motion to strike the affirmative defenses of "Contributory Wrongful Conduct," "Statute of Limitations," "Laches," "Parens Patriae," "Failure to Mitigate Damages," "In Pari Delicto," "Unclean Hands," "Estoppel," and "Payment" are granted. AIG's affirmative defense of "Setoff" is also stricken and may be refiled as a counterclaim. Defendants' motion to dismiss Claims 1 and 2 of the counterclaim is denied. Defendants' motion to dismiss Claims 1 and 2 of the counterclaim as to NCCI is denied. Defendants' motion to dismiss Claims 1, 2, 3, and 10 of the third party complaint is granted. Defendants' motion to dismiss Claims 5, 6, 7, and 11 of the third party complaint  is denied.

As mentioned above, AIG has recently filed a motion to dismiss for lack of subject matter jurisdiction (Document No. 408, January 26, 2009), which was presented to the court on February 17, 2009. A briefing schedule has been set, with the last brief due on April 3, 2009. The court will rule on that motion on June 10, 2009, at 9:00. Because this motion is fully dispositive, this case is stayed until the court rules on the pending motion to dismiss.

**ENTER:** **February 23, 2009**


**Robert W. Gettleman**

**United States District Judge**