**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al</u>., | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| ACE INA HOLDINGS, INC., <u>et al</u>., | )<br>) |
| Defendants. | )<br>) |

Case No. 07 CV 2898

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <u>et al</u>., | )<br>)<br>) |
| Counter-Claimants, | ) |
| v. | )<br>) |
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al</u>., | )<br>)<br>) |
| Counter-Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**"NON-UNDERREPORTING POOL BOARD MEMBERS'" MOTION**
**TO DISMISS AIG'S CORRECTED FIRST AMENDED COMPLAINT**

On February 23, 2009, this Court dismissed four counts of American International Group, Inc.'s ("AIG") eleven-count Third-Party Complaint against twenty-four named insurance companies and numerous unnamed insurance companies which, together with AIG and hundreds of other Participating Companies, comprise the National Workers Compensation Reinsurance Pool (the "Pool"). On October 16, 2009, following dismissal of the complaint filed by NCCI as attorney-in-fact, AIG filed its ten-count Corrected First Amended Complaint (Docket No. 502) ("First Amended Complaint," "Complaint" or "FAC") against the Pool Board Members (defined as nineteen insurance companies that served on the Board of Governors of the Pool from 2005-

2007), in a repeated effort to state a claim grounded on utterly implausible allegations regarding the conduct of these companies as members of the Board of Governors of the Pool.  In short, AIG claims that the Pool Board Members breached their fiduciary duties to AIG by conspiring to inflict competitive harm on AIG by: (1) refusing to participate in the Workers Compensation Fund; (2) failing to investigate underreporting of insurance premium by companies other than AIG; and (3) directing the National Council on Compensation Insurance, Inc. ("NCCI"), the administrator for the Pool, to "abandon its standard administrative practices on behalf of the Pool…." (FAC, ¶¶5-7, 9, 193.)

While the First Amended Complaint contains new allegations of fact to shore up AIG's failed claims, none provides additional support for AIG's solitary claim against those Pool Board Members not alleged to have underreported insurance premiums to NCCI.[1]  The new allegations of the First Amended Complaint instead further underscore the implausibility − indeed, the absurdity − of the breach of fiduciary duty claim alleged in Count IV; those allegations rest on the notion that each of the Non-Underreporting Pool Board Members acted against its own economic self-interest as Participating Companies in the Pool by agreeing to conspire with the alleged Underreporting Pool Board Members to conceal premium underreporting by those companies.

---

[1]  The "Non-Underreporting Pool Board Members" are Advantage Workers Compensation Insurance Co. ("Advantage"), Alaska National Insurance Co. ("Alaska National"), Amtrust Financial Services, Inc., sued incorrectly herein as Amtrust Group ("AmTrust"), Berkley Risk Administrators Co. LLC ("Berkley"), Chubb & Son, a Division of Federal Insurance Co., sued incorrectly herein as Chubb Group of Insurance Companies ("Chubb"), Cincinnati Insurance Co. ("Cincinnati"), Companion Property & Casualty Insurance Co. ("Companion"), GUARD Insurance Group, Inc., sued incorrectly herein as GUARD Insurance Co. ("GUARD"), General Casualty Co. of Wisconsin, sued incorrectly herein as General Casualty Insurance Companies ("General Casualty"), Harleysville Mutual Insurance Co., sued incorrectly herein as Harleysville Insurance Group ("Harleysville"), MEMIC Indemnity Co. ("MEMIC"), Safeco Insurance Co. of America, sued incorrectly herein as Safeco Corp. ("Safeco"), Truck Insurance Exchange, sued incorrectly herein as Truck Insurance Group ("Truck") and Utica Mutual Insurance Co., sued incorrectly herein as Utica National Insurance Co. ("Utica").

Not only are the facts alleged in the First Amended Complaint significantly different from those alleged in AIG's original 2007 Third-Party Complaint, but the significance of the implausibility of these new allegations is underscored by a Supreme Court opinion decided after this Court's February 23, 2009, Order dismissing certain counts of AIG's Third-Party Complaint. On May 18, 2009, the Supreme Court rendered its decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), confirming that Rule 8 of the Federal Rules of Civil Procedure requires something more than the general notice pleading of days past, especially in complex cases such as this one. *Iqbal* makes clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements…" will no longer support a claim for relief. *Id.* at 1949. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Id.* at 1949 (emphasis supplied) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the significant change in the governing standard announced in *Twombly* has been clarified and highlighted since this Court first considered the sufficiency of AIG's fiduciary-duty claim against the Non-Underreporting Pool Board Members.

With this new pleading standard in mind, and in light of the new allegations of the First Amended Complaint, this Court should conclude that Count IV of the First Amended Complaint fails to plead facts sufficient to support a plausible claim for breach of fiduciary duty against the Non-Underreporting Pool Board Members, assuming *arguendo* that such a duty exists. Therefore, the Court should dismiss Count IV pursuant to Rule 12(b)(6) for its failure to state a claim.

## STATEMENT OF RELEVANT FACTS[2]

The First Amended Complaint alleges that the Pool Board Members, collectively, breached their fiduciary duty to AIG by (i) wrongfully exploiting the New York authorities' investigation of AIG's underreporting of workers compensation premium in order to inflict competitive harm on AIG, and (ii) concealing underreporting of premium by companies other than AIG.  (FAC, ¶5.)  Specifically, AIG alleges that the Pool Board Members "conspir[ed] to undermine and disable the Workers Compensation Fund …; conspir[ed] to prevent NCCI from following its standard practices with respect to calculating AIG's residual market assessments and direct[ed] NCCI to engage in conduct inconsistent with its contractual obligations, including through disseminating false account statements; and…fail[ed] to investigate and assert claims for the fraudulent conduct of the Underreporting Participating Companies and assist[ed] in the concealment of that conduct."  (FAC, ¶193.)

AIG acknowledges that the Board of Governors of the Pool is comprised of twelve participating companies elected for staggered terms of three years (FAC, ¶¶78-9.)   The Complaint, however, fails to allege which Non-Underreporting Pool Board Members participated in, or even were aware of, the conduct AIG alleges resulted in a breach of fiduciary duty, nor does AIG identify the years in which any particular company served on the Board.  Consistent with its practice of lumping together allegations against all defendants, AIG attempts to support its claim for breach of fiduciary duty with conclusory and generalized allegations regarding the collective conduct of the "Pool Board Members."  (FAC, ¶50.)  While certain allegations pertain

---

[2]  A comprehensive statement of background facts regarding the Pool and NCCI appeared in the Third-Party Defendants' Memorandum in Support of their Motion To Dismiss AIG's Third-Party Complaint. (Docket No. 258.)   For the Court's convenience, a true and correct copy of that statement of facts is attached hereto as Exhibit A.   In the interests of brevity and avoiding redundancy, the Non-Underreporting Pool Board Members also adopt the "Procedural History" and "Statement of Facts" found in the "Memorandum of Law in Support of the RICO Defendants' Partial Motion to Dismiss AIG's Corrected First Amended Complaint," filed October 30, 2009.

specifically to the conduct of the four so-called Underreporting Pool Board Members (Liberty Mutual, Travelers, The Hartford and ACE), the Complaint contains not a single specific allegation regarding misconduct by any one of the Non-Underreporting Pool Board Members or the knowledge by any one of them of alleged misconduct by any other Pool Board Member. Indeed, the only allegations that pertain specifically to the Non-Underreporting Pool Board Members − even after written discovery, numerous depositions and production of millions of pages of documents over the course of two years of litigation − are conclusory and collective in nature.  AIG alleges only that:

> The remaining Pool Board Members [the Non-Underreporting Pool Board Members], by participating in and/or acceding to aspects of the Underreporting Pool Board Members' misconduct, breached fiduciary duties they owed AIG as Pool Board members. (FAC, ¶10.)

> * * *

> In so doing, these Underreporting Pool Board Members have abused their positions of trust, conspired in violation of federal and state law, breached their fiduciary duties to AIG as a member of the Pool, and caused the [N]on-[U]nderreporting Pool Board Members to do the same.  (FAC, ¶95.)

Moreover, the only two allegations of fact that relate to specific companies, Berkley and another unidentified company, allege that those two companies suggested to the Pool Board that it look into possible underreporting of workers compensation premium and that all Participating Companies be requested to certify that they had not engaged in premium underreporting (facts clearly at odds with AIG's conspiracy theories regarding the Pool Board Members as a group and, particularly, its claim against Berkley).  (FAC, ¶¶102, 106.)

Not only does the First Amended Complaint fail to allege − other than in a conclusory manner − that any Non-Underreporting Pool Board Member breached its fiduciary duties to AIG, the conflicting facts that are alleged regarding the purported misconduct of the Pool Board

Members demonstrate the implausibility of AIG's claim for breach of fiduciary duty.  That claim is implausible because it requires acceptance of the proposition that the Non-Underreporting Pool Board Members conspired with the alleged Underreporters to engage in conduct which harmed their own companies, as well as AIG.  Specifically, the Complaint alleges that as a result of the Underreporting Pool Board Members' conduct, "AIG *and other Participating Companies* have paid inflated assessments to the Pool."  (FAC, ¶109 (emphasis supplied).)  These "other Participating Companies" include the Non-Underreporting Pool Board Members.  (FAC, ¶8.) AIG alleges throughout its Complaint that the Participating Companies have suffered economic harm resulting from the alleged misconduct of the Underreporting Pool Board Members − thereby placing the Non-Underreporting Pool Board Members among the "victims" of the schemes alleged.  (FAC, ¶¶145-146, 155(f), 157.)  In addition, AIG alleges repeatedly that, as part of the alleged conspiracy, the Underreporting Pool Board Members concealed their practices of underreporting premium. (FAC, ¶¶109, 122, 136, 138, 141, 143, 158, 179.)  These allegations are inconsistent with the premises on which AIG's claim rests:  (1) that the alleged co-conspirators would share this "concealed" information with other Participating Companies, who would be adversely affected by the concealed conduct; and (2) that the Non-Underreporting Pool Board Members had knowledge of the misconduct in which the Underreporting Pool Board Members are alleged to have engaged.

## ARGUMENT

Count IV of AIG's First Amended Complaint fails to state a plausible claim against the Non-Underreporting Pool Board Members and should be dismissed under Rule 12(b)(6).

## I.      STANDARD FOR MOTION TO DISMISS

Under Rule 8, "[a] pleading that states a claim for relief must contain: … a short and plain statement of the claim showing the pleader is entitled to relief."  In a trilogy of recent

decisions, *Twombly*, 550 U.S. 544, *Erickson v. Pardus*, 551 U.S. 89 (2007), and *Iqbal*, 129 S. Ct. 1937, the Supreme Court has "repudiated the general notice-pleading regime of Rule 8," *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), and clarified the threshold for asserting a cognizable claim in the district courts.   In *Twombly*, the Court concluded that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," 550 U.S. at 555, and, thus, a complaint which fails to allege "enough facts to state a claim to relief that is plausible on its face" is subject to dismissal.   *Id.* at 570.   In *Erickson*, the Court held that a plaintiff's complaint must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" 551 U.S. at 93 (citations omitted).   Most recently, in *Iqbal*, the Court instructed that a plausible claim is one that includes "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   129 S. Ct. at 1949 (emphasis supplied) (citing *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not 'show[n]' − 'that the pleader is entitled to relief.'"   *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

The Seventh Circuit recently considered the standard resulting from these three Supreme Court cases:

> So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim.   Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks*, 578 F.3d at 581; *see also Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir.  2009) ("We review an order granting a Rule 12(b)(6) motion to dismiss *de novo* and affirm if the

complaint fails to include sufficient facts 'to state a claim for relief that is plausible on its face.'")

(citations omitted); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 395 (7th Cir. 2009) (same)

(citations omitted). "*Twombly* retired the *Conley* [*v. Gibson*, 355 U.S. 41 (1957)] no-set-of-facts

test…." *Iqbal*, 129 S. Ct. at 1944. "[I]f it is to survive dismissal, [a complaint must] make

plausible allegations," and "'determining whether a complaint states a plausible claim for relief

will…be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'" *Cooney v. Rossiter*, No. 08-3675, 2009 WL 3103998, at *2-*3

(7th Cir. September 30, 2009) (citing *Iqbal*, 129 S. Ct. at 1950).

The First Amended Complaint does not allege facts regarding the Non-Underreporting

Pool Board Members sufficient to support a breach of fiduciary duty claim against any of them.

Moreover, the claimed breach of fiduciary duty does not pass the "common sense" test

announced by *Iqbal*, and Count IV of the First Amended Complaint accordingly should be

dismissed.

## II.   THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM THAT ANY NON-UNDERREPORTING POOL BOARD MEMBER BREACHED A FIDUCIARY DUTY OWED TO AIG.

*Iqbal* requires a "two-pronged" approach for analyzing the sufficiency of a claim in

response to a Rule 12(b)(6) motion: (i) the court must identify − and disregard − conclusory

allegations; and (ii) accepting as true the remaining allegations, the court must determine the

claim's plausibility as a matter of "common sense." 129 S. Ct. at 1949-50. This analysis is a

"context-specific task." *Id*. Viewed through the prism of this analysis, Count IV fails to state a

cognizable claim.

Of the four paragraphs appearing in Count IV, only one, Paragraph 193, advances any

allegations concerning the Pool Board Members' alleged misconduct. (FAC, ¶¶191-194.) That

paragraph alleges that the Pool Board Members breached their fiduciary duties to AIG by

> (a) conspiring to undermine and disable the Workers Compensation Fund; (b) conspiring to prevent NCCI from following its standard practices with respect to calculating AIG's residual market assessments and directing NCCI to engage in conduct inconsistent with its contractual obligations, including through disseminating false account statements; and (c) failing to investigate and assert claims for the fraudulent conduct of the Underreporting Participating Companies and assisting in the concealment of that conduct.

(FAC, ¶193.)  Not only are these allegations transparently conclusory, they say nothing about misconduct on the part of any of the Non-Underreporting Pool Board Members − either individually or collectively − nor do they suggest that any of the Non-Underreporting Pool Board Members were aware of misconduct by any other members of the Pool Board.  While Paragraph 191 of Count IV incorporates by reference the preceding 190 paragraphs of the First Amended Complaint, the only allegations found among those paragraphs that pertain to the Non-Underreporting Pool Board Members as a group are that they (i) "participat[ed] in and/or acced[ed] to aspects of the Underreporting Pool Board Members' misconduct" and therefore "breached fiduciary duties they owed AIG as Pool Board members," (FAC, ¶10), and (ii) "abused their positions of trust, conspired in violation of federal and state law, [and] breached their fiduciary duties to AIG as a member of the Pool…" (FAC, ¶95.)  These allegations are conclusory and, as required by *Iqbal*, should be disregarded when determining whether Count IV states a claim for relief against the Non-Underreporting Pool Board Members. *Iqbal*, 129 S. Ct. at 1951.  ("[A] 'formulaic recitation of the elements' of a…claim" are "conclusory and not entitled to be assumed true.").

Because AIG has failed to allege any facts regarding specific misconduct on the part of any Non-Underreporting Pool Board Member, or knowledge by any Non-Underreporting Pool Board Member of misconduct by any other members of the Pool Board, Count IV fails to allege facts allowing a "reasonable inference" that any of the Non-Underreporting Pool Board Members

breached a fiduciary (or any other) duty.  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at

556).   Accordingly, applying *Iqbal*, Count IV of the First Amended Complaint should be

dismissed.

### III.   THE CONFLICTS INHERENT IN AIG'S ALLEGATIONS REGARDING THE ALLEGED SCHEME DEMONSTRATE THE IMPLAUSIBILITY OF ITS CLAIM AGAINST THE NON-UNDERREPORTING POOL BOARD MEMBERS.

In order for the breach of fiduciary duty claim advanced in Count IV to stand, this Court

must find plausible AIG's conspiracy theory.  That theory requires acceptance of the following

postulates:  (i) the Non-Underreporting Pool Board Members had knowledge of underreporting

of premium by the Underreporting Pool Board Members, despite the Underreporting Pool Board

Members' alleged concealment of their underreporting; (ii) the Non-Underreporting Pool Board

Members chose to ignore that underreporting and directed the NCCI to abandon its standard

practices; (iii) the Non-Underreporting Pool Board Members thwarted participation in the

Workers Compensation Fund by the Pool, and (iv) the Non-Underreporting Pool Board Members

engaged in such conduct despite the fact that it would result in their own financial harm.  (FAC,

¶¶109, 145-46, 155(f).)  Common sense should inform the Court's decision on this issue, *Iqbal*,

129 S. Ct. at 1950, and common sense dictates that AIG's conspiracy theory, and the

participation of the Non-Underrreporting Pool Board Members in that alleged conspiracy, is not

plausible.

The claim asserted against the alleged Underreporting Pool Board Members is premised

in large part on AIG's allegation that each of the Underreporting Pool Board Members has

"conceal[ed] its practices of understating workers compensation premium…" resulting in

"injur[y] [to] AIG and the other Participating Companies."  (FAC, ¶¶122, 136, 138, 141, 143.)

Contrary to these allegations of concealment, the Complaint also alleges that the Non-

Underreporting Pool Board Members were somehow aware of the Underreporting Pool Board

Members' misconduct and chose to ignore it − even though doing so was contrary to their own self-interests. (FAC, ¶113.) The leap of logic required to accept and harmonize these conflicting allegations seems small when compared to the one required for acceptance of AIG's assertion that the Non-Underreporting Pool Board Members took affirmative steps in a conspiracy designed to result in their own financial harm.

Why would any Non-Underreporting Pool Board Member agree to undermine and disable the Workers Compensation Fund if doing so would have "prevented any of the Participating Companies [including the Non-Underreporting Pool Board Members] from receiving the benefits from the Fund"? (FAC, ¶¶98, 155.)

Why would any Non-Underreporting Pool Board Member act to prevent NCCI from following its standard practices with respect to calculating residual market assessments if doing so would result in the Participating Companies, including the Non-Underreporting Pool Board Members, paying "inflated assessments to the Pool"? (FAC, ¶¶109, 157.)

Why would any Non-Underreporting Pool Board Member choose not to investigate, but instead to aid in the concealment of, the alleged misconduct of the Underreporting Pool Board Members when doing so would result in its own financial harm as a Participating Company? (FAC, ¶¶109, 122, 136, 138, 141, 143, 145-6.)

It simply is not plausible and defies common sense to believe that the Non-Underreporting Pool Board Members would have engaged in any of the conduct alleged in the First Amended Complaint. Accordingly, AIG's claim for breach of fiduciary duty against the Non-Underreporting Pool Board Members is insufficient as a matter of law because Count IV fails to allege facts − that is, allegations that are more than mere conclusions − that demonstrate

the "plausibility of 'entitlement to relief'" required by *Twombly* and *Iqbal*.  *Iqbal*, 129 S. Ct. at

1949 (citing *Twombly*, 550 U.S. at 557).

## **CONCLUSION**

Count IV of AIG's First Amended Complaint fails to state a plausible claim for relief,

and the Non-Underreporting Pool Board Members, accordingly, respectfully request that this

Court grant their motion to dismiss pursuant to Rule 12(b)(6) and dismiss Count IV with

prejudice.

Respectfully submitted,

_____
/s/  Michael D. Sher
One of the attorneys for Advantage Workers Compensation
Insurance, Alaska National Insurance Company, AmTrust
Financial Services, Inc., Companion Property & Casualty
Insurance Company, General Casualty Company of
Wisconsin, GUARD Insurance Group, Inc., Harleysville
Mutual Insurance Company, MEMIC Indemnity Company,
Safeco Insurance Company of America, Utica Mutual
Insurance Company

Michael D. Sher
Emily Mulder Milman
Athanasios Papadopoulos
Meredith D. Schacht
NEAL, GERBER & EISENBERG LLP
Two N. LaSalle St., Suite 2200
Chicago, IL 60602
312-269-8000

_____
/s/  Richard P. Darke
One of the attorneys for Berkley Risk Administrators Co.
LLC

Richard P. Darke
DUANE MORRIS LLP
19 S. LaSalle St., Suite 3700
Chicago, IL 60603
312-499-6743

Kimball A. Lane
Christine M. Van Gelder
Thomas R. Newman
DUANE MORRIS LLP
1540 Broadway, Suite 1400
New York, NY  10036-4086
212-692-1000

_____/s/  Daniel R. Formeller_____
One of the attorneys for Chubb & Son, a Division of
Federal Insurance Company

Daniel R. Formeller
Todd S. Schenk
Katherine Louise Haennicke
TRESSLER, SODERSTROM, MALONEY & PRIESS
233 S. Wacker Dr., 22nd Floor
Chicago, IL 60606
312-627-4000

Christopher Thompson
David T. Moran
JACKSON WALKER LLP
901 Main St., Suite 6000
Dallas, TX 75202
214-953-6000

_____/s/  Daniel G. Litchfield_____
One of the attorneys for Cincinnati Insurance Company

Daniel G. Litchfield
Omar Odland
LITCHFIELD CAVO
303 W. Madison St., Suite 300
Chicago, IL  60606
312-781-6677

_____/s/  Stacy Allen_____
One of the attorneys for Truck Insurance Exchange

Stacy Allen
Jeffrey R. Johnson
JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, TX  78701
512-236-2000

Dan L. Boho
David Alfini
James Constantine Vlahakis
HINSHAW CULBERTSON, LLP
222 N. LaSalle St., Suite 300
Chicago, IL  60601
312-704-3000

NGEDOCS: 1664456.10