**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., | ) |
| AIG CASUALTY COMPANY F/K/A, | ) |
| BIRMINGHAM FIRE INSURANCE COMPANY OF | ) |
| PENNSYLVANIA, AIU INSURANCE COMPANY, | ) |
| AMERICAN HOME ASSURANCE COMPANY, | ) |
| AMERICAN INTERNATIONAL PACIFIC | ) |
| INSURANCE COMPANY F/K/A | ) |
| AMERICAN FIDELITY COMPANY, AMERICAN | ) |
| INTERNATIONAL SOUTH INSURANCE | ) |
| COMPANY F/K/A AMERICAN GLOBAL | ) |
| INSURANCE COMPANY, AMERICAN | ) |
| INTERNATIONAL SPECIALTY LINES | ) |
| INSURANCE COMPANY F/K/A ALASKA | ) |
| INSURANCE COMPANY, COMMERCE AND | ) |
| INDUSTRY INSURANCE COMPANY, INC., | ) |
| GRANITE STATE INSURANCE COMPANY, | ) |
| ILLINOIS NATIONAL INSURANCE COMPANY, | ) |
| INSURANCE COMPANY OF THE STATE OF | ) |
| PENNSYLVANIA, NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF PITTSBURGH, | ) Case No. 07 CV 2898 |
| NEW HAMPSHIRE INDEMNITY COMPANY, | ) |
| And NEW HAMPSHIRE INSURANCE COMPANY, | ) |
| | ) Judge Robert W. Gettleman |
| Plaintiffs, | ) |
| v. | ) |
| | ) Magistrate Judge Sidney J. Schenkier |
| ACE INA HOLDINGS, INC., ADVANTAGE | ) |
| WORKERS COMPENSATION INSURANCE | ) |
| COMPANY, ALASKA NATIONAL INSURANCE | ) |
| COMPANY, AMTRUST GROUP, BERKLEY RISK | ) |
| ADMINISTRATORS CO., LLC, CHUBB GROUP OF | ) |
| INSURANCE COMPANIES, CINCINNATI | ) |
| INSURANCE COMPANY, CIGNA GROUP, INC., | ) |
| COMPANION PROPERTY & CASUALTY | ) |
| INSURANCE COMPANY, THE COVENANT | ) |
| GROUP, CRUM & FORSTER, GUARD | ) |
| INSURANCE COMPANY, GENERAL CASUALTY | ) |
| INSURANCE COMPANIES, HARLEYSVILLE | ) |
| INSURANCE GROUP, THE HARTFORD | ) |
| FINANCIAL SERVICES GROUP, INC., LIBERTY | ) |
| MUTUAL GROUP, INC., MEMIC INDEMNITY | ) |
| COMPANY, SAFECO CORPORATION, | ) |

TRAVELERS INSURANCE GROUP, SENTRY          )
INSURANCE GROUP, TRUCK INSURANCE           )
EXCHANGE, and UTICA NATIONAL               )
INSURANCE CO.,                             )
                                           )
Defendants.                                )
_____                     )
                                           )
LIBERTY MUTUAL INSURANCE COMPANY,          )
LIBERTY MUTUAL FIRE INSURANCE              )
COMPANY, LIBERTY INSURANCE CORP.           )
THE FIRST LIBERTY INSURANCE CORP.,         )
EMPLOYERS INSURANCE COMPANY OF             )
WAUSAU, WAUSAU BUSINESS INSURANCE          )
COMPANY, WAUSAU GENERAL INSURANCE          )
COMPANY, and WAUSAU UNDERWRITERS           )
INSURANCE COMPANY,                         )
                                           )
                 Counter-Claimants,        )
        v.                                 )
                                           )
AMERICAN INTERNATIONAL GROUP, INC.,        )
AIG CASUALTY COMPANY F/K/A,                )
BIRMINGHAM FIRE INSURANCE COMPANY OF       )
PENNSYLVANIA, AIU INSURANCE COMPANY,       )
AMERICAN HOME ASSURANCE COMPANY,           )
AMERICAN INTERNATIONAL PACIFIC             )
INSURANCE COMPANY F/K/A                    )
AMERICAN FIDELITY COMPANY, AMERICAN        )
INTERNATIONAL SOUTH INSURANCE              )
COMPANY F/K/A AMERICAN GLOBAL              )
INSURANCE COMPANY, AMERICAN                )
INTERNATIONAL SPECIALTY LINES              )
INSURANCE COMPANY F/K/A ALASKA             )
INSURANCE COMPANY, COMMERCE AND            )
INDUSTRY INSURANCE COMPANY, INC.,          )
GRANITE STATE INSURANCE COMPANY,           )
ILLINOIS NATIONAL INSURANCE COMPANY,       )
INSURANCE COMPANY OF THE STATE OF          )
PENNSYLVANIA, NATIONAL UNION FIRE          )
INSURANCE COMPANY OF PITTSBURGH,           )
NEW HAMPSHIRE INDEMNITY COMPANY,           )
And NEW HAMPSHIRE INSURANCE COMPANY,       )
                                           )
                 Counter-Defendants.       )
_____

SAFECO INSURANCE COMPANY OF )
AMERICA and OHIO CASUALTY INSURANCE )
COMPANY, individually, and on behalf of a class )
Consisting of members of the National Workers )
Compensation Reinsurance Pool, )
           )
         Plaintiffs, )
           )
     v. )
           )
AMERICAN INTERNATIONAL GROUP, INC., ) Case No. 09 CV 2026
AIG CASUALTY COMPANY F/K/A, )
BIRMINGHAM FIRE INSURANCE COMPANY OF )
PENNSYLVANIA, AIU INSURANCE COMPANY, ) Judge Robert W. Gettleman
AMERICAN HOME ASSURANCE COMPANY, )
AMERICAN INTERNATIONAL PACIFIC )
INSURANCE COMPANY F/K/A ) Magistrate Judge Sidney I. Schenkier
AMERICAN FIDELITY COMPANY, AMERICAN )
INTERNATIONAL SOUTH INSURANCE )
COMPANY F/K/A AMERICAN GLOBAL )
INSURANCE COMPANY, AMERICAN )
INTERNATIONAL SPECIALTY LINES )
INSURANCE COMPANY F/K/A ALASKA )
INSURANCE COMPANY, COMMERCE AND )
INDUSTRY INSURANCE COMPANY, INC., )
GRANITE STATE INSURANCE COMPANY, )
ILLINOIS NATIONAL INSURANCE COMPANY, )
INSURANCE COMPANY OF THE STATE OF )
PENNSYLVANIA, NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, )
NEW HAMPSHIRE INDEMNITY COMPANY, )
And NEW HAMPSHIRE INSURANCE COMPANY, )
           )
         Defendants. )
_____)

## NCCI'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS NINE AND TEN OF AIG'S CORRECTED FIRST AMENDED COMPLAINT

       National Council on Compensation Insurance, Inc. ("NCCI"), by its undersigned

attorney, Harry N. Arger, for its memorandum of law in support of its motion to dismiss Counts

Nine and Ten of the Corrected First Amended Complaint of plaintiff, American International Group, Inc., and additional identified AIG plaintiffs (collectively "AIG"), states as follows:

## INTRODUCTION

This case filing was initiated on May 24, 2007, by then plaintiff, National Council on Compensation Insurance, Inc., solely as Attorney-in-Fact for the participating companies of the National Workers Compensation Reinsurance Pool ("AIF"), against then defendants, AIG, for various claims, including accounting and open account claims.  (Dkt. No. 1).  On August 20, 2009, this Court granted AIG's motion to dismiss AIF's complaint and held that AIF had no standing to assert its claims, accounting, open account or otherwise.  (Dkt. No. 475).

On October 16, 2009, AIG filed its Corrected First Amended Complaint ("AIG Complaint"), alleging ten counts against various defendants.  (Dkt. No. 502).  AIG's claims arise from alleged actions by certain insurance companies, not NCCI, which are identified in the AIG Complaint as "Underreporting Pool Board Members" or "Underreporting Participating Companies" (collectively referred to herein as "Underreporting Companies"), for their alleged underreporting of workers compensation premium.  Specifically, AIG's Complaint alleges such actions resulted in the Underreporting Companies providing inaccurate information to NCCI and that said Companies "have refused and continue to refuse to account to AIG for amounts by which they have underreported their workers compensation premium."  (Dkt. No. 502, para. 220).  Based on an assumption that such underreporting did occur, AIG asserts Counts Nine and Ten against the Underreporting Companies and NCCI for an accounting and open account to recalculate the amounts due AIG after the alleged underreporting is established.

Careful examination of the allegations contained in AIG's Complaint reveals that the complaint fails to state a claim against NCCI and further that such claims lack a justiciable and

ripe controversy.  AIG's Complaint admits that any alleged underreporting was never reported and therefore never possessed by NCCI.  Moreover, if the Articles of Agreement ("Articles") between AIG and the other companies of the National Workers Compensation Reinsurance Pool ("NWCRP") have been breached as alleged by such underreporting, AIG's relief is against those breaching parties, not NCCI.  NCCI is not a signatory to the Articles nor does it possess the alleged underreporting information that would be needed for any recalculation.  Nor are AIG's claims against NCCI ripe for controversy unless and until such alleged underreporting information is produced.  Even then, there is no allegation that the "mechanism" established by the Articles for determining AIG's share will be inadequate.

In short, AIG's claims against NCCI are improper because AIG has adequate remedies against the parties alleged to have breached the Articles and NCCI does not possess the alleged underreporting information and therefore cannot recalculate anything at this time.  NCCI is not a proper party to this case and its motion to dismiss should be granted.

## FACTS

On August 20, 2009, this Court held that the AIF lacked standing to sue AIG for an accounting, an open account or any other claims.  (Dkt. No. 475).  At that time, this Court noted that the NWCRP was organized and governed by the Articles of Agreement, "a contract to which all participating insurers ("Participating Companies") have agreed and are signatories."  (Dkt. No. 475, p. 4).  It is uncontradicted that NCCI is not a signatory to the Articles.  This Court further noted that "any company that underreports its premium to NCCI decreases its reinsurance participation rate and the overall total used to calculate all the rates" and that even if underreporting liability were established, "any equitable relief or damages computation would require each individual company to proffer its premium data for each year and state."  (Dkt. No.

475, pp. 5, 16).  This Court then stated that "the ultimate resolution of this case may require a full mutual accounting conducted by a neutral party."  (Dkt. No. 475, p. 16).

AIG's Complaint was filed on October 16, 2009.  (Dkt. No. 502).  In the full caption of AIG's Complaint, NCCI is not listed.  In paragraphs 14 through 49, AIG identifies the various plaintiffs and defendants, but does not identify NCCI as a "Defendant."  In its "Background" section, AIG describes the NWCRP and the Articles of Agreement that set forth the terms agreed to by each Participating Company.  NCCI is not a signatory to the Articles, but is alleged in AIG's Complaint to provide "various financial and accounting support services for the reinsurance mechanism" set forth in the Articles.  (Dkt. No. 502, para. 52).  AIG further alleges that each Participating Company must provide its accurate workers compensation premium written by year and by state "in order for NCCI to calculate accurately" each Participating Company's participation share.  (Dkt. No. 502, para. 61).

The crux of AIG's claims is the alleged inaccurate reporting of workers compensation premiums by five named defendant insurance companies referred to in AIG's Complaint as Underreporting Participating Companies, a subgroup of which also sat on NWCRP's Board of Governors which AIG refers to as Underreporting Pool Board Members.  AIG alleges that these Underreporting Companies failed to accurately report their premium amounts and instead reported lower amounts which caused AIG to pay more than its share.  In Counts One, Two, and Three, AIG makes claims against the Underreporting Pool Board Members for civil racketeering under 18 U.S.C. Sec. 1962(c), civil racketeering under 18 U.S.C. Sec. 1962(d), and civil conspiracy.  In Count Four, AIG claims that certain named defendant insurance companies referred to as Pool Board Members breached their fiduciary duty to AIG.  In Counts Five, Six, Seven and Eight, AIG makes claims against the Underreporting Participating Companies for

fraud, breach of contract and unjust enrichment.  With regard to the breach of contract claim, AIG specifically alleges that the Underreporting Companies had a duty under the Articles to submit accurate premium information and that they breached the contract (the Articles) by submitting allegedly "false and inaccurate premium data to NCCI."  (Dkt. No. 502, p. 56).

In Counts Nine and Ten, AIG makes claims against the Underreporting Participating Companies, the NWCRP and NCCI (the only counts against NCCI) for an equitable accounting and open account determination "of each of the Underreporting Participating Companies' obligations to AIG resulting from their underreporting of workers compensation premium." (Dkt. No. 502, p. 60).  In that regard, although it is alleged that "the Pool, NCCI and the Underreporting Participating Companies" possess "documentation that accounts for what the Underreporting Participating Companies have reported as their workers compensation premium," AIG specifically alleges that the Underreporting Participating Companies have refused to account "for amounts by which they have underreported their workers compensation premium." (Dkt. No. 502, para. 220).

## ARGUMENT

### AIG Fails to State a Claim as NCCI Does Not Possess Underreporting Information

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  A plaintiff's complaint must include enough factual allegations to "raise a right to relief above a speculative level."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)(*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)).

Here, AIG seeks an accounting and open account from NCCI and others after the alleged underreporting from the Underreporting Companies is shown.  Yet, essential to any accounting

or open account claim is that the party being sued actually possess the information needed to calculate the accounting or open account. *See generally*, *First Comm. Traders v. Heinhold Commodities*, 766 F.2d 1007 (7th Cir. 1985); *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34 (7th Cir. 1976); *Drake Enterprises, Inc. v. Colloid Environmental Technologies Company*, 2009 WL 1789355 (N.D. Ill. June 24, 2009); *Blythe Holdings, Inc. v. Flawless Financial Corporation*, 2009 WL 103196 (N.D. Ill. Jan. 15, 2009); *3Com Corporation v. Electronic Recovery Specialists, Inc.*, 104 F.Supp.2d 932 (N.D. Ill. 2000).

There is no allegation in AIG's Complaint that NCCI possesses the workers compensation premium information of the alleged Underreporting Companies that AIG alleges is needed for a recalculation. Not only does AIG's Complaint fail to allege that NCCI possesses information needed for any recalculation, but AIG's Complaint essentially admits that any such information is in the possession of the alleged Underreporting Companies. Any possession of the alleged Underreporting Companies' past workers compensation premium information is irrelevant to AIG's current claims as AIG asserts that the past information was not accurate. The recalculation of information that AIG seeks in its accounting and open account claims is for the information that was <u>not</u> reported or possessed by NCCI. Thus, the fundamental element of an accounting or open account claim (i.e., that NCCI possess the information needed for recalculation) is missing. Counts Nine and Ten fail to state a claim against NCCI and should be dismissed.

**AIG Has Adequate Remedy**

In order to state a claim for accounting, plaintiff must allege the absence of a remedy at law. *3Com*, 104 F.Supp.2d at 941 (*citing Mann v. Kemper Financial Companies, Inc.*, 618 N.E.2d 317, 327 (Ill. App. Ct. 1st Dist. 1992)).[1] Courts have dismissed accounting claims where breach of contract has also been alleged, which generally provides an adequate legal remedy. *See 3Com*, 104 F.Supp.2d at 941; *Drake Enterprises, Inc.*, 2009 WL 1789355 at *3; *First Comm. Traders*, 766 F.2d at 1011. Legal remedies should not be characterized as inadequate merely because the measure of damages may necessitate a look into parties' business records. *Zell*, 542 F.2d at 36. "It cannot be enough . . . for the plaintiff merely to include the words 'no adequate remedy at law' in a complaint in order to survive a motion to dismiss an accounting claim in the face of a breach of contract claim." *Drake Enterprises, Inc.*, 2009 WL 1789355 at *3. "Although an accounting cause of action was traditionally utilized as a means of obtaining access to relevant records, the need for a party to pursue an accounting cause of action in order to obtain such access has been greatly minimized in light of modern federal discovery rules." *Id.* (*citing Didion Milling, Inc. v. Agro Distribution, LLC*, 2007 WL 702808 at *11 (E.D. Wis. March 2, 2007)). Moreover, a court will not uphold an open account claim absent a showing of fraud, omission or mistake. *First Comm. Traders*, 766 F. 2d at 1011.

In the present case, AIG has alleged an adequate remedy against the Underreporting Companies, including but not limited to Count Seven of AIG's Complaint for breach of contract (Articles) against those parties. AIG has not alleged any breach by NCCI nor alleged any fraud, omission or mistake by NCCI. In essence, AIG wants NCCI to hang around this lawsuit (for

---

[1] It has not been determined which state's substantive law would apply to AIG's claims against NCCI. For the issues raised in this motion, the laws of each potentially applicable state (Illinois, where this lawsuit is located, Florida, where NCCI is located, and New York, where AIG is located) are the same. *See F.A. Chastain Constr., Inc. v. Pratt*, 146 So.2d 910, 913 (Fla.App.3d 1962); *In re Mary XX*, 822 N.Y.S.2d 659, 661 (N.Y.App.Div. 2006).

what could be years at tremendous cost and expense for NCCI) and wait until underreporting information is uncovered so that NCCI can recalculate AIG's share.  There is no allegation that the NWCRP "mechanism" established by the Articles, upon which AIG's Complaint is based, is inadequate.  It is unreasonable and contrary to accounting and open account law for NCCI to remain in this case and wait for AIG to prove its underreporting allegations when, if such allegations were proven, the "mechanism" would recalculate AIG's share as a matter of course.  AIG has an adequate remedy for its claims and Counts Nine and Ten as against NCCI should be dismissed.

**AIG's Claims Against NCCI Are Not Ripe**

The threshold requirement for bringing a suit in federal court is that the plaintiff present a case or controversy between itself and the defendant within the meaning of Article III of the U.S. Constitution.  *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975).  "A 'controversy' in this sense must be one that is appropriate for judicial determination.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461, 464 (1937)(citations omitted).  "In general, in order for a dispute to be ripe for adjudication, 'the controversy must be definite and concrete . . . as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'"  *Vorhees v. Brown*, 1998 WL 54657 at *2 (7th Cir. Feb. 4, 1998)(citations omitted).

As discussed above, AIG alleges that the Underreporting Companies have underreported their workers compensation premium information, but that the information has not been provided to NCCI.  Stated differently, AIG has alleged claims against others, and if those claims can be proven, then AIG wants NCCI to do an accounting and open account recalculation.  Such a hypothetical set of facts fails to establish any justiciable controversy with NCCI at this time.  A current accounting or open account by NCCI or anyone else would not establish any new

calculation because no new premium information is known.  AIG's accounting/open account dispute with NCCI is not ripe for adjudication unless and until such new information is established, through discovery or otherwise.  Even then, there has been no allegation that the existing NWCRP mechanism established through the Articles will not provide an adequate resolution.  Without a ripe controversy, AIG's claims in Counts Nine and Ten against NCCI should be dismissed.

WHEREFORE, National Council on Compensation Insurance, Inc. respectfully requests that Counts Nine and Ten of the Corrected First Amended Complaint of plaintiff, American International Group, Inc., and additional identified AIG plaintiffs, be dismissed with prejudice as to NCCI, and for such other and further relief deemed reasonable by this Court.

Respectfully submitted,

By:  /s/Harry N. Arger
     Attorney for National Council on
     Compensation Insurance, Inc.

Harry N. Arger  (ARDC No. 6198806)
Dykema Gossett PLLC
10 S. Wacker Drive
Suite 2300
Chicago, Illinois 60606
312.627.2127
harger@dykema.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served a copy of the foregoing Memorandum of

Law by causing copies thereof to be sent by U.S. District Court CM/ECF e-filing system on the

30th day of October, 2009.

                                                  /s/ Harry N. Arger