# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al</u>., | Case No. 07 CV 2898 |
| Plaintiffs, | Judge Robert W. Gettleman |
| v. | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., <u>et al</u>., | |
| Defendants. | |
| LIBERTY MUTUAL INSURANCE COMPANY, <u>et al</u>., | |
| Counter-Claimants, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al</u>., | |
| Counter-Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE RICO DEFENDANTS' AND SENTRY'S PARTIAL MOTION TO DISMISS <u>AIG'S CORRECTED FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

PROCEDURAL HISTORY.................................................................................................2

STATEMENT OF FACTS ...............................................................................................3

ARGUMENT ....................................................................................................................6

   I.     STANDARD FOR MOTION TO DISMISS .............................................................6

   II.    AIG'S RICO CLAIM – COUNT 1 – FAILS TO STATE A CLAIM............................7

        A.    AIG's RICO Allegations. ......................................................................................7

        B.    AIG's RICO Claim Suffer Numerous Incurable Deficiencies that
             Warrant Dismissal. ...............................................................................................9

            1.    AIG's Allegations of Knowledge Remain Insufficient. ...................................9

            2.    AIG Fails to Allege Fraud with the Specificity Required by
                 Rule 9(b) by Improperly "Lumping" the Defendants....................................11

            3.    AIG Fails to Plead Facts to Support the Conclusion that the RICO
                 Defendants "Controlled" the Other Pool Board Members. ...........................14

            4.    AIG's RICO Claim is Implausible On its Face. ............................................15

            5.    AIG's Allegations Are Insufficient to State a Claim for Violation
                 of Federal Mail and Wire Fraud Statutes With Respect to the Alleged
                 Rejection of the Fund....................................................................................16

            6.    AIG Cannot State a Claim Based on the Alleged Failure to Investigate
                 or File Lawsuits Against Companies Other Than AIG. .................................19

            7.    AIG Fails to Plead Any Use of Mail or Wires With Respect to the
                 Alleged Failure to Investigate or File Lawsuits Against Companies
                 Other Than AIG.............................................................................................21

   III.   AIG'S RICO CONSPIRACY CLAIM – COUNT 2 – FAILS TO
        STATE A CLAIM. ...............................................................................................22

   IV.   AIG'S CIVIL CONSPIRACY CLAIM – COUNT 3 – FAILS TO
        STATE A CLAIM. ...............................................................................................24

   V.    AIG'S BREACH OF FIDUCIARY DUTY CLAIM – COUNT 4 –
        FAILS TO STATE A CLAIM ...............................................................................27

   VI.   AIG'S UNJUST ENRICHMENT CLAIM – COUNT EIGHT –
        FAILS TO STATE A CLAIM. ...............................................................................29

CONCLUSION...............................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albion Alliance Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*,
    797 N.Y.S.2d 699 (Sup. Ct. 2003)............................................................25

*Alexander & Alexander of N.Y., Inc. v. Fritzen*,
    68 N.Y.2d 968 (1986) ............................................................24

*Am. Auto Accessories, Inc. v. Fishman*,
    175 F.3d 534 (7th Cir. 1999) ............................................................21

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)............................................................ passim

*Auguston v. Spry*,
    723 N.Y.S.2d 103 (2001)............................................................29

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)............................................................ passim

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) ............................................................6, 15, 17

*Brown v. Burnette*,
    No. 09 C 0011, 2009 WL 3055361 (N.D. Ill. Sept. 18, 2009)............................................................6

*Brownstone Investment Group, LLC v. Levey*,
    468 F.Supp.2d 654 (S.D.N.Y. 2007)............................................................24, 25

*Car Carriers Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) ............................................................16

*City of Syracuse v. Williams*,
    45 A.D.3d 1491 (N.Y. App. Div. 2007) ............................................................17

*Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*,
    70 N.Y.2d 382 (1987)............................................................29, 30

*Cooney v. Rossiter*, --- F.3d ---, No. 08-3675, 2009 WL 3103998, at *2 (7th Cir. Sept. 30,
    2009) ............................................................7

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ............................................................12

*Goldman v. Metropolitan Life Ins. Co.*,
    5 N.Y.3d 561 (2005) ............................................................................................29

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998) ...............................................................7, 12, 22, 23

*IDT v. Morgan Stanley Dean Witter Co.*,
    12 N.Y.3d 132 (2009) ..........................................................................................29

*Joseph Sternberg, Inc. v. Walber 36th Street Associates*,
    594 N.Y.S.2d 144 (1993) .....................................................................................30

*Lachmund v. ADM Investor Services, Inc.*,
    191 F.3d 777 (7th Cir. 1999) ...............................................................................23

*Limestone Development Corp. v. Village of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ..........................................................................16, 26

*Meier v. Musburger*,
    No. 08 C 216, 588 F. Supp. 2d 883 (N.D. Ill. Dec. 5, 2008) ........................7, 14, 21

*Monsky v. Moraghan*,
    127 F.3d 243 (2d Cir. 1997)..................................................................................18

*New Hampshire v. Maine*,
    532 U.S. 742 (U.S. 2001)..........................................................................20, 26, 27

*Portnoy v. The American Tobacco Co.*,
    No. 96/16323, 2-MG, 96-16324, 1997 WL 638800 ..............................................25

*Robin v. Arthur Young & Co.*,
    915 F.2d 1120 (7th Cir. 1990) .........................................................................10, 11

*Salvatore v. Kumar*,
    45 A.D.3d 560 (N.Y. App. Div. 2007) ..................................................................25

*Schrag v. Dinges*,
    150 F.R.D. 664 (D. Kan. 1993)............................................................................14

*Sears v. Likens*,
    912 F.2d 889 (7th Cir. 1990) ..........................................................................12, 13

*Slaney v. The Int'l Amateur Athletic Fed'n*,
    244 F.3d 580 (7th Cir. 2001)................................................................................12

*Stachon v. United Consumers Club, Inc.*,
    229 F.3d 673 (7th Cir. 2000) ...............................................................................22

*Suburban Buick, Inc. v. Gargo,*
No. 08 C 0370, 2009 WL 1543709 (N.D. Ill. May 29, 2009) (Gettleman, J.).........7, 12, 13, 26

*Tarpley v. Kiestler,*
188 F.3d 788 (7th Cir. 1999) ........................................................................................18, 28

*Truong v. AT&T,*
243 A.D.2d 278 (1st Dept. 1997)................................................................................25

*U.S. v. Bloom,*
149 F.3d 649 (7th Cir. 1998) ................................................................8, 16, 17, 18

*U.S. v. Hartmann,*
958 F.2d 774 (7th Cir. 1992) ........................................................................................8

*U.S. v. Leahy,*
464 F.3d 773 (7th Cir. 2006) ........................................................................................8

*U.S. v. Sorich,*
523 F.3d 702 (7th Cir. 2008) ........................................................................8, 17, 18

*U.S. v. Thompson,*
484 F.3d 877 (7th Cir. 2007) ..................................................................................16, 18

*U.S. v. Fernandes,*
272 F.3d 938 (7th Cir. 2001) ........................................................................................17

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,*
987 F.2d 429 (7th Cir. 1993) ........................................................................................5

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.,*
20 F.3d 771 (7th Cir. 1994) ....................................................................................7, 12

*Ward v. City of N.Y.,*
15 A.D.3d 392 (N.Y. App. Div. 2005) ..................................................................24, 25

## STATUTES

18 U.S.C. § 1341........................................................................................................8

18 U.S.C. § 1343........................................................................................................8

18 U.S.C. § 1346....................................................................................................1, 16

18 U.S.C. § 1962(c) .......................................................................................... passim

18 U.S.C. § 1962(d) ................................................................................................22, 23

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ................................................................................................10

Federal Rule of Civil Procedure 9(b)..................................................................................... passim

Federal Rule of Civil Procedure 11 ................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................1

On February 23, 2009, this Court dismissed much of AIG's Third-Party Complaint, including AIG's deficiently pled claims alleging violations of RICO, RICO conspiracy, and civil conspiracy.  The Court found that the failure to plead facts to support a "reasonable inference" of knowledge by each company of the other companies' underreporting mandated dismissal of those claims.  (Dkt. 422, February 23, 2009 Memorandum Opinion and Order ("Dismissal Order"), 29-32.)  AIG has re-pled the RICO, RICO conspiracy and civil conspiracy claims against a sub-set of the originally denominated Third-Party Defendants, referred to herein as the "RICO Defendants,"[1] but the amended pleading fails to cure the inherent defects in those claims. In fact, though AIG has changed the wording of some of its allegations, the Corrected First Amended Complaint ("Amended Complaint" or "AC") essentially adds only one, entirely conclusory allegation concerning the RICO Defendants' knowledge of each other's alleged underreporting.  (*See* AC ¶ 159.)  That conclusory, unsupported allegation of knowledge cannot rescue the RICO, RICO conspiracy and civil conspiracy claims from dismissal.

Moreover, as the Court noted previously, there were (and there remain) numerous other "meritorious arguments" that justify dismissal.  (Dismissal Order, 30 n.12.)  AIG's latest theory of RICO liability – that four companies, which never all served on the NWCRP Pool Board at the same time, caused a twelve-member Board to act against its own and the Pool's economic self-interest – is implausible on its face, at odds with AIG's position in prior pleadings, and bereft of specific allegations about what each RICO Defendant knew and did, and thus does not pass muster under Rule 12(b)(6).  These additional pleading defects have not been cured and are not curable, and the Court should dismiss Counts One, Two and Three of the Amended Complaint with prejudice.

---

[1] The RICO Defendants are ACE INA Holdings, Inc. ("ACE"), The Hartford Financial Services Group ("The Hartford"), Liberty Mutual Group ("Liberty"), and Travelers Insurance Group ("Travelers").

In addition, AIG's claims for breach of fiduciary duty (Count Four) and unjust enrichment (Count Eight)[2], are defective and should also be dismissed with prejudice.

## PROCEDURAL HISTORY

The original plaintiff in this action, the National Council on Compensation Insurance, Inc. ("NCCI"), as attorney-in-fact for the approximately 600 participating companies ("Participating Companies") in the National Workers Compensation Reinsurance Pool ("NWCRP" or "Pool"), initiated suit in May 2007 to recover the massive damages caused by AIG's historic, systematic, and admitted intentional underreporting of workers compensation premium.  Without any valid defense to its own admitted wrongdoing, AIG responded to NCCI's complaint in February 2008 by asserting third-party claims against members of the NWCRP Board of Governors (the "Pool Board Members"), and against certain insurance carriers that, according to AIG, also underreported workers compensation premium.

On February 23, 2009, this Court issued the Dismissal Order, striking AIG's RICO and conspiracy claims and expressly cautioning AIG not to re-plead its RICO claims unless it could do so without violating Rule 11.  (Dismissal Order, 30.)  At the conclusion of the Dismissal Order, the Court stayed these proceedings to resolve AIG's motion to dismiss NCCI's case for lack of standing.  (*Id.* 39.)  On August 20, 2009, the Court granted AIG's motion to dismiss NCCI's complaint, and lifted the stay.  (Dkt. 475.)  With the stay lifted, AIG filed a new pleading on September 25, 2009, which AIG titled First Amended Complaint.  (Dkt. 491.)  A Corrected First Amended Complaint was filed on October 16, 2009.  (Dkt. 502.)  Like its Third-Party Complaint, AIG's Amended Complaint asserts claims for violations of RICO, RICO conspiracy and civil conspiracy, breach of fiduciary duty and unjust enrichment.  And like the

---

[2] Defendant Sentry Insurance Mutual Company ("Sentry") joins in this motion only with respect to AIG's claim for unjust enrichment.

Third-Party Complaint, the Amended Complaint's statement of these claims remains fatally

defective, and accordingly, such claims should be dismissed with prejudice.

## STATEMENT OF FACTS[3]

The NWCRP is part of the workers compensation residual market, which ensures that

workers compensation insurance is made available to those employers that cannot obtain

insurance through ordinary means in the voluntary market.  (AC ¶¶ 55-57.)  Within this

mandated residual market structure, the NWCRP facilitates the provision of insurance coverage

by apportioning the residual market obligations among the companies operating within a given

state.  (*Id.* ¶ 57.)  Each Participating Company's share of the residual market is based on the

company's proportionate share of voluntary market workers compensation premium on a state-

by-state and year-by-year basis.  (*Id.* ¶¶ 56-63.)  Simply put, the more premium a Participating

Company reports for a given state and calendar year as a percentage of the entire premium for a

state and year, the larger that company's share of the obligations for the residual market exposure

for that state and year.  The less premium reported, the smaller the company's share of such

obligations.  (*Id.* ¶ 65.)

In 2005, the New York Attorney General and the New York Department of Insurance

(the "New York Authorities") disclosed an investigation into AIG's business practices, including

AIG's underreporting of workers compensation premium.  (*Id.* ¶ 2.)  The investigation

culminated in a $1.4 billion settlement agreement, which included the creation of a $300 million

fund (the "Workers Compensation Fund" or "Fund"), established "for the express and sole

purpose of providing recompense to third parties allegedly injured as a consequence of AIG's

alleged underreporting."  (*Id.* ¶¶ 2.)  The settlement agreement "included a specific release

---

[3] The facts set forth herein are taken from the Amended Complaint and, to the extent well-pled, are assumed to be true solely for purposes of this Motion to Dismiss.

agreement approved by the New York Authorities through which each participating state could release claims on behalf of that state's 'Workers Compensation Residual Market Pool(s)' in exchange for the state's collecting from the Fund on the [sic] behalf of those pools."  (*Id.* ¶ 75.) The NWCRP Board of Governors ("Pool Board") elected not to participate in the Fund[4] and notified certain states that the states were not authorized to execute releases on behalf of the NWCRP or the Participating Companies.  (*Id.* ¶¶ 6, 96.)  Following rejection of the Fund, the Participating Companies, through NCCI as their attorney-in-fact, filed suit against AIG to recover damages for all of AIG's underreporting.

AIG responded to that suit by suing the Pool Board Members as third-party defendants, alleging that each was generally aware of underreporting within the industry and that the Pool Board had therefore improperly allocated inflated residual market losses to AIG.  AIG now alleges instead that only the four RICO Defendants were "aware of … the underreporting by the other" RICO Defendants.  (*Id.* ¶ 159.)  In an attempt to support this new but conclusory allegation of shared knowledge among the RICO Defendants, AIG refers – as it did in the Third-Party Complaint (*see* Third-Party Complaint ¶¶ 69, 72-73) – to three reports that address various issues concerning the workers compensation market.  (*See* AC ¶ 66, 68-69.)  AIG does not, however, allege that any of these reports addressed or identified any underreporting of workers compensation premium by any Pool participant, or that any of these reports was read by the RICO Defendants before the filing of AIG's Third-Party Complaint in 2008.  (*See id.* ¶¶ 66-69.)

Based on its new, conclusory assertion that each RICO Defendant "was aware of its own underreporting and also was aware of the underreporting by the other" RICO Defendants, (*id.*

---

[4] AIG does not (and cannot) allege that any of the Pool Board Members, or any other Participating Company (other than those affiliated with AIG) were parties to or bound by the settlement that established the Fund, played any role in the settlement that established the Fund, played any role in the settlement negotiations between AIG and the New York Authorities, or participated in any fashion in the creation of the Fund.

¶ 159), AIG contends that the RICO Defendants, acting in concert and through the Pool Board, directed NCCI to "abandon its standard administrative practices on behalf of the Pool," (*id.* ¶¶ 9, 110), failed to investigate "underreporting by the Underreporting Pool Board Members (and, indeed, any company other than AIG), despite being aware of evidence … that warrants investigation," (*id.* ¶¶ 7, 99, 108), directed NCCI to issue inaccurate quarterly statements, (*id.* ¶¶ 8, 109), and rejected participation in the Fund.  (*Id.* ¶ 171.)

AIG makes these allegations even though, as AIG admits, not all of the RICO Defendants were on the Pool Board during the 2005-2007 time period when much of the alleged conduct occurred.  (*Id.* ¶ 82.)  For example, AIG admits that Liberty was not on the Board in 2005 when the alleged RICO scheme was supposedly "hatched" (*id.* ¶¶ 3, 79), admits that Travelers was not on the Board during 2006 and 2007 when much of the alleged fraud and conspiracy occurred (*id.* ¶ 85), and has failed to allege *any* facts about ACE's participation on the Board.  The allegations in the Amended Complaint also show that the four RICO Defendants never constituted a majority of the Pool Board during any of the years at issue because the Pool Board at all relevant times was comprised of twelve non-affiliated Participating Companies.  (*Id.* ¶ 78; *see also* Articles of Agreement ("Articles"), attached hereto as Exhibit 1.)[5]  Yet AIG contends that a majority of the twelve-member Board and the hundreds of other Participating Companies ignored their own economic self-interests by allowing four companies to control the Board and conduct the operations of the Pool as a racketeering enterprise.  (*Id.* ¶ 81.)

_____

[5] The Articles are properly attached to this motion and may be considered by the Court because AIG has asserted a claim for breach of the Articles (Count Seven) and the Articles are "central" to AIG's claims. (*See, e.g. id.* ¶¶ 58-62, 108, 148-49, 153, 207-12.)  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-432 (7th Cir. 1993) (documents that are attached to a motion to dismiss by a defendant become part of the pleadings and can be considered for a 12(b)(6) motion to dismiss if such documents were "referred to in the plaintiff's complaint and are central to her claim").

**ARGUMENT**

The modifications AIG made to its Third-Party Complaint do not cure the numerous defects in that original pleading.  The Amended Complaint still fails to plead RICO, RICO conspiracy, or civil conspiracy with the specificity required by the rules and does not present a plausible theory of liability.  On the contrary, AIG's modifications to the initial complaint make the allegations against the four RICO Defendants even more implausible than the original allegations.  For the reasons set forth herein, the Amended Complaint also fails to state a valid claim for breach of fiduciary duty or unjust enrichment.

## I.  STANDARD FOR MOTION TO DISMISS

As this Court explained in the Dismissal Order, the "purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits."  (Dismissal Order, 22.)  While the well-pled allegations in a complaint and the reasonable inferences drawn therefrom are to be accepted as true for purposes of a motion to dismiss, the Supreme Court recently explained that to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). *See also, e.g., Brown v. Burnette*, No. 09 C 0011, 2009 WL 3055361, at *1 (N.D. Ill. Sept. 18, 2009)[6] (Gettleman, J.), *quoting Brooks v. Ross*, 578  F.3d 574, 581 (7th Cir. 2009) ("some factual allegations [may] be 'so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claims.'").

Following *Twombly*, the Supreme Court clarified in *Iqbal* that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  129 S. Ct. at 1949.  Thus, "conclusory" allegations are not entitled to "the presumption of truth."  *Id.*

---

[6] Cases published exclusively in electronic format have been attached hereto as Exhibits 2 – 5.

at 1951; *see also, e.g. id.* at 1954 (the "Federal Rules do not require courts to credit a

complaint's conclusory statements without reference to its factual context"); *Cooney v. Rossiter*,

--- F.3d ---, No. 08-3675, 2009 WL 3103998, at *2 (7th Cir. Sept. 30, 2009) ("bare allegation of

conspiracy was not enough to survive a motion to dismiss for failure to state a claim") .

Moreover, "only a complaint that states a *plausible claim for relief* survives a motion to

dismiss." *Iqbal*, 129 S. Ct. at  1950 (emphasis added); *see also, e.g., Cooney*, 2009 WL

3103998, at *3 (recognizing a "high standard of plausibility" in pleading certain types of

litigation, including claims of conspiracy); *Meier v. Musburger*, No. 08 C 216, 588 F.Supp. 2d

883, 897-98 (N.D. Ill. 2008) (applying *Twombly's* "plausibility" requirement to RICO claim).

As explained below, AIG's claims for RICO, RICO conspiracy, civil conspiracy, breach of

fiduciary duty and unjust enrichment do not survive this pleading standard.

## II.      AIG'S RICO CLAIM – COUNT 1 – FAILS TO STATE A CLAIM.

### A.      AIG's RICO Allegations.

To state a viable claim under Section 1962(c), a plaintiff must allege "(1) conduct (2) of

an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge

Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (citation and quotations omitted).  Those

elements must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

(Dismissal Order, 27.)  *See also, e.g., Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL

1543709, at *4 (N.D. Ill. May 29, 2009) (Gettleman, J.).  In order to plead a pattern of

"racketeering activity," a plaintiff must allege at least two predicate acts of racketeering

committed within a ten-year time period.  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th

Cir. 1998).  In the present case, AIG alleges predicate acts of putative mail and wire fraud and

deprivation of "honest services" fraud.  (AC ¶¶ 156, 161, 168.)

The mail fraud statute, 18 U.S.C. § 1341, "criminalizes the use of the mails for carrying out a 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'"  *U.S. v. Sorich*, 523 F.3d 702, 707 (7th Cir. 2008) (quoting 18 U.S.C. § 1341).  There are three elements necessary to sustain a charge of mail fraud under Section 1341:

> First, that the defendant knowingly participated in the scheme to defraud . . .; second, that for the purpose of carrying out the scheme or attempting to do so, the defendant used the United States mails or caused the United States mails to be used in the manner charged in the particular count; and third, that the defendant did so knowingly and with intent to defraud.

*U.S. v. Hartmann*, 958 F.2d 774, 781 (7th Cir. 1992) (citation omitted).  The elements of wire fraud under 18 U.S.C. § 1343 "directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme."  *U.S. v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006) (citation and quotations omitted).

"Honest services" fraud is a species of federal mail and wire fraud wherein the term "scheme or artifice to defraud" is defined to include a "scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.  To sustain a charge of honest services fraud, the plaintiff must allege the use of the United States mail or wires to effect a "[m]isuse of office (more broadly, misuse of position) for private gain."  *U.S. v. Bloom*, 149 F.3d 649, 655 (7th Cir. 1998).  Importantly, these alleged acts of mail and wire fraud require "participation in a scheme to defraud with intent to defraud."  (Dismissal Order, 27-28.)

In its original Third-Party Complaint ("TPC"), AIG asserted a RICO claim against twenty-one past and present Pool Board Members, alleging that the Pool Board Members conducted the affairs of the Pool through a pattern of racketeering activity.  (TPC ¶ 118.)  In particular, AIG contended that the Pool Board Members deprived AIG of honest services, by

permitting NCCI to issue false invoices and accept funds paid in reliance of those false invoices, failing to direct NCCI to investigate and sue other alleged underreporters, and electing not to have the Pool participate in the Fund.  (*Id.* ¶¶ 128, 143, 146.)  In the Amended Complaint, AIG makes slight modifications to the words describing this alleged conduct, but the gist of the allegations remains largely unchanged.  Indeed, apart from limiting the allegations to the four RICO Defendants (as opposed to accusing all twenty-one Pool Board Members), the alleged conduct underlying AIG's RICO claims remains virtually identical.  (*See* AC ¶¶ 155, 171.)

As explained below, AIG's RICO claim remains subject to dismissal for the same reasons that were presented in the Third-Party Defendants' motion to dismiss the Third-Party Complaint. The Court dismissed the RICO claim as originally pled for failure to properly alleged collective knowledge of underreporting.  AIG has not cured that pleading defect.  Moreover, in the Dismissal Order, the Court cautioned AIG that the Pool Board Members had raised "numerous meritorious arguments in support of their motion to dismiss . . . that [AIG] should consider in filing an amended" pleading.  (Dismissal Order, 30 n.12.)  Those additional arguments remain "meritorious" despite the modest changes AIG has made to its pleading.

### B.    AIG's RICO Claim Suffers Numerous Incurable Deficiencies that Warrant Dismissal.

As explained below, AIG's RICO claim is defective in at least seven critical ways.  These defects cannot be cured, and the Court should dismiss AIG's Count One, in its entirety, with prejudice.

### 1.    AIG's Allegations of Knowledge Remain Insufficient.

This Court dismissed AIG's original RICO claim because AIG had not alleged facts that could support a reasonable inference that the Pool Board Members knew of each other's premium underreporting.  (Dismissal Order, 28-29.)  Although AIG added a naked, conclusory

allegation that each of the four RICO Defendants "was aware of the underreporting by the other[s]," (*see* AC ¶ 159), AIG has not provided *any* factual allegations in support of this contention, and therefore has not cured the prior pleading defect.

Participation in a "scheme to defraud" with an "intent to defraud" is an element of both mail and wire fraud, and of "honest services" mail and wire fraud under 18 U.S.C. Section 1346. (Dismissal Order, 27-28 (citations omitted).)  In its Amended Complaint, AIG alleges that the RICO Defendants *jointly* participated in several "schemes to defraud." (*See, e.g.,* AC ¶ 109 (alleging "conspir[acy]" to send allegedly false invoices to AIG); *id*, ¶ 158 (purporting to identify the RICO Defendants' joint schemes to defraud); *id.*, ¶ 159 (alleging joint effort in causing the Pool's agent to issue false invoices to AIG and other companies); *id.*, ¶ 171(a) (alleging joint effort to block an investigation of underreporting by others)).  Underlying these allegations is the assumption that each of the RICO Defendants was aware of the alleged underreporting by the other alleged underreporters.  Indeed, the RICO Defendants could not have acted in concert in furtherance of the alleged activity without possessing knowledge of each other's underreporting.  (Dismissal Order, 28-29.)

Although such knowledge need not be pled with particularity, the complaint must still "allege facts from which it could be inferred that the defendants engaged in the scheme with fraudulent intent."  (Dismissal Order, 28 (citation omitted).)  *See also, e.g., Iqbal*, 129 S. Ct. at 1954 (while Rule 9(b) permits malice, intent, knowledge and other conditions of a person's mind to be pled generally, the rule "does not give [plaintiff] license to evade the less rigid – though still operative – strictures of Rule 8").)  It is well-established that conclusory allegations of knowledge or intent will not suffice to survive a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1951; *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990).  AIG's Amended Complaint

fails to satisfy this standard.  Indeed, AIG relies on the same three industry reports that this Court has already found to be an insufficient basis from which to infer widespread knowledge of premium underreporting.  (*See* AC ¶¶ 66-71; *see also* Dismissal Order, 29 (rejecting contention that such reports support an inference of widespread underreporting).)

AIG did include the following conclusion in the Amended Complaint, which was absent in the Third-Party Complaint:  "Each of the Underreporting Pool Board Members knew these invoices were false because each was aware of its own underreporting and also was aware of the underreporting by the other Underreporting Pool Board Members."  (AC ¶ 159; *see also id.* ¶ 99 (alleging similar conclusion that the "Pool Board is aware that other Participating Companies incorrectly reported premium")).  But AIG offers no facts from which one could reasonably infer that any of the RICO Defendants had knowledge of each other's alleged underreporting. Pleading such conclusions, without facts to support them, is precisely what the Supreme Court prohibited in *Iqbal*, 129 S. Ct. at 1949, *quoting Twombly*, 127 S. Ct. at 1966 ("[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'"); *Robin*, 915 F.2d at 1127 (affirming dismissal of complaint alleging that accounting firm "had knowledge that [a] prospectus was false and misleading and intentionally aided and abetted the primary violators" on the grounds that these statements were merely "rote conclusions").

AIG's conclusory, unsupported allegation that the RICO Defendants knew of each other's underreporting cannot save the RICO claim from dismissal.  For the reasons set forth in the Dismissal Order, AIG's RICO claim should be dismissed.

**2.     AIG Fails to Allege Fraud with the Specificity Required by Rule 9(b) by Improperly "Lumping" the Defendants.**

The Court should also dismiss Count One of the Amended Complaint because, in violation of Rule 9(b), the Amended Complaint fails to allege particularized facts sufficient to

notify each defendant of the claims asserted against it.  A complaint grounded in a fraud claim

must "allege the 'who, what, when, where and how' of the fraud."  (Dismissal Order, 23 (quoting

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).)  *See also Slaney v. The Int'l*

*Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001) ("a RICO plaintiff must allege the

identity of the person who made the representation, the time, place and content of the

misrepresentation, and the method by which the misrepresentation was communicated to the

plaintiff").  In a case involving multiple defendants, a plaintiff must further allege "sufficient

facts to notify *each* defendant of its alleged participation in the scheme."  (Dismissal Order, 28

(citing *Goren*, 156 F.3d at 726) (emphasis added).)  In other words, "[t]he complaint should not

lump multiple defendants together, but should 'inform each defendant of the specific fraudulent

acts that constitute the basis of the action against the particular defendant.'"  *Suburban Buick,*

2009 WL 1543709 at *4 (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771,

778 (7th Cir. 1994)).

        The Seventh Circuit has repeatedly "rejected complaints that have 'lumped together'

multiple defendants."  *Vicom*, 20 F.3d at 778; *accord Goren*, 156 F.3d at 730 ("'lumping

together' of defendants is clearly insufficient to state a RICO claim under § 1962(c)"); *Sears v.*

*Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint with prejudice

because complaint was "bereft of any detail concerning who was involved in each allegedly

fraudulent activity" and instead "lump[ed] all the defendants together and [did] not specify who

was involved in what activity"); *Suburban Buick*, 2009 WL 1543709 at *4 (dismissing RICO

claims where amended complaint broadly referred to "Defendants" and therefore failed to put

each of the four defendants sufficiently "on notice of the conduct alleged").

In its Amended Complaint, AIG alleges that the Pool Board was the mechanism by which the RICO Defendants dominated and controlled the enterprise – the Pool – in order to carry out a pattern of racketeering activity that consisted of various acts of mail and wire fraud and honest services fraud spanning the period from 2005 to the present.  (AC ¶¶ 144-75.)  But the Amended Complaint does not identify which particular RICO Defendant is alleged to have been involved in which particular act or acts of fraud.  In fact, AIG simply "lumps all the defendants together and does not specify who was involved in what activity," *Sears*, 912 F.2d at 893, making it impossible to determine which specific fraudulent acts constitute the basis of AIG's claims against which of the RICO Defendants.  (*See, e.g.,* AC ¶¶ 155, 171 (detailing the alleged fraudulent conduct in furtherance of the scheme without any attempt to specify the particular involvement of any of the four RICO Defendants)).  As the Court observed in *Suburban Buick*, "[t]his style of pleading is wholly inadequate to put defendants on notice of the conduct alleged." 2009 WL 1543709 at *4.

AIG's failure to plead its allegations of fraud with particularity is especially egregious in this case because, as AIG concedes, the four RICO Defendants did not all serve on the Pool Board (the alleged mechanism for perpetrating the fraud) at the same time, or during all of the years that the alleged fraudulent conduct occurred.  (*See* AC ¶¶ 3, 79, 85, 159.)  Given the shifting composition of the Pool Board, AIG's blanket assertions that all of the alleged fraudulent activity is attributable to the RICO Defendants as a collective unit fails to provide the specificity required by Rule 9(b).  That failure is fatal to AIG's mail and wire fraud and honest services fraud claims, and mandates dismissal of AIG RICO claim.  *Sears*, 912 F.2d at  893; *Suburban Buick*, 2009 WL 1543709 at *4-5.

### 3.   AIG Fails to Plead Facts to Support the Conclusion that the RICO Defendants "Controlled" the Other Pool Board Members.

In its Third-Party Complaint, AIG contended that "each of the Pool Board Members" – that is, all twenty-one of the defendants named in AIG's initial RICO pleading – "played a *co-equal* role on the Pool Board and a *co-equal* part in directing the fraudulent schemes conducted through the Pool Board and NCCI."  (Third-Party Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss the Third-Party Complaint, Dkt. No. 307, at 34 (emphasis added).) AIG now contends just the opposite, that a majority of the Pool Board – the four RICO Defendants – "dominated and controlled" the other members of the Pool Board.  (AC ¶ 4; *see also, e.g., id.* ¶¶ 81-93.)  Having alleged such control, AIG was required to plead facts to support it.  *See, e.g., Meier v. Musburger*, 588 F. Supp. 2d 883, 889 (N.D. Ill. 2008) (citation omitted) ("[t]o conduct or participate in the conduct of an enterprise's affairs through a pattern of racketeering activity requires 'some degree of direction,' so that the person charged to have conducted or participated in the enterprise's affairs within the meaning of § 1962(c) must have had some part in directing those affairs"); *see also Schrag v. Dinges*, 150 F.R.D. 664, 675 (D. Kan. 1993) (finding that defendant who sat on the board of the alleged enterprise and was a member of its executive committee, but controlled only 35.4% of enterprise's stock, did not sufficiently control enterprise for purposes of RICO claim), *negative treatment on other grounds*.

AIG, however, provides no more factual support for its new "domination" and "control" claim than it did for its earlier, contrary claim that all of the Pool Board Members played a "co-equal part in directing the fraudulent schemes conducted through the Pool Board and NCCI." (Dkt. No. 307, at 34.)  In fact, AIG actually alleges facts that directly undermine the conclusion that the RICO Defendants "dominated" and "controlled" the Board.  As AIG admits, no more than three of RICO Defendants sat on the twelve-member Board at any one time.  (*See* AC ¶ 82;

*see also* Articles, Ex. 1, 14 at ¶ 1.)  AIG does not provide any facts to support the conclusion that

this minority managed to "dominate" the nine other Pool Board Members such that they

willingly acted against their own economic self-interest.  Courts regularly dismiss claims in such

circumstances.  *See, e.g., Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557) ("[w]here

a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief' '"); *Brooks v. Ross*, 578 F.3d

574, 581 (7th Cir. 2009) (granting motion to dismiss where the "behavior [plaintiff] has alleged

that the defendants engaged in is just as consistent with lawful conduct as it is with

wrongdoing").

AIG's conclusory allegation of "control" of the enterprise, without any well-pled facts to

support it, fails to state a viable claim.  This failure provides an additional basis for dismissal of

AIG's RICO claim.

### 4.      AIG's RICO Claim is Implausible On its Face.

Given the lack of facts to support AIG's allegation of "domination" and "control," AIG's

RICO claim against the four RICO Defendants is also implausible on its face.  AIG's current

theory is that a majority of the Pool Board Members, "acceding to the [RICO Defendants], have

suppressed any investigation of underreporting by the [RICO Defendants] (and, indeed, any

company other than AIG), *despite being aware of evidence described herein that warrants

investigation*."  (AC ¶ 7 (emphasis added).)  This theory requires the Court to accept the

conclusion that the majority of the Pool Board Members, which AIG does not accuse of

underreporting, agreed to subvert their own economic self-interest by allowing the RICO

Defendants to avoid investigation of or punishment for their alleged underreporting.  AIG has

not explained how any of the non-alleged underreporting Pool Board Members would have had

any incentive to "accede" to the wishes of the four RICO Defendants.  It is similarly implausible

that the RICO Defendants could have forced the other Pool Board Members to "collusively agree" not to participate in the Fund.  (*Id.* ¶ 6.)  Rather, the Pool Board Members would have had every incentive to participate in the Fund if it was adequate.  That the non-alleged underreporting Pool Board Members would go along with the supposed schemes *against their own economic interests* is not only implausible, it is simply incredible.  Binding case law requires dismissal of such claims.  *See e.g., Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (complaint "must have some degree of plausibility to survive dismissal"); *Car Carriers Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1110 (7th Cir. 1984) (the "court is not required to don blinders and to ignore commercial reality").  Accordingly, the Court should dismiss Count One as implausible.

> **5.     AIG's Allegations Are Insufficient to State a Claim for Violation of Federal Mail and Wire Fraud Statutes With Respect to the Alleged Rejection of the Fund.**

AIG asserts that the RICO Defendants deprived AIG of the intangible right to honest services, a violation of 18 U.S.C. Section 1346, by "[b]lock[ing] the Pool from participating in the Workers Compensation Fund, so as to cause financial and reputational harm to AIG."  (AC ¶ 171(c).)  In this Circuit, a deprivation of honest services requires "[m]isuse of office (more broadly, misuse of position) for private gain."  *Bloom*, 149 F.3d at 655; *see also U.S. v. Thompson*, 484 F.3d 877, 882 (7th Cir. 2007).  In evaluating these requirements, the Seventh Circuit has placed very clear limits on the reach of Section 1346 to ensure that every alleged breach of a fiduciary duty does not become federal mail fraud "just because the mails are used in the process."  *Bloom*, 149 F.3d at 654.

To support its honest services claim, AIG points to two letters, from the Pool and Liberty respectively, by which state regulators were notified that the states were not authorized to release claims belonging to Participating Companies.  (*Id.* ¶¶ 96-97.)  However, the letter sent by Liberty

in its individual capacity cannot be used to support a RICO claim against the RICO Defendants.

(*Id.* ¶ 97.)  And neither letter comes close to constituting the type of conduct the Seventh Circuit

considers a deprivation of honest services.  *See, e.g, United States v. Sorich*, 523 F.3d 702 (7th

Cir. 2008) (upholding honest services conviction of Chicago city department manager who

helped create a "shadow hiring scheme based on patronage and cronyism by filling out sham

interview forms, falsely certifying that politics had not entered into their hiring, and covering up

their malfeasance"); *United States v. Fernandes*, 272 F.3d 938 (7th Cir. 2001) (upholding honest

service conviction of Indiana prosecutor who accepted bribes in exchange for expungements).

The Court should therefore dismiss AIG's claims relating to the "blocking" of the Fund on this

basis alone.  The claims should also be dismissed because AIG has not properly pled either a

misuse of position or private gain, the two necessary elements of an honest services claim.

*Bloom*, 149 F.3d at 655.

First, there is no allegation of misuse of position because sending the letters "is just as

consistent with lawful conduct as it is with wrongdoing."  *Brooks*, 578 F.3d at 581.  Under

*Twombly*, allegations of conspiracy are subject to dismissal where the alleged conduct is

"consistent with conspiracy, but just as much in line with a wide swath of rational and

competitive business strategy unilaterally prompted by common perceptions of the market."

*Twombly*, 127 S. Ct. at 1964; *see also Iqbal*, 129 S. Ct. at 1949.  Here, the text of the letters

supports only one reasonable conclusion:  that the authors were unwilling to release valuable

claims against AIG by accepting the terms of a settlement they played no part in negotiating, and

to which they were not parties.[7]  Sending letters notifying the states not to release claims against

---

[7] It is, of course, axiomatic that a party is not bound by a settlement agreement to which it was not a party.
*See*, *e.g., City of Syracuse v. Williams*, 45 A.D.3d 1491, 1492 (N.Y. App. Div. 2007).

AIG was not misuse of position, it was "rational and competitive business strategy." *Twombly*, 127 S. Ct. at 1964.

Moreover, the RICO Defendants had a fundamental legal right to seek redress for the true amount of damages caused by AIG's underreporting of workers compensation premium. *Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir. 1997) ("[i]t is well established that all persons enjoy a constitutional right of access to the courts."). Under the *Noerr-Pennington* doctrine, those harmed by AIG's underreporting had a right to petition the government – including filing a lawsuit against AIG – even if the result of the petitioning activity was to harm the interests of AIG. *See Tarpley v. Kiestler*, 188 F.3d 788, 794 (7th Cir. 1999). In order to recover under the Fund, the Participating Companies (through the states in which the NWCRP operated) would have had to release their claims against AIG. (AC ¶ 75.) The RICO Defendants thus had a choice – either accept the terms of the Fund and allow Participating Companies' claims to be released, or reject the Fund and pursue AIG for damages. To preserve the right to sue, the RICO Defendants were required to reject the Fund, including notifying states that they were not authorized to release Participating Companies' claims. The RICO Defendants' alleged conduct in this regard was protected by the *Noerr-Pennington* doctrine, and thus cannot be a "misuse of position."

Second, AIG has not alleged any "private gain" associated with the decision not to participate in the Fund. *See Bloom*, 149 F.3d at 655. "[P]rivate gain" in the context of an honest services violation has been defined as "illegitimate gain, which usually will go to the defendant, but need not." *Sorich*, 523 F.3d at 709; *see also Thompson*, 484 F.3d at 884 (the "history of honest-services prosecutions is one in which the 'private gain' comes from third parties who suborn the employee with side payments, often derived via kickbacks skimmed from a public

contract"). Here, AIG does not allege that the RICO Defendants received any side payments, kickbacks, or, in fact, *any* private gain relating to their decision to reject the Fund. Indeed, while AIG (conclusorily) contends that it suffered "financial and reputational harm" as a result of the RICO Defendants' rejection of the Fund, (AC ¶ 171(c)), AIG does not allege that the RICO Defendants privately gained as a result. AIG's failure to plead this required element of an honest services violation necessarily defeats its Section 1346 claim.

The conduct AIG alleges – rejection of the Fund and notification to states not to release claims against AIG – is simply not conduct that supports a claim of deprivation of honest services. Moreover, the Amended Complaint does not adequately plead either of the requirements for such a claim. Accordingly, the Court should dismiss the RICO claim to the extent it relates to the RICO Defendants' rejection or "blocking" of the Fund.

### 6. AIG Cannot State a Claim Based on the Alleged Failure to Investigate or File Lawsuits Against Companies Other Than AIG.

AIG's RICO claim also fails to the extent it is premised on the RICO Defendants' alleged failure to direct NCCI or the Pool to investigate underreporting by the RICO Defendants or other companies, or to file lawsuits against those companies for alleged underreporting. (AC ¶¶ 155 (d)-(e) & 171(a)-(b).) AIG cannot state a viable RICO claim based on the failure to investigate or sue where this Court has previously agreed with AIG that neither NCCI nor the Pool has standing to bring a lawsuit against an underreporting company.

AIG moved to dismiss the original complaint in this action for lack of subject matter jurisdiction, arguing that NCCI did not have standing to sue AIG "for injuries alleged to have been suffered only by the participating companies of the [Pool]." (Defendants' Memorandum of Law in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. 409, at 1.) AIG posited the following arguments in support of its motion:

- "[A]n attorney-in-fact does not have Article III standing to pursue its principal's claims because it does not have legal title to, or a property interest in, those claims . . . . [This] deficiency could not be cured if the Pool were joined as a plaintiff." (*Id.*)

- The Pool could not sue on its own behalf because "[a]s with NCCI, the Complaint does not contain – nor could it contain – allegations that the Pool has suffered any injury arising from the Defendants' alleged underreporting of workers compensation premium." (*Id.*)

- The Pool could not sue on behalf of the Participating Companies because the Pool "is simply not the type of 'association' or 'organization' that represents its members' collective interests and that therefore may possess associational standing." (*Id.*, 2.)

- The Pool's "purpose is *not* to represent the Participating Companies' interest as to third parties." (*Id.*, 12 (emphasis in original); *see also id.*, 10 (the Pool "is merely a collection of contracts that comprise a reinsurance mechanism, not an 'organization' or 'association' that asserts its members' collective interests"); *id.*, 11 ("the Pool is not an association designed to represent its members' interest"); *id.*, 12 ( "[a]t best, then, the Pool is a bystander in what is really a dispute among the Participating Companies").)

The Court ultimately agreed with AIG, granting AIG's motion to dismiss for lack of subject matter jurisdiction. (Dkt. 475, 17.) The Court found that NCCI does not have constitutional standing to pursue a claim against AIG as attorney-in-fact for the Participating Companies, and that the Pool, if joined as a plaintiff, would also lack standing to bring suit on behalf of the Participating Companies. (*See id.*, 3, 14-15.)

Having argued, successfully, that the Pool's purpose is "not to represent Participating Companies' interests as to third parties," and that neither NCCI nor the Pool has standing to sue AIG for underreporting, AIG cannot now contend that the Pool or the Pool Board should have (or even could have) pursued claims against other alleged underreporters. It is well established that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him" *New Hampshire v. Maine*, 532 U.S. 742, 749 (U.S. 2001). AIG

simply cannot have it both ways:  it cannot claim that the Pool was not designed to represent its members' interests and lacked standing to pursue AIG, and then turn around and assert legal claims for failure to do precisely that.  Thus, AIG's RICO claims premised on the alleged failure to investigate or sue other Participating Companies should be dismissed.

> **7.     AIG Fails to Plead Any Use of Mail or Wires With Respect to the Alleged Failure to Investigate or File Lawsuits Against Companies Other Than AIG.**

Finally, AIG's RICO claim fails to the extent it is premised on the RICO Defendants' alleged failure to investigate or file lawsuits against companies other than AIG because there is not a single allegation that any of the RICO Defendants ever used the mails or wires in furtherance of the allege scheme to prevent the Pool Board from investigating or suing non-AIG Participating Companies for underreporting.  Accordingly, AIG's contention that the RICO Defendants failed to investigate or file lawsuits against companies other than AIG cannot support a viable claim for federal mail or wire fraud.  *See Am. Auto Accessories, Inc. v. Fishman*, 175 F.3d 534, 542-43 (7th Cir. 1999) (a mail or wire fraud claim requires plaintiff to allege "that he used the mails or interstate wires in furtherance of that scheme"); *see also, e.g., Meier v. Musburger*, 588 F. Supp. 2d 883, 905 (N.D. Ill. 2008) (emphasis added) ("Rule 9(b) requires that a RICO plaintiff must allege the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.  *Each alleged use of the mails or wires must satisfy the requirements of Rule 9(b)*.") (internal citations omitted).

*          *          *

For all of the reasons set forth above, AIG's RICO claim is defective, and the Court should dismiss Count One of the Amended Complaint, in its entirety, with prejudice.

### III.      AIG'S RICO CONSPIRACY CLAIM – COUNT 2 – FAILS TO STATE A CLAIM.

The Court should dismiss Count Two of the Amended Complaint with prejudice because AIG's RICO conspiracy claim "is based on the same facts alleged in their section 1962(c) claim." (Dismissal Order, 31.) As this Court previously held, "because AIG has failed to state a claim under 1962(c), its RICO conspiracy claim is also deficient." (*Id.*) *Accord Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) ("[s]ince Appellants fail to establish a violation of section 1962(c), their section 1962(d) claim based on the same facts must fail as well").

Count Two should also be dismissed because AIG has failed to plead sufficient facts to infer an agreement to engage in racketeering activity among the RICO Defendants. (Dismissal Order, 30 ("plaintiff must allege that the defendant *agreed* to commit an actionable RICO violation") (emphasis added).) The Seventh Circuit has held that the *agreement* to conspire is "the touchstone of liability" under Section 1962(d). *Goren*, 156 F.3d at 732. A complaint for RICO conspiracy must therefore allege "(1) that *each defendant agreed* to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that *each defendant further agreed* that someone would commit at least two predicate acts to accomplish those goals." *Id.* (emphasis added). Conclusory allegations of a "conspiracy" are not sufficient to state a claim under Section 1962(d). *Id.* at 733; *see generally Twombly,* 550 U.S. at 556 (a complaint alleging conspiracy must allege facts that infer conspiracy instead of mere "parallel conduct and a bare assertion of conspiracy").

In this case, AIG's only allegations regarding the agreement to conspire to commit RICO violations are threadbare conclusions that lack any factual support. (*See, e.g.,* AC ¶ 177 ("[e]ach of the Underreporting Pool Board Members agreed to conspire to violate 18 U.S.C. § 1962(c)"); *id.* ¶ 178 ("[e]ach of the Underreporting Pool Board Members agreed that at least two of the

predicate acts of mail and wire fraud would be committed in furtherance of the common purpose of the enterprise").  The Amended Complaint contains no factual allegations regarding who made the alleged agreement to violate RICO, or when or how that agreement was made.  There are simply no facts from which the Court could infer *any* agreement by *any* RICO Defendant to violate the RICO statute.  AIG's RICO conspiracy claim contains nothing more than "conclusory, vague and general allegations of a conspiracy" that are insufficient to state a claim under Section 1962(d).  *Goren,* 156 F.3d at 733; *accord Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 785 (7th Cir. 1999) (affirming dismissal of RICO conspiracy claim where complaint failed to allege "any facts indicating an act of agreement among the alleged conspirators or what roles the various defendants would play in the conspiracy" or "any specific allegation that the defendants agreed to the commission (by someone) of two specific predicate acts in furtherance of the alleged conspiracy").

Finally, Count Two is independently subject to dismissal for many of the reasons Count One is subject to dismissal, including:  (1) AIG's failure to plead a sufficient factual basis to infer knowledge of underreporting; (2) AIG's improper "lumping" of the RICO Defendants rather than specifying each individual defendant's role in the alleged conspiracy; (3) AIG's implausible claim that a small minority of the Pool Board successfully forced the clear majority of the Board to ignore the minority's underreporting and agree to the submission of false invoices against the minority's own economic interest; and (4) AIG's assumption of a position contrary to its prior assertion that the Pool's purpose is *not* to represent the Participating Companies' interests as to third parties.  Each of these four deficiencies separately warrants dismissal of AIG's Section 1962(d) claim.

## IV.    AIG'S CIVIL CONSPIRACY CLAIM – COUNT 3 – FAILS TO STATE A CLAIM.

In its Third-Party Complaint, AIG alleged a civil conspiracy among the Pool Board
Members to defraud AIG, breach fiduciary duties of loyalty and care to AIG, induce other Pool
Board Members to breach fiduciary duties, assist in the concealment of underreporting, and
maliciously impose financial and reputational harm on AIG.  (TPC ¶¶ 154-156.)  Apart from
limiting the allegations of civil conspiracy to the alleged underreporting Pool Board Members –
that is, the RICO Defendants – the civil conspiracy claim in the Amended Complaint remains
largely identical to the claim asserted in the original pleading.  (*Compare* TPC ¶¶ 154-64 *with*
AC ¶¶ 181-90.)  The Court dismissed AIG's claim for conspiracy in the Third-Party Complaint.
(Dismissal Order, 32.)  Because AIG has made no material changes to its civil conspiracy claim
in the Amended Complaint, the Court should again dismiss that claim.

Courts applying New York law[8] do not recognize civil conspiracy to commit a tort as an
independent cause of action.  *Ward v. City of N.Y.*, 15 A.D.3d 392, 393 (N.Y. App. Div. 2005).
Rather, allegations of conspiracy "are permitted only to connect the actions of separate
defendants with an otherwise actionable tort."  *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68
N.Y.2d 968, 969 (1986).  Moreover, "to survive a motion to dismiss, a complaint must contain
more than general allegations in support of the conspiracy.  Rather, it must allege the specific
times, facts, and circumstances of the alleged conspiracy."  *Brownstone Investment Group, LLC
v. Levey*, 468 F.Supp.2d 654, 661 (S.D.N.Y. 2007).

AIG's civil conspiracy claim fails for five distinct reasons.  First, a civil conspiracy claim
is properly dismissed where the torts underlying the claim are properly dismissed.  (Dismissal
Order, 32 ("where the torts underlying a civil conspiracy claim are subject to dismissal, the civil

---

[8] In the Dismissal Order, the Court held that New York law applies to AIG's state law third party claims.
(Dismissal Order, 32.)

conspiracy claim cannot withstand a motion for dismissal").) *Accord Salvatore v. Kumar*, 45 A.D.3d 560, 564 (N.Y. App. Div. 2007) (where an underlying cause of action is dismissed, a "cause of action to recover damages based on civil conspiracy [is] also properly dismissed"); *Ward*, 15 A.D.3d at 393. As set forth *supra* in Sections I and II and *infra* in Section V, the underlying torts at issue here – mail and wire fraud, honest services fraud, and breach of fiduciary duty – are all subject to dismissal. As a result, AIG cannot maintain a viable claim for civil conspiracy under New York law.

Second, AIG's conspiracy claim fails because AIG has not alleged sufficient facts to support a reasonable inference that the RICO Defendants entered into an agreement to harm AIG. As in the case of a RICO conspiracy claim, (*see* Section III *supra*), "[a] claim for civil conspiracy requires … 'proof of *an agreement* to engage in a common scheme or plan to deprive plaintiff of his property'" *Albion Alliance Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*, 797 N.Y.S.2d 699, 707 (Sup. Ct. 2003) (citations omitted) (emphasis added); *see also Truong v. AT&T*, 243 A.D.2d 278, 278 (1st Dept. 1997) (dismissing conspiracy claim for failure to show "any proof of an agreement to engage in a common scheme or plan"). Allegations that are "purely conclusory" will not suffice to meet this standard. *Portnoy v. The American Tobacco Co.*, No. 96/16323, 2-MG, 96-16324, 1997 WL 638800 at *7 (Sup. Ct. Sep. 26, 1997) (dismissing conspiracy claim where plaintiffs failed to sufficiently plead "the existence of an agreement"); *see also Brownstone*, 468 F. Supp.2d at 661 ("a bare conclusory allegation of conspiracy does not state a cause of action"). Here, the Amended Complaint contains *no* factual allegations regarding the specific times, facts, and circumstances of the alleged agreement to conspire. Absent such allegations, AIG's conspiracy claim contains nothing more than "conclusory" allegations that are insufficient to state a claim for conspiracy under New York

law.  (*See, e.g.,* AC ¶ 177 ("[e]ach of the Underreporting Pool Board Members agreed to conspire to violate 18 U.S.C. § 1962(c)"); *id.* ¶ 178 ("[e]ach of the Underreporting Pool Board Members agreed that at least two of the predicate acts of mail and wire fraud would be committed in furtherance of the common purpose of the enterprise").)

Third, AIG's civil conspiracy claim fails because AIG has not pled the fraud allegations that underlie the alleged conspiracy with the particularity required by Rule 9(b).  This Court has previously held that a conspiracy claim sounding in fraud must be pled with particularity. *Suburban Buick,* 2009 WL 1543709 at *11.  As a result, "[f]ailure to allege sufficiently the underlying fraud claim will result in dismissal of the conspiracy claim."  *Id.*  Indeed, the Court dismissed AIG's original conspiracy claim for precisely this reason, finding AIG had failed to plead "the fraud allegations that underlie the alleged conspiracy with the particularity required by Rule 9(b)."  (Dismissal Order, 32.)

Fourth, AIG's civil conspiracy claim should be dismissed because it is implausible on its face.  Indeed, for the reasons set forth *supra* in Section II(b)(4), and *infra* in Section V, AIG's conspiracy claim does not have the "degree of plausibility" required to avoid dismissal. *Limestone*, 520 F.3d at 803.

Finally, for the reasons set forth *supra* in Section, II(b)(6), and *infra* in Section V, AIG's civil conspiracy claim fails to the extent it is premised on the RICO Defendants' alleged failure to investigate or sue other underreporting companies.  (*See* Dkt. 475, 3, 14-15 (finding that neither NCCI nor the Pool has standing to pursue an action against AIG for underreporting).) The equitable doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749.

## V.      AIG'S BREACH OF FIDUCIARY DUTY CLAIM – COUNT 4 – FAILS TO STATE A CLAIM

To repeat the Supreme Court's recent admonition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  In Count Four of the Amended Complaint, AIG merely recounts the elements of a standard breach of fiduciary duties claim – existence of fiduciary duties, breach, damages – without providing *any* factual support for the allegations.  (AC,  ¶¶ 192-94.)  While AIG also "realleges and incorporates by reference" the prior paragraphs of its Amended Complaint, (*id.*, ¶ 191), those paragraphs do not provide the factual basis necessary to support a claim for fiduciary breach.  Indeed, Count Four of the Amended Complaint suffers from the same infirmities as do AIG's RICO and conspiracy claims.[9]  Although AIG contends that the Pool Board Members breached fiduciary duties in four separate ways, (*id.* ¶¶ 1, 193), none of these alleged fiduciary breaches can withstand scrutiny.

First, AIG alleges that the Pool Board Members "conspir[ed] to undermine and disable the Workers Compensation Fund."  (*Id.* ¶ 193(a).)  However, as explained in detail above, the allegations in the Amended Complaint – transmittal of letters notifying states not to release claims against AIG for its admitted underreporting –  are "in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 127 S. Ct. at 1964; *see also Iqbal*, 129 S. Ct. at 1949.  Without any well-pled facts to support a finding that the decision to reject the Fund was improper, AIG cannot state a claim for fiduciary breach for rejecting the Fund.  (*See* Section II, *supra.*)  Moreover, the *Noerr-Pennington* doctrine immunizes the Pool Board Members from the claim AIG now asserts

---

[9] In moving to dismiss AIG's breach of fiduciary duty claim, the RICO Defendants do not concede that there is, in fact, a fiduciary duty between the Pool Board and AIG and specifically reserve their rights with respect to the existence of such a duty.

because rejection of the Fund (with its required release) was necessary to maintain the right to sue AIG directly.  *See, e.g., Tarpley*, 188 F.3d at 794.  (*See also* Section II, *supra*.)

AIG's second claim – that the Pool Board Members "conspir[ed] to prevent NCCI from following its standard practices with respect to calculating AIG's residual market assessments" fails for the same reason.  (AC ¶ 193(b).)  This allegation stems from AIG's claim that the Pool Board Members directed NCCI to "ignore AIG's amended filings."  (*Id.* ¶ 111.)  Again, this conduct was protected by the *Noerr-Pennington* doctrine, which permitted the Pool Board Members to seek complete redress from AIG.  To preserve that right, the Pool Board Members necessarily had a right to reject AIG's attempt to file amended premium data.

Third, AIG claims that the Pool Board Members committed fiduciary breaches by "directing NCCI to engage in conduct inconsistent with its contractual obligations, including through disseminating false account statements."  (*Id.* ¶ 193(b).)  But, as explained above, there is no factual basis alleged in the Amended Complaint from which one could reasonably infer that the Pool Board Members, as a group, knew that Participating Companies other than AIG had allegedly underreported workers compensation premium.  Without such knowledge, the Pool Board Members could not have breached fiduciary duties by issuing invoices that AIG alleges were false.  Moreover, as previously explained, AIG's claim is implausible on its face.  To summarize, AIG's theory is that the Pool Board Members, most of whom are not accused of underreporting, participated in dissemination of false invoices even though doing so increased their own residual market obligations.  This theory does not satisfy the Supreme Court's plausibility test.

Finally, AIG alleges fiduciary breaches in the Pool Board Members' "failing to investigate and assert claims for the fraudulent conduct of the Underreporting Participating

Companies and assisting in the concealment of that conduct."  (AC ¶ 193(c).)  This claim should be rejected because AIG has not adequately pled knowledge of underreporting, and also because the claim is implausible on its face.  In addition, as explained above, AIG cannot colorably assert that the Pool Board Members breached fiduciary duties by failing to investigate or sue other alleged underreporters when, as this Court has already found, the Pool Board lacked any standing to do so.  For all of these reasons, AIG's fiduciary duty claim – Count Four of the Amended Complaint – should be dismissed with prejudice.

## VI.   AIG'S UNJUST ENRICHMENT CLAIM – COUNT EIGHT – FAILS TO STATE A CLAIM.

AIG's claim for unjust enrichment fails because the relationship between the parties, all of which are Participating Companies in the Pool, is governed by the Articles of Agreement – a valid and enforceable contract between the parties.  "The theory of unjust enrichment lies as a quasi-contract claim." *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, (2005).  Unjust enrichment is an equitable concept designed to prevent injustice in the absence of an actual agreement between the parties concerned.  *Id*.  While a plaintiff may initially have the right to plead quasi-contract claims as alternatives to an express contractual claim, (*see, e.g., Auguston v. Spry*, 723 N.Y.S.2d 103, 106 (2001)), "a party to an express contract cannot bring an action on an implied contract relating to the same subject matter, in contravention of the express contract." *See Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382 (1987) (plaintiff's claim under quasi contract dismissed at pleading stage when express agreement covered same subject matter); *see also IDT v. Morgan Stanley Dean Witter Co.*, 12 N.Y.3d 132, 142 (2009) ("[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded").

If there is a "bona fide dispute as to the existence of a contract or where a contract does not cover the dispute in issue," a case may be submitted to a jury on both breach of contract and unjust enrichment theories.  *Joseph Sternberg, Inc. v. Walber 36th Street Associates*, 594 N.Y. S.2d 144, 146 (1993).  However, it is "impermissible [] to seek damages in an action sounding in quasi-contract where the suing party has [] performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." *Clark-Fitzpatrick*, 70 N.Y.2d at 389.

In this case, there is no dispute about the enforceability of the Articles of Agreement. This Court found in the Dismissal Order that "[t]he Pool is organized and governed by the Articles of Agreement, a contract to which all participating insurers [] have agreed and are signatories."  (Dismissal Order, 5.)   Further, AIG admits that in order to participate in the Pool, "each Participating Company is required to execute an agreement to abide by the Pool's Articles of Agreement, which set forth the obligations of the Pool and its members."  (AC ¶ 58; *see also id.* ¶¶ 78-80 (admitting that the Pool Board is controlled and managed, pursuant to the Articles of Agreement, by "a Board of Governors, comprised of twelve non-affiliated Participating Companies. . .").)  Because there is no dispute as to the existence or enforceability of the Articles, AIG is barred from pleading a quasi-contractual claim for unjust enrichment.

## CONCLUSION

AIG's claims for RICO, RICO conspiracy, civil conspiracy and breach of fiduciary duty fall in the face of the Supreme Court's recent clarification of plaintiffs' pleading requirements. Moreover, AIG cannot state a claim for unjust enrichment where the Articles of Agreement govern the parties' relationship.  For the reasons set forth herein, the Court should dismiss Counts One, Two, Three, Four and Eight of AIG's Amended Complaint, in their entirety, with prejudice.

Respectfully submitted,

s/Mark A. Schwartz

One of the Attorneys for Liberty Mutual
Group

James I. Rubin
James A. Morsch
Amy B. Kelley
Jason S. Dubner
Mark A. Schwartz
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

s/Edward P. Gibbons

One of the Attorneys for ACE INA
Holdings, Inc.

Edward P. Gibbons
Christopher A. Wadley
Walker, Wilcox, Matousek LLP
225 West Washington Street
Suite 2400
Chicago, IL 60606
312-244-6744

s/Michael Cullen Borders

One of the Attorneys for The Hartford
Financial Services Group, Inc.

Michael Cullen Borders
Rosa Maria Tumialan-Landy
Stephen C. Borgsdorf
Renee Lynn Zipprich
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700

s/Timothy John Rooney

One of the Attorneys for Travelers
Insurance Company

Timothy John Rooney
Samantha Lyn Maxfield
Norman K. Beck
Courtney M. Oliva
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
312-558-5600

s/Hal R. Morris

One of the Attorneys for Sentry Insurance a
Mutual Company

Hal R. Morris
Nicole A. Gross
Christopher S. Naveja
Arnstein & Lehr, LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL  60606

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that he served a copy of the foregoing **Memorandum of Law in Support of the Rico Defendants' and Sentry's Partial Motion to Dismiss AIG's Corrected First Amended Complaint** by causing copies thereof to be sent by U.S. District Court CM/ECF e-filing system on the 30th day of October, 2009.

Respectfully submitted,

s/Mark A. Schwartz
One of the Attorneys for Liberty Mutual
Group

James I. Rubin (ARDC# 2413191)
James A. Morsch (ARDC# 6209558)
Amy B. Kelley (ARDC# 06243229)
Jason S. Dubner (ARDC# 6257055)
Mark A. Schwartz (ARDC# 6270580)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660