**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) ) | |
| Counter-Defendants. | ) ) ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) ) | Case No. 09 CV 2026  Judge Robert W. Gettleman  Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**JOINT STATUS REPORT PURSUANT TO NOVEMBER 5, 2009 ORDER**

Pursuant to the Order of Magistrate Judge Schenkier dated November 5, 2009, Class

Plaintiffs, the Alleged Underreporters and the Liberty Parties (collectively, the "Other Parties")

and AIG file this Joint Status Report regarding a procedure for identifying and selecting an expert to design a statistically significant sampling approach. The issues addressed herein were discussed by counsel during a meet and confer that was held via telephone on November 13, 2009.

**I.    SAMPLING ISSUES**

**A.    The Parties' Proposed Procedure for Identifying and Selecting an Expert**[1]

Pursuant to the Court's November 5, 2009 Order, AIG and the Other Parties have reached the following agreement and propose to proceed as follows:

- No later than November 20, 2009, AIG and the Other Parties shall exchange the names of five (5) potential statistical sampling experts. The list of potential experts shall not include any individual or firm that has had any involvement with: (i) this litigation; (ii) any investigation by the NYAG regarding the misreporting of workers compensation premium; or (iii) any investigation by the NAIC's Market Analysis Working Group or by any other state regulatory entity relating to the misreporting of workers compensation premium. For each potential expert, the offering party shall also provide, to the extent available, a copy of the proposed expert's *curriculum vitae* and a list of any potential conflicts of which the offering party is currently aware.

- No party shall make any contact with any proposed expert other than as set forth herein.

- No later than November 25, 2009, AIG and the Other Parties shall each strike two of the potential experts offered by the other side.

- No later than December 2, 2009, AIG and the Other Parties shall jointly contact and send a letter to each of the remaining six (6) potential experts, identifying: (i) the scope and purpose of the potential engagement; and (ii) all relevant parties. The joint letter shall request that, if the expert is interested in the engagement, the expert respond within seven (7) days and provide a list of all matters/issues in which the expert has been involved with any of the parties or their attorneys, and identify any other potential conflicts of interest.

- No later than December 11, 2009, AIG and the Other Parties shall meet and confer regarding the responses that have been received from potential experts and then jointly

---

[1] AIG respectfully objects to any methodology whereby the specific files to be produced by the Alleged Underreporters are identified through a random selection process, for the reasons set forth in Section B below. Nevertheless, pursuant to this Court's Order dated November 5, 2009, we have conditionally agreed to the procedure set forth in this Section A.

conduct interviews of all potential experts that have expressed an interest in the assignment and that are not subject to a disabling conflict of interest.

- Upon the completion of the interviews, if AIG and the Other Parties are unable to agree upon an expert, AIG and the Other Parties shall make simultaneous, one-page single-spaced submissions to the Court ranking the remaining candidates, providing the parties' reasons for those rankings, and attaching copies of each remaining candidate's *curriculum vitae*. The Court shall then select an expert taking into account the parties' rankings of the candidates and reasons therefor. Although the fact that a potential expert may previously have performed work for some of the parties shall not serve as a bar to the consideration of that potential expert, it shall be a relevant consideration for the Court in making its selection.

### B. The Sampling Approach

**AIG's Position:**

AIG never asked for -- and this Court never ordered -- a "statistical" sampling for discovery. Instead, the Court adopted an incremental approach, involving a sample production of files in its first stage, solely for the purpose of evaluating the Alleged Underreporters' claim of burden. Consistent therewith, the Court ordered a 'burden-reducing' limitation, but gave AIG significant discretion to focus its own discovery subject to that time-frame limitation. Critically, the Court did not impose any limitations regarding the number of files that were subject to production, limiting only the time periods thereof. The Court permitted AIG to select the time periods that would be sampled and, working with experts, AIG identified specific periods during which it believed it was most likely to find evidence of underreporting. AIG respectfully objects to any sampling of the files themselves, and respectfully urges the Court to apply the procedures it already ordered in the December 8, 2008 Order. Giving AIG access to all files for given periods is a much better way of satisfying AIG's goal of uncovering and evidencing wrongdoing, while at the same time accommodating the Court's goal of alleviating the burden on the producing parties.

If the Court nevertheless orders "statistical" sampling, AIG urges the Court that the application of a different 'burden-reducing' mechanism should not unnecessarily prejudice AIG's ability to exercise discretion in focusing the permitted discovery. AIG would therefore propose that any sampling approach continue to provide AIG with the ability to select the files to be sampled from the already agreed upon relevant universe of files (multi-line policies with an aggregate premium in excess of $100,000), *i.e.*, by using a statistically significant sample set only as a proxy for identifying the scope (number of files) of a non-burdensome production, but permitting AIG to select the files that must be produced. In all events, regardless of the particular sampling mechanism chosen by the Court, AIG should be permitted discovery of the files most likely to yield evidence of underreporting, *i.e.*, those files for the top ten premium paying insureds for each of the years at issue. Accounts of this magnitude present a strong incentive for wrongdoing and their production would not be burdensome.

AIG has no objection if the Other Parties choose to limit their discovery of AIG by the use of statistical sampling. However, AIG reserves the right to object to any attempt by the Other

-3-

Parties to use such a sampling to attempt to prove their alleged damages. In fact, AIG expects to argue that such a method is legally impermissible and that the Class Plaintiffs are bound by the determinations of the National Association of Insurance Commissioners regarding the re-allocation of premium that will be reported by AIG on its amended statutory financial statements (often referred to as Page 14s) in the near future.

**The Other Parties' Position:**

The Alleged Underreporters object to AIG's attempt to reargue this issue in the present Joint Status Report. This precise issue – whether random statistical sampling should be employed in lieu of the Four-Month Period Approach – was the subject of the parties' prior Joint Status Report, dated November 3, 2009 (Dkt. No. 524). In that Report, the parties provided the Court with detailed explanations of their respective positions. The Court thereafter ordered the parties to meet and confer on a procedure for identifying and selecting an expert to design a significantly significant sampling approach that will guide production of policy and underwriting files from the Alleged Underreporters. (November 5, 2009 Order, Dkt. No. 527.)

The alleged Underreporters also object to AIG's attempt to use this Report to argue their anticipated position at trial that the Class and Liberty Parties could somehow be bound in their proofs by the results of the ongoing Multistate Examination of AIG's Underreporting by the National Association of Insurance Commissioners. Absent an agreement by the Other Parties to accept the results of that examination – that is, to settle these cases outside of litigation – the results of the examination cannot bind the Other Parties.

The Class Plaintiffs believe statistical sampling is desirable for the reasons they previously stated in the November 3 and September 3 Joint Status Reports.

## II. CLASS CERTIFICATION DISCOVERY

Pursuant to the Court's October 6, 2009 Order, the Class Plaintiffs, the Liberty Parties and AIG have conducted a meet and confer regarding objections lodged to discovery requests related to class certification. The parties are working to resolve as many of their outstanding disputes as possible and, with the Court's permission, intend to provide the Court with a joint status report regarding those issues on Thursday, November 19, 2009.

Respectfully submitted,

/s/ Matthew O. Sitzer

Gary M. Elden
Gary M. Miller
Matthew O. Sitzer
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
(312) 704-7701

Attorneys for Safeco Insurance Company of America and Ohio Casualty Insurance Company

Michael A. Walsh (admitted *pro hac vice*)
Allison D. Burroughs (admitted *pro hac vice*)
NUTTER, MCCLENNEN & FISH, LLP
155 Seaport Boulevard
Boston, MA 02110
Telephone: (617) 439-2000

Attorneys for Safeco Insurance Company of America and Ohio Casualty Insurance Company

/s/ P. Andrew Fleming

Stephen Novack
P. Andrew Fleming
NOVACK AND MACEY LLP
100 North Riverside Plaza Chicago, IL 60606
(312) 419-6900

Attorneys for American International Group, Inc.

/s/ Kevin S. Reed

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
Brendan N. Snodgrass
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor New York, New York 10010
(212) 849-7000

Attorneys for American International Group, Inc.

/s/ Edward P. Gibbons

Edward P. Gibbons
Christopher A. Wadley
WALKER, WILCOX, MATOUSEK LLP
225 West Washington Street
Suite 2400
Chicago, IL 60606
(312) 244-6744

Attorneys for ACE INA Holdings, Inc.

/s/ Mark A. Schwartz

James I. Rubin
James A. Morsch
Amy B. Kelley
Jason S. Dubner
Mark A. Schwartz
BUTLER RUBIN SALTARELLI & BOYD LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

One of the Attorneys for Liberty Mutual Group, Inc.

| | |
|---|---|
| /s/ Michael Cullen Borders | /s/ Norman K. Beck |
| | |
| Michael Cullen Borders | Timothy John Rooney |
| Rosa Maria Tumialan-Landy | Norman K. Beck |
| Stephen C. Borgsdorf | Courtney M. Oliva |
| DYKEMA GOSSETT PLLC | WINSTON & STRAWN LLP |
| 10 South Wacker Drive | 35 West Wacker Drive |
| Suite 2300 | Chicago, IL 60601 |
| Chicago, IL 60606 | (312) 558-5600 |
| (312) 876-1700 | |
| | Attorneys for Travelers Insurance Company |
| Attorneys for The Hartford Financial Services Group, Inc. | |

/s/ Hal R. Morris

One of the Attorneys for Sentry Insurance a Mutual Company

Hal R. Morris
Nicole A. Gross
Jeffrey D. Pilgrim
Arnstein & Lehr, LLP
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606
312-876-7100