**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., | |
| Plaintiff, | No.:  07 CV 2898 |
| vs. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al. | Judge Robert W. Gettleman |
| Defendants. | Magistrate Judge Sidney I. Schenkier |
| AMERICAN INTERNATIONAL GROUP INC., et al., | |
| Third-Party Plaintiffs, | |
| vs. | |
| ACE INA HOLDINGS, INC., et al., | |
| Third-Party Defendants. | |

**RICO DEFENDANTS' AND SENTRY'S REPLY IN**
**SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**
**AIG'S CORRECTED FIRST AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................1

AIG'S SUMMARY OF ALLEGATIONS IS MISLEADING..................................2

ARGUMENT ........................................................................................................3

   I.   AIG FAILS TO PLEAD A VIABLE RICO CLAIM. ..................................3

      A.   AIG's Allegations of Knowledge Remain Insufficient. ...........................4

      B.   AIG's Allegations Do Not Satisfy Rule 9(b)...........................................7

      C.   AIG Fails to Sufficiently Plead Control of the Entire Pool Board. ..........9

      D.   The Scheme Alleged is Implausible on its Face. ....................................11

      E.   AIG Fails to State a Claim for "Honest Services" Fraud.........................13

          1.   AIG Fails to Plead Any Use of Mail or Wires With Respect to the Alleged Failure to Investigate or "Take Action." ..................13

          2.   AIG Fails to Plead Misuse of Office or Private Gain With Respect to the Alleged Blocking of the Fund...............................14

      F.   AIG Cannot State a Claim for Failure to Investigate or File Lawsuits...................18

   II.   AIG FAILS TO STATE A VIABLE CLAIM FOR RICO CONSPIRACY .................................................................................19

   III.   AIG FAILS TO STATE A VIABLE CLAIM FOR CIVIL CONSPIRACY .................................................................................21

   IV.   AIG FAILS TO STATE A VIABLE CLAIM FOR BREACH OF FIDUCIARY DUTIES...................................................................21

   V.   AIG FAILS TO STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT ..............................................................................22

CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABN AMRO Morg. Grp., Inc. v. Maximum Morg., Inc.*,
  429 F. Supp. 2d 1031 (N.D. Ind. 2006) ..................................................................7, 9

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................11

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
  No. 97-2099, 2000 U.S. App. LEXIS 25400 (2d Cir. Oct. 11, 2000) ...................15

*Bd. of Trs. of Ironworkers Local No. 498 Pension Fund v. Nationwide Life Ins. Co.*,
  No. 04 C 821, 2005 WL 711977 (N.D. Ill. Mar. 28, 2005) ..........................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007).....................................................................11

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ...................................................................10, 14, 15

*Brouwer v. Raffensperger, Hughes & Co.*,
  199 F.3d 961 (7th Cir. 2000) .....................................................................................20

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*,
  208 F.3d 885 (10th Cir. 2000) ...................................................................................16

*Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*,
  70 N.Y.2d 382 (1987) ..............................................................................................22

*D&K Ventures, LLC v. MGC, LLC*,
  No. 09-2084-JWL, 2009 U.S. Dist. LEXIS 46569
  (D. Kan. May 27, 2009)..............................................................................................7

*Eazypower Corp. v. Alden Corp.*,
  No. 03 C 3164, 2003 WL 22859492 (N.D. Ill. Dec. 2, 2003) .................................17

*Frayne v. Chicago 2016*,
  No. 08 C 5290, 2009 WL 65236 (N.D. Ill. Jan. 8, 2009) ........................................17

*In re Brand Name Prescription Drugs Antirtust Litig.*,
  123 F.3d 599 (7th Cir. 1997) ...................................................................................12

*In re GlenFed, Inc. Sec. Litig.*,
  60 F.3d 591 (9th Cir. 1995) ..................................................................................7, 8

*In re Impac Mortg. Holdings, Inc.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ........................................................................7

*Int'l Bd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Phillip Morris Inc.*,
  196 F.3d 818 (7th Cir. 1999) ...................................................................................15

*Jepson, Inc. v. Makita Corp.*,
  34 F.3d 1321 (7th Cir. 1994) .....................................................................................6

*Johnson v. Aronson Furniture Co.*,
  No. 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill Mar. 31, 1997) ....................5

*Koehler v. Nationsbank Corp.*,
  No. 96 C 2050, 1997 WL 80928 (N.D. Ill. Feb. 20, 1997).........................................9

*Lachmund v. ADM Investor Servs.*,
  191 F.3d 777 (7th Cir. 1999) ...................................................................................20

*Mercatus Group LLC v. Lake Forest Hosp.*,
  528 F.Supp. 2d 797 (N.D. Ill. 2007) .........................................................................16

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)...........................................................................................2, 6, 19

*P&P Mktg., Inc. v. Ditton*,
  746 F. Supp. 1354 (N.D. Ill. 1990) ............................................................................9

*Pelfresne v. Stephens*,
  35 F. Supp. 2d 1064 (N.D.Ill. 1999) ........................................................................21

*Petri v. Gatlin*,
  997 F. Supp. 956 (N.D. Ill. 1997) ..............................................................................9

*Polar Int'l Brokerage Corp. v. Reeve*,
  108 F. Supp. 2d 225 (S.D.N.Y. 2000)........................................................................8

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
  508 U.S. 49 (1993).....................................................................................................16

*Schwartz v. Celestial Seasonings, Inc.*,
  124 F.3d 1246 (10th Cir. 1997). .................................................................................7

*Shrag v. Dinges*,
  150 F.R.D. 664 (D. Kan. 1993)................................................................................10

*Sorich v. United States*,
    129 S. Ct. 1308 (2009) ........................................................................................................18

*Sosa v. DirectTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ............................................................................................15

*Spectators' Communication Network, Inc. v. Colonial Country Club*,
    253 F.3d 215 (5th Cir. 2001) ............................................................................................12

*Stachon v. United Consumers Club, Inc.*,
    229 F.3d 673 (7th Cir. 2000) ............................................................................................19

*Suburban Buick, Inc. v. Gargo*,
    No. 08 C 0370, 2009 WL 1543709 (N.D. Ill. May 29, 2009) ..........................................3, 7, 9

*Thermos Co. v. Igloo Prods. Corp.*,
    No. 93 C 5826, 1995 WL 842002 (N.D. Ill. Sept. 27, 1995)...................................................16

*Tizes v. Curcio*,
    No. 94 C 7657, 1995 WL 476675 (N.D. Ill. Aug. 9, 1995)....................................................17

*Transcription Comm. Corp. v. John Muir Health*,
    No. C 08-4418, 2009 U.S. Dist. LEXIS 25151 (N.D. Cal. Mar. 13, 2009).............................5

*Unique Coupons, Inc. v. Northfield Corp.*,
    No. 99 C 7445, 2000 WL 631324 (N.D. Ill. May 16, 2000) .................................................16

*United States v. Bloom*,
    149 F.3d 649 (7th Cir. 1998) ......................................................................................14, 18

*United States v. Neapolitan*,
    791 F.2d 489 (7th Cir. 1986) ............................................................................................21

*United States v. Thompson*,
    484 F.3d 877 (7th Cir. 2007) ......................................................................................17, 18

*United States v. Useni*,
    516 F.3d 634 (7th Cir. 2008) ...................................................................................20, 21, 22

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ................................................................................................7

*Wright v. DeArmond*,
    977 F.2d 339 (7th Cir. 1992) ............................................................................................17

## STATUTES

18 U.S.C. § 1346.................................................................................................................13, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ................................................................................................................3, 4

Fed. R. Civ. P. 9(b) ......................................................................................................3, 5, 7, 9

## INTRODUCTION

On February 23, 2009, this Court dismissed AIG's original RICO, RICO conspiracy, and civil conspiracy claims on the basis that AIG had failed to plead facts sufficient to support a "reasonable inference" of knowledge by each company of the other companies' underreporting. (Dismissal Order at 25-32.) In its response to the current motion to dismiss, AIG fails to provide the Court with any basis on which to conclude that AIG's amended claims merit a different fate. The First Amended Complaint ("AC") does not allege *any* new facts that support, in the Court's words, a "reasonable inference that, because *some* Pool Board Members engaged in and were aware of underreporting of premiums *within their own companies*," they were similarly knowledgeable of underreporting by other companies. (*Id.* at 29 (emphasis supplied).) Moreover, AIG's attempt to twist the Court's words into a prior finding that there was such knowledge on the part of the RICO Defendants of underreporting by others, is disingenuous at best.

Recognizing the inherent weakness of its factual allegations, AIG attempts to defend its amended pleading by accusing the RICO Defendants of "cherry picking" particular allegations in their arguments in support of their motion to dismiss. (Resp. at 9, 10, 26.) Indeed, AIG devotes an entire section of its brief to a request that the Court "look to the pleadings as a whole." (*Id.* at 9.) While no one disputes the fact that the Court must view the pleadings in their entirety when determining the sufficiency of AIG's claims, even a comprehensive review of the amended pleading cannot transform a series of inadequate allegations into viable causes of action.

For the reasons set forth herein and in the opening brief, the pleading defects in AIG's original complaint have not been cured and are not curable. The Court should therefore dismiss Counts One, Two and Three of the First Amended Complaint with prejudice. AIG's claims for

breach of fiduciary duty (Count Four) and unjust enrichment (Count Eight) are likewise

defective and should also be dismissed with prejudice.

## AIG'S SUMMARY OF ALLEGATIONS IS MISLEADING

The vast majority of the alleged facts set forth in AIG's "Summary of Allegations" were

included in AIG's original complaint and were therefore before the Court when it found that AIG

had failed to plead sufficient facts to support a "reasonable inference" of knowledge by each

company of the other companies' underreporting.  (Dismissal Order at 29-32.)  Such facts were

insufficient to support AIG's claims then and are insufficient to support AIG's claims now.

The critical question – and one AIG tries to avoid – is whether AIG has added any *new*

allegations of fact to support its conclusion that the RICO Defendants knew of each other's

alleged underreporting.  The answer is no.  Instead, AIG's new allegations relate to the nature of

an individual company's alleged underreporting, (AC ¶¶ 118 (Liberty), 125-132 (Travelers)), the

timing and nature of the RICO Defendants service on the Board, (*id.* ¶¶ 79, 82-87), and the

formation of the Ad Hoc Committee.  (*Id.* ¶¶ 89-93.)  Critically, none of these new allegations

has anything to do with the *knowledge* by one company of alleged underreporting by the other

companies.  AIG has therefore failed to provide the Court with any new facts to support a

"reasonable inference" of knowledge sufficient to avoid dismissal of its claims.

AIG also overlooks critical facts that further undermine the plausibility of its claims.

First, AIG's allegations of misconduct stem from actions by the Pool Board.  (*Id.* ¶¶ 6-10, 81-

113.)  Such actions (whether in establishing the Ad Hoc Committee or initiating an action against

AIG) required an affirmative vote by a majority of the twelve members of the Board and

therefore could not have been accomplished by the four RICO Defendants alone, as is alleged.

(*See id.* ¶ 78; RICO Defendants' Opening Brief ("Op. Br."), Ex. 1 at 15 ¶ 4.)  Second, not all of

the RICO Defendants were on the Board during the 2005-2007 time period when the majority of

the alleged conduct occurred.  (AC ¶ 82.)[1]  These conveniently overlooked facts make it

impossible for AIG to assert plausible claims against the four RICO Defendants for actions that

were taken by the Board.

## ARGUMENT

## I.    AIG FAILS TO PLEAD A VIABLE RICO CLAIM.

AIG attempts to minimize the impact of the RICO Defendants' arguments for dismissal

by contending that its RICO allegations are controlled by Rule 8 of the Federal Rule of Civil

Procedure.  (Resp. at 8-9.)  In so arguing, AIG disregards this Court's prior holding that each of

the requirements for pleading a valid RICO claim based on mail or wire fraud must be plead with

particularity in accordance with Rule 9(b).  *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009

WL 1543709, at *8 (N.D. Ill. May 29, 2009) (Gettleman, J.).[2]  Indeed, the case cited by AIG

simply stands for the proposition that Rule 9(b) is not applicable where a RICO claim is

predicated on embezzlement from pension and welfare funds; the court contrasts such claims

with RICO claims based on mail or wire fraud where "the allegations were subject to the

heightened pleading requirements of Rule 9(b)."  *Bd. of Trs. of Ironworkers Local No. 498*

*Pension Fund v. Nationwide Life Ins. Co.*, No. 04 C 821, 2005 WL 711977, at *3 (N.D. Ill. Mar.

28, 2005).  AIG's attempt to avoid Rule 9(b)'s heightened pleading standard is therefore

unavailing.

It is also academic because AIG's amended pleading fails to state a viable RICO claim

under either pleading standard.  Indeed, AIG's RICO claim is subject to dismissal for the very

---

[1] AIG concedes that Liberty was not on the Board in 2005 when the alleged RICO scheme was
supposedly "hatched," (*id.* ¶¶ 3, 79) and that Travelers was not on the Board during 2006 and
2007 when much of the alleged fraud and conspiracy supposedly occurred.  (*Id.* ¶ 85.)  Further,
the First Amended Complaint omits the date when The Hartford began serving on the Board and
provides *no* allegations regarding the timing or nature of ACE's participation on the Board.

[2] Copies of all unpublished cases are attached hereto in alpha order as Group Exhibit 1.

same reason the Court dismissed AIG's original RICO claim – AIG continues to fail to properly allege collective knowledge of underreporting.  As AIG has demonstrated with its amended pleading, this fundamental defect – as well as the other pleading defects detailed below – cannot be cured.  The Court should therefore dismiss Count One of the Amended Complaint with prejudice.

**A.**   **AIG's Allegations of Knowledge Remain Insufficient.**

In dismissing AIG's original RICO claim, the Court found that "there is nothing in the pleadings that supports the reasonable inference that, because some Pool Board Members engaged in and were aware of underreporting *within their own companies*, that all of the Pool Board Members were similarly knowledgeable and also aware of underreporting among Underreporting Participating Companies."  (Dismissal Order at 29 (emphasis supplied).)  AIG attempts to avoid a second dismissal on this same basis by asserting that inherent in this conclusion was a finding that AIG's "allegations of knowledge" were sufficient for purposes of stating a RICO claim against the four RICO Defendants.  (Resp. at 11.)  AIG even goes so far as to assert that this Court "has already deemed AIG's factual allegations sufficient to establish the [RICO Defendants] knowledge of each other's underreporting."  (*Id.* at 2.)

AIG's argument defies both the clear language of the Dismissal Order and common sense.  In the Dismissal Order, the Court plainly rejected AIG's argument that it had sufficiently alleged that the Pool Board Members were aware that participating companies were underreporting their workers' compensation premiums.  (Dismissal Order at 28-29.)  And yet, in its response, AIG distorts the language in the order to make the argument that the Court has already found "AIG's allegations of knowledge to be sufficient under Rule 8" as respects the four RICO Defendants.  (Resp. at 11.)  AIG misrepresents the Court's statement as follows:

> The Third Party Complaint was dismissed on the ground that the Court could not reasonably infer **from the Underreporting Pool Board Members' knowledge** that "*all* of the **[non-underreporting]** Pool Board Members were similarly knowledgeable.  (Feb. 23 Order 29 (emphasis added).)

(Resp. at 10-11 (italics in original; bold supplied).)  AIG's need to distort the language of the Dismissal Order in order to support its argument highlights the extreme weakness of its position.  The Court never made a finding that the Underreporting Pool Board Members, *i.e.,* the four RICO Defendants, were aware of each other's alleged underreporting.  To the contrary, the Court specifically held that allegations that the RICO Defendants were "engaged in and were aware of underreporting of premiums *within their own companies*," did not provide a reasonable basis for inferring such knowledge on a collective basis.  (Dismissal Order at 29 (emphasis supplied).)

AIG's argument is also logically flawed.  If AIG were correct that the Court had found the allegations of collective knowledge to be sufficient with respect to the four RICO Defendants, *then the Court would have had no reason to dismiss the RICO claim with respect to those defendants.  See, e.g.*, *Transcription Comm. Corp. v. John Muir Health*, No. C 08-4418, 2009 U.S. Dist. LEXIS 25151, at *39-40 (N.D. Cal. Mar. 13, 2009) (finding RICO pleading defective under Rule 9(b) as to one of three defendants); *Johnson v. Aronson Furniture Co.*, No. 96 C 117, 1997 U.S. Dist. LEXIS 3979, at *7 (N.D. Ill Mar. 31, 1997) (dismissing RICO claim against defendant chief executive officer but not his company).  Clearly, the fact that the Court did not sustain the original RICO claim against the four RICO Defendants unequivocally demonstrates that the Court found the allegations of collective knowledge insufficient with respect to *all of the original defendants*, including the RICO Defendants.

The reason for AIG's distortion of the record is clear:  the Amended Complaint does not include any new allegations of collective knowledge.  Indeed, the allegations that AIG contends "directly demonstrate" the RICO Defendants' collective knowledge of underreporting are *the*

*very same allegations that this Court has already found insufficient.*  (*See* Resp. at 11 (referring to internal Wausau memo alleged in original complaint at ¶ 96); *see id.* at 11 (referring to NYAG subpoenas alleged in original complaint at ¶¶ 106, 115); *see id.* at 11-12  (referring to investigations alleged in original complaint at ¶ 98-99, 105); *see id.* at 12 (referring to industry reports alleged in original complaint at ¶ 69, 72-75); *see id* (referring to deposition of Travelers executive alleged in original complaint at ¶ 104).

Not one of AIG's *new* allegations provides any support for the conclusion of shared knowledge of underreporting.  (*See id.* ¶ 118 (allegations of Liberty's individual conduct); *id.* 125-132 (allegations of Travelers' individual conduct); *id.* ¶¶ 78-88 (allegations relating to the timing and nature of RICO Defendants' service on the Board); *id.* ¶¶ 89-93 (allegations concerning formation of the Ad Hoc Committee).)  These allegations have absolutely no bearing on the *knowledge* by one company of alleged underreporting by the other companies.  Cognizant of this fact, AIG attempts to evade the relevant pleading standard by simply arguing that these new facts "further make plausible" AIG's claim that the RICO Defendants had collective knowledge of each other's underreporting.  (Resp. at 13.)  These new facts do not make AIG's claim of shared knowledge "plausible."  Moreover, more importantly, the standard is not whether AIG's allegation of collective knowledge is "plausible" but whether the complaint alleges "facts from which it could be inferred that the defendants engaged in the scheme with fraudulent intent."  (Dismissal Order at 28 (citing *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).)  The Court previously found AIG's allegations failed to meet this standard and AIG's new allegations do not provide any basis for the Court to reach a different conclusion here.

Count One of the Amended Complaint should, therefore, be dismissed with prejudice based on AIG's continued failure to allege collective knowledge of underreporting sufficient to state a viable claim under RICO.

**B.      AIG's Allegations Do Not Satisfy Rule 9(b).**

Count One should also be dismissed because AIG fails to allege particularized facts sufficient to notify each defendant of the claims asserted against it.  *See Suburban Buick,* 2009 WL 1543709 at *4 ("[t]he complaint should not lump multiple defendants together, but should 'inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant'") (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)).  AIG concedes that its pleading "lumps" the RICO Defendants together, but attempts to avoid dismissal by arguing that it is permitted to do so because they acted collectively as board members, they are "corporate insiders," or because the relevant information is uniquely within each defendant's knowledge.  (*See* Resp. 14-15.)   Each of these arguments in unavailing.

AIG's primary argument is that "individualized pleading is not necessary where, as here, the fraud perpetrated was the collective action of board members."  (*Id.* at 14.)  In support of this argument, AIG relies on cases that find that a plaintiff may satisfy Rule 9(b) through reliance on a presumption that "group published information," such as prospectuses, registration statements or annual reports, was the result of collective action by corporate officers or directors – *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995), *ABN AMRO Morg. Grp., Inc. v. Maximum Morg., Inc.*, 429 F. Supp. 2d 1031, 1041 (N.D. Ind. 2006) and *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).  (Resp. at 14.)  AIG fails to note, however, that the "group published information" doctrine is limited to *written representations. D&K Ventures, LLC v. MGC, LLC*, No. 09-2084-JWL, 2009 U.S. Dist. LEXIS 46569, at *22-23

(D. Kan. May 27, 2009) (distinguishing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)); *In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1092 (C.D. Cal. 2008).  Thus, the presumption of collective action clearly does not apply to AIG's fraud allegations concerning the alleged dismantling of the Workers Compensation Fund, failure to investigate or sue other Participating Companies, or acceptance of funds paid by AIG.  (*See* AC ¶¶ 155, 160, 171).

Moreover, even where there is an alleged written misrepresentation, the cases cited by AIG clearly admonish that the presumption of collective action is "grounded in reasonableness" and that "it is not reasonable to presume in every case . . . that a corporate scheme to defraud was collectively devised."  *In re GlenFed*, 60 F. 3d at 593 (quotations and citation omitted); *Polar Int'l Brokerage Corp. v. Reeve,* 108 F. Supp. 2d 225, 237-38 (S.D.N.Y. 2000).  Here, the Amended Complaint clearly falls short of being grounded in reasonableness.  First, AIG concedes that the RICO Defendants did not all serve on the Board at the same time, or during all of the years that the alleged fraudulent conduct occurred.  (AC ¶¶ 3, 79, 85, 149.)  Second, there are *no* allegations concerning the RICO Defendants' involvement in the daily activities of the Pool that would support a sufficient connection to the subject invoices or communications.  Absent such allegations, the presumption of collective action cannot be applied.  *See Polar Int'l Brokerage Corp.*, 108 F. Supp. 2d at 237-38 (the group publication doctrine is "extremely limited in scope" and only applies to "clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions."); *In re Glenfed*, 60 F.3d at 593 ("[m]erely because a complaint identifies a corporation's outside directors, various committee assignments and generic responsibilities for every committee does not mean that the presumption of 'group published information' is applicable").

The other authorities cited by AIG are also distinguishable and fail to support its arguments. The Amended Complaint alleges that the RICO Defendants engaged in multiple, distinct fraudulent schemes and that those schemes spanned a number of years – during which the RICO Defendants had revolving participation on an ever-changing Pool Board. This situation is not analogous to cases where, for example, it is alleged that the misrepresentations were contained in a single document, *Petri v. Gatlin,* 997 F. Supp. 956, 974 (N.D. Ill. 1997), that a single defendant committed all of the fraudulent acts as an agent of the other defendants, *ABN AMRO Mortg. Grp. Inc. v. Maximum Mortg., Inc.*, 429 F. Supp. 2d 1031, 1037-39 (N.D. Ind. 2006), that a husband and wife were equal participants in the alleged conduct, *P&P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1363 (N.D. Ill. 1990), or where the defendants were corporate insiders equally responsible for sufficiently-described fraudulent acts, *Koehler v. Nationsbank Corp.*, No. 96 C 2050, 1997 WL 80928, at *1 (N.D. Ill. Feb. 20, 1997). Further, the type of information that may be uniquely known by the defendants in such cases, *i.e.,* the identity of who sent a particular mailing, is a far cry from the information that is missing from the Amended Complaint – allegations concerning the individual Board Members' alleged roles in the multiple schemes and distinct fraudulent acts broadly alleged against the RICO Defendants.

AIG must inform each RICO Defendant of the specific fraudulent conduct that forms the basis of the action against each particular company. *Suburban Buick,* 2009 WL 1543709, at *4. Without particularized allegations as to each RICO Defendant's alleged role in the various schemes and acts, the defendants are not properly put on notice, and Count One of the Amended Complaint fails under Rule 9(b).

**C.     AIG Fails to Sufficiently Plead Control of the Entire Pool Board.**

AIG's RICO claim also fails because the alleged conspiratorial and unlawful conduct is the result of actions or inactions *by the twelve-member Pool Board* and yet the Amended

Complaint fails to allege facts explaining how the four RICO Defendants managed to dominate or control Board Members that are not alleged to have participated in the conspiracy.  The alleged acts that underlie AIG's RICO claim are the Pool Board's alleged (1) failure to investigate or sue other Participating Companies; (2) dismantling the Workers Compensation Fund; (3) sending of false invoices; and (4) directing NCCI to disregard AIG's amended filings. (AC ¶¶ 96-112.)  None of these actions or inactions could have occurred without the support of, at a minimum, a majority of the Pool Board members.  Without well-pled allegations that other Pool Board members were complicit in this conduct – and there are no such allegations – AIG's claims fail.  *See Shrag v. Dinges*, 150 F.R.D. 664, 675 (D. Kan. 1993) (attempt to attribute actions of a board of directors to one of its members as part of a RICO claim failed where the member was a minority shareholder who did not have sufficient power to elect a majority of the board and did not control other board members' votes), *negative treatment on other grounds*.

Instead of squarely addressing this failure, AIG simply cites the general standard for pleading a defendant's role in the enterprise and argues that it need only allege that the RICO Defendants conducted or participated in the conduct of the Board's affairs.  (Resp. at 16.)  AIG ignores the critical fact that the Board could not have taken any of the alleged actions *without the support of a majority of the Board.*  (Op. Br., Ex. 1 at 15 ¶ 4.)  Indeed, none of the cases cited by AIG involved allegations of (1) wrongful board action or inaction wherein (2) the defendants were members occupying only a minority position on such board.  (*See* Resp. at 16-17.)  AIG simply cannot overcome the fact that its RICO claim seeks to impute the Board's decisions upon a minority of its members without the benefit of a single allegation as to how this minority could

have controlled or dominated the other members.[3]  Absent such allegations, the Amended

Complaint clearly fails to state a viable cause of action against the four RICO Defendants based

on the actions or inactions of the twelve-member Board.  *See Brooks v. Ross*, 578 F.3d 574, 581

(7th Cir. 2009) (granting motion to dismiss where the "behavior [plaintiff] has alleged that the

defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing").

### D.     The Scheme Alleged is Implausible on its Face.

AIG does not dispute that its RICO claims must meet the plausibility test in order to

survive dismissal.  (*See* Resp. at 18-19.)  Here, the plausibility of AIG's claims against the RICO

Defendants depends on acceptance of the following premise:  that the majority of the Pool Board

Members, which AIG does not accuse of underreporting, agreed to subvert their own economic

self-interest by allowing the RICO Defendants to avoid investigation of or punishment for their

alleged underreporting.  This premise is implausible on its face, and AIG's RICO claim should

be dismissed under the Supreme Court's decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50

(2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).

AIG's only argument to the contrary is that AIG was one of the Pool Board Members'

"largest competitors" and that there is therefore "nothing implausible about the Pool Board

Members' decision to forego whatever economic benefit they would reap, from exposing

underreporting by a handful of other Participating Companies or by participating in the Workers

Compensation Fund, in order to gain a competitive advantage over AIG."  (Resp. at 19.)  Even

assuming the accuracy of AIG's allegation that the Pool Board Members sought to obtain an

"economic and competitive advantage" over AIG, (AC ¶ 3), the suggestion that the majority of

---

[3] For example, there is *no* allegation that the RICO Defendants' positions as Chair or Vice Chair or participation on any committee in any way operated to increase their voting power or otherwise cause them to overcome the authority vested in the majority of the Pool Board's members. (*See* Resp. at 16-17.) On the contrary, the Chair does not vote unless to break a tie.  (Op. Br., Ex. 1 at 18 ¶ 13.)

the Pool Board would have ignored alleged reporting violations by the RICO Defendants (alleged to have been "among the Pool's top servicing carriers by volume of servicing carrier business at the time," (*id.* ¶ 68)) and pursue only AIG makes no sense.  AIG does not and cannot offer any plausible explanation for why the Pool Board Members could not have pursued the RICO Defendants *in addition to* AIG.

Once again, AIG cites an inapposite antitrust case, *In re Brand Name Prescription Drugs Antirtust Litig.*, 123 F.3d 599 (7th Cir. 1997), for the proposition that a party may "act contrary to its own short-term economic interest in order to achieve what it perceives as a great long-term gain."  (Resp. at 19.)  In the antitrust context, it might be plausible for a company to cut prices below its costs in order to price a competitor out of the market, thereby suffering a short-term economic loss to achieve a net gain once the competitor has been eliminated.  In this case, however, no short-term loss was necessary, as the majority of the Pool Board Members could have pursued the RICO Defendants *in addition to* AIG, had there been sufficient evidence that these four companies were also underreporting premium.  The antitrust analogy simply does not follow.

Similarly, in *Spectators' Communication Network, Inc. v. Colonial Country Club*, 253 F.3d 215 (5th Cir. 2001), the other case cited by AIG, the defendants did not have the option of reaping profits from their long-term goals without enduring a short-term detriment.  *Id.* at 220, 222 (the provision of various long-term enticements from a provider of advertising to the defendant purchaser was "conditioned upon" the purchaser engaging in anticompetitive conduct harmful to the provider's competitor even though it was not directly in the purchaser's interest to eliminate competition in the market for advertising).  In contrast to these cases, AIG does not argue that the refusal to investigate or take action against other underreporters was necessary in

order for the RICO Defendants to achieve their purported illegitimate goals *vis à vis* AIG.  Once

again, there is simply no reason why the Pool Board Members could not have pursued all of the

alleged underreporters, including AIG, at the same time.

In sum, AIG's allegations of a RICO conspiracy against the RICO Defendants plainly fail

to surpass any threshold of plausibility, and Count One of the Amended Complaint should be

dismissed with prejudice.

### E.    AIG Fails to State a Claim for "Honest Services" Fraud.

AIG contends that it has stated a viable claim for "honest services" fraud under 18 U.S.C.

§ 1346 based on its allegations that the RICO Defendants "block[ed] the Pool" from (1)

investigating underreporting by companies other than AIG; (2) "taking any action" against any

of the RICO Defendants; and (3) participating in the Workers Compensation Fund."  (Resp. at

19-20.)  As set forth below and in the RICO Defendants' opening brief, AIG's honest services

claim with respect to the first two alleged schemes – the failure to investigate or "take action"–

fails because AIG does not allege any use of the mails.  AIG's honest services claim with respect

to the third alleged scheme – blocking participation in the Fund – also fails because AIG has not

alleged two essential elements of an honest services claim – misuse of position and private gain.

### 1.    AIG Fails to Plead Any Use of Mail or Wires With Respect to the Alleged Failure to Investigate or "Take Action."

In their opening brief, the RICO Defendants explained that AIG's RICO claim fails to the

extent it is premised on the alleged failure to direct NCCI or the Pool to investigate or file

lawsuits against companies other than AIG because there is no allegation of use of the mails for

this purpose.[4]  (Op. Br. at 21.)  In its response, AIG concedes that it must allege use of the mails

---

[4] Although AIG chooses to address this argument in its honest services section of its response, the RICO Defendants' argument in this regard is made with respect to the entirety of AIG's RICO claim as it pertains to the failure to investigate or file lawsuits against companies other than AIG.

but emphasizes that the mailing must only be "incident to an essential part of the scheme."

(Resp. at 20 (quotations omitted).)  AIG then argues that it "has plainly alleged a use of the mails

in furtherance of this scheme" and articulates that use as follows:  "To facilitate preventing the

Pool from investigating or taking action against them, the Underreporting Pool Board Members

had to hide their underreporting.  They accomplished this by causing the Pool to send invoices to

AIG and other companies that incorrectly reported their workers compensation premium."  (*Id.*

at 20-21.)  AIG's attempt to relate these two allegations strains credulity.  Even as plead by AIG,

the submission of allegedly false invoices is clearly not incident to an "essential part" of the

scheme to block the Pool from investigating or taking action against underreporting.  AIG's

verbal gymnastics aside, it should be clear that AIG has failed to allege that the RICO

Defendants ever used the mails or wires in furtherance of "an essential part" of the alleged

scheme and that AIG has therefore failed to state a viable claim for federal mail or wire fraud on

this basis.

### 2. AIG Fails to Plead Misuse of Office or Private Gain With Respect to the Alleged Blocking of the Fund.

AIG has also failed to state a viable claim for honest services fraud based on the RICO

Defendants' alleged scheme to block the Pool from participating in the Workers Compensation

Fund.  (Resp. at 21-24.)  AIG's allegations fail because the Amended Complaint does not plead

"misuse of office" or "private gain" – two essential elements of honest services fraud.  *United*

*States v. Bloom*, 149 F.3d 649, 655 (7th Cir. 1998).

First, as set forth in the RICO Defendants' opening brief, AIG has not alleged misuse of

office.  (Op. Br. at 16-18.)  AIG relies on letters from the Pool and Liberty to state regulators in

an attempt to plead misuse.  (AC at ¶¶ 96-97.)  Such letters, however, simply notified the states

that they were not authorized to release claims belonging to the Participating Companies.  (*See*

*id.*)  Critically, the mailing of such letters "is just as consistent with lawful conduct as it is with wrongdoing" and therefore fails to establish a viable claim.  *Brooks*, 578 F.3d at 581.

In its response, AIG argues that the RICO Defendants somehow misconstrue its honest services claim and that "it's not the mailing of the letters that constitutes the abuse of position, but the decision not to participate in the Fund in order to harm AIG."  (Resp. at 22.)  But if this is true, then there was no use of the mails incident to an "essential part" of this alleged scheme, and there has been no RICO violation alleged.  Moreover, the critical point is that the RICO Defendants were unwilling to release valuable claims against AIG by accepting the terms of a settlement they played no part in negotiating and to which they were not parties.  Whether this was manifested through "the mailing of letters" or "the decision not to participate in the Fund," such conduct is clearly "just as consistent with lawful conduct as it is with wrongdoing." *Brooks,* 578 F.3d at 581.

Indeed, the RICO Defendants had a fundamental legal right to seek redress for the true amount of damages caused by AIG's underreporting.  Despite AIG's argument to the contrary, (Resp. at 23), an alleged RICO violation may be immunized by the *Noerr-Pennington* doctrine if the predicate acts are the type that fall within the protection of the First Amendment's Petition Clause.  *See, e.g., Int'l Bd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Phillip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("[a]lthough the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits"); *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, No. 97-2099, 2000 U.S. App. LEXIS 25400, at *3 (2d Cir. Oct. 11, 2000) ("Noerr Pennington immunity is applicable to RICO actions and to state-law claims such as fraud and tortious interference") (citing *Int'l Bd. of Teamsters*).  Moreover, contrary to AIG's argument, the protection of the right to petition under *Noerr-Pennington*

includes the right to sue and it extends to pre-litigation communications that are incidental to the

prosecution of the suit.  *Sosa v. DirectTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006) (pre-litigation

letters notifying plaintiffs of fraudulent conduct and communicating settlement demands were

protected by the *Noerr-Pennington* doctrine and could not form the basis of RICO claims).[5]

    Further, while AIG is correct that there is a "sham" exception to *Noerr-Pennington*, that

exception only applies where the litigation is "objectively baseless in the sense that no

reasonable litigant could realistically expect success on the merits."  *Prof'l Real Estate Investors,*

*Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993).  Only if the litigation meets this test,

does the Court then consider whether the litigant's subjective motivation in filing the objectively

baseless lawsuit was an attempt to interfere with the business of a competitor.  *Id.* at 60-61.

Courts will reject the "sham" exception on a motion to dismiss where the allegations concerning

the baseless litigation are conclusory and fall "short of what is necessary to establish a claim that

no reasonable litigant could realistically expect to win such claims."  *Thermos Co. v. Igloo*

*Prods. Corp.*, No. 93 C 5826, 1995 WL 842002, at *5 (N.D. Ill. Sept. 27, 1995) (recommending

dismissal of counterclaims, finding allegations that plaintiffs "engaged in a course of conduct to

harass and restrain competitors" and a "systematic practice of making trademark infringement

claims against others without regard to the legal merits of the claims" were insufficient to

establish the "sham" exception or overcome the protections of *Noerr-Pennington*) *adopted by*

---

[5] Authority cited by AIG does not stand for the proposition that communications incident to future
litigation are not protected by the *Noerr-Pennington* doctrine. When read correctly, the court in *Unique
Coupons, Inc. v. Northfield Corp.*, No. 99 C 7445, 2000 WL 631324 (N.D. Ill. May 16, 2000) found that
the public statements and communications at issue concerned misrepresentations as to the content and
import of past litigation and the court did not otherwise address the scope of the *Noerr-Pennington*
protection.  *Id.* at *2-3.  Furthermore, the Tenth Circuit in *Cardtoons, L.C. v. Major League Baseball
Players Assoc.*, 208 F.3d 885, 893 (10th Cir. 2000), merely held that pre-litigation threats communicated
solely between private parties are not afforded immunity from suit by the right to petition.  By contrast,
the steps taken to here preserve the Participating Companies' right to sue were letters to state
governments communicating the decision to not allow a release of the Participating Companies' claims.

1995 WL 745832, at *6; *see also Mercatus Group LLC v. Lake Forest Hosp.*, 528 F.Supp. 2d

797, 808-09 (N.D. Ill. 2007) (sham exception was not applicable to the assertion of *Noerr-*

*Pennington* because, despite allegations that defendant's conduct was "objectively baseless," the

actual facts alleged in the complaint failed to support a claim that defendant was not genuinely

attempting to obtain government action in its favor).

Here, it is not objectively baseless to seek legal redress for the true amount of damages

caused by AIG's *admitted underreporting*.   Rejection of the Workers Compensation Fund,

including notifying the states that they were not authorized to release Participating Companies'

claims, was necessary in order to preserve the right to seek damages from AIG.[6]   Accordingly,

AIG has not (and cannot) allege the "sham" exception to overcome the RICO Defendants' clear

right to petition.  There is, therefore, no misuse of office.

Second, AIG has not properly alleged a private gain to the RICO Defendants.  Honest

services prosecutions are historically based upon private gain that comes from side-payments or

kickbacks to the service-provider from third parties.  *See United States v. Thompson*, 484 F.3d

877, 883-84 (7th Cir. 2007).  AIG, however, contends that the scheme to block the Pool from

accepting the Workers Compensation Fund had an adverse effect on AIG, and—since AIG is a

competitor of the RICO Defendants—there is a consequent "economic and competitive

advantage" conferred upon the RICO Defendants as a result of the Board's decision.   (Resp. at

---

[6] Cases cited by AIG do not present similar circumstances wherein the allegedly wrongful petitioning sought redress for admitted wrongdoing and the alternative choice to suit required the defendant to release any claims and acquiesce to the results of an investigation and consequent settlement to which it was not a party.  *See Frayne v. Chicago 2016*, No. 08 C 5290, 2009 WL 65236, at *1, *4 (N.D. Ill. Jan. 8, 2009); *Eazypower Corp. v. Alden Corp.*, No. 03 C 3164, 2003 WL 22859492, at *1, *3 (N.D. Ill. Dec. 2, 2003); *Tizes v. Curcio*, No. 94 C 7657, 1995 WL 476675, at *6 (N.D. Ill. Aug. 9, 1995).  The decision in *Wright v. DeArmond*, 977 F.2d 339, 348 (7th Cir. 1992) is further distinguishable because that case involved allegations that city officials improperly used their position to negotiate a settlement agreement on behalf of the city that included personal benefits to the defendants in violation of state conflict of interest statutes.

24.)  AIG cites no authority for the proposition that consequent harm to a competitor amounts to

a private gain sufficient to support criminal sanction and a RICO violation.  By AIG's logic, any

alleged breach of fiduciary duty that negatively impacts a competitor could warrant criminal

punishment or civil RICO penalties.  AIG's reasoning runs afoul of the purpose behind the

"private gain" requirement—to cabin the potential overbreadth of the open-ended and

amorphous honest services statute.  *See Bloom*, 149 F.3d at 654 (recognizing that the honest

services statute, when construed broadly, would reach a multitude of violations of state-law

fiduciary duties simply because the mails are used in the process); *see also Sorich v. United

States*, 129 S. Ct. 1308, 1309-10 (2009) (Scalia, J.) (dissenting from denial of certiorari while

noting the purpose of the private gain requirement).  The Seventh Circuit has rejected attempts to

extend the scope of the private gain requirement to such tangential consequences.  *See, e.g.*,

*Thompson*, 484 F.3d at 884 (holding that an increase in official salary, or the psychological

benefit associated with a superior's approval (and associated job security), is not the sort of

private gain that criminalizes an act under Section 1346.)  AIG's argument is not supported by

prudence or common sense, much less legal precedent, and should be rejected outright.

### F. AIG Cannot State a Claim for Failure to Investigate or File Lawsuits.

AIG's RICO claim also fails to the extent it is premised on the RICO Defendants' alleged

failure to direct NCCI or the Pool to investigate or file lawsuits against other alleged

underreporters.  (Resp. at 24-25.)  Simply put, AIG cannot state a viable RICO claim based on

the failure to investigate or sue where AIG has previously argued, successfully, that neither

NCCI nor the Pool has standing to bring a lawsuit against an individual underreporting company.

AIG responds by arguing that the Pool's lack of standing "does not alter the fact that the

members of the Pool Board have a fiduciary duty to AIG and all the other participating

companies to protect the integrity of the Pool by investigating and policing underreporting."

(*Id.*)  AIG's statement in this regard contradicts its prior successful assertions that the Pool is "is merely a collection of contracts that comprise a reinsurance mechanism, not an 'organization' or 'association' that asserts its members' collective interests," that the Pool's "purpose is *not* to represent the Participating Companies' interest as to third parties," and that "[a]t best, then, the Pool is a bystander in what is really a dispute among the Participating Companies."  (Dkt. 409, at 10, 12 (emphasis in original).)

Having argued that the Pool was not designed to represent its members' interests as to underreporting by other participating companies, and having successfully litigated that position, resulting in the dismissal of NCCI's claims, AIG cannot turn around and assert legal claims against the RICO Defendants for failing to direct the Pool to do precisely that.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ( "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him") (citation and quotations omitted.) AIG's RICO claims premised on the alleged failure to investigate or sue other participating companies should therefore be dismissed.

*     *     *

For the foregoing reasons, AIG has failed to plead a viable RICO violation, and the Court should dismiss Count One of the Amended Complaint with prejudice.

## II.      AIG FAILS TO STATE A VIABLE CLAIM FOR RICO CONSPIRACY

As this Court has previously recognized, a claim for RICO conspiracy cannot lie unless a plaintiff adequately pleads a RICO violation.  (Dismissal Order at 31.)  *Accord Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000).  Since AIG's RICO claim is subject to dismissal, Claim Two – for RICO conspiracy – should likewise be dismissed with prejudice.

19

AIG takes no issue with this basic premise, but rather argues that the second and independent basis for dismissing AIG's RICO conspiracy claim – AIG's failure to plead an agreement – is unfounded.  (Resp. at 25.)   In making this argument, AIG misstates the applicable standard by citing cases that address the level of participation in the conduct of the enterprise that is required in order to find that a defendant has conspired to violate RICO.  (*See id.*)  Even the cases cited by AIG, however, make clear that a plaintiff must still allege a knowing agreement to commit a RICO violation.  *See Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000) ("[t]o summarize that which is clear, subsection (d) of sec. 1962 requires an agreement to violate another provision of the statute, in this case subsection (c)").  Here, AIG's conclusory allegations that the RICO Defendants "agreed to conspire" and agreed that "at least two of the predicate acts … would be committed" (Resp. at 26) are not sufficient to allege a RICO conspiracy claim.  *See Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 785 (7th Cir. 1999) (dismissing RICO claim where conclusory allegations failed to plead any facts indicating an act of agreement, the roles the various defendants would play in the conspiracy, or that the defendants agreed to the commission of two specific predicate acts).

AIG's attempt to identify various "surrounding circumstances" in order to "give rise to an inference of an agreement" does not save AIG's claim.  (*See* Resp. at 27.)  Allegations regarding the four RICO Defendants' service as Chair or Vice Chair, their participation in Board meetings, and their service on the Ad Hoc Committee do not provide a legitimate basis for inferring an agreement to violate RICO.  *See, e.g.*, *United States v. Useni*, 516 F.3d 634, 646 (7th Cir. 2008) ("mere association with the conspirators, knowledge of a conspiracy and presence during

conspiratorial discussions is not sufficient to convict a person of conspiracy").[7]  AIG's

insufficient allegations of collective knowledge of underreporting fare no better.  *See* section I.

A. *supra*.  For these reasons, as well as those set forth in the RICO Defendants' opening brief,

Count Two fails to state a viable claim for RICO Conspiracy irrespective of the fate of AIG's

primary RICO claim.

## III.  AIG FAILS TO STATE A VIABLE CLAIM FOR CIVIL CONSPIRACY

AIG's civil conspiracy claim fails for the same reasons its RICO and RICO conspiracy

claims fail.  For the reasons set forth above and in the RICO Defendants' opening brief, the

Court should dismiss AIG's civil conspiracy claim with prejudice.

## IV.  AIG FAILS TO STATE A VIABLE CLAIM FOR BREACH OF FIDUCIARY DUTIES

Cognizant that the Court sustained AIG's original claim for breach of fiduciary duties,

the RICO Defendants respectfully request that the Court reevaluate such claim in light of the

Court's ensuing decision that neither NCCI nor the Pool has standing to bring a lawsuit against

an individual underreporting company and the Supreme Court's recent admonition that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," *Iqbal*, 129 S. Ct. at 1949.[8]  In Count Four of the Amended

Complaint, AIG merely recounts the elements of a standard breach of fiduciary duties claim –

---

[7] The extensive evidence and/or allegations concerning an agreement to conspire presented in the cases cited by AIG are far more significant than the conclusions and meager allegations here, and these cases do not support AIG's position.  *See United States v. Useni*, 516 F.3d 634, 646-47 (7th Cir. 2008); *United States v. Neapolitan*, 791 F.2d 489, 501-02 (7th Cir. 1986); *Pelfresne v. Stephens*, 35 F. Supp. 2d 1064, 1076-77 (N.D.Ill. 1999).  Further, and contrary to AIG's argument, these authorities do not stand for the proposition that a plaintiff is absolved of its obligation to allege facts supporting an agreement to violate RICO simply because such information is purportedly within the "unique knowledge" of the defendants.

[8] The Court should disregard AIG's attempt to incorporate its argument with respect to the "law of the case doctrine" set forth in its opposition to the Non-Underreporting Pool Board Members', NCCI's and the NWCRP's motions to dismiss.  (Response at 29, n.7.)  As AIG is well aware, the incorporation of such argument violates the very clear page limitation imposed by this Court.  (Dkt. 506.)

existence of fiduciary duties, breach, damages – without providing *any* factual support for the allegations. (AC ¶¶ 192-94.) While AIG also "realleges and incorporates by reference" the prior paragraphs of its pleading, (*id.* ¶ 191), those paragraphs do not provide the factual basis necessary to support a claim for breach of fiduciary breach. Indeed, Count Four suffers from the same infirmities as do AIG's RICO and conspiracy claims, including AIG's failure to plead facts sufficient to support a "reasonable inference" of knowledge, AIG's prior argument that the Pool was not designed to represent its members' interests as to underreporting by other participating companies, and the fundamental implausibility of AIG's claims. Thus, for the reasons set forth above and in the RICO Defendants' opening brief, Count Four of the Amended Complaint should be dismissed with prejudice.

## V.    AIG FAILS TO STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT

In its response, AIG *concedes* that its claim for unjust enrichment against the RICO Defendants and Sentry must be dismissed with prejudice given the contractual relationship, under the Articles of Agreement, between AIG and the other participating companies. (Resp. at 30 (noting that AIG has argued for dismissal of the Class Plaintiffs' unjust enrichment claim on the same basis as the RICO Defendants seek to dismiss AIG's unjust enrichment claim)). *Accord Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382 (1987). AIG, however, suggests that its unjust enrichment claim should nevertheless be sustained if the Court determines to allow the Class Plaintiffs' unjust enrichment claim to proceed "for any reason (including that it is asserted against a parent company that is not a signatory to the relevant contract here, *i.e.,* the Articles of Agreement)." (Resp. at 30). In other words, AIG tellingly *concedes that it has brought a claim that is not cognizable under the law* and yet asks the Court to sustain that improper claim simply to keep AIG on even footing with the Class Plaintiffs.

Clearly, there is no legal support for AIG's suggestion that the competing claims should rise or fall together.  The *only* question before the Court is whether AIG has stated a viable unjust enrichment claim and AIG concedes that it has not.[9]  AIG's submission should thus end the Court's inquiry, and Count Eight of the Amended Complaint, brought against the RICO Defendants as well as Sentry, should be dismissed in its entirety with prejudice.

## CONCLUSION

For the reasons set forth herein and in the RICO Defendants opening brief, the Court should dismiss Counts One, Two, Three, Four and Eight of AIG's Corrected First Amended Complaint, in their entirety, with prejudice.

Respectfully submitted,

s/Mark A. Schwartz _____
One of the Attorneys for Liberty
Mutual Group, Inc.

James I. Rubin
James A. Morsch
Amy B. Kelley
Jason S. Dubner
Mark A. Schwartz
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

s/Edward P. Gibbons _____
One of the Attorneys for ACE INA
Holdings, Inc.

Edward P. Gibbons
Christopher A. Wadley
Walker, Wilcox, Matousek LLP
225 West Washington Street
Suite 2400
Chicago, IL 60606
312-244-6744

---

[9] In contrast, Class Plaintiffs have stated a viable unjust enrichment claim against AIG because AIG is not a party to the Articles of Agreement.

s/Michael Cullen Borders
One of the Attorneys for The Hartford
Financial Services Group, Inc.

Michael Cullen Borders
Rosa Maria Tumialan-Landy
Stephen C. Borgsdorf
Renee Lynn Zipprich
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
312-876-1700

s/Hal R. Morris
One of the Attorneys for Sentry
Insurance a Mutual Company

Hal R. Morris
Nicole A. Gross
Christopher S. Naveja
Arnstein & Lehr, LLP
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606
312-876-7100

s/Timothy John Rooney
One of the Attorneys for Travelers
Insurance Company

Timothy John Rooney
Norman K. Beck
Courtney M. Oliva
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
312-558-5600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the foregoing **RICO Defendants' and Sentry's Reply in Support of Their Partial Motion to Dismiss AIG's Corrected First Amended Complaint** by causing copies thereof to be sent by U.S. District Court CM/ECF e-filing system on the 30th day of December, 2009.

Respectfully submitted,

s/ Mark A. Schwartz
One of the Attorneys for Liberty Mutual Group, Inc.

James I. Rubin (ARDC# 2413191)
James A. Morsch (ARDC# 6209558)
Amy B. Kelley (ARDC# 06243229)
Jason S. Dubner (ARDC# 6257055)
Mark A. Schwartz (ARDC# 6270580)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660