Slip Copy, 2009 WL 65236 (N.D.Ill.), 90 U.S.P.Q.2d 1055
**(Cite as: 2009 WL 65236 (N.D.Ill.))**

Several years earlier, in August 2004, Frayne registered the Internet domain name "chicago2016.com." At that time, Frayne was unaware that Chicago intended to bid for the 2016 Olympic Games. On October 10, 2007, a representative of Chicago 2016 approached Frayne, via e-mail, inquiring if he was "entertaining offers on or would otherwise be willing to part with: chicago2016.com." Compl. ¶ 24. Frayne informed the representative that he was unwilling to sell the chicago2016.com domain name. Subsequent attempts by Chicago 2016 to acquire the domain name from Frayne were similarly unsuccessful.

On July 15, 2008, defendants initiated proceedings before the World Intellectual Property Organization (WIPO) claiming that Frayne had registered and used the chicago2016.com domain name in bad faith. In that complaint, defendants alleged that Frayne's registration and use of the domain name violated the Uniform Domain-Name Dispute Resolution Policy (UDRP). After Frayne filed the instant lawsuit on September 17, 2008, the WIPO dismissed defendants' complaint without prejudice.

### Discussion

The Seventh Circuit has emphasized that, even after the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), federal courts continue to adhere to a notice-pleading standard. *E.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1083-83 (7th Cir.2008). "A plaintiff must still provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests ...." *Id.* at 1083 (quotation omitted).

\*2 In response to defendants' motion, Frayne concedes that it is appropriate to dismiss count 4, which purported to state a claim for reverse domain name highjacking. Accordingly, the Court grants defendants' motion with respect to count 4.

### 1. Attempted reverse domain name highjacking

Count 5 purports to state a claim for "attempted reverse domain name highjacking" in violation of 15 U.S.C. § 1114(2)(D). The relevant portion of that statute provides:

A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.

15 U.S.C. § 1114(2)(D)(v). It is undisputed that Frayne's chicago2016.com domain name has not been suspended, disabled, or transferred. For that reason, Frayne conceded it was appropriate to dismiss count 4. He contends, however, that he still can maintain an action for attempted domain name highjacking.

Statutes must be construed to reflect the plain meaning of their language absent a clear expression of legislative intent to the contrary. *E.g., United States v. Berkos*, 543 F.3d 396, 396 (7th Cir.2008). Nothing in the language of the statute creates a cause of action against a party that attempts to suspend, disable, or transfer a domain name but fails to actually do so. 15 U.S.C. § 1114(2)(D)(v). When the plain language of a statute expressly enumerates certain subjects or categories to which it applies, it is construed not to encompass additional subjects that are not listed in the statute. *See, e.g., In re Globe Bldg. Materials*, 463 F.3d 631, 634-35 (7th Cir.2006) (applying statutory construction maxim *expressio unius est exclusio alterius* ). Accordingly, count 5 does not state a claim upon which relief may be granted.

Frayne's citation to *General Media Communications, Inc. v. Crazy Troll, LLC*, No. 06 C 40581, 2007 WL 102988 (S.D.N.Y. Jan.16, 2007), does not save count 5. In *Crazy Troll*, an arbitration panel had found that the plaintiff acted in bad faith by bringing a UDRP action and engaged in reverse domain name highjacking. *Id.* at \*1, 4. The plaintiff subsequently filed an action in federal court seeking, among other things, a declaration that it had not engaged reverse domain name highjacking or initiated a UDRP proceeding in bad faith. *Id.* at \*1. In a decision granting plaintiff's motion for partial summary judgment, the court noted that the rules for UDRP proceedings permit an arbitration panel to find that a party has initiated proceedings in bad faith in an attempt to improperly deprive a registered holder of a domain name. *Id.* at \*5. Granting the declaratory relief sought by the plaintiff, the court concluded that the plaintiff had not engaged in actual or attempted reverse domain name highjack-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 65236 (N.D.Ill.), 90 U.S.P.Q.2d 1055
(Cite as: 2009 WL 65236 (N.D.Ill.))

ing. *Id.* at *7. The court did not suggest the existence of a cause of action for attempted reverse domain name highjacking under 15 U.S.C. § 1114(2)(D); rather, it merely found erroneous a UDRP arbitration panel ruling-made under UDRP rules-that the plaintiff had engaged in such conduct.

## 2. Constitutional claims

*3 In counts 6 through 9, Frayne alleges that Chicago 2016 has violated his free speech and equal protection rights under the United States Constitution and the Illinois Constitution. Chicago 2016's first argument is that Frayne's constitutional claims cannot stand because it is not a "state actor." The parties do not dispute that only state actors can be held liable for constitutional violations of the sort alleged here. *See generally San Francisco Arts & Athletics, Inc. v. USOC,* 483 U.S. 522, 542-47, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). In *San Francisco Arts,* the Supreme Court held that the USOC was not a state actor. *Id.* Citing the similar functions it performs for the City of Chicago, Chicago 2016 relies on that case extensively to argue that it is not a state actor. The Seventh Circuit has noted, however, that "in the final analysis, the state action determination must be based on the specific facts and the entire context of a given case. 'Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.'" *Dunham v. Frank's Nursery & Crafts, Inc.,* 919 F.2d 1281, 1284 (7th Cir.1990) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Notably, the ruling in *San Francisco Arts* was made on a motion for summary judgment, not a motion to dismiss. *San Francisco Arts,* 483 U.S. at 527.

In this case, Frayne has alleged that Chicago 2016 is a state actor based on its relationship with the City of Chicago. Though Chicago 2016 repeatedly asserts that no facts in the complaint support that allegation, Frayne's allegations are sufficient under a notice-pleading standard. This ruling, of course, does not preclude Chicago 2016 from moving for summary judgment on this issue should Frayne fail to adduce evidence to support his allegation that Chicago 2016 is a state actor.

Next, Chicago 2016 contends that even if it is a state actor, its activities with respect to the chi-

cago2016.com domain name are protected under the *Noerr-Pennington* doctrine. Under that doctrine, which originated in the antitrust context but applies generally, parties are protected from suit for actions they take involving litigation, lobbying efforts, and public statements. *See New West, L.P. v. City of Joliet,* 491 F.3d 717, 721-22 (7th Cir.2007) (citing *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)). Despite Frayne's contention to the contrary, the Seventh Circuit has expressly held that municipalities enjoy the benefits of the *Noerr-Pennington* doctrine. *Id.* at 722. Actions to protect a trademark, including enforcing trademark rights in court, are subject to protection under the *Noerr-Pennington* doctrine. *See The Thermos Co. v. Igloo Prods. Corp.,* No. 93 C 5826, 1995 WL 745832, at *5 (N.D.Ill.Dec.13, 1995). The *Noerr-Pennington* doctrine applies to petitions made to administrative agencies. *Wilk v. Am. Med. Ass'n,* 895 F.2d 352, 358 (7th Cir.1990).

*4 There is, however, an exception to the *Noerr-Pennington* doctrine. "Sham" lawsuits or petitions, " 'in which persons use the governmental process[,] as opposed to the outcome of that process,' to directly harm or harass another party are not protected ...." *Tarpley v. Keistler,* 188 F.3d 788, 794 (7th Cir.1999) (quoting *City of Columbia v. Omni Outdoor Adver., Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991)). Frayne alleges that "[d]efendants' actions in bringing baseless WIPO proceedings and threatening legal proceedings against Frayne" have violated his constitutional rights. Compl. ¶ 69. By this allegation, Frayne has raised the issue of whether the WIPO proceedings were a sham designed to injure him, thus rendering the *Noerr-Pennington* doctrine inapplicable. In light of this allegation, the Court must deny the motion to dismiss based on the *Noerr-Pennington* doctrine.

With respect to Frayne's claims under the Illinois Constitution, Chicago 2016 argues that those claims are barred because Illinois provides immunity against suit for pursuing litigation, such as Chicago 2016 did in the WIPO proceedings. As defendants acknowledge in their brief, those immunities do not apply in situations where the defendant engaged in wrongful conduct or acted out of malice. *Arlington Heights Nat'l Bank v. Arlington Heights Fed. Sav. & Loan*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 65236 (N.D.Ill.), 90 U.S.P.Q.2d 1055
**(Cite as: 2009 WL 65236 (N.D.Ill.))**

*Assoc.,* 37 Ill.2d 546, 550-51, 229 N.E.2d 514, 517-
18 (1967). Frayne has alleged that Chicago 2016 al-
leged in such conduct. Accordingly, the Court denies
the motion to dismiss the Illinois constitutional
claims.

Finally, Chicago 2016 contends that Frayne's equal
protection claims (counts 8 and 9) should be dis-
missed because it has discretion regarding when and
against whom it chooses to enforce its trademark
rights. That argument is based entirely on a footnote
in the *San Francisco Arts* decision. *See San Fran-
cisco Arts & Athletics,* 483 U.S. at 543 n. 22. The
Supreme Court stated, however, that it was not ad-
dressing the merits of the plaintiff's discriminatory
enforcement claim because it had found the USOC
was not a state actor. *Id.* Moreover, even though the
Court noted the weakness of the plaintiff's claim, that
observation was made in light of detailed facts that
demonstrated that the USOC had not acted in a dis-
criminatory manner. *Id.* Again, it may be appropriate
for Chicago 2016 to move for summary judgment on
this issue at a later date; the argument is not, how-
ever, a proper basis to grant a motion to dismiss when
Frayne has specifically alleged that Chicago 2016 has
asserted its trademark rights in a disparate manner.

### Conclusion

For the foregoing reasons, the Court grants defen-
dants' motion to dismiss [docket no. 18] in part and
denies it in part. The Court dismisses counts 4 and 5
but otherwise denies defendants' motion. The case is
set for a status hearing on January 21, 2009 at 9:30
a.m.

N.D.Ill.,2009.
Frayne v. Chicago 2016
Slip Copy, 2009 WL 65236 (N.D.Ill.), 90 U.S.P.Q.2d
1055

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

LEXSEE



Analysis
As of: Dec 30, 2009

**KEISHA JOHNSON, on behalf of herself and all others similarly situated, Plaintiff,
v. ARONSON FURNITURE COMPANY, Defendant.**

**Case No. 96 C 117**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**1997 U.S. Dist. LEXIS 3979**

**March 31, 1997, Decided
March 31, 1997, DOCKETED**

**DISPOSITION:**   [*1]  Aronson Furniture Company's
motion to dismiss denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consumer filed
suit against defendants, furniture seller and its chief ex-
ecutive officer (CEO), alleging that the seller violated the
Truth in Lending Act (TILA), the Illinois Consumer
Fraud Act (Consumer Fraud Act), and the Racketeer
Influenced and Corrupt Organizations Act (RICO) and
that the CEO violated RICO. Defendants filed a motion
to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The consumer purchased an air condi-
tioner and a mattress set from the seller in two separate
credit transactions. As part of each retail installment con-
tract, the consumer paid to the seller a fee for non-filing
insurance, which was disclosed as part of the "amount
financed" instead of the "finance charge." The consumer
later filed suit on behalf of herself and similarly situated
individuals for violation of the TILA, the Consumer
Fraud Act, and RICO. Defendants filed a motion to dis-
miss. The court granted defendants' motion with respect
to the consumer's RICO claim against the CEO because
the consumer's allegation that the CEO participated in
the conduct of the seller's affairs through a pattern of
mail fraud did not meet the particularity requirements of
Fed. R. Civ. P. 9(b). However, the court denied defen-
dants' motion to dismiss with respect to the remaining
claims, holding that the consumer's allegation that the

seller improperly disclosed the non-filing fee under the
"amount financed" instead of the "finance charge" were
sufficient to state claims under the TILA, the Consumer
Fraud Act, and RICO.

**OUTCOME:** The court granted defendants' motion to
dismiss with respect to the consumer's RICO claim
against the CEO and denied it with respect to the con-
sumer's remaining claims against the seller under the
TILA, the Consumer Fraud Act, and RICO.

**CORE TERMS:** non-filing, finance charge, Lending
Act, consumer, financed, Corrupt Organizations Act,
security interest, premiums paid, mail fraud, risk of loss,
particularity, premium, insurer, reasonable inferences,
side agreements, well-pleaded, perfecting, fee charged,
insurance policy, failure to state a claim, factual allega-
tions, factual dispute, citations omitted, racketeering ac-
tivity, fraudulent conduct, financing statement, partici-
pated, merchandise, disclosure, indirectly

**LexisNexis(R) Headnotes**

*Banking Law > Consumer Protection > Truth in Lend-
ing > Disclosure*
*Commercial Law (UCC) > Secured Transactions (Arti-
cle 9) > Perfection > Methods > Filings > General
Overview*
*Contracts Law > Secured Transactions > Perfection &
Priority > Perfection > General Overview*

[HN1]Under the Truth in Lending Act (TILA), a creditor must separately disclose to the consumer the finance charge incurred for the credit transaction. The finance charge is the cost of consumer credit as a dollar amount. It includes any charge, payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. 12 C.F.R. § 226.4 (Regulation Z). The TILA, 15 U.S.C.S. § 1605(d), expressly allows a creditor to exclude from the finance charge either the fee paid to record or perfect the creditor's security interest or the premium payable for insurance purchased in lieu of perfecting the security interest otherwise required by the creditor in connection with the transaction. However, the fee charged for insurance purchased in lieu of perfecting a security interest may not exceed the recording fee. Non-filing insurance is purchased by a creditor to protect against losses incurred as a result of the creditor's decision not to record or file an instrument, such as a UCC-1 filing statement.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
[HN2]A motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) does not test whether a plaintiff will prevail on the merits but instead whether a claimant has properly stated a claim. The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it is clear that no relief can be granted under any set of facts that can be proved consistent with the allegations. The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN3]To state a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1962(c), a plaintiff must allege with sufficient particularity: (1) conduct, (2) of an enterprise, (3) through a pattern of (4) racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN4]To meet the requirements of Fed. R. Civ. P. 9(b) in a civil Racketeer Influenced and Corrupt Organiza-

tions Act complaint, a plaintiff must plead all averments of fraud with particularity. Specificity requirements may be relaxed when the details of the alleged acts are within the defendant's exclusive knowledge.

*Banking Law > Consumer Protection > Truth in Lending > General Overview*
[HN5]The Truth in Lending Act allows a creditor to exclude from the "finance charge" the fee charged to the debtor for actual non-filing insurance. 15 U.S.C.S. § 1605(d).

*Banking Law > Consumer Protection > Truth in Lending > General Overview*
*Insurance Law > Claims & Contracts > Premiums > General Overview*
[HN6]The Truth in Lending Act, 15 U.S.C.S. § 1605(d), allows a seller to exclude from the "finance charge" the premium paid by the customer for non-filing insurance if the charge is less than the recording fee. However, the premium must include only those charges essential to the business of insurance.

**COUNSEL:** For KEISHA JOHNSON, on behalf of herself and all others similarly situated, plaintiff: Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Tara Leigh Goodwin, Rick D. Young, Richard Joseph Doherty, Louise T. Walsh, Edelman & Combs, Chicago, IL.

For ARONSON FURNITURE COMPANY, ROBERT CREMER, defendants: Edward C. Fitzpatrick, Albert Edwin Fowerbaugh, Jr., Lord, Bissell & Brook, Chicago, IL. David G Greene, Lord, Bissel & Brook, Atlanta, GA.

**JUDGES:** Wayne R. Andersen, United States District Judge

**OPINION BY:** Wayne R. Andersen

**OPINION**

*MEMORANDUM OPINION AND ORDER*

This matter is before the Court on the Fed. R. Civ. P. 12(b)(6) motion of defendants to dismiss all counts of plaintiff's second amended complaint. For the following reasons, defendant's motion is granted in part and denied in part.

*BACKGROUND*

Congress passed the Truth in Lending Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various

credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing . . . practices." [*2] 15 U.S.C. § 1601(a). [HN1]Under the Truth in Lending Act, the creditor must separately disclose to the consumer the finance charge incurred for the credit transaction. "The finance charge is the cost of consumer credit as a dollar amount. It includes any charge, payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4 (Regulation Z). The Truth in Lending Act, 15 U.S.C. § 1605(d), expressly allows a creditor to exclude from the finance charge either the fee paid to record or perfect the creditor's security interest or the premium payable for insurance purchased in lieu of perfecting the security interest otherwise required by the creditor in connection with the transaction. Accord 12 C.F.R. § 226.4(e). However, the fee charged for insurance purchased in lieu of perfecting a security interest may not exceed the recording fee. Id. Non-filing insurance is purchased by a creditor to protect against losses incurred as a result of the creditor's decision not to record or file an instrument, such as a UCC-1 filing statement.

Plaintiff Keisha Johnson purchased from [*3] defendant Aronson Furniture Company ("Aronson") an air conditioner and a mattress and box spring set in two separate credit transactions. As part of each retail installment contract, plaintiff paid an application fee and premiums for payment protection insurance, property insurance, credit life insurance and credit disability insurance. Additionally, in each transaction, plaintiff paid to Aronson a $ 7.00 fee for non-filing insurance. Aronson disclosed the non-filing fee as part of the "amount financed" instead of the "finance charge." American Bankers Insurance Company provided the non-filing and other insurance products sold by Aronson to its customers.

On March 14, 1996, plaintiff filed a second amended complaint on behalf of herself and all others similarly situated against defendants Aronson and Robert Cremer ("Cremer"), CEO of Aronson. The four-count amended complaint alleges that Aronson violated the Truth in Lending Act (Count I), the Illinois Consumer Fraud Act (Count II) and the Racketeer Influenced and Corrupt Organizations Act (Count III). In Count IV, plaintiff that alleges that Cremer violated the Racketeer Influenced and Corrupt Organizations Act. Defendants now move [*4] to dismiss each count of the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b).

**STANDARD OF REVIEW**

[HN2]A motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); see also Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. See Chaney v. Suburban Bus Div. of Regional Transp. Authority, 52 F.3d 623, 626-627 (7th Cir. 1995) (citations omitted).

**DISCUSSION**

[*5] **I. Count IV: RICO against Robert Cremer**

In Count IV, plaintiff alleges that Robert Cremer violated section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") through a pattern of mail fraud. Cremer contends that plaintiff failed to allege any facts with sufficient particularity to support the elements of her claim. We agree. Plaintiff's allegation do not come close to meeting Fed. R. Civ. P. 9(b)'s particularity requirements. See Uni* Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992).

[HN3]To state a claim under RICO, 18 U.S.C. § 1962(c) plaintiff must allege with sufficient particularity: "(1) conduct, (2) of an enterprise, (3) through a pattern of (4) racketeering activity." Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 779 (7th Cir. 1994) (citations omitted); Moore v. Fidelity Fin. Serv., Inc., 949 F. Supp. 673, 675 (N.D. Ill. 1997).

[HN4]To meet Fed. R. Civ. P. 9(b)'s requirement in a civil RICO complaint, a plaintiff must plead all averments of fraud with particularity. Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). Specificity requirements may be relaxed when the details of [*6] the alleged acts are within the defendant's exclusive knowledge. Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994).

The only allegations plaintiff makes specifically referencing Cremer are that he is Aronson's Chief Executive Officer (Second Amended Complaint PP 8, 133) and that he "conducted or participated in the conduct of Aronson's affairs through a pattern of mail fraud, in violation of 18 U.S.C. § 1962(c)." (Second Amended Complaint P 134). The complaint contains no allegations stating the circumstances of Cremer's alleged fraudulent conduct. Fed. R. Civ. P. 9(b). Plaintiff has not alleged that Cremer is re-

sponsible for any individual acts of fraud or racketeering activity, that he mailed anything that he participated in a scheme to defraud, or that he committed any acts with the intent to defraud. *See Vildaver v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1995 U.S. Dist. LEXIS 2870, No. 94 C 3041, 1996 WL 165089, *5 (N.D. Ill. 1995) (plaintiff must sufficiently sketch out the details of defendant's alleged fraudulent conduct). Plaintiff argues that Cremer controls Aronson because he is a partial owner and senior executive. (Pl. Response pp. 20-21). However, this argument falls [*7] short of demonstrating that Cremer controlled Aronson through a pattern of mail fraud.

The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. Plaintiff, however, fails to allege anything that allows the Court to infer the existence of the requisite nexus between the alleged racketeering activity (Cremer's alleged mail fraud) and Cremer's management of the enterprise's (Aronson's) affairs. *See Hartz v. Friedman,* 919 F.2d 469, 472-473 (7th Cir. 1990); *Overnite Transp. Co. v. Truck Drivers, Oil Drivers, Filing Station and Platform Workers Union Local No. 705,* 904 F.2d 391, 393 (7th Cir. 1990). Therefore, plaintiff has not stated a claim against Cremer under the Racketeer Influenced and Corrupt Organizations Act. Defendants' motion to dismiss is granted as to Count IV.

## II. Counts I, II and III

Count I alleges that Aronson violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq., by improperly disclosing the "non-filing fee" under the "amount financed" instead of the "finance charge." Count II alleges a two-part violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq., namely that [*8] (1) Aronson failed to disclose the $ 7 non-filing insurance fee as part of the "amount financed" instead of under the "finance charge" and (2) Aronson failed to provide plaintiff with copies of the non-filing insurance policy and any other insurance paid for by the plaintiff. Count III alleges that Aronson violated the Racketeer Influenced and Corrupt Organizations Act by conducting the affairs of American Bankers Insurance Company through a pattern of mail fraud. Counts I, II and III are each founded on Aronson's alleged improper disclosure of the $ 7.00 non-filing fee under the "amount financed" instead of the "finance charge."

Plaintiff alleges that Aronson did not actually purchase non-filing insurance for which it charged plaintiff $ 7.00 and, therefore, the fee should have been disclosed under the "finance charge." (Second Amended Complaint PP 31-34, 103). Specifically, plaintiff claims that any non-filing insurance allegedly purchased from American Bankers Insurance Company is sham insurance. Plaintiff argues that the non-filing insurance is not purchased in lieu of perfecting a security interest because Aronson has an automatically perfected security interest in the goods [*9] purchased by Johnson. (Second Amended Complaint PP 26-27, 35-38). Plaintiff also asserts that the policy does not cover a real risk of loss. According to plaintiff, Aronson will not sustain covered losses due to its policy and practice of not meeting the condition precedent for loss under the policy, namely repossession. (Second Amended Complaint PP 28-29, 39A5). Moreover, plaintiff contends that no risk of loss is shifted to the insurer. (Second Amended Complaint PP 46-62). Plaintiff claims that, pursuant to side agreements, 92% of the premiums paid to American Bankers Insurance Company are returned to Aronson for reasons that do not constitute legitimate claims under the policy. (Second Amended Complaint P 62). Thus, plaintiff argues that, because any claims that are filed are deducted from the 92% returned to Aronson, Aronson is effectively the insurer and bearer of the risk of any claims. (Pl. Resp. p. 10).

Pursuant to 15 U.S.C. § 1605(d), Aronson contends that the Truth in Lending Act expressly permits non-filing insurance to be excluded from the "finance charge" provided that the non-filing insurance fee is less than the UCC-1 filing and release fee. In Illinois, the filing [*10] fee is $ 8. 810 ILCS 5/9-403(5). Aronson also argues that the non-filing insurance is real insurance protecting it from real losses. According to Aronson, without a UCC-1 financing statement, its purchase money security interest can be lost and, thus, the non-filing insurance covers a real risk of loss. Moreover, Aronson argues the insurance policy transfers the risk of loss stemming from its failure to file a UCC-1 financing statement to the insurer, American Bankers Insurance Company. Aronson claims that American Bankers Insurance Company assumes the risks associated with Aronson's inability to repossess financed merchandise, to obtain the proceeds from the debtor's sale of the financed merchandise and to enforce its rights under the retail sales contracts. Aronson asserts that the policy provision affording Aronson 92% of the premiums paid to American Bankers Insurance Company has been removed from the non-filing policy. Additionally, Aronson argues that the alleged side agreements between Aronson and American Bankers Insurance Company are not properly before the Court because they are not part of the Second Amended Complaint.

[HN5]The Truth in Lending Act allows a creditor to exclude [*11] from the "finance charge" the fee charged to the debtor for actual non-filing insurance. 15 U.S.C. § 1605(d). Counts I, II and III each rise or fall on the sufficiency of plaintiff's allegation that the $ 7.00 non-filing insurance fee must be disclosed as part of the "finance charge." Although several lower state and federal courts

have examined this issue, there is no precedential authority setting forth the appropriate legal principles to guide the Court. *E.g., Mitchell v. Industr. Credit Corp., 898 F. Supp. 1518 (N.D. Ala. 1995); In re Pinkston, 183 Bankr. 986 (Bankr. S.D. Ga. 1995); W.S. Badcock Corp. v. Meyers,* 1996 WL 720607 (Fla Dist. Ct. App. 1996); *Whitson v. Warehouse Home Furnishings Dist., Inc.,* No. CV-94-177 (Fla. Cir. Ct. 1995).

For purposes of the motion to dismiss, we find that plaintiff sufficiently alleges that the non-filing insurance purportedly purchased by Aronson is not insurance and, therefore, the $ 7.00 fee should have been disclosed under the "finance charge." Plaintiff's allegation that 92% of the premiums paid to American Bankers Insurance Company for non-filing insurance are returned to Aronson pursuant to policy language and alleged side [*12] agreements is crucial to the sufficiency of her claims.

[HN6]The Truth in Lending Act, 15 U.S.C. § 1605(d), expressly allows Aronson to exclude from the "finance charge" the premium paid by the customer for non-filing insurance if the charge is less than the recording fee. However, the premium must include only those charges essential to the business of insurance. For example, a creditor may exclude from the "finance charge" a premium fee that includes a reasonable commission for selling and processing the policy. Plaintiff's allegation sufficiently raise a factual issue regarding the reasonableness of the 92% commission Aronson allegedly receives from American Bankers Insurance Company for selling its non-filing insurance.

Moreover, plaintiff's allegation regarding the premiums returned to Aronson sufficiently establish her claim that no risk of loss is shifted to American Bankers Insurance Company. If Aronson files no claims under the policy, it will receive back the full 92% of the premiums paid to American Bankers Insurance Company. Moreover, any cliams Aronson files under the policy are deducted from the 92%. Therefore, it appears that Aronson is effectively the insurer because [*13] it bears the burden of any claims filed. In light of plaintiff's allegations, defendant has not persuaded this Court that the non-filing insurance is not self-insurance. Consequently, we find that plaintiff has raised a factual dispute as to whether any risk shifts to American Bankers Insurance Company.

Although defendant strongly disputes plaintiff's allegations, we must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. We therefore find that plaintiff has sufficiently alleged the elements of her claims under the Truth in Lending Act, the Illinois Consumer Fraud Act and RICO against Aronson. Therefore, the motion to dismiss is denied as to Counts I, II and III.

### CONCLUSION

For the foregoing reasons, defendant Aronson Furniture Company's motion to dismiss is denied as to Count I, Count II and Count III and granted as to Count IV.

Wayne R. Andersen

United States District Judge

Date: March 31, 1997

Not Reported in F.Supp., 1997 WL 80928 (N.D.Ill.)
**(Cite as: 1997 WL 80928 (N.D.Ill.))**

☞ Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.

Ronald KOEHLER, Terry Koehler, and Nancy E.
Vogeley, and all others similarly situated, Plaintiff,
v.
NATIONSBANK CORPORATION, NationsBanc
Mortgage Corporation of New York, and Nations-
Banc Mortgage Corporation, Defendants.
**No. 96 C 2050.**

Feb. 20, 1997.

MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

**\*1** Plaintiffs Ronald Koehler, Terry Koehler and
Nancy E. Vogeley, on behalf of a class of plaintiffs,
have sued Nationsbank Corporation ("Nations-
Bank"), a multi-bank holding company, and its sub-
sidiaries, NationsBanc Mortgage Corporation of New
York ("NationsBanc New York") and NationsBanc
Mortgage Corporation ("NationsBanc Mortgage").
This is one of many class action lawsuits consoli-
dated before this Court by the Multi District Litiga-
tion Panel in which plaintiffs claim their mortgage
servicers have retained escrow payments in excess of
their mortgage agreements. Plaintiffs allege that Na-
tionsBanc New York and NationsBanc Mortgage
service the Koehlers' and the Vogeley's mortgage,
respectively, and that NationsBank controls and di-
rects the mortgage servicing activities of these sub-
sidiaries. Plaintiffs allege claims for breach of con-
tract, breach of fiduciary duty, violations of the con-
sumer protection laws of Kansas, Pennsylvania and
other states, and violations of the Racketeer Influ-
enced and Corrupt Organizations Act (RICO). De-
fendant NationsBank seeks to dismiss these claims
pursuant to Federal Rule of Civil Procedure 12(b)(6).

Discussion

This Court will dismiss the complaint for failure to

state a claim only if it appears beyond doubt that the
plaintiff can prove no set of facts in support of his
claim that would entitle him to relief. *Vickery v.
Jones,* 100 F.3d 1334, 1341 (7th Cir.1996). In analyz-
ing the sufficiency of plaintiff's complaint, the factual
allegations will be accepted as true and all reasonable
inferences will be drawn in plaintiff's favor. *Id.*

NationsBank seeks to dismiss the contract claim for
failure to identify the existence of a contract between
plaintiffs and NationsBank. Plaintiffs admit they do
not have a direct breach of contract claim against
NationsBank, but seek to hold NationsBank deriva-
tively liable as a corporate parent for the breaches of
its subsidiaries. Plaintiffs argue that the subsidiary
corporations are merely alter egos of NationsBank,
thus the separate corporate identity should be disre-
garded to avoid injustice. Generally, separate corpo-
rations are distinct from each other and are not liable
for the acts of the other. *Chicago Florsheim Shoe
Store Co. v. Cluett, Peabody & Co., Inc.,* 826 F.2d
725, 728 (7th Cir.1987); *Van Dorn Co. v. Future
Chemical and Oil Corp.,* 753 F.2d 565, 569-570 (7th
Cir.1985). However, the corporate entity may be dis-
regarded if one entity is merely the alter ego of the
other, that is, the corporation is so controlled and
manipulated that it is merely the instrumentality of
the other and maintaining the corporate form would
promote injustice. *Chicago Florsheim,* 826 F.2d at
728. Plaintiffs have made no factual allegations that
would support a finding that NationsBank is merely
the alter ego of NationsBanc New York or Nations-
Banc Mortgage.

NationsBank next seeks to dismiss the RICO claim
for failure to allege that NationsBanc committed at
least two predicate acts of mail fraud within a ten
year period pursuant to 18 U.S.C. § 1961(5) and for
failure to plead fraud with particularity pursuant to
Federal Rule of Civil Procedure 9(b). There is no
question, as between these parties, that plaintiffs ade-
quately alleged a RICO claim against NationsBanc
Mortgage and NationsBanc New York. The question
that remains is whether alleging that NationsBank
knowingly participated in the scheme and in fact con-
trolled and directed it, is sufficient to state a cause of
action against NationsBank. While plaintiffs allega-
tions against NationsBank are scant, they are suffi-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 80928 (N.D.Ill.)
**(Cite as: 1997 WL 80928 (N.D.Ill.))**

cient to inform NationsBank of its role in the scheme. Rule 9(b) requires that cases alleging fraud must be plead with particularity. However, this requirement is relaxed when the facts that the plaintiff would otherwise be required to plead are in the exclusive possession of the defendants. *Arenson v. Whitehall Convalescent and Nursing Home,* 880 F.Supp. 1202, 1208 (N.D.Ill.1995). Courts have specifically held that Rule 9(b) is relaxed when the multiple defendants are all corporate insiders. In such circumstances, the conduct of such individuals need not be specified and the fraudulent acts complained of need not be attributed to certain persons if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations. *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985).

**\*2** NationsBank also seeks to dismiss the plaintiffs' claims for breach of fiduciary duty and violation of the consumer protection statutes for failure to identify any specific misconduct by NationsBank. Again, plaintiffs alleged that NationsBank directly participated in the fraudulent overescrowing scheme by causing its subsidiaries to intentionally submit demands for excessive payments and causing its subsidiaries to collect the excessive amounts. Plaintiffs allegations do not seek to hold NationsBank derivatively liable for its subsidiaries actions as NationsBank argues, but rather seeks to hold NationsBank directly liable for its own tortious misconduct. While the complaint is scant in its factual allegations against NationsBank, it is sufficient to give NationsBank notice of its alleged misconduct.

The motion to dismiss the contract claim is granted. The motion to dismiss the remaining claims is denied.

N.D.Ill.,1997.
Koehler v. Nationsbank, Corp.
Not Reported in F.Supp., 1997 WL 80928 (N.D.Ill.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

**C**Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
SUBURBAN BUICK, INC., Plaintiff,
v.
Jerry GARGO, Gail A. Gargo, Nicholas G. Gargo,
Daniel J. Gargo Charles N. Owen, individually and as
president of Chuck Owen Auto Body, Inc., David C.
MOrmon, individually and as President of Dave's
Auto Body, Greg S. Melvin, Katherine Pollack,
Rosemary Young, Gargo Custom Homes, and Go
Service, Defendants.
**No. 08 C 0370.**

May 29, 2009.

West KeySummary
**Federal Civil Procedure 170A 636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Car dealership's complaint against employees lacked
specificity for Racketeer Influenced and Corrupt Organizations Act-RICO violations and other fraud
claims. Car dealership failed to identify which employees managed the affairs of which enterprise and
failed to allege specifically which enterprise's affairs
each employee conducted through a pattern of racketeering activity. Fed.Rules Civ.Proc.Rule 9(b), 28
U.S.C.A.; 18 U.S.C.A. § 1964.

Brian E. King, Stephen M. Komie, Komie & Associates, Chicago, IL, for Plaintiff.

Clifford Lee Gunter, Attorney at Law, Joliet, IL,
Matthew Patrick Connelly, Craig Edward Donnelly,
Connelly, Roberts & McGivney, Chicago, IL,
Vincent C. Mancini, Terry A. Ekl, EKL WilliamsPLLC TwoArboretum Lakes, James Stuart
Harkness, Momkus, McCluskey, Monroe, Marsh &

Spyratos LLC, Lisle, IL, for Defendants.David C.
Morman, Sandwich, IL, pro se.

***MEMORANDUM OPINION AND ORDER***

ROBERT W. GETTLEMAN, District Judge.

**\*1** Plaintiff Suburban Buick, Inc. has brought a six-
count complaint against defendants Jerry D. Gargo
("J.Gargo"); his wife, Gail A. Gargo ("G.Gargo");
their sons, Nicholas G. ("N.Gargo") and Daniel J.
Gargo ("D. Gargo" and together with N. Gargo, "the
Gargo Sons"); Charles N. Owen ("Owen"); Owen's
company, Chuck Owen Auto Body, Inc. ("COAB");
David C. Mormon ("Mormon"); Mormon's company,
Dave's Auto Body; Greg S. Melvin ("Melvin");
Katherine Pollack ("Pollack"); Rosemary Young
("Young"); and two companies started by Jerry
Gargo, Gargo Custom Homes and GO Service.[FN1]
Plaintiff originally filed a verified complaint on January 17, 2008. On July 30, 2008, plaintiff sought and
was granted leave of the court to file a first amended
verified complaint. The first amended complaint (the
"complaint") was filed on August 29, 2008.

> FN1. The following individuals/entities have
> been served but have not yet appeared or responded to the complaint: Dave's Auto
> Body, Gargo Custom Homes & GO Service.

The complaint: alleges violations of the Racketeer
Influenced and Corrupt Organizations (RICO) Act,
18 U.S.C. § 1964, based on wire fraud (Count I), mail
fraud (Count II), and money laundering (Count III);
seeks injunctive relief to restrict defendants from
disposing or selling certain assets (Count IV); and
asserts claims for conversion (Count V) and civil
conspiracy (Count VI). All of the counts are based on
alleged intentional fraudulent conduct by defendants.
The Court's jurisdiction is invoked pursuant to 18
U.S.C. § 1964 and 28 U.S.C. § 1331.

Several of the defendants have filed motions to dismiss the first amended verified complaint pursuant to
Fed.R.Civ.P. 9(b) for failure to plead allegations of
fraud with particularity, and Rule 12(b)(6) for failure
to state a claim upon which relief may be granted.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

For the reasons explained below, the motions are granted in part and denied in part.

### *RELEVANT FACTS*

The complaint alleges that the various defendants conspired to defraud Suburban Buick, a General Motors car dealership located in Wheaton, Illinois, of money and the honest value of its employees' services, with defendant Jerry Gargo serving as the central figure in all branches of the conspiracy. Jerry Gargo was a manager and/or officer of Suburban Buick. Nicholas and Daniel Gargo were unauthorized employees of Suburban Buick, hired by their father, Jerry Gargo. Daniel Gargo was a manager of Suburban Buick. Charles Owen is the owner and principal operator of Chuck Owen Auto Body, Inc., a company that he allegedly used in furtherance of the purported conspiracy. David Mormon owns and operates Dave's Auto Body, another defendant, which was also allegedly used in furtherance of the purported conspiracy. Mormon was previously a Suburban Buick employee. Greg Melvin served as the parts department manager of Suburban Buick. Katherine Pollack was Suburban Buick's office manager and treasurer and Rosemary Young was her assistant. Gargo Custom Homes is an entity through which the owners, Defendants Jerry and his wife, Gail Gargo, allegedly invested funds defrauded from Suburban Buick. GO Services is an entity that was allegedly organized by Jerry Gargo to facilitate the conspiracy.

**\*2** Plaintiff alleges that defendants conspired to engage in a pattern of racketeering activity by operating three kinds of scams through Suburban Buick; the defendant entities, Chuck Owen Auto Body, Dave's Auto Body, GO Services; and a non-party, Auto Service South, with J. Gargo functioning as the central figure in the conspiracy. The alleged scams are: (1) an auto body repair scam, (2) an auto parts scam, and (3) an unauthorized pay and salary scam.

### *Auto Body Repair Scam*

With respect to the auto body repair scam, plaintiff alleges that defendants J. Gargo and Owen entered into an illegal agreement to defraud Suburban Buick of funds by falsifying work orders. To accomplish this task, J. Gargo and Owen created false work orders for General Motors vehicles still under warranty. The work orders identified vehicles for which repair

work was neither necessary nor actually obtained. The "repair work" was outsourced to Owen's company, Chuck Owen Auto Body. Owen would then create a repair order on his company's letterhead and mail the order to Suburban Buick for payment. Ultimately, Owen received payment from Suburban Buick based upon these invoices.[FN2] Plaintiff alleges that Owen sent a pre-determined amount of money (about fifty percent) from these payments to GO Service, a company owned by J. Gargo. J. Gargo and Owen purportedly met on a monthly basis in furtherance of this scam.

> FN2. General Motors ultimately reimbursed Suburban Buick for these expenses, as the identified vehicles were still under warranty.

### *Auto Parts Scam*

With respect to the auto parts scam, plaintiff alleges that defendants Greg Melvin and J. Gargo converted auto parts acquired with Suburban Buick funds. Specifically, plaintiff alleges that Melvin, J. Gargo, and Owen operated a scheme whereby Owen would purchase auto parts from Suburban Buick through J. Gargo and Melvin at fifty percent of Suburban Buick's cost for the part. In furtherance of the scheme, Owen would telephone J. Gargo with a request for a specific auto part. J. Gargo redirected all such calls to Melvin, who, as parts department manager, would order the requested part using Suburban Buick's funds. Upon receipt of the parts, Melvin removed them from Suburban Buick's inventory and manipulated inventory records to conceal their theft. Melvin, together with J. Gargo, then sold the parts to Owen and split the proceeds from these sales. Owen then sold the parts, which he knew to be stolen goods, to his customers at full retail price, thus enriching himself. Plaintiff also alleges that Melvin and J. Gargo sold David Mormon, a former Suburban Buick mechanic, transmissions for less than the amount Suburban Buick would usually charge its retail customers.[FN3]

> FN3. General Motors also reimbursed Suburban Buick for the costs of these transmissions upon reliance on Gargo's representations that the transmissions were for vehicles under warranty.

### *Unauthorized Pay and Salary Scam*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

Plaintiff alleges that defendants J. Gargo, the Gargo Sons, Greg Melvin, Pollack, and Young conspired to defraud Suburban Buick through an unauthorized pay and salary scheme. Specifically, plaintiff alleges that defendants J. Gargo (as general manager), Pollack (as office manager and treasurer), and Young (as Pollack's assistant) used their authority and positions to provide unauthorized pay increases and other compensation to themselves, the Gargo Sons, and Melvin, without approval of Suburban Buick's board of directors. Jerry Gargo, Pollack, and Young had the authority to act as signatories on Suburban Buick's checks. Under Suburban Buick's policy, all three were signatories on direct deposit payroll checks. The complaint identifies at least ten occasions on which defendants gave and/or received unauthorized compensation from the fall of 2003 through the summer of 2004. Plaintiff also alleges that J. Gargo hired his sons, Daniel and Nicholas, without plaintiff's authorization.

### DISCUSSION

**\*3** Defendants, Greg Melvin, Charles Owen, and COAB have moved to dismiss under Rules 9(b) and 12(b)(6), arguing that the complaint: 1) fails to allege with particularity defendants' misconduct in Counts I (RICO Wire Fraud), II (RICO Mail Fraud), III (RICO Money Laundering), V (Conversion), and VI (Civil Conspiracy); 2) fails to allege with particularity that Suburban Bank is the defrauded and damaged party in Counts I, II, III, V, and VI; 3) fails to satisfy the elements for a RICO claim and, thus, fails to state a claim upon which relief can be granted in Counts I, II, and III; and 4) fails to state a claim for injunctive relief in Count IV. For the reasons discussed below, their motions are granted.

Defendants, J. Gargo, G. Gargo, and the Gargo Sons broadly seek dismissal on Rule 9(b) and 12(b)(6) grounds. G. Gargo and the Gargo Sons note that the complaint fails to allege any wrongdoing on their part with particularity. For the reasons discussed below, the court agrees and these motions are granted.

Defendants Pollack and Young seek 12(b)(6) dismissal of all counts on grounds that the allegations are "unclear," "contradictory and patently false" in comparison to police reports they attach to their motion to dismiss.[FN4] They also argue that plaintiff fails to allege that they actively participated in or had the

requisite knowledge about the alleged fraudulent schemes; they simply performed their duties as Suburban Buick employees. For the reasons discussed below, the court denies Pollack and Young's joint motion to dismiss.

> FN4. Plaintiff has neither attached nor referred to these reports in its complaint.

### ANALYSIS

### I. LEGAL STANDARDS

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir.1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.,* 246 F.3d 1065, 1067 (7th Cir.2001). Further, the court will not consider the documents or other materials beyond those attached to or referred by the complaint itself. *See* Fed.R.Civ.P. 12(d); *see also Scibetta v. Rehtmeyer, Inc.,* No. 04C5246, 2005 WL 331559, at \*1-\*2 (N.D.Ill. Feb.9, 2005) (considering contracts attached to the plaintiff's complaint, but not exhibits attached to a motion to dismiss) (citing *Wright v. Assoc. Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994)). To survive a Rule 12(b)(6) motion, a plaintiff need not provide detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

**\*4** Allegations of fraud are subject to a heightened pleading standard. Fed.R.Civ.P. 9(b). Fraud must be pled with particularity, which means the complaint must allege the "who, what, when, where and how" of the fraud. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). At the motion to dismiss stage, Rule 9(b) requires only that the plaintiff identify the alleged misrepresentations, not actually prove that the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

statement was false. *See Bankers Trust Co. v. Old Republic Ins., Co.*, 959 F.2d 677, 683 (7th Cir.1992). This standard also applies to allegations of predicate acts of fraud in the RICO context. *See Slaney v. Int'l. Amateur Athletic Fed'n*, 244 F.3d 580, 597-99 (7th Cir.2001); *Haroco, Inc. v. Am. Natl. Bank and Trust Co.*, 747 F.2d 384, 405 (7th Cir.1984) (finding that the plaintiff adequately specified the transactions, the false representations, and the identities of those involved). The pleadings must be specific enough to put defendants on notice of the conduct alleged.

In the instant case, the court finds that plaintiff has failed to allege with particularity a grand scheme to defraud Suburban Buick. The complaint identifies six entities as RICO enterprises under 18 U.S.C. § 1961(4), but plaintiff has failed to identify which enterprises were used by which defendants to conduct which predicate acts in violation of the RICO statute. *See Appraisers Coalition v. Appraisal Inst.*, No. 93C913, 1993 WL 326671, at *7 (N.D.Ill. Aug.18, 1993) (noting the importance of linking each identified enterprise with at least one predicate act). Further, plaintiff fails to identify to which defendant(s) each of the six counts applies. In sum, plaintiff's allegations are insufficient to put the defendants on notice of the alleged conduct.

## II. J. GARGO'S MOTION TO DISMISS

Defendant J. Gargo moves to dismiss the complaint on the following four grounds: 1) plaintiff's failure to allege that it was defrauded and damaged by defendants; 2) the complaint's liberal use of "Defendants Gargo" and "Gargo" lacks specificity as to each defendant's conduct and as to the application of each count to each defendant; 3) the lack of specificity concerning each defendant's management of an enterprise; and 4) plaintiff's Count IV, for an injunction, is an improper means of seeking injunctive relief. The court agrees that plaintiff's allegations are insufficient.

The court agrees that the complaint lacks the specificity required under Fed.R.Civ.P. 9(b) for RICO violations and other fraud claims. "[I]n a case involving multiple defendants ... 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.' " *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir.1994) (quoting *DiVittorio v. Equidyne Extractive*

*Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987)). The complaint should not lump multiple defendants together, but should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Id.* at 778 (quoting *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1493 (N.D.Ill.1988)). As defendant J. Gargo duly notes, the amended complaint is replete with references to "Defendants Gargo" and "Gargo" when discussing the conduct of, and counts alleged against, each of the four Gargo defendants. The amended complaint also contains many broad references to "Defendants". This style of pleading is wholly inadequate to put defendants on notice of the conduct alleged.

*5 The complaint is also deficient because plaintiff fails to identify which defendants were managing the affairs of which enterprise. The complaint exhibits a kitchen-sink style of pleading, which has resulted in a very confusing, imprecise, and muddied set of allegations and counts against defendants. The complaint identifies six entities that qualify as enterprises under 18 U.S.C. § 1961(4). The plaintiff also refers to an "Enterprise" with a capital "E" as in, "The Defendants ... infiltrated the enterprise and conspired to use the Enterprise to facilitate the conspiracy[.]" This use of "Enterprise" suggests the existence of another sort of enterprise, in addition to the six identified. Perhaps plaintiff has attempted to allege an association-in-fact enterprise, consisting of the various defendants. However, plaintiff has fallen far short of pleading an association-in-fact enterprise.

This lack of clarity is fatal to plaintiff's claims. RICO claims under 18 U.S.C.1962(c) require a showing that each defendant directly or indirectly conducted or participated in an enterprise's affairs through a pattern of racketeering activity. The complaint fails to allege specifically which enterprise's affairs each defendant conducted through a pattern of racketeering activity. The complaint strongly suggests that Suburban Buick is one such enterprise, but the complaint is vague as to whether the allegations apply to the conduct of any other identified enterprise and/or an association-in-fact enterprise.

Further, under 18 U.S.C.1961(1), racketeering activity includes the predicate acts of wire fraud, mail fraud, and money laundering. Plaintiff has alleged three separate counts against the "Defendants" for

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

each of these predicate acts, but entirely fails to identify which defendant is being accused of engaging in any of these predicate acts.

Finally, the court agrees that plaintiff's attempt to seek injunctive relief at this stage is improper. The complaint, on its face, is unclear as to whether plaintiff is seeking pre-judgment or post-judgment injunctive relief. To the extent that the complaint is seeking pre-judgment relief, the court refers the parties to its March 27, 2008, Order in which it denied plaintiff's motion for a preliminary injunction (Dkt.76). To the extent that plaintiff is seeking post-judgment relief, it is premature. Plaintiff has brought its claim for injunctive relief under 18 U.S.C. § 1964, which specifies remedies available for RICO violations. The court has jurisdiction "to prevent and restrain [RICO] violations" under section 1964(a). Pursuant to the Seventh Circuit's holding in *Nat'l Org. of Women, Inc. v. Scheidler*, plaintiff has statutory authority under 1964(c) to seek injunctive relief in a private action for RICO violations. 267 F.3d 687, 695-700 (7th Cir.2001), *aff'g* 897 F.Supp. 1047, 1083 (N.D.Ill.1995), *rev'd on other grounds*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). If plaintiff is able to state an actionable RICO claim, plaintiff has the right under 1964(c) to seek injunctive, as well as monetary, relief. Thus, the issue may remain alive, and the court can revisit this if and when injunctive relief is sought upon the court's determination of liability. The request for equitable relief should be included in plaintiff's prayer for relief rather than in a separate count.

*6 For the foregoing reasons, the court grants J. Gargo's motion to dismiss as to all counts.

## III. G. GARGO'S AND THE GARGO SONS' MOTIONS TO DISMISS

Defendants, G. Gargo and the Gargo Sons, move to dismiss plaintiff's complaint on Rule 9(b) and 12(b) grounds. They contend that plaintiff fails to lodge specific allegations of wrongdoing. The court agrees.

Section 1962(c) makes it unlawful for "any person employed by or associated with [an] enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of [an] unlawful debt." 18 U.S.C. § 1962(c). Section 1961(4) defines

"enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Consequently, a plaintiff must show that the defendants conducted the affairs of some legal entity or group of individuals *through* a pattern of racketeering (i.e., criminal) activity.[FN5]

> FN5. Several of the defendants incorrectly argue that plaintiff fails to allege how they directed or controlled the affairs of a "criminal enterprise." A plaintiff need not show that the defendants conducted the affairs of a "criminal enterprise."

Plaintiff has failed to allege adequately that G. Gargo or the Gargo Sons conducted the affairs of any of the identified enterprises through a pattern of racketeering activity. Plaintiff has done nothing more than allege that G. Gargo is a co-owner of Gargo Custom Homes and the wife of the alleged mastermind, J. Gargo. Plaintiff has simply alleged that the Gargo Sons were hired by their father without Suburban Buick's authorization, they received unauthorized compensation, and D. Gargo served as a manager of Suburban Buick. Plaintiff has not alleged that any of these defendants had knowledge of the alleged scheme or did anything in furtherance of the schemes. Because racketeering activity under RICO involves predicate acts of fraud, plaintiff must allege that the predicate acts were committed willfully or with actual knowledge of the illegal activity. *See Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1346-1348 (7th Cir.1995) (discussing intent requirement for mail and wire fraud claim); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir.1994) (upholding complaint's dismissal where plaintiff failed to allege sufficient facts for inference of fraudulent intent). Plaintiff has alleged neither willfulness nor knowledge. While the court may draw reasonable inferences from the facts alleged in the plaintiff's favor, any inferences as to these defendants' conduct would go well beyond the four corners of the complaint.

For the foregoing reasons, the court grants G. Gargo's and the Gargo Sons' motions to dismiss.

## IV. POLLACK AND YOUNG'S JOINT MOTION TO DISMISS

Defendants Pollack and Young move to dismiss

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

plaintiff's complaint in light of, 1) contradictory information contained in police reports [FN6] attached to their motion, and 2) because they acted at the direction of others. Neither of these arguments is applicable to the pending motions to dismiss, but would resonate if this court were considering motions for summary judgment.

> FN6. The referenced police reports suggest that Pollack and Young discovered, investigated, and reported the alleged auto body repair scheme.

*7 First, when reviewing motions to dismiss, the court is constrained to the four corners of the complaint. The police reports were neither attached to nor referenced in or central to plaintiff's amended complaint. Because this is a motion to dismiss and not a motion for summary judgment, the court will not consider the documents or other materials beyond those attached to the complaint itself. *See Scibetta v. Rehtmeyer,* No. 04C5246, 2005 U.S. Dist. LEXIS 5563, at *4-*5 (N.D.Ill. Feb. 9, 2005) (citing *Wright v. Assoc. Ins. Companies,* 29 F.3d 1244, 1248 (7th Cir.1994) (internal citations omitted); *compare Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993) (affirming consideration of contracts attached to motion, as the parties' contractual obligations were central to the complaint).

Second, Pollack and Young assert that they neither facilitated nor were responsible for any of the alleged unauthorized pay increases, much less "actively participated in, knew about or conspired with the other Defendants," because they acted at the direction of others. This argument is also not suited for the motion to dismiss context and is better suited for summary judgment, where the court's scrutiny extends beyond the complaint to other evidence in the record.

For the foregoing reasons, Pollack and Young's joint motion to dismiss is denied, although the claims against them are dismissed along with the claims against the other defendants.

## V. MELVIN AND OWEN'S MOTIONS TO DISMISS

### A. RICO Claims (COUNTS I, II, and III)

Defendants Melvin and Owen seek dismissal of plaintiff's RICO claims on the grounds that, 1) plaintiff has failed to plead with particularity the nature of their alleged fraudulent conduct in the "alleged criminal enterprise," [FN7] and 2) plaintiff has failed to state a claim upon which relief can be granted, especially because plaintiff has failed to "establish" that it is the defrauded and damaged party. The court agrees that plaintiff's RICO claims should be dismissed for failure to plead with particularity, but disagrees that plaintiff bears the burden of "establishing" anything at the pleading stage.

> FN7. As already explained, RICO violations do not arise from the operation of a "criminal enterprise," but from the operation of an enterprise for criminal purposes.

### 1. 18 U.S.C. § 1962

As the court has already noted, the complaint lacks particularity in a myriad of ways. Most significantly, the amended complaint lacks a clear identification of the specific section of the RICO statute at issue. As plaintiff duly notes in its amended complaint, 18 U.S.C. § 1964 provides a private right of action for injuries incurred as a result of violations of section 1962. Subsection (a) of § 1962 proscribes the investment of income, derived from a pattern of racketeering activity, in or for the establishment or operation of an enterprise that affects interstate or foreign commerce. Subsection (b) proscribes persons from acquiring or maintaining control of an enterprise that affects interstate or foreign commerce through a pattern of racketeering activity. Subsection (c) proscribes persons employed by or associated with an enterprise that affects interstate or foreign commerce from conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity. Subsection (d) proscribes conspiracies to violate any of the aforementioned provisions.

*8 Plaintiff fails to identify with clarity which subsection has been violated. Each of the RICO counts contains a reference to section 1962(a)'s prohibition of the use or investment of income derived from a pattern of racketeering activity. However, at no point has plaintiff alleged any injuries resulting from defendants' investment of income derived from racketeering activity. An allegation of injuries resulting from such investments is a necessary component of a

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

section 1962(a) claim. *See R.E. Davis Chem. Corp. v. Nalco Chem. Co., 757 F.Supp. 1499, 1524-1525 (N.D.Ill.1990).*

To further complicate matters, earlier in the amended complaint plaintiff alleges that a number of defendants "infiltrated the enterprise and conspired to use the Enterprise to facilitate the conspiracy and conduct unlawful acts." This suggests that the action is premised on a violation of 1962(c). However, without more specificity neither the court nor the defendants can be sure. Melvin and Owen appear to construe the action as one premised on a subsection 1962(c) violation and seek dismissal based, in part, on plaintiff's failure to allege with specificity that they conducted the affairs of the enterprise.

To state a claim under section 1962(c), plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jennings v. Auto Meter Prods. Inc., 495 F.3d 466, 472 (7th Cir.2007)* (citing *Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).* Each of these elements must be pled with particularity. *Rolls-Royce Corp. v. Alcor Engine Co., No. 1:04-CV-0968, 2007 WL 1021450, at *5 (S.D.Ind. Mar.29, 2007)* (dismissal of RICO claims for, in part, failure to allege one of the elements with particularity). A plaintiff must allege that defendants have engaged in at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten-year period. Plaintiff alleges that defendants committed various predicate acts of wire fraud, mail fraud, and money laundering. Melvin and Owen contend that plaintiff has failed to plead the particularities of the predicate acts.

**2. Conduct**

Melvin and Owen argue that plaintiff fails to allege that they controlled the operations of the enterprise. The court agrees.

To " 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)* (referring to 18 U.S.C. § 1962(c)). "In other words, [the defendant] must have participated in the operation or management of the enterprise itself." *United States v. Swan, 250 F.3d 495, 498 (7th Cir.2000); see also Reves, 507 U.S. at 185.* While

adopting this "operation or management test," the *Reves* court noted that "an enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." *Reves at 184; see also MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 979 (7th Cir.1995)* (reversing dismissal of section 1962(c) claim against lower-rung employees).

*\*9* As previously noted, plaintiff has identified several entities as enterprises under 18 U.S.C.1961(4), including Suburban Buick and COAB. Plaintiff has alleged several facts that Melvin conducted the affairs of the Suburban Buick enterprise. As Suburban Buick's parts department manager, Melvin had the ability and authority to maintain Suburban Buick's auto parts inventory, including ordering auto parts for Suburban Buick's vehicles and managing inventory records. Basic logic dictates that the parts department plays an important role in the affairs of a car dealership such as Suburban Buick.

With respect to Owen, plaintiff has adequately alleged that Owen conducted the affairs of the COAB enterprise. Owen is the owner of COAB. He has the ability to prepare and submit work orders for repair work on under-warranty vehicles sold by Suburban Buick, to funnel payments to other vendors for work purportedly done on vehicles, and to order auto parts to complete repair work.

However, the amended complaint is unclear as to whether Melvin and/or Owen also conducted the affairs of other identified enterprises, such as Go Service ("GO Service is an enterprise created by Defendants to defraud Suburban Buick of monies"), Auto Service South ("Auto Service South is an enterprise created by Defendants to defraud Suburban Buick of monies"), or the undefined "Enterprise." This confusion is heightened in the parties' briefs, where Melvin and Owen refer to another enterprise, an "alleged *criminal* enterprise." Plaintiff's response brief fails to refute the existence of this other enterprise.

**3. Particularities of the Predicate Acts**

A RICO complaint "must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communication perpetrating the fraud." *United States Textiles, Inc. v. Anheuser-Busch*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Cos.,* 911 F.2d 1261, 1268 n. 6 (7th Cir.1990) (quoting *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 291 (1st Cir.1987). The pleadings must go beyond "loose references to mailings and telephone calls." *R.E. Davis Chem. Corp. v. Nalco Chem. Co.,* 757 F.Supp. 1499, 1516 (N.D.Ill.1990). "Pattern" under RICO "consists of at least two predicate acts of racketeering committed within a ten-year period." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 779 (7th Cir.1994) (citing 18 U.S.C. § 1961(5)). However, a plaintiff must allege more than just the occurrence of two predicate acts. A plaintiff "must show that the predicate acts are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Seventh Circuit has set forth a multi-factor test for determining the relationship and continuity [FN8] of the predicate acts: 1) the number and variety of predicate acts, 2) length of time over which the predicate acts were committed, 3) the number of victims, 4) the presence of separate schemes, and 5) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975-76 (7th Cir.1986). Length of time is the most-important, but not all-determinative, factor. *See Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1024 (7th Cir.1992); *see also Vicom,* 20 F.3d at 780.

> FN8. The Supreme Court identified the existence of two types of continuity: a) closed, namely a "closed period of repeated conduct" or b) open-ended, namely "past conduct that by its nature projects into the future with a threat of repetition". *H. J., Inc.,* 492 U.S. at 241. GO Service.

*10 In the instant case, Melvin and Owen assert that plaintiff has also failed to set forth the details of the predicate acts. The court agrees. For example, although plaintiff has alleged three schemes (auto body repair scam, auto parts scam, and unauthorized pay and salary scam), plaintiff has failed to identify sufficiently the mail and wire transmissions that furthered the scams. In its claim for wire fraud (Count I), plaintiff asserts that "between November 1996 through April, 2005, Defendants, in whole or in part, committed *numerous* separate acts [of wire fraud]". (emphasis added). Plaintiff then identifies *only two* specific instances on which "[d]efendants" submitted allegedly fraudulent repair orders, in an attempt to demonstrate that at least two acts of racketeering activity occurred within ten years of one another. Plaintiff's allegations are similarly broad in its claim for mail fraud (Count II). Plaintiff fails to identify the frequency or number of transmissions, the dates of the transmissions, or even which defendants conducted the alleged predicate acts. Consequently, plaintiff has failed to allege sufficiently a pattern of racketeering activity.

### 4. Defrauded or Damaged Party

Defendants Melvin and Owen assert that plaintiff's RICO claims should be dismissed because plaintiff has failed to "establish" that it was defrauded and damaged. To survive a motion to dismiss, a plaintiff need not "establish" anything; a plaintiff must only allege. A RICO plaintiff alleging predicate acts of fraud need not show that it relied on defendants' alleged misrepresentations. *See Bridge v. Phoenix Bond & Indemnity Co.,* ---U.S. ----, ----, ----, 128 S.Ct. 2131, 2139, 2145, 170 L.Ed.2d 1012 (2008), *aff'g* 477 F.3d 928 (7th Cir.2007). A plaintiff need allege only that the defendants' scheme was a proximate cause of its injuries. *Holmes v. Secs. Investor Protection Corp.,* 503 U.S. 258, 268-69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *see also Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). In the instant case, plaintiff has alleged that it suffered damages resulting from defendants' conduct. As examples, plaintiff has alleged deprivation of its right to receive the honest services of its employees, loss of property, and loss of funds. These allegations of damages are sufficient. At the pleading stage, injuries (including those resulting from fraudulent conduct), need not be identified with particularity. *Recreation Servs. v. Odyssey Fun World,* 952 F.Supp. 594, 597 (N.D.Ill.1997).

In sum, although plaintiff has pled damages sufficiently, it has failed to state substantive claims for RICO violations of wire fraud (Count I), mail fraud (Count II), or money laundering (Count III). Melvin and Owen's motions to dismiss are granted.

### B. Conversion (Count V)

To state a claim for conversion, plaintiff must allege: 1) an unauthorized and wrongful assumption of control, dominion or ownership by defendant over plaintiff's personalty; 2) plaintiff's right to the property; 3)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
(Cite as: 2009 WL 1543709 (N.D.Ill.))

plaintiff's right to immediate possession of the property, absolutely and unconditionally; and 4) a demand for possession of the property. *Fonda v. Gen. Casualty Co. of Ill.,* 279 Ill.App.3d 894, 899, 216 Ill.Dec. 379, 665 N.E.2d 439 (1st Dist.1996). Because the claim alleges a conversion of money, the money must be capable of being described as a specific chattel, meaning plaintiff must have a right to "a specific fund or specific money in coin or bills." *Mid-America Fire and Marine Ins. Co. v. Middleton,* 127 Ill.App.3d 887, 892, 82 Ill.Dec. 555, 468 N.E.2d 1335 (4th Dist.1984). The money does not have to be "specifically earmarked" for plaintiff, and need not always be a segregated fund, but the converted funds must be "capable of being described, identified or segregated in a specific manner." *Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of New York,* No. 05C5749, 2007 WL 1017858 at *24 (N.D.Ill. Mar.30, 2007) (and cases cited therein).

*11 In count V, plaintiff claims that defendants converted in excess of $250,000.00 of plaintiff's property, including funds, for their personal use and gain. The complaint contains various allegations of how defendants converted plaintiff's property, including auto parts from plaintiff's inventory and funds in an alleged payroll scam. Defendants, Melvin and Owen seek dismissal of this count because of its purported failure to state a claim for conversion under Rule 12(b)(6). In sum, defendants argue that plaintiff lodges "undefined" allegations as to plaintiff's right to the converted property and fails to allege that it demanded the property's return. The court agrees this count should be dismissed.

In the instant case, plaintiff alleges that defendants converted certain funds belonging to plaintiff in an unauthorized pay and salary scam and deposited these fraudulently obtained funds into various bank accounts. Plaintiff also alleges that some of the defendants attempted to conceal the converted funds by investing in real estate, businesses, or paying off personal expenses. Some of the defendants also converted auto parts from plaintiff's inventory and profited from the sales of the stolen goods.

Plaintiff's claim is dismissed for indefiniteness because it is premised, at least in part, on the conversion of funds taken directly from plaintiff's coffers (as in the salary scam) or by indirect means (through the sale of stolen auto parts). Plaintiff cannot identify

which specific funds went to which defendant or even if any of those funds are still in defendants' possession, especially given defendants' purported attempts to conceal the nature of the funds. In short, plaintiff alleges a general debt owed by defendants to plaintiff, which is insufficient to state a claim for conversion of money. *See TABFG, LLC v. Richard Pfeil,* No. 08 C 6979, 2009 WL 1209019 (N.D.Ill. May 1, 2009).

**C. Civil Conspiracy (Count VI)**

To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between at least two people for the purpose of accomplishing some unlawful purpose or some lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement. *Faith Freight Forwarding Corp. v. Ruiz,* No. 95C7560, 1997 WL 159207, at *5 (N.D.Ill. March, 24, 1997). Additionally, a plaintiff must allege not only an agreement, but some factual allegation suggesting a "meeting of the minds." *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1580 (7th Cir.1991). "[A] conspiracy claim sounding in fraud must be pled with particularity." *Platinumtel Communs., LLC v. Zefcom, LLC,* No. 08-CV1062, 2008 WL 5423606, at *8-*9 (N.D.Ill.Dec.30, 2008). Failure to allege sufficiently the underlying fraud claim will result in dismissal of the conspiracy claim. *Id.; see also Cumis Ins. Soc'y v. Peters,* 983 F.Supp. 787, 794 (N.D.Ill.1997). Defendants Melvin and Owen argue that Count VI is deficient because plaintiff fails to set forth the elements of civil conspiracy with the required specificity under Fed.R.Civ.P. 9(b). The court agrees.

*12 In the instant case, plaintiff alleges that "[d]efendants agreed on multiple levels and in multiple conspiracies to defraud Suburban Buick." Later, plaintiff alleges that "multiple overt acts were committed by all members of the conspiracy in furtherance of the common scheme to defraud Suburban Buick." Plaintiff has failed to allege any specific agreement or any facts that suggest a "meeting of the minds" among all the defendants. Plaintiff has identified three different schemes and at least six different entities. According to plaintiff's description, not every defendant was involved in each scheme and not every defendant was operating within each identified entity. This renders each defendant's knowledge of,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1543709 (N.D.Ill.)
**(Cite as: 2009 WL 1543709 (N.D.Ill.))**

much less agreement to participate in, every scheme unlikely.

Plaintiff's style of pleading leaves the reader wholly confused as to the number of conspiracies plaintiff has alleged. Further, as previously discussed, plaintiff has not pled its underlying fraud claims with particularity. Accordingly, Melvin's and Owen's motions to dismiss plaintiff's civil conspiracy claim are granted.

### *CONCLUSION*

For the reasons stated above, plaintiff's first amended complaint is dismissed. This matter is set for status on June 11, 2009 at 9:00 a.m., at which time plaintiff may request leave to file a second amended complaint.

N.D.Ill.,2009.
Suburban Buick, Inc. v. Gargo
Slip Copy, 2009 WL 1543709 (N.D.Ill.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp., 1995 WL 842002 (N.D.Ill.)
**(Cite as: 1995 WL 842002 (N.D.Ill.))**

**H**Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
The THERMOS CO. and Nippon Sanso Netherlands
B.V.
v.
IGLOO PRODUCTS CORP.
No. 93 C 5826.

Sept. 27, 1995.

REPORT AND RECOMMENDATION

<u>GUZMAN</u>, United States Magistrate Judge.

**\*1** Pending is Plaintiffs/Counterdefendants', The
Thermos Company ("Thermos") and Nippon Sanso
Netherlands B.V.'s ("NSN") motion to dismiss with
prejudice Counts II-X of Igloo's Second Amended
Counterclaim and to strike paragraphs 7-12 of Igloo's
Second Amended Counterclaim and paragraphs 47(c)
and 48 of Igloo's Second Amended Answer. For the
reasons listed below, it is hereby recommended that
this motion be granted.

*BACKGROUND FACTS*

Thermos manufacturers and sells a variety of con-
sumer products, including vacuum-insulated bottles,
foam-insulated jugs and beverage containers, ice
chests, picnic coolers, school lunch kits, food jars
coffee carafes, barbecue grills, and related accesso-
ries. To identify its products and distinguish them
from products made and sold by others Thermos has
extensively used and advertised numerous trade-
marks, including its company name and trademark
THERMOS. The United States Patent and Trademark
Office has issued federal trademark registrations for
each of these marks. These trademarks and their fed-
eral registrations are currently owned by NSN and
exclusively licensed to Thermos for use in the United
States. Thermos filed this lawsuit for trademark in-
fringement and unfair competition after Igloo in-
fringed three of Thermos' federally registered trade-
marks, including Thermos' flagship mark THER-
MOS, on competitive products.

This lawsuit was filed after extensive attempts on
Thermos' part to deal with Igloo's alleged unlawful
use of Thermos' marks. These efforts began in Janu-
ary 1992, when Thermos objected to the form of Ig-
loo's use of the term "thermos" on its steel vacuum
bottles. Like trademark policing letters sent to other
infringers, the 1992 letter to Igloo identified the rele-
vant THERMOS registration number, cited *Aladdin,*
specified how Igloo's use of "thermos" violated
Thermos' rights, and requested Igloo to cease its use
of the THERMOS mark. Igloo then discontinued use
of the offending mark. In early 1993, however,
Thermos determined that Igloo had embarked on an-
other form of infringement by beginning to use the
term "THERMOS" on its foam-insulated containers.
Thermos again wrote to Igloo demanding that Igloo
cease this infringement. The parties then engaged in
settlement negotiations. In return for an agreement
permitting Igloo to dispose of its existing inventories
by July 31, 1993 (which Igloo sought to extend to
September 30 as that deadline approached), and a
release of Plaintiffs' damages claims for Igloo's prior
uses of the term "thermos," Igloo indicated its will-
ingness not to use "thermos" on the offending prod-
ucts and not to challenge Thermos' trademark rights
in the future. Drafts of settlement agreements were
exchanged and the principal terms agreed upon by
counsel but the agreement was never signed. Ther-
mos filed this lawsuit in September 1993.

Igloo in its second amended counterclaim, contends
that Thermos' efforts to enforce their federally regis-
tered trademarks by filing this lawsuit and by sending
prelitigation policing letters asking that Igloo cease
its infringing activities, as well as Thermos' use of the
word "genuine" in connection with its own federally
registered trademark, THERMOS, violated Sections
1 and 2 of the Sherman Antitrust Act, <u>15 U.S.C. §§ 1-
2</u>; the Texas Free enterprise and Antitrust Act of
1983, <u>Tex.Bus. & Com.Code Ann. §§ 15.05(a), (b)</u>;
Section 43(a) of the Lanham Act, <u>15 U.S.C. §
1125(a)</u>; and the common law of unfair competition.
In particular, Count II is a counterclaim against
Thermos for monopolization in violation of federal
antitrust laws; Count III is a counterclaim against
NSN for monopolization in violation of federal anti-
trust laws; Count IV is a counterclaim against Ther-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 842002 (N.D.Ill.)
**(Cite as: 1995 WL 842002 (N.D.Ill.))**

mos and NSN for conspiracy to monopolize in violation of federal antitrust laws; Count V is a counterclaim against Thermos and NSN for violation of section 15.05(a) of the Texas Free Enterprise and Antitrust Act of 1983 by entering into a contract in restraint of free trade or commerce; Count VI is a counterclaim against Thermos and NSN for violation of the Texas Free Enterprise and Antitrust Act of 1983 by entering into a combination or conspiracy in restraint of trade or commerce; Count VII is a counterclaim against Thermos and NSN for violation of section 15.05(b) of the Texas Free Enterprise and Antitrust Act of 1983 by attempting to monopolize in restraint of trade or commerce; Count VIII is a counterclaim against Thermos and NSN for violation of section 15.05(b) of the Texas Free Enterprise and Antitrust Act of 1983 by conspiring to monopolize in restraint of free trade or commerce; Count IX is a counterclaim against Thermos for violation of section 43(a) of the Federal Trademark Act; Count X is a counterclaim against Thermos for common law unfair competition.

**\*2** Paragraphs 7-12 of the amended counterclaim allege as follows:

7-monopolization

8-restraint of trade

9-public confusion regarding product origin

10-conspiracy to restrain trade

11-unlawful strategy to suppress competition

12-market power to restrain trade

Paragraphs 47(c) and 48 of Igloo's affirmative defenses allege unclean hands based on conspiracy and a violation of antitrust laws.

*JURISDICTION*

This Court has jurisdiction over this action and pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), 1338(b) and 1267(a).

*DISCUSSION*

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may make a motion to dismiss asserting a failure by the plaintiffs to state a claim upon which relief can be granted. The U.S. Supreme Court in interpreting this rule has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This circuit has held that a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. Sutliff v. Donovan [1984-1 TRADE CASES ¶ 65,851], 727 F.2d 648, 654 (7th Cir.1984) (quoting In Re Plywood Antitrust Litigation [1981-2 TRADE CASES ¶ 64,273], 655 F.2d 627, 641 (5th Cir.1981), cert. dismissed, 462 U.S. 1125 (1983). Additionally, this circuit has held that parties should not be forced to commence pretrial discovery and that a court can grant a motion to dismiss on the pleadings if there is no reasonable prospect that the plaintiff can make out a cause of action from the events related in the complaint. Car Carriers v. Ford Motor [1984-2 TRADE CASES ¶ 66,220], 745 F.2d 1101, 1106 (7th Cir.1984); Sutliff v. Donovan, 727 F.2d 648, 654 (7th Cir.1984). For purposes of this motion to dismiss this court is prohibited from looking beyond the face of Igloo's counterclaim. An exception to this rule arises, however, for purposes of determining whether subject matter jurisdiction exists. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936) and Grafon Corp. v. Hauser Mann, 602 F.2d 781, 783 (7th Cir.1979). Obviously, subject matter is not a question in this case. Igloo, however, has submitted evidentiary and factual materials (Exhibit B in particular) with its Motion for Leave to File Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims Or for Modification of Protective Order. These extrinsic materials, as well as arguments derived from them, may not be considered by this court with regard to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), see Fleishfresser v. Directors of Sch. Dist. 200, 15 F.3d 680, 684 (7th Cir.1994); R.J.R. Serv., Inc. v. Aetna Casualty & Sur. Co., 895 F.2d 279, 281 (7th Cir.1989), (although the court may consider as part of the pleading exhibits properly attached and incorporated in the complaint if they are referred to in and central to plaintiff's complaint. See Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993); Beam v. IPCO Corp.,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.