## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) | |
| Counter-Claimants, | ) ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Counter-Defendants. | ) ) | |
| | ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) | Case No. 09 CV 2026  Judge Robert W. Gettleman  Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS THE LIBERTY PARTIES' COUNTERCLAIMS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.   THE LIBERTY PARTIES FAIL ADEQUATELY TO PLEAD A RICO
     VIOLATION........................................................................................................ 2

     A.   The Liberty Parties Fail to Allege a RICO Enterprise. .......................... 2

     B.   The Liberty Parties Fail to Allege a Pattern of Racketeering Activity. ................. 7

     C.   The Liberty Parties Fail to Allege a Sufficiently Definite Injury. ........................ 10

II.  THE LIBERTY PARTIES' STATE LAW CLAIMS, OTHER THAN CLAIMS
     AND REMEDIES FOR BREACH OF CONTRACT, SHOULD BE DISMISSED. ........ 10

     A.   The Liberty Parties' Chapter 93A Claim Should Be Dismissed. .......................... 10

     B.   The Liberty Parties' Fraud Claim Should be Dismissed for Failure to
          Plead Reliance with Particularity as Required by Rule 9(b). .............................. 12

     C.   The Liberty Parties' Request for Punitive Damages Should Be Dismissed. ........ 14

III. THE LIBERTY PARTIES' PROMISSORY ESTOPPEL AND UNJUST
     ENRICHMENT CLAIMS SHOULD BE DISMISSED ................................................. 18

     A.   The Liberty Parties Have Failed to State a Valid Claim for Promissory
          Estoppel.................................................................................................................. 18

     B.   The Liberty Parties Have Failed to State a Valid Claim for Unjust
          Enrichment. ............................................................................................................ 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994,*
948 F. Supp. 747 (N.D. Ill. 1996) ................................................................. 15

*Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.,*
933 F. Supp. 64 (D. Mass. 1996) ................................................................. 12

*Automated Teller Mach. Advantage LLC v. Moore,*
No. 08 Civ. 3340(RMB)(FM), 2009 WL 2431513 (S.D.N.Y. Aug. 6, 2009) ......................... 5

*Barbara's Sales, Inc. v. Intel Corp.,*
227 Ill. 2d 45 (2007) ................................................................................. 14

*Belkin v. Eastpak,*
No. 986312, 1999 WL 753397 (Mass. Super. July 9, 1999) ....................................... 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................... 6

*Bindl v. Next Level Commc'ns,*
No. 2005AP630, 2005 WL 3543613 (Wis. Ct. App. Dec. 29, 2005) ................................. 16

*Boyle v. United States,*
-- U.S.--, 129 S. Ct. 2237 (2009) ......................................................... 2, 3, 4, 5

*Brewer v. Poole Construction Co.,*
No. CIV. A. 98-0924B, 2001 WL 792783 (Mass. Super. Ct. May 3, 2001) ........................ 13

*Brooks v. Ross,*
578 F.3d 574 (7th Cir. 2009) ......................................................................... 6

*Cashco Oil Co. v. Moses,*
605 F. Supp. 70 (N.D. Ill. 1985) ..................................................................... 8

*Crigger v. Fahnestock & Co.,*
No. 01 Civ. 07819JFK, 2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003) ........................... 17

*Doyle v. Hasbro, Inc.,*
103 F.3d 186 (1st Cir. 1996) ........................................................................ 12

*Emery v. Am. Gen. Fin., Inc.,*
134 F.3d 1321 (7th Cir. 1998) ........................................................................ 5

*Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC,*
647 F. Supp. 2d 938 (N.D. Ill. 2009) ................................................................. 9

*Fillmore v. Leasecomm Corp.,*
Nos. 20040487H, 86778, 2004 WL 3091642 (Mass. Super. Nov. 15, 2004) ....................... 11

ii

*Fleet Nat'l Bank v. Certain Underwriters at Lloyd's, London,*
   No. 022673BLS, 2003 WL 21246552 (Mass. Super. May 14, 2003) ................................... 11

*Haur v. Union State Bank of Wautoma,*
   532 N.W.2d 456 (Wis. Ct. App. 1995) ............................................................................ 15

*Johnson v. Brown & Williamson Tobacco Corp.,*
   122 F. Supp. 2d 194 (D. Mass. 2000) ............................................................................. 12

*Kramer v. Alpine Valley Resort, Inc.,*
   321 N.W.2d 293 (Wis. 1982) ......................................................................................... 18

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,*
   781 N.E.2d 787 (Mass. 2003) .................................................................................... 10, 11

*McGee v. State Farm Mut. Auto. Ins.,*
   No. 08-CV-392 (FB)(CLP), 2009 WL 2132439 (E.D.N.Y. July 10, 2009) ........................... 5

*Moll Indus., Inc. v. Oral-B Labs., Inc.,*
   No. 011301BLS, 2001 WL 1194678 (Mass. Super. July 17, 2001) ............................... 10, 11

*Pagel v. Gaffney,*
   Nos. 98-3134, 98-3196, 1999 WL 760988 (Wis. Ct. App. Sept. 28, 1999) ......................... 15

*Papa John's Int'l, Inc. v. Chaib,*
   No. 05 C 6894, 2006 WL 932353 (N.D. Ill. April 7, 2006) ............................................... 8

*Perlman v. Zell,*
   185 F.3d 850 (7th Cir. 1999) ........................................................................................... 8

*Platten v. HG Bermuda Exempted Ltd.,*
   437 F.3d 118 (1st Cir. 2006) .......................................................................................... 19

*Purizer Corp. v. Battelle Mem'l Inst.,*
   No. 01 C 6360, 2002 WL 22014 (N.D. Ill. Jan. 7, 2002) ................................................... 7

*Rao v. BP Prods. N. Am., Inc.,*
   --F.3d--, No. 07-2065, 2009 WL 4640634 (7th Cir. Dec. 9, 2009) ..................................... 4

*Raytheon Co. v. McGraw-Edison Co.,*
   979 F. Supp. 858 (E.D. Wis. 1997) ................................................................................. 16

*Rosenblum v. Travelbyus.com, Ltd.,*
   No. 01 C 6441, 2002 WL 31487823 (N.D. Ill. Nov. 6, 2002) ............................................ 8

*Ruiz v. Bally Total Fitness Holding Corp.,*
   447 F. Supp. 2d 23 (D. Mass. 2006) ............................................................................... 19

*Slaney v. The Int'l Amateur Athletic Fed'n,*
   244 F.3d 580 (7th Cir. 2001) ........................................................................................... 9

*Sofi Classic S.A. de C.V. v. Hurowitz,*
   444 F. Supp. 2d 231 (S.D.N.Y. 2006) ............................................................................. 17

*Suna v. Bailey Corp.,*
    107 F.3d 64 (1st Cir. 1997) ....................................................... 12

*TVT Records v. Island Def Jam Music Group,*
    412 F.3d 82 (2d Cir. 2005) ........................................................ 17

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.,*
    380 F. Supp. 2d 250 (S.D.N.Y. 2005) ..................................... 17

*Townsend v. Sears, Roebuck & Co.,*
    227 Ill. 2d 147 (Ill. 2007) ......................................................... 15

*U.S. for Use & Benefit of L.E. Myers Co. v. George Hyman Constr. Co.,*
    Civ. A. No. 86-319-S, 1987 WL 13242 (D. Mass. June 19, 1987)...................... 17

*United States v. Hutchinson,*
    573 F.3d 1011 (10th Cir. 2009) ................................................... 5

*United States v. Turkette,*
    452 U.S. 576 (1981) ............................................................. 4, 5

*Weber v. Sanborn,*
    502 F. Supp. 2d 197 (D. Mass. 2007) .................................... 11, 12

*Wolnak v. Cardiovascular and Thoracic Surgeons of Cent. Wis.,*
    706 N.W.2d 667 (Wis. Ct. App. 2005) ................................... 15, 16

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC,*
    246 F. Supp. 2d 102 (D. Mass. 2003) ........................................ 11

## <u>Statutes</u>

Fed. R. Civ. P. 8..................................................................... 9

Fed. R. Civ. P. 9(b)............................................................. 9, 12

## <u>Other Authorities</u>

Restatement (Second) of Conflicts of Law § 148 (1971) .......................... 15

American International Group, Inc. ("AIG") and its subsidiary insurance companies named as counter-defendants herein (the "AIG Subsidiaries" or "AIG Companies" and, together with AIG, "Plaintiffs"), submit this reply in support of their motion to dismiss all but counts Five, Six and Seven of the Liberty Parties' Amended Counterclaim (the "Counterclaim").

## INTRODUCTION

In its Memorandum of Law in Support of Plaintiffs' Motion to Dismiss the Liberty Parties' Counterclaim ("Mot."), AIG detailed the pleading deficiencies of each of the Liberty Parties' non-contractual claims.  First, although the Liberty Parties seek to convert an alleged breach of contract into a federal racketeering offense, their RICO claims fail adequately to plead the existence of a RICO enterprise, fail adequately to plead that AIG engaged in racketeering activity, and fail to allege a sufficiently definite injury.  (Mot. at 7 (incorporating AIG's Motion to Dismiss the First Amended Class Action Complaint at 6-15 ("Class Mot.").)  Second, the Liberty Parties' state law claims fail for numerous reasons, including that they:  (a) are precluded by valid contracts, including the Articles of Agreement, (Mot. at 7-12); (b) fail to allege reliance upon any alleged misrepresentation, (Mot. at 12-14); and (c) do not assert that the center of gravity of any alleged misconduct occurred primarily and substantially within Massachusetts, (Mot. at 14-18).  Finally, the punitive damages demand fails because the Liberty Parties fail to assert a proper basis for an award of such damages.  (Mot. at 18-20.)

The Liberty Parties' Response in Opposition to Plaintiffs' Motion to Dismiss the Liberty Parties' Counterclaim ("Opp.") fails to rehabilitate their claims or defeat AIG's motion for dismissal.  Rather, in an eleventh hour attempt to remedy the pleading deficiencies AIG identified, the Liberty Parties mischaracterize AIG's arguments, make unreasonable inferences unsupported by the factual allegations in the Counterclaim, and assert untenable arguments lacking legal support.  The Liberty Parties cannot rescue their claims in this manner, and

accordingly the RICO (Counts I and II), fraud (Count III), Chapter 93A (Count IV), promissory

estoppel (Count VIII) and unjust enrichment (Count IX) claims and demand for punitive

damages should be dismissed.

## ARGUMENT

**I.    THE LIBERTY PARTIES FAIL ADEQUATELY TO PLEAD A RICO VIOLATION.**

In its opening briefs, AIG explained that the Liberty Parties' RICO claims should be

dismissed because of numerous pleading deficiencies, including that the Liberty Parties fail to:

(a) plead a RICO enterprise, (b) allege a pattern of racketeering, and (c) allege a sufficiently

definite injury.  As detailed below, the Liberty Parties' responses to each of these arguments are

unavailing.

### A.    The Liberty Parties Fail to Allege a RICO Enterprise.

As detailed in AIG's opening memoranda, the Liberty Parties' RICO claims fail because

the Liberty Parties do not adequately plead the existence of a RICO enterprise.  They attempt to

do so by alleging an association-in-fact enterprise consisting of the AIG Subsidiaries and the two

Starr Entities.  However, those allegations fall short because the Liberty Parties fail to plead any

ongoing relationships or coordination among the supposed enterprise members – whether in

pursuit of the alleged underreporting scheme or anything else – that would evidence their being a

"continuing unit," which is what the Supreme Court has defined an association-in-fact enterprise

to be.  *Boyle v. United States*, -- U.S.--, 129 S. Ct. 2237, 2243 (2009).  The most that can be

inferred from the Liberty Parties' allegations is that AIG independently controlled each of the

supposed enterprise members and used them to perpetrate AIG's schemes, but that is not enough

to make out an enterprise or a RICO claim.

Relying on the very allegations AIG cited as insufficient in its opening memoranda – and nothing more – the Liberty Parties assert that they have, in fact, alleged ongoing relationships among the enterprise members, arguing:

> The Counterclaim alleges that 'officers, employees and agents *of AIG*' . . . 'exercised influence and control over the business operations of CVSCO and SICO' – two members of the association-in-fact enterprise – and used that influence and control to cause CVSCO and SICO to transfer valuable assets 'to the managers, employees and other agents of the AIG Companies' – the remaining members of the association-in-fact enterprise.   The Counterclaim further alleges that the chairman and chief executive *of AIG* . . . was responsible for conducting the business operations of the AIG Companies . . . [and] of CVSCO and SICO.

(Opp. at 6-7 (quoting Countercl. ¶¶ 9, 121, 48) (emphasis added).)   However, even as the Liberty Parties describe them, these allegations do no more than assert that AIG – which is not a member of the alleged enterprise – controlled each of the purported enterprise members.   They do not allege any relationships *between the enterprise members themselves*.   *See Boyle*, 129 S. Ct. at 2244 ("The concept of 'associat[ion]' requires both *interpersonal relationships* and a common interest" among enterprise members.) (alteration in original) (emphasis added).   They do no more than assert that AIG – which is not a member of the alleged enterprise – used each of the purported enterprise members to carry out the alleged underreporting scheme.   There is simply nothing in the Liberty Parties' Counterclaim from which the Court could infer that the purported enterprise members constituted a "continuing unit," *id.* at 2243, as opposed to independent entities that AIG separately used like a puppet-master to perpetrate its alleged misconduct.

Perhaps recognizing their failure to allege the required relationships among the purported enterprise members, the Liberty Parties contend that *Boyle* frees them from any need to do so.   In particular, the Liberty Parties argue that under *Boyle* "the relationships necessary to establish the enterprise may 'be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity.'" (Opp. at 8 (quoting *Boyle*, 129 S. Ct. at

2245).)  Accordingly, the Liberty Parties say, their allegations of racketeering activity on the part of the purported enterprise members also suffice to plead the existence of the enterprise.  (Opp. at 8-9 (The Counterclaim alleges "facts that constitute the pattern of racketeering activity (from which the requisite relationships, purpose and longevity of the enterprise *may be inferred*) . . . .") (emphasis added).)

The Liberty Parties' argument on this point rests upon the Supreme Court's observation in *Boyle* that "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'"  129 S. Ct. at 2245 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  However, as the quoted language reflects, both *Boyle* and *Turkette* make clear that this principle does not apply across the board but only *in particular cases*.  Neither *Boyle* nor *Turkette*, in other words, eliminate the enterprise element of RICO by collapsing it into the pattern of racketeering element.  *See Rao v. BP Prods. N. Am., Inc.*, --F.3d--, No. 07-2065, 2009 WL 4640634, at *8 (7th Cir. Dec. 9, 2009) (affirming dismissal of RICO claims where plaintiff failed to allege structure, and noting "an association-in-fact enterprise *still requires a showing* of a 'group of persons associated together for a common purpose in engaging in a course of conduct.'") (quoting *Boyle*, 129 S. Ct. at 2243) (emphasis added).  Those decisions merely recognize that there will be particular cases where the evidence proving that a group engaged in racketeering activity will also prove that the group acted as a continuing unit and, thus, as an enterprise.  *Boyle*, *Turkette* and every other case cited by the Liberty Parties in support of their argument on this point are all within that category because the pattern of racketeering alleged in each of them was such that the participants must have

4

cooperated with each other as a continuing unit in order to commit it.[1]  Proof of the racketeering

activity thus proved the existence of the enterprise as, for example, proof (in *Boyle)* that a group

of individuals repeatedly joined together to rob banks also proves that such individuals acted as

continuing unit in doing so.

This case is different.  This case is not one in which proof of the alleged racketeering

activity would necessarily prove the existence of the alleged enterprise.  Even taken as true, the

allegations in the Counterclaim detailing the underreporting scheme and the predicate acts of

fraud that were part of it do not, without more, allege that the members of the alleged enterprise

interacted with each other or constituted a continuing unit.  This is because there is nothing about

the alleged underreporting scheme that necessarily requires any one of the alleged enterprise

members to cooperate with any other enterprise member.

To begin with, the members of the association-in-fact enterprise alleged here are not a

"criminal gang[,]" *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1325 (7th Cir. 1998), formed

"solely for the purpose of carrying out a pattern of racketeering acts[,]" *Boyle*, 129 S. Ct. at 2242

---

[1]   *See Boyle*, 129 S. Ct. at 2241 (a ring of bank thieves in which all the members participated in
the planning and execution of each theft.); *Turkette*, 452 U.S. at 579 (a group of drug dealers
where "the indictment charged the commission of various substantive criminal acts by those
engaged in and associated with the criminal enterprise") (internal citations omitted); *United
States v. Hutchinson*, 573 F.3d 1011, 1016-18 (10th Cir. 2009), *cert denied, Montoya v. United
States*, --S.Ct.--, No. 09-7124, 2009 WL 3414520 (Nov. 16, 2009) (defendants, four individuals
alleged to have participated in a drug conspiracy, included the drug supplier in charge, two drug
dealers, and a runner who took orders from customers); *Automated Teller Mach. Advantage LLC
v. Moore*, No. 08 Civ. 3340(RMB)(FM), 2009 WL 2431513, at *7 (S.D.N.Y. Aug. 6, 2009)
(three defendants acted as "front-men" to ensure that that plaintiff conducted business with the
other defendants; three defendants made material misrepresentations to induce the plaintiff to
purchase the ATMs; and two defendants transmitted false monthly reports and periodic payments
to plaintiff in furtherance of the conspiracy). *McGee v. State Farm Mutual Automobile
Insurance*, No. 08-CV-392 (FB)(CLP), 2009 WL 2132439 (E.D.N.Y. July 10, 2009), is
inapposite.  There, the court dismissed the plaintiffs' RICO claim for failure to properly allege
predicate acts and therefore did not reach the issue of whether the plaintiffs had adequately pled
a RICO enterprise.  *Id.* at *4.  The court noted only in footnoted dicta that *Boyle* established a
low threshold for this element.  *Id.* at *4 n.7.

(internal citation and punctuation omitted). Even the Liberty Parties would concede that the AIG

Subsidiaries and the Starr Entities are legitimate companies that conduct legitimate business.

Thus, in contrast to the authorities cited by the Liberty Parties, the mere fact that the AIG

Subsidiaries and the Starr Entities have existed over time with knowledge of each other does not

suggest the existence of an enterprise.

Additionally, as discussed above, the underreporting scheme described in the

Counterclaim was a top-down operation in which the managers of AIG allegedly (a) caused each

of the AIG Subsidiaries to engage in underreporting and make false filings with the NCCI, and

(b) caused the Starr Entities to transfer assets to the managers of the AIG Subsidiaries in order to

induce them to participate in underreporting. Assuming all of that happened just as the Liberty

Parties allege, there remains no basis to conclude that the alleged enterprise members functioned

as a continuing unit. There is nothing about this alleged racketeering conduct that would have

required interaction or coordination among the AIG Subsidiaries themselves or between the AIG

Subsidiaries and the Starr Entities. AIG could have – and, in fact, is alleged to have –

perpetrated the scheme simply by exercising control over each of the AIG Subsidiaries and the

Starr Entities separately and independently. Moreover, AIG's exercise of control over its

subsidiaries and the related Starr Entities is "just as consistent with lawful conduct as it is with

wrongdoing[,]" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 554 (2007)), and accordingly cannot support an inference of

wrongdoing.

Thus, because the Liberty Parties do not allege that the alleged enterprise members had

any ongoing interaction with one another, and because the alleged pattern of racketeering activity

would not necessarily have required the alleged enterprise members to have such relationships,

6

the Counterclaim fails to allege the existence of an enterprise and the Liberty Parties' RICO claims fail.

**B.     The Liberty Parties Fail to Allege a Pattern of Racketeering Activity.**

AIG explained in its opening memoranda that the Liberty Parties' RICO claims also fail because the Liberty Parties fail adequately to allege a pattern of racketeering activity.  More particularly, AIG argued that because the alleged misstatements underpinning the alleged wire and mail fraud predicates amount to nothing more than a breach of a contractual duty to make accurate reports, they do not support a RICO claim.  The Liberty Parties argue in response that breaches of contract are actionable as mail fraud for RICO purposes where the defendant used the mails in "an attempt to take the plaintiff's money by deception."  (Opp. at 10 (internal citation omitted).)  The Liberty Parties' argument, however, mischaracterizes AIG's contention and is foreclosed by controlling precedent.

AIG does not contend that "predicate acts of mail fraud may as a matter of law be committed with impunity under RICO so long as they occur in the context of a contractual relationship . . . ."  (Opp. at 9.)  Rather, AIG argues that "where the source of the defendants' duty to make representations to plaintiff is imposed by contract, any allegedly false statements *made pursuant to that duty* amount to nothing more than a breach of contract and will not support a claim for fraud."  (Class Mot. at 11 (citing *Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002 WL 22014, at *4 (N.D. Ill. Jan. 7, 2002)) (emphasis added).)

The Liberty Parties accept this as an accurate statement of the law.  (Opp. at 9.)  However, they then argue, without any authority from within the Seventh Circuit, that "it is equally well-accepted that where a plaintiff alleges that a defendant engaged in conduct that constitutes mail fraud [under the federal statute], the fact that the conduct in question is also

7

alleged to have constituted a breach of [an agreement] is not a defense to a RICO claim." (Opp. at 9.)[2] The Liberty Parties' argument fails because it assumes that any breach of an agreement can transform into conduct that constitutes mail fraud.

The Seventh Circuit has held that a breach of contract transforms into mail or wire fraud only when a party makes "a promise with the intent not to keep it." *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999). In *Perlman*, the Seventh Circuit further opined that where "many promises are kept for extended periods before a dispute breaks out, it is hard to see how it could be said that the defendants never intended to keep their bargains." *Id.*; *see Cashco Oil Co. v. Moses*, 605 F. Supp. 70, 71 (N.D. Ill. 1985) ("To sustain the conversion of a breach-of-contract . . . claim into a mail or wire fraud claim, . . . [the plaintiff] must prove promissory fraud-knowingly false statements of future intentions.") (internal citation omitted); *see also Rosenblum v. Travelbyus.com, Ltd.*, No. 01 C 6441, 2002 WL 31487823, at *3 (N.D. Ill. Nov. 6, 2002) ("A fraud claim cannot be supported by allegations that promises were broken and therefore were never intended to be kept.").

The Liberty Parties make no allegation that the AIG Companies entered into the Articles of Agreement intending to underreport. Thus, they fail adequately to plead wire and mail fraud predicates based on the AIG Subsidiaries' alleged underreporting of premium to the NWCRP.

Seemingly as an afterthought, the Liberty Parties try to side-step the Articles' preclusive effect on their wire and mail fraud allegations by arguing that they have alleged wire and mail fraud by AIG in connection with "'numerous other state reinsurance, guaranty fund and special

---

[2]   The Liberty Parties reliance on *Papa John's International, Inc. v. Chaib*, No. 05 C 6894, 2006 WL 932353, at *1 n.1 (N.D. Ill. April 7, 2006), is unavailing. It footnotes the uninteresting dicta that if breach of contract *is also part of a pattern of racketeering*, it supports a RICO claim. The inquiry relevant here is *when* can a breach of contract *become part* of a pattern of racketeering. *Papa John's International* presupposes converting the breach of contract into mail or wire fraud.

assessment pools in which the Liberty Parties participated'" and as to which there is supposedly no express contract between the Liberty Parties and AIG.  (Opp. at 10-11 (citing Countercl. ¶ 1) (emphasis removed).)  Notably, in making that argument, the Liberty Parties do not cite to any allegations in the Counterclaim that support these claims.  This, of course, is because the allegations in their Counterclaim are insufficient to survive a motion to dismiss.  The Counterclaim admits that it does not provide a complete list of the relevant states in which AIG participated in non-NWCRP Pools, or Guaranty or Special Assessment Funds.  (Countercl. ¶¶ 6, 7.)  The Counterclaim does not name any specific contracts or state laws that AIG is alleged to have violated except the NWCRP Articles.  Nor does the Counterclaim list a single specific fraudulent act committed by AIG that was not allegedly directed to the NWCRP through NCCI. (Countercl. ¶ 134.).  As a consequence, the Liberty Parties cannot be said adequately to have pled wire and mail fraud predicates relating to such unspecified other pools under either Rule 8 or Rule 9(b).  *See Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC*, 647 F. Supp. 2d 938, 942 (N.D. Ill. 2009) (Gettleman, J.) (under Rule 8, a complaint must "provide the defendant with fair notice of the claim"); *see also Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001) ("In order to satisfy [Rule 9(b)'s particularity standard for mail and wire fraud], a RICO plaintiff must allege the identity of the person who made the representation, *the time, place and content of the misrepresentation*, and the method by which the misrepresentation was communicated to the plaintiff.") (emphasis added).

Because the Liberty Parties have failed to allege a pattern of racketeering activity, the RICO claims should be dismissed.

9

C.      **The Liberty Parties Fail to Allege a Sufficiently Definite Injury.**

In opposing AIG's motion to dismiss their RICO claims on ripeness grounds, the Liberty

Parties advance precisely the same argument advanced by the Class Plaintiffs.  AIG's response

to that argument is set forth in its Reply in Support of its Motion to Dismiss the First Amended

Class Action Complaint, at pp. 8-11, and AIG hereby incorporates that response herein.

II.     **THE LIBERTY PARTIES' STATE LAW CLAIMS, OTHER THAN CLAIMS
        AND REMEDIES FOR BREACH OF CONTRACT, SHOULD BE DISMISSED.**

As AIG's opening brief establishes, the Liberty Parties' state law claims should be

limited to those premised on duties that arose only as a result of the parties' contract, which

provide the only proper legal theory of recovery for disputes between the parties.

A.      **The Liberty Parties' Chapter 93A Claim Should Be Dismissed.**

The Liberty Parties concede that half of the named claimants could not even purport to

state a claim under Chapter 93A.  Indeed, in an effort to rescue their Chapter 93A claim, the

Liberty Parties now contend that the claim is brought only on behalf of the *Liberty* Plaintiffs – as

distinct from the Wausau Plaintiffs – despite the fact that such distinction is neither expressly

made nor reasonably inferred from the Counterclaim.  (Countercl. at 3 (defining all defendants as

the "Liberty Parties"); *id.* ¶¶ 150-53 (asserting Count Four on behalf of the "Liberty Parties").)

Regardless, AIG's opening brief demonstrates that the Liberty Plaintiffs' Chapter 93A

claim still must fail because it does not allege that the "center of gravity" for the conduct alleged

to be unfair or deceptive occurred primarily and substantially within Massachusetts.  (*See* Mot. at

13-14 (citing *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 799 (Mass.

2003) (reversing grant of summary judgment where "all the conduct that can be said to be unfair

or deceptive, and the underlying negotiations, occurred in Washington.") and *Moll Indus., Inc. v.

Oral-B Labs., Inc.*, No. 011301BLS, 2001 WL 1194678, at *11 (Mass. Super. July 17, 2001)

(dismissing Chapter 93A claim where "nothing in the complaint alleges any unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce in the Commonwealth of Massachusetts"; rather, defendant "did what it did" in Tennessee).)

AIG does not dispute that, should the Liberty Parties' Chapter 93A claim survive this motion to dismiss, AIG would have the burden of proving at a summary judgment or trial phase that the conduct complained of did not occur primarily and substantially within Massachusetts. However, "the Court can certainly look to the plaintiff's complaint and its appendages and, if they establish without a doubt the proposition, it may be able to conclude that the defendants' burden has been met." *Moll Indus.*, 2001 WL 1194678, at *11 (dismissing complaint where "the overwhelming conclusion to be drawn from the documents is that the actions at issue did not occur 'primarily and substantially' within the Commonwealth. Indeed, they occurred here hardly at all."); *Belkin v. Eastpak*, No. 986312, 1999 WL 753397, at *1 (Mass. Super. July 9, 1999) ("[B]ecause any misbehavior by Defendants did not take place in Massachusetts, Defendants are entitled to dismissal of any claim under Chapter 93A.").

The Liberty Plaintiffs' argument that a Chapter 93A claim cannot be resolved on a motion to dismiss in light of the *Kuwaiti* decision is, quite simply, incorrect.[3]  In fact, their brief admits that at least two Massachusetts courts have, post-*Kuwaiti*, dismissed a Chapter 93A claim for failure to allege that the center of gravity for the conduct complained of occurred primarily

---

[3]   The cases relied on by the Liberty Parties for their contrary position are distinguishable.  In *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 107-08, 110 (D. Mass. 2003), the complaint alleged that the plaintiffs had received and executed a contract in Massachusetts.  Moreover, the plaintiff alleged that it was the direct recipient of representations in Massachusetts. *Id.* at 117.  In *Fleet National Bank v. Certain Underwriters at Lloyd's, London*, No. 022673BLS, 2003 WL 21246552, at *1 (Mass. Super. May 14, 2003), the court apparently found that the plaintiffs' allegations regarding Massachusetts conduct were sufficient to withstand a motion to dismiss.  By contrast, the Liberty Parties make no allegation that AIG's alleged misconduct occurred within Massachusetts.

and substantially in the Commonwealth. *Weber v. Sanborn*, 502 F. Supp. 2d 197, 200 (D. Mass. 2007) (dismissing Chapter 93A claim where plaintiff's complaint failed to connect unfair or deceptive conduct or harm to Massachusetts); *Fillmore v. Leasecomm Corp.*, Nos. 20040487H, 86778, 2004 WL 3091642, at *6 (Mass. Super. Nov. 15, 2004) (dismissing complaint where, because alleged deception and harm occurred in Washington, Massachusetts was not the center of gravity of the circumstances that gave rise to plaintiffs' complaint).

The same result is warranted here, where it is clear from the face of the Liberty Parties' Counterclaim that the center of gravity of any alleged misconduct by AIG is not Massachusetts, but New York. (Mot. 15-17.) Indeed, the Liberty Plaintiffs acknowledge that the only connection to Massachusetts alleged in their Counterclaim is their domicile. (Opp. at 15.) However, "[s]omething more than a Massachusetts plaintiff is required to invoke the provisions of Chapter 93A[.]" *Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996); *Weber*, 502 F. Supp. 2d at 198 ("The location of the events, and to some extent, the location of the harm, is considered by the court in making a decision as to the applicability of the statute.").

### B.   The Liberty Parties' Fraud Claim Should be Dismissed for Failure to Plead Reliance with Particularity as Required by Rule 9(b).[4]

As AIG's opening brief demonstrates, the Liberty Parties' fraud counterclaim fails because the Liberty Parties do not allege that AIG[5] made any false statements to them directly,

---

[4]   Defendants do not dispute that the law of the Liberty Parties' home states, Massachusetts and Wisconsin, apply to the Liberty Plaintiffs' and the Wausau Plaintiffs' state law claims, respectively.

[5]   To the extent that the Liberty Parties attempt to distinguish their fraud claims against AIG parent from those against the AIG Subsidiaries, it is worth noting that the Liberty Parties do not allege any specific false and misleading statements that AIG made to NCCI. (*See* Countercl. ¶¶ 144-48.) Indeed, the Liberty Parties fail to allege that AIG, as distinct from the AIG Subsidiaries, made any representations at all. Without specific factual allegations of fraudulent

12

but only to Fund Administrators. (*See* Mot. at 12-13.)  The Liberty Parties assert that their

failure to allege that they were privy to the alleged misrepresentations is insignificant because

(a) it was reasonable and foreseeable that Liberty would rely on the statements made to the Fund

Administrators, and (b) because NCCI acted as their agent. (Opp. at 20, 24.)  To support the first

argument, the Liberty Parties cite an unpublished opinion, *Brewer v. Poole Construction Co.*,

which was a summary judgment finding that the fraud claim could survive because the

defendant's "'statements were made with a reasonable expectation, if not knowledge, that they

would be repeated to the [plaintiff] who would in all likelihood act in reliance upon them.'"

(Opp. at 20-21 (citing No. CIV. A. 98-0924B, 2001 WL 792783, at * 46 (Mass. Super. Ct.

May 3, 2001)).)  However, the Liberty Parties make no such allegations in their Counterclaim,

and in fact acknowledge that "[b]y virtue of [NCCI's] confidential reporting mechanism,

individual participating companies are unable to independently verify the reliability of the

reporting by other companies."  (Countercl. ¶ 61.)

    The Liberty Parties cannot sidestep the reliance requirement simply by asserting that

NCCI was acting as their agent.  First, the Counterclaim does not allege that any Fund

Administrator was acting as the Liberty Parties' agent when they received AIG's alleged false

statements.  Second, even assuming that the Fund Administrators were acting as the Liberty

Parties' agent, the Liberty Parties have cited no authority indicating that they can bring an action

in fraud based upon alleged misrepresentations to an agent.  In fact, there is no indication that

conduct on the part of AIG, the Liberty Parties' fraud claim against AIG must be dismissed. *See*
*Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 207 (D. Mass. 2000)
(Rule 9(b) requires "specification of the time, place, and content of an alleged false
representation.") (citing *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996)); *see also*
*Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (to satisfy pleading requirements of Fed. R.
Civ. P. 9(b), the complaint must "(1) specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and
(4) explain why the statements were fraudulent.").

Massachusetts or Wisconsin law allows such a claim.  Finally, even assuming that this purported

agency relationship is sufficient to excuse the Liberty Parties' failure to plead actual, direct

reliance, their convoluted reliance argument only serves to demonstrate that this is really a

reinsurance dispute.  The only way in which the Liberty Parties can arguably assert reliance is

through an agency relationship established by the contract at the heart of this dispute – the

Articles of Agreement.  (Opp. at 24 "[T]he NWCRP, through NCCI, was acting *as the agent* of

the participating companies. . . . " (emphasis in original).)  Any claim the Liberty Parties have

here necessarily has a remedy in contract, and their fraud claim should be dismissed as

duplicative.

     **C.**     **The Liberty Parties' Request for Punitive Damages Should Be Dismissed.**

     Realizing that their request for punitive damages is foreclosed by Massachusetts law, the

Liberty Parties disregard every other choice-of-law argument in their Opposition[6] and contend

that, for the availability of punitive damages *alone*, New York law should apply and that they are

thus entitled to punitive damages.  Because Illinois courts would apply the same law to the

availability of punitive damages as they would for the substantive torts and because under

Massachusetts, Wisconsin and New York law, punitive damages are not available in this case,

the Liberty Parties' request for punitive damages should be stricken.

     As the Liberty Parties admit, in making a choice-of-law determination, "the state of the

plaintiff's place of business is of 'substantial significance where the harm is pecuniary.'"  (Opp.

at 17 (citing *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 66-67 (2007)).)  The Liberty

---

[6]  For example, in support of their 93A claim, the Liberty Parties argue that the relevant conduct
"took place 'primarily and substantially' in Massachusetts . . . ."  (Opp. at 15.)  In their choice-
of-law section for fraud, they argue that the place of the plaintiff's business has the most
substantial significance where the harm is pecuniary and thus Massachusetts and Wisconsin laws
apply.  (Opp. at 17.)

Parties, however, argue that for punitive damages the place of the misconduct and AIG's primary

domicile are the most significant factors in determining applicable law because those states

"have the greatest interest in balancing the deterrence of wrongdoing with the costs of imposing

high damages upon resident business defendants." (Opp. at 26 (citing *In re Aircrash Disaster*

*Near Roselawn, Ind. on Oct. 31, 1994*, 948 F. Supp. 747, 756 (N.D. Ill. 1996)).) *In re Aircrash*

*Disaster*, however, does not apply Illinois choice of law, but rather Oklahoma and federal choice

of law analysis. 948 F. Supp. at 756. The Illinois Supreme Court has explicitly rejected this

argument. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 174-75 (Ill. 2007). In

*Townsend*, the Illinois Supreme Court found the interests of the defendant's home state in "the

liability to be imposed" on its citizens was no more legitimate than a state's "interest in the

remedies to be afforded its residents. . . . " *Id.* Because the interests were balanced, the Illinois

Supreme Court deferred to the presumption contained in the restatement. *Id.* at 175. As noted

by the Liberty Parties, the Restatement gives substantial weight to the plaintiff's place of

business where the harm is pecuniary. RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 148,

cmt. i (1971). Thus, an Illinois court would apply the laws of Massachusetts and Wisconsin to

the availability of punitive damages.

The Liberty Parties do not contest that their fraud claim cannot support an award of

punitive damages as a matter of Massachusetts law. (*See* Mot. at 18-20.) Punitive damages are

also unavailable to the Wausau Parties under Wisconsin law. In Wisconsin, "[w]here a contract

is involved, in order for a claim in tort to exist, a duty must exist independently of the duty to

perform under the contract." *Haur v. Union State Bank of Wautoma*, 532 N.W. 2d 456, 463 (Wis.

Ct. App. 1995). Punitive damages are unavailable in actions for breach of contract where no

separate duty in tort is pled. *Wolnak v. Cardiovascular and Thoracic Surgeons of Cent. Wis.*,

15

706 N.W.2d 667, 681 (Wis. Ct. App. 2005); *Pagel v. Gaffney*, Nos. 98-3134, 98-3196, 1999 WL

760988, at *2, *7 (Wis. Ct. App. Sept. 28, 1999).  As discussed extensively in Point III.A, *supra*,

the facts alleged in this case center on the contractual relationship created by the Articles of

Agreement.  Count Three of the Liberty Parties' counterclaim, which alleges common-law fraud,

fails to identify any separate duty that AIG allegedly violated.  Indeed, Count Seven, alleging

breach of contract, explicitly characterized as contractual the duty to report premium to both

NCCI and the other, unenumerated pools.  (Countercl. ¶ 170 ("Under these agreements, the AIG

Companies have a duty to submit accurate premium data...").)  Where, as here, the asserted tort

is fraud, claimants must allege that the alleged misrepresentations are not closely related to the

terms of the contract to show a duty arising outside of the contract.  *See e.g. Raytheon Co. v.*

*McGraw-Edison Co.,*  979 F. Supp. 858, 873 (E.D. Wis. 1997) (dismissing fraud claim as

duplicative of contract claim where "alleged misrepresentations forming the basis of [plaintiff]'s

fraud claims are inseparably embodied within the terms of the underlying contract.").  The

potpourri of state statutes the Liberty Parties bring up for the first time cannot salvage their

claim; even if they do contain a duty separate from the contract, the statutes are not pled under

the fraud claim and cannot serve as a basis for punitive damages.  *See Bindl v. Next Level*

*Commc'ns*, No. 2005AP630, 2005 WL 3543613, at *11-14 (Wis. Ct. App. Dec. 29, 2005)

(affirming lower court's dismissal of punitive damages when plaintiff had pled no duty separate

from contract, even though plaintiff subsequently brought up a statute that arguably created a

duty); *Wolnak,* 706 N.W.2d at 681(holding that punitive damages were not available when action

was for breach of contract and plaintiff had not pled under the statute that would allegedly allow

punitive damages).  The Wausau parties did not plead a tort duty separate from contract under

Wisconsin law and are accordingly not entitled to punitive damages as a matter of law.

Assuming, *arguendo*, that New York law applies to the request for punitive damages, the Liberty Parties would still not be entitled to punitive damages.  In New York, "[t]o recover punitive damages for a tort claim that 'arises from' a related contract claim, a plaintiff must demonstrate that the alleged misconduct was aimed at the public generally...." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 247 (S.D.N.Y. 2006); *see also Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 266 (S.D.N.Y. 2005) (holding that claim arising from parties' longstanding contractual relationship was sufficiently related to contract to require pleading of public harm).  This case clearly "arises from" a contract and the Liberty Parties must plead harm to the general public.  The Liberty Parties cite no law whatever in their description of alleged public harm.  (Opp. at 26-27.)  The harm alleged in the Counterclaim is entirely pecuniary loss to the Liberty Parties.  (*See, e.g.*, Countercl. ¶ 149.)  This is insufficient under New York law.  *Crigger v. Fahnestock & Co.*, No. 01 Civ. 07819 JFK, 2003 WL 22170607, at *14 (S.D.N.Y. Sept. 18, 2003) (no claim for punitive damages where fraud targeted only plaintiffs). The harm alleged in the Counterclaim is entirely pecuniary and derives from a contract claim; incidental harm to taxpayers is not enough to state a claim for harm to the public. *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 96 (2d Cir. 2005) ("We were not persuaded that conduct which could be characterized as defrauding the taxpayers and manipulating the judicial process had a sufficiently public component to support punitive damages.").

III.  **THE LIBERTY PARTIES' PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED**

A.  **The Liberty Parties Have Failed to State a Valid Claim for Promissory Estoppel.**

The Liberty Parties concede – as they must – that their promissory estoppel claim is not viable with respect to the NWCRP, the non-NWCRP states, and any Guaranty Funds and/or Special Purpose Funds for which the parties' relationship and obligations are governed by an express contract.  (Opp. at 29 n.13.)  *See U.S. for Use & Benefit of L.E. Myers Co. v. George Hyman Constr. Co.*, Civ. A. No. 86-319-S, 1987 WL 13242, at *3 (D. Mass. June 19, 1987) (on summary judgment, holding that the "promissory estoppel argument is precluded by the mere existence of the contract itself"); *Kramer v. Alpine Valley Resort, Inc.*, 321 N.W.2d 293, 297 (Wis. 1982) (recognizing that, generally, the existence of a contract governing the parties' relationship bars a claim based on promissory estoppel).

Recognizing that their promissory estoppel claim cannot survive in the face of such express agreements, the Liberty Parties attempt to salvage the remaining vestiges of this claim by manufacturing a promissory estoppel theory that lacks factual support in the Counterclaim and legal support in their opposition brief.  The Liberty Parties argue that their promissory estoppel claim arises from underreporting in connection with pools and funds other than the NWCRP, to which AIG was obligated not by contract but by statute.  However, nowhere in the Counterclaim do the Liberty Parties mention or even allude to the statutes purportedly underlying their promissory estoppel claim.  Further, to the extent AIG's obligations to these unspecified other pools and funds arise by statute, rather than contract, there would not appear to be any promise by AIG that could ground a promissory estoppel claim; the Liberty Parties, to be sure, fail to

18

describe one in their opposition.  Finally, the Liberty Parties do not cite to a single case to lend

credence to their new and novel estoppel theory.

Because the illogical remains of the Liberty Parties' promissory estoppel claim are

without factual support in the allegations of the Counterclaim and without legal support in the

case law, the claim should be dismissed.

**B.**     **The Liberty Parties Have Failed to State a Valid Claim for Unjust
Enrichment.**

The Liberty Parties do not dispute that their unjust enrichment claim against AIG cannot

survive with respect to any pools or funds that are governed by a contract between the parties,

and, to the extent that this claim is based on a purported statutory obligation by AIG, it fails for

the same reasons their fraud and promissory estoppel claims against the AIG Subsidiaries fail.

The Liberty Parties argue that their unjust enrichment claim against AIG is not precluded

by the Articles or any other non-NWCRP states' assigned risk agreements, as AIG is not a party

to those agreements.  However, "Massachusetts law does not allow litigants to override an

express contract by arguing unjust enrichment." *Platten v. HG Bermuda Exempted Ltd.*, 437

F.3d 118, 130 (1st Cir. 2006) (dismissing unjust enrichment claim against nonparties to an

agreement); *see also id.* (additionally finding that because defendants were not third-party

beneficiaries to the contract, they could not be held liable for unjust enrichment); *accord Ruiz v.

Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 29 (D. Mass. 2006).  The Liberty Parties

do not dispute that valid and binding agreements cover the subject matter of their unjust

enrichment claim against AIG, which is based on the same alleged conduct that underlies their

breach of contract claim against the AIG Companies.  The Liberty Parties also do not claim to

have pled their unjust enrichment claim in the alternative to their breach of contract claim.  Thus,

the unjust enrichment claim should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, AIG respectfully requests that the Court dismiss the Liberty Parties' RICO, Chapter 93A, common law fraud, promissory estoppel and unjust enrichment claims, as well as their request for punitive damages.

Respectfully submitted,

PLAINTIFFS AMERICAN INTERNATIONAL GROUP, INC., et al.,

By:    /s/ Stephen Novack
       One of Their Attorneys

Stephen Novack
P. Andrew Fleming
John F. Shonkwiler
Andrew D. Campbell
NOVACK AND MACEY LLP
100 North Riverside Plaze
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
Brendan N. Snodgrass
QUINN EMANUEL URQUHART OLIVER
       & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 1001
(212) 849-7000

## CERTIFICATE OF SERVICE

I, Andrew D. Campbell, an attorney, hereby certify that I caused true and correct copies of the foregoing **Plaintiffs' Reply In Support Of Their Motion To Dismiss The Liberty Parties' Counterclaims** to be served by the U.S. District Court CM/ECF e-filing system on this, the 30th day of December, 2009.


                                        /s/ Andrew D. Campbell