## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al.</u>, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 CV 2898 |
| v. | ) ) | |
| ACE INA HOLDINGS, INC., <u>et al.</u>, | ) ) ) | Judge Robert W. Gettleman |
| Defendants | ) ) | Magistrate Judge Sidney I. Schenkier |

_____ )

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <u>et al.</u>, | ) ) ) | |
| Counter-Claimants, | ) ) ) | |
| v. | ) ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al.</u>, | ) ) ) ) | |
| Counter-Defendants. | ) ) | |

_____ )

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) ) | Case No. 09 CV 2026 <br><br> Judge Robert W. Gettleman |
| Plaintiff, | ) ) ) | Magistrate Judge Sidney I. Schenkier |
| v. | ) ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**JOINT STATEMENT OF RESULTS OF**
**FEBRUARY 5, 2010 MEET AND CONFER REGARDING**
**LIBERTY MUTUAL'S REQUESTS FOR DOCUMENTS**

Pursuant to the Court's December 11, 2009 revised procedure applicable to discovery motions in the above-captioned cases (the "Discovery Motion Protocol Order"), Defendant Liberty Mutual Insurance Company ("Liberty Mutual") and Plaintiff American International Group, Inc. ("AIG") file this Joint Statement reporting on their meet-and-confer in an attempt to resolve their dispute concerning Liberty Mutual Insurance Company's First and Second Sets of Requests for Production of Documents ("First Requests" and "Second Requests," respectively, and together, the "Requests").

### I.      Liberty Mutual's Document Production Requests

In accordance with the Court's October 6, 2009 Order scheduling merits discovery, Liberty Mutual served its First and Second Sets of Requests for Production of Documents upon AIG on October 23, 2009.  AIG served Objections and Responses to Liberty Mutual's document requests on December 18, 2009.  Attached hereto as Exhibit A is a copy of AIG's Responses to Liberty Mutual Insurance Company's First Set of Request for Production of Documents ("First Responses").  Attached as Exhibit B is a copy of AIG's Responses to Liberty Mutual Insurance Company's Second Set of Request for Production of Documents ("Second Responses," and, together with the First Responses, the "Responses").  Together, the Responses set forth each specific request and AIG's objections and responses to same.

### II.      The Meet and Confer Session

Pursuant to the Discovery Motion Protocol Order, Liberty Mutual and AIG exchanged letters regarding their dispute arising from Defendants' objections to Liberty Mutual's document

production requests on January 22, 2010, and February 3, 2010, respectively.[1]  A meet-and-confer session was then conducted on February 5, 2010.  Counsel who discussed the Requests at the meeting were James Morsch (for Liberty Mutual), David Winters (for Liberty Mutual), Jennifer Barrett (for AIG), and Kevin Reed (for AIG).  Counsel continued meeting and conferring to narrow disputes via correspondence on February 11-12, 15-16 18, and 19.

As the result of the meet and confer process, the parties have reached the following agreements, and the following disagreements remain:

### A.       Generally Applicable Agreements

AIG has agreed to provide Liberty Mutual with a log of all documents withheld from production upon claim of privilege.  AIG anticipates providing its privilege log in more than one increment, and has committed to providing the first increment of its privilege log by March 1, 2010.  In light of this commitment, Liberty Mutual agrees not to move to compel AIG to produce a complete privilege log at this time, but reserves its right to do so subsequent to March 1, 2010.

In light of the Court's Order dated January 20, 2010 regarding discovery directed toward AIG Divisions other than Divisions 18, 50 and 55 that wrote workers compensation policies (the "Other Divisions"), Liberty Mutual agrees that AIG need not at this time produce documents otherwise within the scope of the Requests to the extent that those documents pertain exclusively to the Other Divisions, and further agrees to limit the motion to compel that it intends to file pursuant to this Joint Statement so as to exclude from the scope of that motion documents that pertain exclusively to the Other Divisions.  Liberty Mutual reserves its right to move separately to compel the production of the documents sought by its Requests to the extent that those documents pertain to the Other Divisions, if such a motion is warranted by further discovery.

---

[1] Liberty Mutual's January 22, 2010 letter is attached as Exhibit C.  AIG's February 3, 2010 letter is attached as Exhibit D.

Liberty Mutual's Requests sought documents from 1970 to the present.  AIG objected generally to Liberty Mutual's Requests outside the 1985 – 1996 timeframe.  AIG has withdrawn this general objection.

Liberty Mutual originally requested that AIG produce responsive documents in the possession of C.V. Starr and SICO.  AIG has explained that such documents are not within AIG's possession, custody or control, because C.V. Starr and SICO are not affiliates of AIG and AIG has no control over them.  Accordingly, Liberty Mutual has agreed to seek responsive documents within the possession, custody, and control of C.V. Starr and SICO directly from those entities.

Liberty Mutual's Requests sought electronically stored documents in "native format," meaning, for example, that Liberty Mutual sought production of the electronic copies of electronic spreadsheets.  AIG objected to the blanket nature of this request.  The parties have agreed to meet and confer regarding the production of data in native format on a case-by-case basis, and, accordingly, Liberty Mutual reserves the right to raise this issue with the Court at a later date.

AIG has asserted numerous objections in its First and Second Responses.  In AIG's February 3, 2010 letter, AIG expressly stated that it was standing on some – but not all – of its objections.  AIG's February 3, 2010 letter also indicates those instances in which AIG is not withholding any documents pursuant to its objections.

   **B.**    **Agreements Regarding Specific Document Production Requests**

   *1.*    ***AIG's Annual Statements and Page 14s (First Requests 1, 2)***

AGREEMENTS:   Liberty Mutual has limited First Requests 1 and 2 to seek only those Statutory Page 14s and Annual Statements within AIG's possession, custody or control that AIG

*actually filed* with a state.  Subject to this limitation, and the objections discussed below, AIG has agreed to produce the requested page 14s.

AIG objected to First Request 2 on the grounds that its annual statements were publicly available.  After meeting and conferring, the parties have agreed that AIG will produce documents responsive to this request that can be located in central archives or in readily accessible storage.

### 2.   *Policy, Procedure and Guideline Manuals (Second Requests Nos. 4 – 7)*

AGREEMENTS:   AIG has agreed to produce all documents responsive to these requests and represents further that it is not withholding any non-privileged documents responsive to these requests.  Both parties have agreed to identify any PPGM documents produced going forward and try to locate those produced in the past.

### 3.   *Statutory Premium Reports and "Green Sheets" (Second Requests Nos. 27-28)*

AGREEMENTS:   The parties have reached an agreement with respect to these documents requests.  AIG agrees to produce green sheets relating to accounts written out of divisions 18, 50 and 55 to the extent they are located in central archives or readily accessible storage.

### C.   **Disagreements Regarding Specific Requests**

### 1.   *Documents Relating to AIG's Recording and Reporting of Workers Compensation Premium (First Requests 3 - 4, Second Requests Nos. 8 – 10, 18, 24 - 26)*

FIRST REQUEST 3.  All documents collected, used, reviewed, referred to or relied on in determining the amount of direct Workers Compensation Premium to report or include on the amended Statutory Page 14s that were submitted to the National Association of Insurance Commissioners on or about February 22, 2007.

FIRST REQUEST 4.  All documents collected, used, reviewed, referred to or relied on in determining the amount of direct Workers Compensation Premium to report or include on the combined original Page 14s, which were submitted to the National Association of Insurance Commissioners "for comparative purposes" on or about February 22, 2007.

SECOND REQUEST 8.   All documents provided to Taylor Atkins in response to his request for a report identifying all divisions that wrote workers' compensation insurance going back to 1979, including but not limited to Excel spreadsheets and Access database files, as described in the transcript of the deposition of Taylor Atkins at 42-44.

SECOND REQUEST 9.   All documents related to the reconciliation performed by Taylor Atkins in order to tie AIG's internal policy-level workers' compensation data with data from A.M. Best, including but not limited to both the internal data and the A.M. Best data as described in the transcript of the deposition of Taylor Atkins at 47-50.

SECOND REQUEST 10.  All documents contained in the Corporate Reporting System (as described in the transcript of the deposition of Taylor Atkins at 36-37), or any other electronic data repository, reflecting both premium and losses reported on any accounts involving Workers Compensation Policies.

SECOND REQUEST 18.  Documents sufficient to identify case reserves and IBNR for all Workers Compensation Policies written by AIG and each AIG Company.

SECOND REQUEST 24.  All documents that concern, refer or relate to, evidence or describe any comparisons of or discrepancies between Workers Compensation Premium listed, coded, recorded, reported, booked, tracked, allocated, or accounted for by AIG or any AIG Company on account activity reports with Workers Compensation Premium listed, coded, recorded, reported, booked, tracked allocated, or accounted for by AIG or any AIG Company on the corporate system.

SECOND REQUEST 25.  AIG's and all AIG Companies' account activity reports for Workers Compensation Premium.

SECOND REQUEST 26.  AIG's and all AIG Companies' account activity reports for all policies written as part of Multi-Line Accounts.

AGREEMENTS:   AIG agrees to produce the workpapers generated in connection with its original and amended Page 14s, and Liberty Mutual agrees that this will satisfy First Requests Nos. 3 and 4.  AIG also agrees to produce the documents sought in Second Request Nos. 8 and 24.  AIG also agrees to produce documents relied upon by Mr. Atkins in performing the reconciliation referenced in Request No. 9.

DISAGREEMENTS:   The parties disagree as to whether AIG must search for and produce compilations, summaries, and extracts of data from AIG's policy, underwriting and claim files that are responsive to Liberty Mutual's Second Requests 9-10, 18, and 25-26.

AIG's Position:

AIG stands on its objection to Second Request Nos. 10, 18, 25 and 26 on the grounds that they seek policy-level documents and data, not extracts or compilations of such data, and such discovery is precluded by the Court's November 17, 2009 Order; additionally, the burden of producing such extracts and compilations is unwarranted where AIG is producing the underlying data itself.  Further, with respect to Request No. 10, the CRS system does not contain any "documents," only data, and that data, as it relates to workers compensation policies, is to be produced through an agreed-upon sampling process.

Liberty Mutual's Position:

Liberty Mutual's document requests define "documents" to include "electronically stored data."[2]  Thus, Liberty Mutual's position is that electronically stored data, compilations, summaries, and extracts of policy, underwriting or loss data maintained outside of individual

---

[2] Liberty Mutual First and Second Sets of Requests for the Production of Documents are attached as Exhibits E, and F, respectively.

policy, underwriting, and claims files are outside the scope of the Court's November 17, 2009

Order and are clearly relevant.  Specifically, AIG's witness has defined the "account activity

reports" sought by Second Requests 25-26 as "manuals" assembled by underwriters that

"showed what an account was written for."  (See Exhibit A at 11.)  Thus, these documents

appear to be compilations or summaries of data maintained outside of individual policy,

underwriting and claims files and are outside the scope of the Court's November 17, 2009 Order

and relevant.  Liberty Mutual further contends that AIG must search for and produce such data,

compilations, and extracts to the extent that they are responsive to Second Requests 9-10, 18, 25

and 26.

> ### 2.     *Documents Relating to AIG's Reinsurance Information*
> ### (Second Requests Nos. 13 - 14)

> SECOND REQUEST 13.  All documents that concern, refer or
> relate to, evidence or describe Workers Compensation Policies and
> Workers Compensation Premiums reported or ceded to AIG's or
> any of the AIG Companies' reinsurers.

> SECOND REQUEST 14.  All documents that concern, refer or
> relate to, evidence or describe reinsurance contracts, transactions
> or relationships between Plaintiffs and any reinsurers owned,
> controlled or affiliated with Plaintiffs involving Workers
> Compensation Policies.

DISAGREEMENTS:   The parties disagree as to whether AIG must produce the

reinsurance related documents responsive to these requests.

Liberty Mutual's Position:

Liberty Mutual's position is that such documents are relevant because they will show

how AIG calculated workers compensation premium that it reported to its reinsurers; this

information is relevant to calculating the total amount of workers compensation premium that

should have been reported.

Notwithstanding Liberty Mutual's position that all documents responsive to Second Requests 13 and 14 should be produced, Liberty Mutual, in the interest of compromise, is willing to limit these requests to the following categories of documents: (1) all reinsurance contracts reinsuring Workers Compensation Policies during the relevant period; (2) all documents provided to AIG's or any of the AIG Companies' reinsurers reporting Workers Compensation Premium on Workers Compensation Policies during the relevant period; and (3) all documents from which the Workers Compensation Premium reported to AIG's or any of the AIG Companies' reinsurers was derived.

AIG's Position:

AIG's position is that these requests are both ill-suited to and overbroad for Liberty Mutual's purpose.  Merely reviewing documents and data related to whatever subset of workers compensation policies was ceded to reinsurers will not enable plaintiffs to calculate the total amount of workers compensation premium that should have been reported to NCCI. Additionally, even if document requests of this sort were properly propounded for the purpose Liberty Mutual identifies, that purpose does not require production of "*all* documents that concern, refer or relate to, evidence or describe Workers Compensation Policies and Workers Compensation Premiums reported or ceded to AIG's or any of the AIG Companies' reinsurers," as sought in Request No. 13.  The same is true with respect to Request No. 14, which seeks "*all* documents that concern, refer or relate to, evidence or describe reinsurance contracts, transactions or relationships between Plaintiffs and any reinsurers owned, controlled or affiliated with Plaintiffs involving Workers Compensation Policies."  While Liberty Mutual now purports to narrow these requests to the categories enumerated above, they remain expansive.  The extremely broad discovery that Plaintiffs are seeking into the reinsurance of workers

compensation policies is not directed at identifying any particular practice or impact that the

sampling process Liberty Mutual is pursuing cannot accomplish in a more targeted and less

burdensome manner.

### 3.    *Premium Tax Documents (Second Request No. 16)*

> SECOND REQUEST 16.  All documents that concern, refer or
> relate to, evidence or describe AIG's and each AIG Company's
> premium tax returns for each state.

AGREEMENTS:   AIG agrees to produce its premium tax returns for the period at issue.

DISAGREEMENTS:   The parties disagree as to whether AIG must produce documents

responsive to this request (other than AIG's premium tax returns for the period at issue).

AIG's Position:

AIG argues that the request is overbroad and unduly burdensome and that a similar

request for all documents relating to AIG's premium tax reporting process was rejected by this

Court in its October 2, 2008 ruling.

Liberty Mutual's Position:

Liberty Mutual contends that AIG must produce documents relating to, evidencing, or

describing AIG's premium tax returns for each state for the period at issue.  Liberty Mutual's

position is that such documents are relevant because they will show how AIG calculated the

amount of workers compensation premium on which it paid premium taxes; this information is

relevant to calculating the total amount of workers compensation premium that should have been

reported.  Liberty Mutual further argues that these documents would not be unduly burdensome

to produce because tax documents are likely to be conspicuously stored and therefore easy to

locate.  Finally, Liberty Mutual contends that the Court's October 2, 2008 ruling is not

controlling since that order dealt with a request for premium tax procedures and practices – not actual tax returns and related documents.

### 4.    *Documents Relating to "State 99" (Second Request No. 30)*

> SECOND REQUEST 30.  All documents that concern, refer or relate to, evidence or describe "State 99," including but not limited to any references to its existence and documents describing its purpose or origin with regard to Workers Compensation Policies.

DISAGREEMENTS:   The parties disagree as to whether AIG must produce documents responsive to this request.

AIG's Position:

 "State 99" is term used as an individual code in individual policies for business not subject to taxation.  On a limited, case-by-case basis Comptrollers may have allowed its use in non-machine premium/loss accruals pending detailed entry into the appropriate system.  Such accruals always reverse after the closing and were correctly accounted for via a detailed system entry.  AIG therefore takes the position that searching every single accrual for the past thirty years to determine whether "State 99" was used as a placeholder would be unduly burdensome and of no relevance given this exceptional and temporary use.  Because AIG does not understand, and Liberty has not clarified, how this request is relevant to the claims and defenses at issue in this matter, AIG stands by its objections to Request No. 30.

Liberty Mutual's Position:

Liberty Mutual's position is that AIG must produce all documents responsive to Second Request 30.  Under AIG's description of the meaning of "state 99," Liberty Mutual believes that this individual code could be used as a means to misreport, or delay the reporting of, workers compensation premium in a manner that would have damaged Liberty Mutual.  And, notwithstanding AIG's representation that "such accruals always reverse after the closing and

were correctly accounted for via a detailed system entry," Liberty Mutual is entitled to verify that

representation through the review of documents responsive to this request.

> **5.** **Documents Concerning Non-NWCRP Residual Market Pools, Guaranty Funds, and Special Purpose Funds (Second General Objection No. 17 and Second Requests Nos. 32-37)**

>> SECOND REQUEST 32.  All documents that concern, refer or relate to, evidence or describe the operation of Non-NWCRP Residual Market Pools, Guaranty Funds and Special Purpose Funds in which AIG or any of the AIG Companies participated.

>> SECOND REQUEST 33.  All contracts or agreements that govern AIG's or any AIG Company's participation in any Non-NWCRP Residual Market Pool, Guaranty Fund or Special Purpose Fund.

>> SECOND REQUEST 34.  Documents sufficient to show whether and in what years AIG and each AIG Company participated in the Non-NWCRP Residual Market Pools, Guaranty Funds, or Special Purpose Funds.

>> SECOND REQUEST 35.  Documents sufficient to show the identity of the Fund Administrators for the Non-NWCRP Residual Market Pools, Guaranty Funds and Special Purpose Funds to whom AIG and each AIG Company reported Workers Compensation Premium.

>> SECOND REQUEST 36.  All documents that concern, refer or relate to, evidence or describe the reporting of Workers Compensation Premium by AIG or any AIG Company to Fund Administrators for Non-NWCRP Residual Market Pools, Guaranty Funds and Special Purpose Funds, including but not limited to documents sufficient to show (a) the volume of Workers Compensation Premium reported to such Fund Administrators each year, (b) the timing of such reporting, and (c) the nature of such reports.

>> SECOND REQUEST 37.  All documents that concern, refer or relate to, evidence or describe the assessments issued to Plaintiffs by (or payments made by Plaintiffs to) Fund Administrators based on the premium reported to Non-NWCRP Residual Market Pools, Guaranty Funds and Special Purpose Funds, including but not limited to documents sufficient to show (a) the volume of

assessments paid by Plaintiffs to such Fund Administrators, and (b) the timing of such payments.

DISAGREEMENTS:   The parties disagree as to whether AIG must produce documents sought by Second Requests 32 – 37.

AIG's Position:

AIG's position is that the requests at issue are overbroad, unduly burdensome, and not likely to lead to the discovery of relevant information, particularly with respect to Second Requests Nos. 36 and 37, which seek "*[a]ll* documents that concern, refer or relate to, evidence or describe" (i) any reporting of workers compensation premium by AIG to any "Non-NWCRP Residual Market Pools, Guaranty Funds and Special Purpose Funds (Request No. 36), or (ii) "the assessments issued to [AIG] by (or payments made by [AIG] to)" any such entity.   AIG further objects on the basis that Liberty can only allege injury stemming from AIG's alleged underreporting of workers compensation premium in states – and in years – in which Liberty actually participated in the residual market and therefore should be required to propound appropriately targeted requests relating only to those states and years identified by Liberty in discovery in which Liberty participated in a non-NWCRP fund.

Liberty Mutual's Position:

Liberty Mutual's position is that all of these documents are relevant because they evidence AIG's underreporting of workers compensation premium; accordingly, they are relevant with respect to the issue of AIG's liability.  Moreover, Liberty Mutual contends that AIG's burden argument is unsupported.

Dated:   February 19, 2010                          Respectfully submitted,

s/James A. Morsch                              s/Kevin S. Reed
James I. Rubin (ARDC# 2413191)                 Michael B. Carlinsky
James A. Morsch (ARDC# 6209558)                Kevin S. Reed
Jason S. Dubner (ARDC# 6257055)                Jennifer J. Barrett
Mark A. Schwartz (ARDC# 6270580)
Amy B. Kelley (ARDC # 06243229)                QUINN EMANUEL URQUHART OLIVER
Butler Rubin Saltarelli & Boyd LLP                & HEDGES, LLP
70 West Madison Street, Suite 1800             51 Madison Avenue, 22nd Floor
Chicago, Illinois 60602                        New York, New York 10010
(312) 444-9660                                 (212) 849-7000

Attorneys for Liberty Mutual Insurance         Attorneys for American International Group,
Company, Liberty Mutual Fire Insurance         Inc.
Company, Liberty Insurance Corporation, The
First Liberty Insurance Corporation,
Employers Insurance Company of Wausau,
Wausau Business Insurance Company,
Wausau General Insurance Company and
Wausau Underwriters Insurance Company

## CERTIFICATE OF SERVICE

The undersigned attorney, upon oath, hereby certifies that he served a copy of the attached **Joint Statement Of Results Of February 5, 2010 Meet And Confer Regarding Liberty Mutual's Requests For Documents** upon the parties by electronic means pursuant to Electronic Case Filing (ECF) procedures, on the 19th day of February, 2010.

/s/ James A. Morsch