**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| ———————————————— | ) ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Counter-Defendants. | ) ) | |
| ———————————————— | ) ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) ) | Case No. 09 CV 2026 Judge Robert W. Gettleman Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | ) ) | |
| v. | ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**JOINT STATEMENT OF RESULTS OF MARCH 2, 2010 MEET AND CONFER**
**REGARDING AIG'S FIRST SET OF INTERROGATORIES TO LIBERTY MUTUAL**

Pursuant to the Court's December 11, 2009 revised procedure applicable to discovery motions in the above-captioned cases (the "Discovery Motion Protocol Order"), Defendant Liberty Mutual Insurance Company ("Liberty Mutual") and Plaintiff American International Group, Inc. ("AIG") file this Joint Statement reporting on their meet-and-confer in an attempt to

resolve their disputes concerning AIG's First Set of Interrogatories to Liberty Mutual ("AIG's Interrogatories").

## I.      AIG'S FIRST SET OF INTERROGATORIES

In accordance with the Court's October 6, 2009 Order scheduling merits discovery, AIG served its First Set of Interrogatories upon Liberty Mutual on November 6, 2009.  Liberty Mutual served Answers and Objections to AIG's First Set of Interrogatories on January 12, 2010.  Attached hereto as Exhibit A is a copy of Liberty Mutual's Answers and Objections to AIG's First Set of Interrogatories setting for each specific Interrogatory and Liberty Mutual's objections and responses to the same.

## II.     REPORT ON MARCH 2, 2010 MEET AND CONFER

Pursuant to the Discovery Motion Protocol Order, AIG and Liberty Mutual exchanged letters regarding their dispute arising from Liberty Mutual's objections to AIG's Interrogatories on February 16, 2010 and February 26, 2010 respectively.  A meeting of counsel to attempt to resolve remaining disputes, as required by Paragraph 3 of the Discovery Motion Protocol Order, was conducted on March 2, 2010.  Counsel who discussed the Interrogatories at the meeting were Kevin Reed (for AIG), Lee Turner-Dodge (also for AIG), Mark Schwartz (for Liberty Mutual) and Ursula Taylor (also for Liberty Mutual).

### A.      Generally Applicable Agreements and Disagreements

AIG's Interrogatories sought information from 1970 to the present.  Liberty Mutual objects to AIG's Interrogatories outside the 1985-1996 timeframe.  Without waiving this objection, Liberty Mutual confirmed that it has responded to AIG's Interrogatories by providing information within its possession, custody and control for the period 1970 to the present.

### B.      Agreements and Disagreements Regarding Specific Interrogatories

**Interrogatories Nos. 2 & 3**

> *Interrogatory No. 2: Identify all persons who prepared any Call One Report on behalf of Liberty Mutual and for each person state: (1) the time period(s) during which he or she was responsible for preparing any Call One Report on behalf of Liberty Mutual; (2) his or her position and titled during each such time period; and (3) the identity of his or her employer(s) during each such time period.*

> *Interrogatory No 3: To the extent not identified in response to Interrogatory Nos. 1 or 2, identify any and all other persons who are or have been responsible for reporting or who participated in reporting workers compensation premium to NCCI on behalf of ACE/CIGNA and for each such person identified in response to Interrogatory No. 4, state:  (1) the time period(s) during which he or she was responsible for reporting or participated in reporting workers compensation premium to NCCI on behalf of ACE/CIGNA; (2) his or her position and title during each such time period; and (3) the identity of his or her employer(s) during each such time period.*

AGREEMENTS:

Liberty Mutual confirmed that it has completed its investigation into information responsive to Interrogatories Nos. 2 and 3.  Liberty Mutual will supplement its response to Interrogatory No. 2 to disclose the names of additional individuals discovered during this investigation who prepared Call One Reports.  Liberty Mutual will supplement its response with any additional names discovered on or before March 17, 2010.

**Interrogatory No. 6**

> *Interrogatory No. 6: Identify all persons responsible for compliance with any applicable regulations and requirements for reporting workers compensation premium to NCCI on behalf of Liberty Mutual and for each person state: (1) the time period(s) during which he or she was responsible for compliance with regulations and requirements for reporting workers compensation premium to NCCI; (2) his or her position and title during each such time period; and (3) the identify of his or her employer(s) during each such time period.*

AGREEMENT:

AIG has clarified that it seeks through this Interrogatory only the identification of persons for whom oversight of compliance with reporting regulations and requirements is included among their job responsibilities.  In light of this clarification, Liberty Mutual has confirmed that the 15 individuals identified in response to Interrogatory No. 2 are among the individuals whose job responsibilities included oversight for such compliance.

**Interrogatories Nos. 9 and 13**

> *Interrogatory No. 9:  State the amount of direct workers compensation premium that Liberty Mutual originally reported on Statutory Page 14s and annual statements by year and by State.*
>
> *Interrogatory No. 13:  State the amount of direct workers compensation premium originally recorded or reported by Liberty Mutual in Call One Reports, by year and by State.*

AGREEMENT:

Liberty Mutual has supplemented its responses to Interrogatories 9 and 13 by identifying business records, by bates numbers, pursuant to Federal Rule of Civil Procedure 33(d), from which the answers to these Interrogatories may be determined.  AIG reserves the right to seek further discovery in response to these Interrogatories upon review of the documents identified, and Liberty  Mutual reserves the right to object to any further discovery.

**Interrogatories Nos. 14-16**

> *Interrogatory No. 14:  Identify all Liberty employees who communicated with, provided documents to, or were consulted by State of Florida Department of Insurance regarding its market conduct examination for the period January 1997 to December 1999.*

> *Interrogatory No. 15:  Identify all Liberty employees who communicated with, provided documents to, or were consulted by State of Colorado Department of Regulatory Agencies Division regarding to its market conduct examination in 1997.*

> *Interrogatory No. 16:  Identify all Liberty employees who communicated with, provided documents to, or were consulted by State of Colorado Department of Regulatory Agencies Division of Insurance regarding to its market conduct examination in 2000.*

<u>AGREEMENT</u>:

Liberty Mutual has responded to this Interrogatory by identifying business records, by bates numbers, pursuant to Federal Rules of Civil Procedure 33(d), from which the answers to these Interrogatories may be determined.  Liberty Mutual has agreed to interview the employees of Liberty Mutual likely to have information responsive to this Interrogatory and to supplement its response to this Interrogatory by providing the names of any responsive individuals identified during this investigation.  Liberty Mutual will supplement its response with any additional names discovered on or before March 17, 2010.

**Interrogatory No. 17**

> *Interrogatory No. 17: Identify all instances in which Liberty:  (1) collected negative dividends without reporting the same to NCCI, insurance regulators, or other insurance companies; (2) incorporated residual market expenses or costs into a policy's tax multiplier; (3) classified or allocated residual market expenses or costs as miscellaneous income; (4) used variable dividend plans to reduce the amount of workers compensation reported to NCCI or other insurance regulators; and (5) coded workers compensation premium as attributable to non-regulated lines of business.*

<u>AGREEMENT</u>:

AIG has clarified that it is not seeking a comprehensive list detailing each instance that the practices referenced in Interrogatory No. 17 occurred.  Rather, AIG seeks to understand through this Interrogatory whether the referenced practices ever occurred.  AIG agrees that pursuant to the Court's November 17, 2009 Sampling Order, Liberty Mutual is not required to review policy-level files in order to respond to this Interrogatory.

In light of this clarification and AIG's agreement to confirm that it has conducted the same type of investigation with respect to Interrogatories 7 and 8 of Liberty Mutual's

Second Set of Interrogatories for all AIG divisions that wrote workers compensation policies, and AIG's agreement to supplement its responses to those interrogatories with information obtained as a result of that investigation, Liberty Mutual has agreed to conduct a reasonable investigation for information responsive to this Interrogatory that includes interviewing Liberty Mutual employees and reviewing documents likely to have relevant information.  Liberty Mutual agrees to supplement its response to provide its current understanding based on this investigation of whether the referenced practices occurred.  Liberty Mutual will supplement its response to Interrogatory No. 17 by April 1, 2010**.**

**Interrogatories Nos. 18-49**

> *Interrogatory No. 18: Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability increasing by $167 million from 1984 to 1985, as reflected in the graph, "Liberty Mutual's Direct Written Premium - Auto Liability" (Exhibit 1 hereto).  State whether You contend that the $167 million increase is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1984 to 1985.*

> *Interrogatory No. 19.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability increasing by $300 million from 1985 to 1986, as reflected in Exhibit 1.  State whether You contend that the $300 million increase is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1985 to 1986.*

> *Interrogatory No. 20.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability increasing by $91 million from 1986-1987, as reflected in Exhibit 1.  State whether You contend that the $91 million increase is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1986 to 1987.*

> *Interrogatory No. 21.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the increases described in Interrogatories Nos. 18-20 and/or the factors known or believed by You to have contributed to those increases.*

> *Interrogatory No. 22.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability decreasing by $60 million from 1987-1988, as reflected in Exhibit 1.  State whether You contend that the $60 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1987 to 1988.*

*Interrogatory No. 23.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability decreasing by $126 million from 1988-1989, as reflected in Exhibit 1.  State whether You contend that the $126 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1988 to 1989.*

*Interrogatory No. 24.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability decreasing by $16 million from 1989 to 1990, as reflected in Exhibit 1.  State whether You contend that the $16 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1989 to 1990.*

*Interrogatory No. 25.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for commercial auto liability decreasing by $210 million from 1990 to 1991, as reflected in Exhibit 1.  State whether You contend that the $210 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for commercial auto liability from 1990 to 1991.*

*Interrogatory No. 26.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the decreases described in Interrogatories Nos. 23-25 and/or the factors known or believed by You to have contributed to those decreases*

*Interrogatory No. 27.  Identify and explain all factors known or believed by You to have contributed to the increase in commercial auto liability direct premiums written in relation to the mix of business (i.e., workers' compensation, commercial auto liability and general liability) from 1984 through 1987, as reflected in the graph, "Liberty Mutual's Mix of Business (1980-1996)" (Exhibit 4 hereto). That is:*

| *Year* | *WC % Total* | *GL % Total* | *AL % Total* |
|--------|--------------|--------------|--------------|
| *1984* | *75.00%* | *13.00%* | *12.00%* |
| *1985* | *70.00%* | *15.00%* | *16.00%* |
| *1986* | *65.00%* | *18.00%* | *18.00%* |
| *1987* | *65.00%* | *17.00%* | *18.00%* |

*Interrogatory No. 28.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the change in the mix of business described in Interrogatory No. 27 and/or the factors known or believed by You to have contributed to that change.*

*Interrogatory No. 29.  Identify and explain all factors known or believed by You to have contributed to the decrease in commercial auto liability direct premiums written in relation to the mix of business (i.e., workers' compensation, commercial auto liability and general liability) from 1987 through 1991, as reflected in Exhibit 4. That is:*

| *Year* | *WC % Total* | *GL % Total* | *AL % Total* |
|--------|--------------|--------------|--------------|
| *1987* | *65.00%* | *17.00%* | *18.00%* |
| *1988* | *70.00%* | *15.00%* | *15.00%* |
| *1989* | *74.00%* | *13.00%* | *14.00%* |
| *1990* | *76.00%* | *12.00%* | *12.00%* |
| *1991* | *82.00%* | *8.00%* | *11.00%* |

*Interrogatory No. 30.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the change in the mix of business described in Interrogatory No. 29 and/or the factors known or believed by You to have contributed to that change.*

*Interrogatory No. 31.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the aggregate direct premiums written for commercial auto liability by state, for all 50 states, and by year, from 1980 through 1996, as reflected in Exhibit 1.*

*Interrogatory No. 32.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability increasing by $203 million from 1984 to 1985, as reflected in the graph, "Liberty Mutual's Direct Premium Written - General Liability" (Exhibit 2 hereto).  State whether You contend that the $203 million increase is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1984 to 1985.*

*Interrogatory No. 33.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability increasing by $260 million from 1985 to 1986, as reflected in Exhibit 2.  State whether You contend that the $260 million increase is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1985 to 1986.*

*Interrogatory No. 34.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability increasing by $128 million from 1986 to 1987, as reflected in Exhibit 2.  State whether You contend that the $128 million increase is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1986 to 1987.*

*Interrogatory No. 35.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the increases described in Interrogatories Nos. 32-34 and/or the factors known or believed by You to have contributed to those increases.*

*Interrogatory No. 36.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability decreasing by $69 million from 1987 to 1988, as reflected in Exhibit 2.  State whether You contend that the $69 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1987 to 1988.*

*Interrogatory No. 37.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability decreasing by $94 million from 1988 to 1989, as reflected in Exhibit 2.  State whether You contend that the $94 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1988 to 1989.*

*Interrogatory No. 38.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability decreasing by $44 million from 1989 to 1990, as reflected in Exhibit 2.  State whether You contend that the $44 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1989 to 1990.*

*Interrogatory No. 39.  Identify and explain all factors known or believed by You to have contributed to direct premiums written for general liability decreasing by $90 million from 1990 to 1991, as reflected in Exhibit 2.  State whether You contend that the $90 million decrease is incorrect, and if so, provide the basis of this belief and Your understanding of the correct change in amount of direct premiums written for general liability from 1990 to 1991.*

*Interrogatory No. 40.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the decreases described in Interrogatories Nos. 36-39 and/or the factors known or believed by You to have contributed to those decreases.*

*Interrogatory No. 41.  Identify and explain all factors known or believed by You to have contributed to the increase in general liability direct premiums written in relation to the mix of business (i.e., workers' compensation, commercial auto liability and general liability) from 1984 through 1987, as reflected in Exhibit 4. That is:*

| *Year* | *WC % Total* | *GL % Total* | *AL % Total* |
|--------|--------------|--------------|--------------|
| *1984* | *75.00%* | *13.00%* | *12.00%* |
| *1985* | *70.00%* | *15.00%* | *16.00%* |
| *1986* | *65.00%* | *18.00%* | *18.00%* |

| | | | |
|---|---|---|---|
| 1987 | 65.00% | 17.00% | 18.00% |

*Interrogatory No. 42.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the change in the mix of business described in Interrogatory No. 41 and/or the factors known or believed by You to have contributed to that change.*

| Year | WC % Total | GL % Total | AL % Total |
|---|---|---|---|
| 1987 | 65.00% | 17.00% | 18.00% |
| 1988 | 70.00% | 15.00% | 15.00% |
| 1989 | 74.00% | 13.00% | 14.00% |
| 1990 | 76.00% | 12.00% | 12.00% |
| 1991 | 82.00% | 8.00% | 11.00% |

*Interrogatory No. 43.  Identify and explain all factors known or believed by You to have contributed to the decrease in general liability direct premiums written in relation to the mix of business (i.e., workers' compensation, commercial auto liability and general liability) from 1987 through 1991, as reflected in Exhibit 4. That is:*

*Interrogatory No. 44.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the change in the mix of business described in Interrogatory No. 43 and/or the factors known or believed by You to have contributed to that change.*

*Interrogatory No. 45.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the aggregate direct premiums written for general liability by state, for all 50 states, and by year, from 1980 through 1996, as reflected in Exhibit 2.*

*Interrogatory No. 46.  Identify and explain all factors known or believed by You to have contributed to the increase in workers' compensation direct premiums written in relation to the mix of business (i.e., workers' compensation, commercial auto liability and general liability) from 1984 through 1987, as reflected in Exhibit 4. That is:*

| Year | WC % Total | GL % Total | AL % Total |
|---|---|---|---|
| 1984 | 75.00% | 13.00% | 12.00% |
| 1985 | 70.00% | 15.00% | 16.00% |
| 1986 | 65.00% | 18.00% | 18.00% |
| 1987 | 65.00% | 17.00% | 18.00% |

*Interrogatory No. 47.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the change in the mix of business described in Interrogatory No. 46 and/or the factors known or believed by You to have contributed to that change.*

*Interrogatory No. 48.  Identify and explain all factors known or believed by You to have contributed to the decrease in workers' compensation direct premiums written in relation to the mix of business (i.e., workers' compensation, commercial auto liability and general liability) from 1987 through 1991, as reflected in Exhibit 4. That is:*

| *Year* | *WC % Total* | *GL % Total* | *AL % Total* |
|--------|--------------|--------------|--------------|
| *1987* | *65.00%* | *17.00%* | *18.00%* |
| *1988* | *70.00%* | *15.00%* | *15.00%* |
| *1989* | *74.00%* | *13.00%* | *14.00%* |
| *1990* | *76.00%* | *12.00%* | *12.00%* |
| *1991* | *82.00%* | *8.00%* | *11.00%* |

*Interrogatory No. 49.  Identify all documents, databases or data compilations concerning, evidencing or analyzing the aggregate direct premiums written for workers' compensation by state, for all 50 states, and by year, from 1980 through 1996, as reflected in the graph, "Liberty Mutual's Direct Premium Written - Workers' Compensation" (Exhibit 3 hereto).*

<u>AGREEMENT</u>:

Liberty Mutual, while asserting objections to these Interrogatories, has referred AIG to documents it maintains include information responsive to them.  AIG will review these documents and reserves its right to seek to compel answers to these Interrogatories at a later date and Liberty Mutual reserves its right to object.

Dated:  March 9, 2010

Respectfully submitted,


 _/s/ P. Andrew Fleming_____                          /s/ Jennifer J. Barrett_____

Stephen Novack                                         Michael B. Carlinsky
P. Andrew Fleming                                      Kevin S. Reed
Andrew D. Campbell                                     Jennifer J. Barrett
NOVACK AND MACEY LLP                                   QUINN EMANUEL
100 North Riverside Plaza                              URQUHART OLIVER &
Chicago, IL 60606                                      HEDGES, LLP
(312) 419-6900                                         51 Madison Avenue, 22nd Floor
                                                       New York, New York 10010
*Attorneys for American International Group, Inc.*     (212) 849-7000


                                                       *Attorneys for American*
                                                       *International Group, Inc.*



 /s/ Mark A. Schwartz_____

James A. Morsch
Jason S. Dubner
Mark A. Schwartz
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

*Attorneys for Liberty Mutual Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the foregoing **JOINT STATEMENT OF RESULTS OF MARCH 2, 2010 MEET AND CONFER REGARDING AIG'S FIRST SET OF INTERROGATORIES TO LIBERTY MUTUAL** by causing copies thereof to be sent by U.S. District Court CM/ECF e-filing system on the 9th day of March, 2010.

/s/ Andrew D. Campbell