UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | Case No. 07 CV 2898 |
| Plaintiffs, | Judge Robert W. Gettleman |
| v. | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | |
| Defendants. | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | |
| Counter-Claimants, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Counter-Defendants. | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | Case No. 09 CV 2026 |
| | Judge Robert W. Gettleman |
| | Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Defendants. | |

**AIG'S MOTION FOR A PROTECTIVE ORDER**

American International Group, Inc. various of its subsidiaries (collectively "AIG") hereby move, pursuant to Fed. R. Civ. P. 26(c), for a protective order barring the National Workers Compensation Reinsurance Pool (the "Pool") from interfering with the production of documents by third parties pursuant to subpoenas issued by AIG. As the Court is aware, AIG has issued subpoenas to 281 of the more than 1,000 present and former participants in the Pool ("Participating Companies") seeking policy, procedure or guideline manuals ("PPGMs") and associated commentary. Safeco Insurance Company of America and Ohio Casualty Insurance Company (jointly, the "Class Plaintiffs") have sought to defer this third-party discovery pending a ruling on an anticipated motion for class certification, but do not dispute the necessity and relevance of the discovery. *See* Dkt. # 96.

1. AIG has reason to believe that the Pool is improperly interfering with the third-party discovery process by counseling the third-party subpoena respondents unreasonably to delay their compliance with the subpoenas. Accordingly, AIG respectfully submits this motion seeking an order barring the Pool from interfering with the discovery process and directing the Pool and its counsel to produce all communications they have had with the Participating Companies regarding AIG's subpoenas since receiving notice of the third-party subpoenas on March 15, 2010.

I. **BACKGROUND**

2. Since this litigation commenced in 2007, AIG has been seeking production of the PPGMs and associated commentary from the Participating Companies. The Pool and certain individual participating companies have objected to the production of these documents. On December 8, 2008, the Court ordered the Pool to gather these documents from the Participating Companies and produce them to AIG. *Nat'l Council on Compensation Ins. v. Am. Int'l Group,*

*et al.*, No. 07-cv-2898 (N.D. Ill. Dec. 8, 2008) (Dkt. # 404). The Pool, however, did not do so. In the meantime, the Pool's complaint was dismissed and, as a result, the Court later held that the Pool did not have to gather and produce these documents. Dkt. # 96, at 2. Instead, the Court indicated that AIG could subpoena the documents from the Participating Companies directly. Dkt. # 96, at 3 ("This Court's ruling today does not bar the AIG parties from seeking production of the PPGM documents by serving subpoenas upon the participating members of the Pool who are not named defendants.").

3. Pursuant to Federal Rule of Civil Procedure 45(b)(1), AIG gave notice of its intent to serve subpoenas on the 281 Participating Companies on Monday, March 15, 2010. *See* Exhibit A. On Friday, March 19, 2010, Class Plaintiffs sent AIG a lengthy letter objecting to the issuance of the subpoenas and advising AIG of their intention to file a motion for a protective order. *See* Exhibit B. Class Plaintiffs argued that the subpoenas were improper because the recipients were putative class members. *Id.* AIG promptly responded via e-mail and stated that it would respond fully to the letter the following week and advising that the subpoenas either had been or were in the process of being served.[1] *See* Exhibit C.

4. The following Sunday, March 21, Class Plaintiffs e-mailed AIG to renew their objection to the issuance of subpoenas on the third-party Participating Companies, and demanding that AIG "stand down from serving these subpoenas." *See* Exhibit D. AIG responded the next day, reminding Class Plaintiffs of the Court's January 13, 2010 Order and declining to "stand down" from serving the subpoenas. *See* Exhibit E. Class Plaintiffs thereafter filed a motion for a temporary stay of discovery before Judge Gettleman. Dkt. #127.

---

[1] AIG later ascertained that approximately 260 of the 281 subpoenas had been served prior to the arrival of Class Plaintiffs' March 19 letter.

5. Judge Gettleman heard argument on Class Plaintiffs' stay motion on Thursday, March 25. *See Transcript of March 25, 2010 Hearing* ("Tr."), attached hereto as Exhibit F. Judge Gettleman denied the stay motion, acknowledging AIG's representations that it would not seek enforcement of the third-party subpoenas until this Court had an opportunity to entertain Class Plaintiffs' motion for a protective order. Tr. at 15. Specifically, Judge Gettleman clarified with counsel for AIG that AIG had "agreed to extensions of time to respond to the subpoenas to everybody who is asking . . . [u]ntil Judge Schenkier can entertain the protective order." Tr. at 11. As all parties knew at the time, Judge Schenkier was due back on the bench on March 29 and a conference in this case was scheduled for April 7.

6. Immediately following the March 25 hearing, counsel for AIG began receiving substantially identical e-mails from the subpoena recipients seeking "confirmation" that AIG had agreed to allow a 45-day extension of time within which to object or otherwise respond to the third-party subpoenas. Indeed, AIG's counsel received approximately 30 such "confirming" e-mails in the 24 hours after the hearing on the morning of March 25. To date, AIG's counsel have received 95 such e-mails, examples of which are attached hereto as Exhibit G. The number of these requests, the speed at which they were sent to AIG's counsel and the fact that they were essentially identical made clear to AIG that Class Plaintiffs or the Pool had communicated with the subpoena recipients and misrepresented AIG's statements regarding an extension of the time to respond to the subpoenas. *See id.* AIG clarified that it had not agreed to a 45-day extension, but had instead agreed to extend the time to respond until Judge Schenkier had an opportunity to review Class Plaintiffs' motion for a protective order. *See e.g.*, Exhibit H. AIG further explained that the parties expected that ruling by April 7, 2010 (the date of the next scheduled

3

status conference) and that, accordingly, AIG would extend the 14-day period provided by Rule 45(c)(2)(B) to object to the subpoenas until April 21, 2010.

7. On March 26, 2010, counsel for AIG sent the following e-mail to counsel for Class Plaintiffs (Michael Walsh at Nutter McClennan) and the Pool (Dan Schlessinger at Locke Lord) requesting copies of any correspondence between them and the subpoena recipients concerning the subpoenas:

> Dan and Mike,
>
> We've received a number of emails like the one below in which recipients of AIG's third-party subpoenas indicate their understanding that AIG agreed at yesterday's appearance before Judge Gettleman to grant a 45-day extension of time to object or respond to the subpoenas. As I presume you know, that is not an accurate understanding of what took place. AIG committed to extend the time for the recipients of these subpoenas to respond to them "[u]ntil Judge Schenkier can entertain [Class counsel's motion for a ] protective order". (3/25 Tr. at 11). We did not commit to a 45-day extension of the time to object to these subpoenas – that time period was never mentioned – nor is there any necessity for such a long extension as Judge Schenkier is likely to rule on Class Plaintiffs' motion on or before the status conference set for April 7 and the subpoena recipients should be able submit any objections to our subpoena, which seeks only 3 categories of documents, shortly after that date. Obviously, to the extent a subpoena recipient intends to respond to the subpoena other than with objections, we will allow additional time and we have so indicated to those who have asked.
>
> To enable us to understand how the recipients of our subpoenas developed this misimpression about what transpired yesterday, and so that we can determine whether any other inaccurate information was conveyed to them that might interfere with their complete and timely response to these subpoenas, we request that you promptly provide us with copies of any correspondence between your firms and the subpoena recipients concerning the subpoenas.
>
> Regards,
>
> Kevin

*See* Exhibit I. Counsel for Class Plaintiffs promptly responded, representing that they had not communicated with the subpoena recipients. *See id.* Counsel for the Pool, Locke Lord, did not respond until approximately 4:00 p.m. on Tuesday, March 30, after AIG had sent two follow-up requests. At that time, Pool counsel sent an email which said, in its entirety, "Kevin, We decline to provide you with copies of correspondence our firm may have had with participating companies in the NWCRP. Dan" *See* Exhibit J.

8. In further discussions with the subpoena recipients, AIG has learned that Locke Lord sent out a communication regarding the March 25 hearing that provided the Participating Companies with instructions for seeking an extension of the time to respond.

## II. ARGUMENT

9. It is well-established that a district court has inherent authority to regulate litigation before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Pursuant to this authority, district courts have cautioned, admonished, and even sanctioned counsel and parties who have interfered with the receipt of subpoenaed documents from third parties. *See Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, Case No. 1:05-cv-01411, 2010 WL 716306, at *5 (E.D. Cal. March 2, 2010) (cautioning a party accused of interfering with third-party subpoenas that "any efforts by a party to frustrate Court ordered discovery will not be tolerated"); *Amatulli & Sons, LLC v. Great Northern Ins. Co.*, 2008, Case No. 3:06 cv 286, 2008 WL 113914, at *4 (W.D.N.C. Jan. 7, 2008) (counsel "deviat[ed] from required practice" by obtaining subpoenaed documents from third-party witness and withholding such documents from subpoenaing party); *Fox Indus., Inc. v. Gurovich*, Case No. CV 03-5166, 2006 WL 2882580, at *8–9 (E.D.N.Y. Oct. 6, 2006) (sanctioning attorney for abuse of process for sending letters directing subpoena recipients not to respond to subpoenas); *In re Seagate Tech. II Sec. Litig.*, Case No. C-89-2493,

5

1993 WL 293008, at *2 (N.D. Cal. June 10, 1993) (admonishing a party for "interfering with the third-party discovery" by, *inter alia*, "falsely representing to [third-party subpoena recipients] the relevant time-period of discovery").[2]

10. AIG submits that there is reason to believe the Pool has interfered with discovery in this case by encouraging the Participating Companies to seek unnecessarily long extensions of their time to respond to AIG's subpoenas -- and misrepresenting that AIG had agreed to such extensions -- in order to frustrate AIG's efforts to receive discovery from the Participating Companies and/or delay AIG's receipt of such discovery. It is clear that the Pool at the very least conveyed to the Participating Companies an inaccurate understanding of the position taken by AIG at the March 25 hearing with respect to the timing of the Participating Companies' response to AIG's subpoenas, and AIG is concerned that the Pool may have conveyed other inaccurate information that could interfere with a timely and proper response to the subpoenas. The Pool's failure to respond substantively to AIG's March 26 e-mail, and the Pool's unexplained refusal to disclose communications concerning the subpoenas between its counsel and the Participating Companies only heightens these concerns. Moreover, given that the Pool convinced the Court not to require it to gather and produce the documents sought by these subpoenas on the grounds that neither the Pool nor its counsel represented the Participating Companies, any interference by the Pool or its counsel with these subpoenas would be particularly inappropriate.

---

[2] Given the nature of this motion, we respectfully suggest, and trust that the Court agrees, that this motion is not subject to the December 11, 2009 Revised Discovery Protocol Order.

### III. CONCLUSION

11. Accordingly, AIG respectfully requests that this Court issue an order: (a) prohibiting the Pool from interfering with the Participating Companies' compliance with the third-party subpoenas; (b) directing the Pool and its counsel to produce all communications they have had with the Participating Companies regarding the third-party subpoenas since they received notice of the subpoenas on March 15, 2010; and (c) granting AIG such other and further relief as is appropriate.

Dated: April 2, 2010

Respectfully submitted,

/s/ P. Andrew Fleming

Stephen Novack
P. Andrew Fleming
Andrew D. Campbell
NOVACK AND MACEY, LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

*Attorneys for American International Group, Inc.*

/s/ Kevin S. Reed

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for American International Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the foregoing **MOTION FOR A PROTECTIVE ORDER** by causing copies thereof to be sent by U.S. District Court CM/ECF e-filing system on the 2nd day of April, 2010.

/s/ Andrew D. Campbell