## INDEX OF EXHIBITS TO AIG'S MOTION TO COMPEL 30(B)(6) DEPOSITION TESTIMONY AND DOCUMENTS FROM TRAVELERS INSURANCE GROUP

| Exhibit | Description |
|---------|-------------|
| A | AIG's 30(b)(6) deposition notice, served December 3, 2009 |
| B | Travelers' Objections to AIG's 30(b)(6) notice, served December 21, 2009 |
| C | March 22, 2010 letter from AIG to Travelers proposing to bifurcate the deposition at issue |
| D | March 30, 2010 letter from Travelers in response thereto |
| E | April 1, 2010 email from AIG to Travelers requesting a meet and confer |
| F | April 2, 2010 letter from Travelers to AIG requesting that AIG set forth its position in a letter |
| G | April 6, 2010 letter from AIG to Travelers setting forth AIG's position on Travelers' objections to the scope of Topic 1 |
| H | April 13, 2010 letter from Travelers in response thereto |
| I | The parties' Joint Statement reporting on the results of the April 14 and April 19, 2010 meet-and-confers |
| J | AIG's Third Set of Requests for the Production of Documents to Travelers, served March 2, 2010 |
| K | Travelers' Objections and Responses to AIG's Requests, served April 1, 2010 |
| L | April 7, 2010 deficiency letter from AIG to Travelers |
| M | April 8, 2010 letter from AIG to Travelers requesting clarification of Travelers' use of the term "business units" |
| N | April 9, 2010 letter from AIG to Travelers requesting a date by which Travelers will produce responsive documents |
| O | April 14, 2010 letter from Travelers to AIG responding to AIG's April 7, 8, and 9, 2010 letters |
| P | June 25, 2008 letter from A. Fleming |

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*,    )<br>    )<br>    ) | |

AMERICAN INTERNATIONAL GROUP, INC., *et al.*,    )
     )

     Plaintiffs,    )    No.:  07 CV 2898
     )
v.    )    Judge Robert W. Gettleman
     )
ACE INA HOLDINGS, INC., *et al.*,    )    Magistrate Judge Sidney I. Schenkier
     )
     Defendants.    )
     )
_____)

LIBERTY MUTUAL INSURANCE CO., *et al.*,    )
     )
     Counter-Claimants,    )
     )
v.    )
     )
AMERICAN INTERNATIONAL GROUP, INC., *et al.*,    )
     )
     Counter-Defendants.    )
     )
_____)

SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool,    )    No. 09 C 2026
     )
     )    Judge Robert W. Gettleman
     )
     )    Magistrate Judge Sidney I. Schenkier
     )
     Plaintiff,    )
     )
v.    )
     )
AMERICAN INTERNATIONAL GROUP, INC., *et al.*,    )
     )
     Defendants.    )

## NOTICE OF DEPOSITION PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rules 30(a) and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff AIG will take the deposition of Defendant Travelers Insurance Group ("Travelers") on the topics and matters listed in Exhibit A hereto, by oral examination and record the same using stenographic and videographic means. The oral examination will begin on a date and at a time to be determined by the Deposition Scheduling Committee at the offices of Novack Macey, 100 North Riverside Plaza, Chicago, IL 60606 and will continue from day to day until completed. The deposition will be conducted before a Notary Public or other officer authorized to administer oaths.

Respectfully submitted,

PLAINTIFFS AMERICAN INTERNATIONAL
GROUP, INC., et al.,

By: _____
One of Their Attorneys

Stephen Novack
P. Andrew Fleming
John F. Shonkwiler
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Jennifer J. Barrett
Brendan N. Snodgrass
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000

## Exhibit A

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Travelers shall designate a witness or witnesses knowledgeable about the following topics to testify on Travelers' behalf:

1.      The identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present.

2.      The systems, processes, machines, and software that Travelers, including any division, profit center or management company within Travelers, uses or used from 1970 to the present for recording, reporting, booking, billing, tracking, allocating, accounting for, or auditing money, including but not limited to premium charged to or received from policyholders for workers compensation policies or insurance policies written as part of a multi-line account.

3.      The systems, processes, records and databases that Travelers, including any division, profit center or management company within Travelers, uses or used from 1970 to the present to record data on an individual policy basis for any workers compensation insurance policy that was part of a multi-line account.

4.      The specific kinds of information, including but not limited to all applicable data fields, available to Travelers from 1970 to the present on a policy-level basis with respect to multi-line accounts that involved workers compensation coverage.

**CERTIFICATE OF SERVICE**

The undersigned attorney, upon oath, hereby certifies that on December 3, 2009, he

caused to be served a copy of the foregoing **NOTICE OF DEPOSITION PURSUANT TO**

**FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** upon on counsel for all parties by email

pursuant to the parties' agreement.

Brendan N. Snodgrass

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ACE INA HOLDINGS, INC., *et al.*, | ) ) |
| Defendants. | ) ) |
| ———————————————————— | ) ) |
| LIBERTY MUTUAL INSURANCE CO., *et al.*, | ) ) |
| Counter-Claimants, | ) ) |
| v. | ) ) |
| AMERICAN INTERNATIONAL GROUP, INC., *et al.*, | ) ) ) |
| Counter-Defendants. | ) ) |
| ———————————————————— | ) |

No.:  07 CV 2898

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier

**CERTAIN SUBSIDIARIES OF THE TRAVELERS INSURANCE COMPANIES, INC.'S**
**OBJECTIONS TO AMERICAN INTERNATIONAL GROUP INC.'S 30(B)(6) NOTICE**

Certain subsidiaries of The Travelers Insurance Companies, Inc. ("Travelers") object to American International Group Inc.'s ("AIG") Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (the "Notice") as follows:

**GENERAL OBJECTIONS**

The following general objections ("General Objections") are incorporated into each specific response and objection.

1.      Travelers objects to the Notice to the extent it is directed at "Travelers Insurance Group."  Travelers Insurance Group is not a legal entity.  Travelers responds herein only on

behalf of certain of their subsidiaries and their employees and officers who participate or have participated in the NWCRP at certain points in time. Travelers further objects to the Notice to the extent it calls for any information from any non-Travelers legacy entity.

2.      Travelers objects to the Notice as overly broad and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks testimony on topics that are not relevant to the issue of knowing and intentional false underreporting of premium by AIG or Travelers with the intent to evade premium taxes and/or residual market expenses.

2.      Travelers objects to the Notice as overly broad and not reasonably calculated to the lead to the discovery of admissible evidence to the extent that, absent any substantiated claim that Travelers engaged in the sort of unlawful wrongdoing that is admitted and established on the part of AIG, there are no proper grounds to support the scope of the requests or the burdens associated with producing a witness to testify regarding all information requested in the Notice.

3.      Travelers objects to the Notice to the extent that it seeks testimony that is protected from discovery by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption or immunity, including Fed. R. Evid. 408.

4.      Travelers objects to the Notice to the extent that it seeks testimony regarding trade secrets or other research, development, proprietary or commercial information except in accordance with the December 13, 2007 Protective Order and the November 5, 2009 Modified Protective Order and HIPAA Qualified Protective Order entered in the above-captioned actions.

5.      Travelers to the time period "from 1970 to the present." There are no allegations that Travelers engaged in the same type of misconduct over the same time period to which AIG has admitted. According to the Corrected First Amended Complaint, AIG's allegations of

underreporting by Travelers "stretch[ed] from the mid-1980s to the mid-1990s." Travelers further objects to the Notice in that it purports to seek testimony regarding information dating to the present, which ignores that this litigation has been active for over two years and AIG first raised these same allegations against Travelers in a third-party complaint filed on March 17, 2008. Accordingly, a request for information for the time period "January 1, 1970 through the present" is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Travelers objects to the Notice to the extent that the topics for examination are duplicative, cumulative, or redundant. Travelers also objects to the extent that such topics seek testimony that is duplicative, cumulative, or redundant of discovery already obtained in this litigation.

7.      Travelers objects to the Notice to the extent that topics for examination seek testimony beyond that required by the Federal Rules of Civil Procedure and/or other applicable rules. Specifically, Travelers objects to the Notice to the extent that it imposes a duty to investigate matters outside of the scope of this litigation and as such, goes beyond Plaintiffs' obligations under Fed. R. Civ. P. 30(b)(6).

8.      Travelers objects to the Notice to the extent that topics for examination seek testimony that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

9.      Travelers objects to the Notice to the extent that topics for examination are vague, ambiguous, confusing, overly broad, unduly burdensome, and/or intended to harass and oppress Travelers.

10.     Travelers reserves all evidentiary objections under the Federal Rules of Evidence. By agreeing to produce a witness or witnesses to testify on the topics identified, Travelers does not admit the admissibility or relevance of any fact or information referenced, or admit the truth or accuracy of any characterization contained in these topics.

**SPECIFIC OBJECTIONS**

**TOPIC NO. 1:**

The identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present.

**SPECIFIC OBJECTION TO TOPIC NO. 1:**

Travelers objects to this topic on the grounds that it is overly broad, unduly burdensome and seeks testimony that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Travelers further objects to the extent that (1) the undefined phrase "management companies" is vague; (2) this topic seeks testimony regarding all "workers compensation policies" written as part of a multi-line account, as opposed to those workers compensation policies written as part of a multi-line account with at least $100,000 in annual premium; and (2) seeks the identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during a period other than between 1985 and 1996. Subject to and without waiving the foregoing and General Objections, Travelers will produce a witness or witnesses to testify on this topic for the period between 1985 and 1996 as it relates to workers compensation policies written as part of a multi-line accounts with at least $100,000 in aggregate annual premium.

## TOPIC NO. 2:

The systems, processes, machines, and software that Travelers, including any division, profit center or management company within Travelers, uses or used from 1970 to present for recording, reporting, booking, billing, tracking, allocating, accounting for, or auditing money, including but not limited to premium charged to or received from policyholders for workers compensation policies or insurance policies written as part of a multi-line account.

## SPECIFIC OBJECTION TO TOPIC NO. 2:

Travelers objects to this topic on the grounds that it is overly broad, unduly burdensome and seeks testimony that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Travelers further objects to the extent that this topic: (1) seeks testimony regarding systems, processes, machines, and software used by Travelers for recording, reporting, booking, billing, tracking, allocating, accounting, or auditing all "workers compensation policies" written as part of a multi-line account, as opposed to those workers compensation policies written as part of a multi-line account with at least $100,000 in aggregate annual premium; and (2) seeks testimony regarding systems, processes, machines, and software used by Travelers other than between 1985 and 1996.  Subject to and without waiving the foregoing and General Objections, Travelers is willing to produce a witness or witnesses to testify on this topic for the period between 1985 and 1996 as it relates to workers compensation policies written as part of a multi-line accounts with at least $100,000 in aggregate annual premium.

## TOPIC NO. 3:

The systems, processes, records, and databases that Travelers, including any division, profit center or management company within Travelers, uses or used from 1970 to present to

record data on an individual policy basis for any workers compensation insurance policy that was part of a multi-line account.

**SPECIFIC OBJECTION TO TOPIC NO. 3:**

Travelers objects to this topic on the grounds that it is overly broad, unduly burdensome and seeks testimony that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Travelers further objects to this topic to the extent that (1) the undefined phrase "record data" on an individual policy basis is vague; (2) the topic seeks testimony regarding systems, processes, records and databases in connection with "any workers compensation insurance policy that was part of a multi-line account," as opposed to those workers compensation policies written as part of a multi-line account with at least $100,000 in annual premium; and (3) it seeks testimony regarding systems, processes, records and databases used by Travelers other than between 1985 and 1996. Subject to and without waiving the foregoing and General Objections, Travelers is willing to produce a witness or witnesses to testify on this topic for the period between 1985 and 1996 as it relates to workers compensation policies written as part of a multi-line accounts with at least $100,000 in aggregate annual premium.

**TOPIC NO. 4:**

The specific kinds of information, including but not limited to all applicable data fields, available to Travelers from 1970 to the present on a policy-level basis with respect to multi-line accounts that involved workers compensation coverage.

**SPECIFIC OBJECTION TO TOPIC NO. 4:**

Travelers objects to this topic on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably

calculated to lead to the discovery of admissible evidence.  Travelers further objects to the extent that (1) the undefined phrase "all applicable data fields" is vague; (2) this topic seeks testimony regarding information available to Travelers "on a policy-level basis with respect to multi-line accounts that involved workers compensation coverage," as opposed to those workers compensation policies written as part of a multi-line account with at least $100,000 in aggregate annual premium; and (3) seeks testimony regarding information available to Travelers other than between 1985 and 1996.

Dated:  December 21, 2009

Respectfully submitted,

One of the Attorneys for Travelers

Timothy J. Rooney (trooney@winston.com) ARDC
06183756
Norman K. Beck (nbeck@winston.com) ARDC
6228825
Courtney M. Oliva (coliva@winston.com)  ARDC
6287763
Samantha L. Maxfield (smaxfield@winston.com)
ARDC 6293319
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 21, 2009, a copy of the foregoing **CERTAIN SUBSIDIARIES OF TRAVELERS COMPANIES, INC.'S OBJECTIONS TO AMERICAN INTERNATIONAL GROUP INC.'S 30(B)(6) NOTICE** was served electronically on counsel for all parties pursuant to the written consent of the parties under Fed. R. Civ. P. 5(b)(2)(E).

_____
Courtney M. Oliva

# EXHIBIT C

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7155**

WRITER'S INTERNET ADDRESS
**jenniferbarrett@quinnemanuel.com**

March 22, 2010

VIA E-MAIL

Timothy J. Rooney, Esq.
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

Re:     *American International Group, Inc. v. ACE/INA Holdings, Inc.*, 07 CV 2898 (N.D. Ill.)

Dear Tim:

We write to address the scope and scheduling of Travelers's 30(b)(6) deposition that was noticed by AIG on December 3, 2009. *See* Deposition Notice attached hereto as Exhibit A. In its objections to AIG's Deposition Notice, served on December 22, 2009, Travelers indicated that, subject to its objections, it would present a witness to testify regarding the topics listed in Schedule A of AIG's deposition notice. In light of the objections asserted by Travelers, as well as ongoing discussions about the business structures of and data availability for the various parties alleged to have underreported workers compensation premium, we believe that it makes sense to bifurcate this 30(b)(6) deposition in the following manner.

Topic 1 seeks testimony concerning the identification and organizational structure of the divisions or other business units of Travelers that wrote workers compensation policies and the general nature of the workers' compensation policies written therein. Topics 2-4, on the other hand, focus primarily on Travelers' workers compensation booking and reporting systems and data availability. We propose that it would be useful to bifurcate Travelers' 30(b)(6) deposition concerning these topics, proceeding first with testimony about Travelers' business and policy structure as identified in Topic 1. After this deposition is completed, we expect that the parties will be able to engage in a more efficient and productive meet and confer regarding the scope of the remaining systems-related topics.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
GERMANY | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

In order to facilitate the scheduling of Travelers' deposition regarding Topic 1, we address Travelers' objections to that topic as follows. Specifically, Topic 1 seeks testimony concerning the "identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present." Travelers has proposed two limitations on this Topic. First, that testimony should be limited to the 1985-1996 time period. Second, that testimony should be limited to multi-line accounts with at least $100,000 in annual premium. Without waiving its right to seek discovery beyond these limitations, AIG agrees at this time to proceed with this deposition subject to Travelers' proposed limitations. AIG also clarifies that it intends Travelers to interpret the term "multi-line account" according to the same definition propounded upon AIG by Liberty Mutual in James Morsch's letter dated March 2, 2010. Namely, AIG seeks testimony regarding the identification, organization, and structure of all divisions, profit centers, or management companies that wrote policies that were part of an account that included a workers compensation policy at any time within the same policy year.

Please confirm whether Travelers agrees with AIG's proposal to proceed with this 30(b)(6) deposition. AIG requests that Travelers promptly provide available dates in April for such testimony. To the extent that Travelers believes that a meet and confer is necessary prior to this deposition, AIG is generally available any day this week.

Sincerely yours,

Jennifer J. Barrett

cc: All Counsel of Record (by email only)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AMERICAN INTERNATIONAL GROUP, INC., *et al.*,

            Plaintiffs,

v.

ACE INA HOLDINGS, INC., *et al.*,

            Defendants.

No.: 07 CV 2898

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier

---

LIBERTY MUTUAL INSURANCE CO., *et al.*,

            Counter-Claimants,

v.

AMERICAN INTERNATIONAL GROUP, INC., *et al.*,

            Counter-Defendants.

---

SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool,

            Plaintiff,

v.

AMERICAN INTERNATIONAL GROUP, INC., *et al.*,

            Defendants.

No. 09 C 2026

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier

## NOTICE OF DEPOSITION PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rules 30(a) and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff AIG will take the deposition of Defendant Travelers Insurance Group ("Travelers") on the topics and matters listed in Exhibit A hereto, by oral examination and record the same using stenographic and videographic means. The oral examination will begin on a date and at a time to be determined by the Deposition Scheduling Committee at the offices of Novack Macey, 100 North Riverside Plaza, Chicago, IL 60606 and will continue from day to day until completed. The deposition will be conducted before a Notary Public or other officer authorized to administer oaths.

Respectfully submitted,

PLAINTIFFS AMERICAN INTERNATIONAL GROUP, INC., et al.,

By: _____
One of Their Attorneys

Stephen Novack
P. Andrew Fleming
John F. Shonkwiler
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Jennifer J. Barrett
Brendan N. Snodgrass
QUINN EMANUEL URQUHART OLIVER
  & HEDGES, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000

2

### Exhibit A

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Travelers shall designate a witness or witnesses knowledgeable about the following topics to testify on Travelers' behalf:

1. The identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present.

2. The systems, processes, machines, and software that Travelers, including any division, profit center or management company within Travelers, uses or used from 1970 to the present for recording, reporting, booking, billing, tracking, allocating, accounting for, or auditing money, including but not limited to premium charged to or received from policyholders for workers compensation policies or insurance policies written as part of a multi-line account.

3. The systems, processes, records and databases that Travelers, including any division, profit center or management company within Travelers, uses or used from 1970 to the present to record data on an individual policy basis for any workers compensation insurance policy that was part of a multi-line account.

4. The specific kinds of information, including but not limited to all applicable data fields, available to Travelers from 1970 to the present on a policy-level basis with respect to multi-line accounts that involved workers compensation coverage.

## CERTIFICATE OF SERVICE

The undersigned attorney, upon oath, hereby certifies that on December 3, 2009, he caused to be served a copy of the foregoing **NOTICE OF DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** upon on counsel for all parties by email pursuant to the parties' agreement.

Brendan N. Snodgrass

# EXHIBIT D

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | (312) 558-5600 | 25 AVENUE MARCEAU<br>75116 PARIS, FRANCE |
| 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | FACSIMILE (312) 558-5700 | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |
| | www.winston.com | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |

TIMOTHY J. ROONEY
(312) 558-5972
trooney@winston.com

March 30, 2010

**BY E-MAIL**

Jennifer J. Barrett
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, New York 10010

> **Re:** *AIG et al. v. ACE INA, et al.., Case No. 07-C-2898 (N.D. Ill.)*

Dear Jennifer:

We write in response to your letter of March 22, 2010, in which you suggested bifurcating Travelers' Rule 30(b)(6) deposition to only address Topic 1. In your letter, you agreed to proceed with the deposition on Topic 1 subject to the objections Travelers interposed. At this time, we would like to clarify our objections to state that that Travelers is willing to produce a witness to testify about loss-sensitive multi-line accounts. Limiting Topic 1 to Travelers' loss-sensitive business is necessary both to prevent the topic from becoming overly broad and unduly burdensome, and because AIG's allegations make clear that only Travelers' loss-sensitive lines of coverage are at issue. Please let me know if this objection will require a meet-and-confer. Otherwise, as I noted in my March 26, 2010 email to Lee Turner-Dodge, we will respond some time in the next week to propose workable dates, which of course will be subject to approval by the Deposition Scheduling Committee.

Best regards,

Timothy J. Rooney

TJR:cmo

# EXHIBIT E

**From:** Lee Turner-Dodge
**Sent:** Thursday, April 01, 2010 5:49 PM
**To:** 'trooney@winston.com'
**Cc:** 'Oliva, Courtney M.'; Kevin Reed; Jennifer Barrett
**Subject:** RE: AIG v ACE - scheduling/scope of 30(b)(6) depositions

Tim,

Having reviewed your March 22 letter, we do believe that a meet and confer is necessary to discuss the scope of Travelers 30(b)(6) witness. Is there a time on Monday that you are available? Since the deposition will go forward in some form regardless of the outcome of the meet and confer, we'll expect to receive potential dates from you by Tuesday, April 6 for the deposition on Topic 1.

Thank you,
Lee

**Lee Turner-Dodge**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7356 Direct
212.849.7000 Main Office Number
212.849.7100 FAX
leeturnerdodge@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Oliva, Courtney M. [mailto:COliva@winston.com]
**Sent:** Tuesday, March 30, 2010 6:49 PM
**To:** Lee Turner-Dodge; csnaveja@arnstein.com; cewilliams@arnstein.com; hrmorris@arnstein.com; cmvangelder@duanemorris.com; kalane@duanemorris.com; rpdarke@duanemorris.com; mborders@dykema.com; harger@dykema.com; RZipprich@dykema.com; sborgsdorf@dykema.com; rtumialan@dykema.com; dalfini@hinshawlaw.com; dboho@hinshawlaw.com; cthompson@jw.com; dmoran@jw.com; stacyallen@jw.com; mmontano@jw.com; lbales@jw.com; litchfield@litchfieldcavo.com; odland@litchfieldcavo.com; emilman@ngelaw.com; mschacht@ngelaw.com; msher@ngelaw.com; tpapadopoulos@ngelaw.com; dformeller@tsmp.com; khaennicke@tsmp.com; tschenk@tsmp.com; Beck, Norman K.; Rooney, Tim; tgriffin@wwmlawyers.com; cwadley@wwmlawyers.com; egibbons@wwmlawyers.com; jdubner@ButlerRubin.com; jmorsch@ButlerRubin.com; jrubin@butlerrubin.com; utaylor@butlerrubin.com; dwinters@butlerrubin.com; gcolavito@butlerrubin.com; akubacki@butlerrubin.com; jhansen@butlerrubin.com; MWalsh@nutter.com; ABurroughs@nutter.com; EMagnuson@nutter.com; HRepicky@nutter.com; JASmith@nutter.com; TJohnston@nutter.com; AOkeefe@nutter.com; geisner@nutter.com; skohrs@nutter.com; gmiller@grippoelden.com; MSitzer@grippoelden.com; dhinkle@grippoelden.com; cseals@grippoelden.com; tali@grippoelden.com; meisenstein@schiffhardin.com; whannay@schiffhardin.com; lnatter@schiffhardin.com; cpeters@schiffhardin.com; thenehan@schiffhardin.com; rsnider@lockelord.com; MSchuchardt@lockelord.com; mschwartz@butlerrubin.com; snovack@novackmacey.com; andrewf@novackmacey.com; acampbell@novackmacey.com; jshonkwiler@novackmacey.com;

rparker@novackmacey.com; kzook@novackmacey.com; ntendy@novackmacey.com
**Cc:** Michael Carlinsky; Kevin Reed; Jennifer Barrett; Jolie Apicella; Jessica Rose; Christopher Stanton; Safia Hussain;
Christian Sjulsen; John McHugh; Kayt Tiskus; Sebastian Dinges; Todd Riegler
**Subject:** AIG v ACE - scheduling/scope of 30(b)(6) depositions

Counsel,

Please see the attached correspondence.

**Courtney M. Oliva**
**Associate**

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
D: +1 (312) 558-8009
F: +1 (312) 558-5700
Bio | VCard | Email | www.winston.com

**From:** Lee Turner-Dodge [mailto:leeturnerdodge@quinnemanuel.com]
**Sent:** Monday, March 22, 2010 5:37 PM
**To:** csnaveja@arnstein.com; cewilliams@arnstein.com; hrmorris@arnstein.com; cmvangelder@duanemorris.com;
kalane@duanemorris.com; rpdarke@duanemorris.com; mborders@dykema.com; harger@dykema.com;
RZipprich@dykema.com; sborgsdorf@dykema.com; rtumialan@dykema.com; dalfini@hinshawlaw.com;
dboho@hinshawlaw.com; cthompson@jw.com; dmoran@jw.com; stacyallen@jw.com; mmontano@jw.com;
lbales@jw.com; litchfield@litchfieldcavo.com; odland@litchfieldcavo.com; emilman@ngelaw.com;
mschacht@ngelaw.com; msher@ngelaw.com; tpapadopoulos@ngelaw.com; dformeller@tsmp.com;
khaennicke@tsmp.com; tschenk@tsmp.com; Oliva, Courtney M.; Beck, Norman K.; Rooney, Tim;
tgriffin@wwmlawyers.com; cwadley@wwmlawyers.com; egibbons@wwmlawyers.com; jdubner@ButlerRubin.com;
jmorsch@ButlerRubin.com; jrubin@butlerrubin.com; utaylor@butlerrubin.com; dwinters@butlerrubin.com;
gcolavito@butlerrubin.com; akubacki@butlerrubin.com; jhansen@butlerrubin.com; MWalsh@nutter.com;
ABurroughs@nutter.com; EMagnuson@nutter.com; HRepicky@nutter.com; JASmith@nutter.com;
TJohnston@nutter.com; AOkeefe@nutter.com; geisner@nutter.com; skohrs@nutter.com;
gmiller@grippoelden.com; MSitzer@grippoelden.com; dhinkle@grippoelden.com; cseals@grippoelden.com;
tali@grippoelden.com; meisenstein@schiffhardin.com; whannay@schiffhardin.com; lnatter@schiffhardin.com;
cpeters@schiffhardin.com; thenehan@schiffhardin.com; rsnider@lockelord.com; MSchuchardt@lockelord.com;
mschwartz@butlerrubin.com; snovack@novackmacey.com; andrewf@novackmacey.com;
acampbell@novackmacey.com; jshonkwiler@novackmacey.com; rparker@novackmacey.com;
kzook@novackmacey.com; ntendy@novackmacey.com
**Cc:** Michael Carlinsky; Kevin Reed; Jennifer Barrett; Jolie Apicella; Jessica Rose; Christopher Stanton; Safia

Hussain; Christian Sjulsen; John McHugh; Kayt Tiskus; Sebastian Dinges; Todd Riegler
**Subject:** AIG v ACE - scheduling/scope of 30(b)(6) depositions

Counsel,

Please see attached correspondence.

**Lee Turner-Dodge**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7356 Direct
212.849.7000 Main Office Number
212.849.7100 FAX
leeturnerdodge@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# EXHIBIT F

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | (312) 558-5600 | 25 AVENUE MARCEAU<br>75116 PARIS, FRANCE |
| 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | FACSIMILE (312) 558-5700 | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |
| | www.winston.com | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |

TIMOTHY J. ROONEY
(312) 558-5972
trooney@winston.com

April 2, 2010

**BY E-MAIL**

Jennifer J. Barrett
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, New York 10010

> **Re:** *AIG et al. v. ACE INA, et al..,* Case No. 07-C-2898 (N.D. Ill.)

Dear Jen:

  We write in response to Lee Turner-Dodge's April 1, 2010 email requesting that the parties meet and confer to discuss Travelers' objections to AIG's Rule 30(b)(6) deposition Topic No. 1. When I sent my March 26 clarifying Travelers' objections to Topic 1, I anticipated that the clarification would be accepted, and we could move forward with scheduling the deposition without the need for engaging in the meet and confer process. It now appears that this is not the case, per Lee's email yesterday, and that the matter apparently will need to go to Judge Schenkier for a ruling as to scope. Accordingly, we need to adhere to Judge Schenkier's protocol for resolving discovery disputes. *See* December 11, 2009 Minute Entry [D.E. 539]. Thus, before a meet-and-confer can be scheduled, we request that you follow the protocol by sending a letter setting forth your objections to Travelers' responses and objections to the 30(b)(6) notice regarding the proper scope of Topic 1, so that we can be fully advised of your position and the rationale for it, and so that we may also have a full opportunity to consider and respond to it in a response letter. We will, of course, respond within the time frame provided under the protocol.

  Finally, regarding Lee's statement that the "deposition will go forward in some form regardless of the outcome of the meet-and-confer," scheduling it is neither practical nor possible at this time, without clarity as to the scope of Topic 1. Obviously, the scope of Topic 1 will no doubt affect both the identification of the proper witness(es) and the preparation needed by the selected witness(es) to be a sufficient 30(b)(6) deponent(s). If it is AIG's desire to expand the scope of Topic 1 to include, for example, every business unit or entity at Travelers that ever wrote any form of workers compensation coverage, regardless of whether it is loss-sensitive or guaranteed cost, such a scope – if it is for some reason approved by Judge Schenkier – will require substantially more time for Travelers to gather information and prepare the deponent(s)

WINSTON & STRAWN LLP

Jennifer J. Barrett
April 2, 2010
Page 2

than if Topic 1 is reasonably narrowed to apply only to loss-sensitive business. Given the undertaking that Travelers would have to make regarding an substantially expanded scope, a date in April is not possible. We would only be able to discuss a date upon realistically evaluating the amount of information Travelers is required to gather in order to educate a witness (or witnesses) following the resolution of any dispute between us as to scope.

*     *     *     *

In the event that you reconsider your position as to scope for Topic 1 and come to agreement with our clarification as set forth in my March 26 letter, please let us know and we will work with you next week to set a date with you for that deposition. If not, as appears to be the case from Lee's email yesterday, we will respond to your written statement of position according to Judge Schenkier's written order and protocol.

Best regards,

Timothy J. Rooney

TJR:cmo

# EXHIBIT G

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S INTERNET ADDRESS
kevinreed@quinnemanuel.com

April 6, 2010

<u>VIA E-MAIL</u>

Timothy J. Rooney, Esq.
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

Re:    *American International Group, Inc. v. ACE/INA Holdings, Inc.*, 07 CV 2898 (N.D. Ill.)

Dear Tim:

We write in response to your letter dated April 2, 2010 concerning Travelers' objections to Topic 1 of AIG's Rule 30(b)(6) deposition notice ("April 2 letter").

As an initial matter, we disagree with your premise that the parties have not previously been engaged in the process required by the discovery dispute resolution protocol. The parties have exchanged several substantive letters on this issue, and Travelers' suggestion that we write still further letters before engaging in a meet and confer seems to serve no purpose other than delay. Nonetheless, it would simply compound that delay to argue over process, so for the avoidance of any doubt, this letter is sent pursuant to Judge Schenkier's discovery dispute resolution protocol. Since our prior communications on this topic did not result in the parties reaching agreement, all offers of compromise in those communications regarding the scope of Topic 1 are hereby withdrawn and our position is as set forth herein. Pursuant to the protocol, Travelers has 7-days to respond to this letter. However, AIG will seek to present any necessary motion to compel at

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

the hearing set for April 20, so we would be grateful for a response at Travelers' earliest convenience.

Topic 1 seeks testimony concerning "[t]he identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present."[1]   In its objections to our deposition notice, Travelers proposed two limitations on this topic:  first, that testimony should be limited to the 1985 to 1996 time period, and, second, that testimony should be limited to multi-line accounts with at least $100,000 in annual premium.  Additionally, in your March 30 letter, you add as a further limitation that Travelers will only provide testimony concerning Travelers' business units that wrote loss-sensitive accounts.  We accept the first of these limitations, but we reject the other two.

Topic 1 is a threshhold deposition topic, the purpose of which is to allow AIG to gain a "big picture" understanding of the workers compensation business written by Travelers so that we can work with you more effectively to tailor future discovery in a way that seeks information related to the claims alleged by AIG.  Particularly as limited to the 1985-1996 timeframe, we are hard-pressed to imagine how Travelers could claim that testimony about the identification, organization and structure of Travelers' workers compensation business is irrelevant to AIG's underreporting claims against Travelers or unduly burdensome.  The Court has approved of this sort of threshold discovery in the past in order allow the parties to better understand each other's business structure to promote more efficient discovery.  (See, e.g., Transcript of October 2, 2008 Hearing before the Honorable Sidney I. Schenkier at 73:11-74:4 (ordering AIG to produce a 30(b)(6) witness to testify to the kinds and amount of workers compensation business written by divisions outside 50 and 55).)  AIG believes the Court would similarly support the discovery sought by AIG through Topic 1.

With respect to your proposal to limit testimony on Topic 1 to business units that wrote accounts with at least $100,000 in annual premium, Travelers has not yet offered a rationale to support that limitation.  We suspect it was intended simply to mirror a limitation that was once in place for 30(b)(6) testimony AIG was to provide to Plaintiffs in the '07 Action regarding the structure of its workers compensation business.  If so, Travelers should be aware that that limitation is no longer in place, as AIG, Liberty and the Class Plaintiffs have negotiated an alternative framework for this type of threshold discovery.  If Travelers nonetheless believes that the $100,000 limitation should remain for discovery against Travelers, please explain why that is so.  In AIG's view, there is nothing about the allegations of underreporting made against Travelers in the Corrected First Amended Complaint that supports such a limitation.  In particular, there is nothing about Travelers' misallocation of workers compensation premium to "open policies" or its failure to report residual market charges assessed to insured as workers compensation premium (see FAC ¶¶ 123-136) that inherently restricts such behavior to accounts with at least $100,000 in annual premium.

---

[1]   We adhere to the definition of "multi-line account" set forth in Jennifer Barrett's letter to you of March 22, 2010.

As to Travelers' position that it will only provide Topic 1 testimony concerning Travelers business units that wrote loss-sensitive accounts, you justify this position in your March 30 letter by asserting that "AIG's allegations make clear that only Travelers' loss-sensitive lines of coverage are at issue." This is incorrect. Indeed, paragraph 131 of the FAC explicitly alleges that "Travelers' underreporting was not limited to retrospectively rated [*i.e.*, loss sensitive] policies. In fact, it's procedures provided that, "If, however, the Workers Compensation is on a Guaranteed Cost or Option V, the [residual market charges (which themselves should have been reported as workers compensation premium)] should be included in other casualty lines." Paragraph 132 contains a similar allegation. Given those allegations, AIG does not believe that any relevance or burden objection to providing testimony concerning units that wrote guaranteed cost multi-line business would be well taken. Moreover, even putting those specific allegations aside, AIG believes that the mere fact that Travelers is alleged to have underreported at all makes a 30(b)(6) deposition about concerning the basic structure of Travelers' workers compensation business appropriate and well-within the permissible bounds of discovery. If you continue to press any relevance of burden objection to Topic 1, please explain the basis for it in detail.

As indicated above, we would be grateful for your response at Travelers' earliest convenience and, in any event, no later than 7 days from today. Moreover, we expect that, if it has not done so already, Travelers will promptly begin making preparations for a witness to testify to at least that portion of Topic 1 that is undisputed, and we request that Travelers promptly identify (at least internally) a witness or witnesses to testify to the full scope of Topic 1, as AIG herein construes it, so that this deposition can be scheduled soon after the resolution of this dispute, regardless of what that resolution is. You will recall that the Court has in the past expressed impatience with parties sitting idle on discovery requests while disputes regarding those requests are adjudicated. We would object that that happening here.


Sincerely yours,

*Kevin S. Reed* /JA

Kevin S. Reed

cc:     All counsel of record (by email only)

# EXHIBIT H

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

TIMOTHY J. ROONEY
(312) 558-5972
trooney@winston.com

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

April 13, 2010

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

**BY E-MAIL**

Kevin S. Reed
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

> Re: *AIG, et al. v. ACE INA, et al.,* **Case No. 07-C-2898 (N.D. Ill.)**

Dear Kevin:

We write in response to your April 6, 2010 letter setting forth your objections to Travelers' responses to Topic 1 of AIG's 30(b)(6) deposition notice (the "systems deposition notice"). As a preliminary matter, and before we address AIG's objections, this letter confirms that the parties agree that the scope of Topic 1 is limited to the 1985 to 1996 time frame.

## $100,000 Premium Limitation

As a preliminary matter, we disagree with both your contention that Travelers was simply repeating a limitation initially imposed by AIG in discovery conducted by the Class, and that Travelers has yet to offer a rationale for this limitation. As AIG itself acknowledged in its June 25, 2008 letter to Travelers and other parties to the aforementioned action, the $100,000 limitation was initially invoked as an attempt to accommodate AIG's interests in seeking discovery and Travelers' right to object to discovery that would be unduly burdensome. AIG ostensibly agreed to this limitation because it felt it struck an appropriate balance, and Travelers likewise accepted the $100,000 limitation, which it has consistently applied in responding to discovery.

Furthermore, Travelers does not understand how AIG's decision to abandon the $100,000 limitation in discovery sought by the Class and Liberty has any bearing on the burden that Travelers faces in educating a witness (or witnesses) about Topic 1. AIG's decision to undertake this burden only suggests that this information is not unduly burdensome for AIG to acquire and use to educate a 30(b)(6) witness. This is, however, irrelevant to the objections Travelers has interposed as to Topic 1. Finally, Travelers also disagrees with any suggestion by AIG that, because it has abandoned the $100,000 limitation, Travelers should, as well. This retributive, tit-for-tat discovery is inappropriate and improper under the Federal Rules, and Travelers reiterates its position in its February 26, 2010 letter that the case law supports this conclusion. *See, e.g., Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co.,* 90 Civ. 7811,

WINSTON & STRAWN LLP

Kevin S. Reed
April 13, 2010
Page 2

1993 U.S. Dist. LEXIS 1163, at *8 (S.D.N.Y. Feb. 4, 1993) (rejecting the notion that parties should reflexively adopt a "tit-for-tat" approach to discovery).

Travelers believes the $100,000 premium limitation provides a more focused approach to discovery, and in particular allows Travelers to identify the policies that would be of interest to AIG, *i.e.*, the larger customers that would have wanted to purchase multiple lines of insurance coverage, including workers compensation coverage, from Travelers. Given that AIG's discovery to date suggests that it is primarily interested in insureds with multiple lines of coverage that include workers compensation coverage, the $100,000 premium limitation is a good way to ensure that smaller insureds are excluded. Removing the $100,000 premium limitation would open up *all* of Travelers' workers compensation business and would result in an enormous burden in its attempt to locate responsive information, as it would essentially be preparing a witness to testify on Topic 1 regarding every dollar of workers compensation business that Travelers ever wrote during the 1985 to 1996 time period.

**Loss Sensitive Accounts**

Travelers also disputes the notion that Paragraphs 131 and 132 of the First Amended Complaint support the notion that workers compensation premium underreporting occurred with respect to guaranteed cost policies. Paragraphs 131 and 132 allege that Travelers failed to report residual market loads ("RMLs") as premium. However, AIG has offered no authority from NCCI, the National Association of Insurance Commissioners, or any other state or federal regulatory insurance agency to support its belief that RMLs are properly considered "premium" for purposes of reporting workers compensation premium to NCCI. Indeed, when NCCI initially brought its lawsuit, it did not specifically allege that AIG failed to report RMLs as premium and did not specifically seek to recoup RMLs as premium. We therefore ask that you provide the legal authority which you believe supports the proposition that RMLs were required to be reported to NCCI as premium during the 1985 to 1996 time period. Unless and until AIG is able to do so, there is no basis to expand Topic 1 to include guaranteed cost policies, which would only force Travelers and the other defendants to engage in the highly burdensome and expensive fishing expedition you are now requesting.

Furthermore, limiting discovery to Travelers' loss sensitive workers compensation business will strike an appropriate balance between AIG's search for relevant information and Travelers' right to be free from undue burdens in connection with preparing a 30(b)(6) witness(es). Put another way, the vast majority of Travelers' workers compensation business was written by business units that wrote loss-sensitive policies, which is where AIG has focused most of its allegations. Conversely, business units that wrote only workers compensation guaranteed cost policies represent a small fraction of Travelers business. The benefit to AIG of learning about these lines of business is far outweighed by Travelers' burden of having to locate, identify, and gather information that would be needed to prepare a 30(b)(6) witness.

*       *       *       *

**WINSTON & STRAWN** LLP

Kevin S. Reed
April 13, 2010
Page 3

   Travelers is aware of the Court's desire that the parties not sit on their hands during the course of an ongoing discovery dispute and has begun efforts to identify a 30(b)(6) witness (or witnesses) to testify on the scope of Topic 1 that Travelers believes is appropriate. As you know, we specifically offered to promptly set a date for a properly tailored 30(b)(6) Topic 1 witness. However, for the reasons we expressed in our March 30 letter, the ultimate scope of Topic 1 will affect the identification of such witness(es), as well as the length of time needed to identify, locate, and gather information necessary to prepare such witness(es). To expedite resolution of this dispute, Travelers is, of course, amenable to meeting and conferring on these issues. We look forward to hearing from you regarding dates and times of your availability.

     Best regards,

     Timothy J. Rooney

TJR:cmo
cc: counsel of record

# EXHIBIT I

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) | Case No. 07 CV 2898 |
| | ) | |
| Plaintiffs, | ) | Judge Robert W. Gettleman |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| _____ | ) | |
| | ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) | Case No. 09 CV 2026<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT STATEMENT REPORTING ON RESULTS OF APRIL 14 AND APRIL 19, 2010 MEET AND CONFERS REGARDING AIG'S 30(B)(6) DEPOSITION NOTICE AND THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO TRAVELERS

Pursuant to the Court's December 11, 2009 revised procedure applicable to discovery

motions in the above-captioned cases (the "Discovery Motion Protocol Order"), Defendant

Travelers Insurance Group ("Travelers") and Plaintiff American International Group, Inc. ("AIG") file this Joint Statement reporting on their meet-and-confer in an attempt to resolve their disputes concerning AIG's 30(b)(6) deposition notice to Travelers and AIG's Third Set of Requests for Production to Travelers.

## I.     AIG'S 30(B)(6) NOTICE

In accordance with the Court's October 6, 2009 Order scheduling merits discovery, AIG served its 30(b)(6) notice upon Travelers on December 3, 2009.  Travelers served its Objections to AIG's 30(b)(6) notice on December 21, 2009.

On March 22, 2010, counsel for AIG sent counsel for Travelers a letter proposing to bifurcate the 30(b)(6) deposition noticed on December 3, 2009.  AIG proposed that the parties proceed first with testimony concerning Topic 1 listed in Schedule A of AIG's deposition notice. Topic 1 seeks testimony concerning "[t]he identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present." Topics 2-4 listed in Schedule A of AIG's deposition notice, on the other hand, focus primarily on Travelers' workers compensation booking and reporting systems and data availability.  AIG suggested that the parties would be able to engage in a more efficient meet and confer regarding the scope of the remaining systems-related topics once AIG gained an understanding of Travelers' business structure through deposition testimony on Topic 1.

On March 30, 2010, counsel for Travelers responded to AIG's March 22, 2010 letter proposing to bifurcate the 30(b)(6) deposition.  Travelers agreed to produce a witness to testify on Topic 1, but only as to "loss sensitive multi-line accounts."  Travelers requested AIG to confirm whether it believed this objection would require a meet and confer.  On April 1, 2010, counsel for AIG requested by email a meeting to discuss the scope of the 30(b)(6) deposition on

Topic 1. In response to this email, counsel for Travelers sent counsel for AIG a letter on April 2, 2010 asserting that prior to any meet and confer, AIG must send Travelers a letter pursuant to the Court's discovery protocol setting forth its position on Travelers' objections to the proper scope of Topic 1. Accordingly, counsel for AIG and Travelers exchanged letters pursuant to the discovery protocol on April 6, 2010 and April 13, 2010, respectively.

## II.     AIG'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

In accordance with the Court's October 6, 2009 Order scheduling merits discovery, AIG served its Third Set of Requests for the Production of Documents upon Travelers on March 2, 2010. Travelers served its Responses and Objections to AIG's requests on April 1, 2010. Counsel for AIG and Travelers exchanged letters pursuant to the discovery protocol on April 7, 2010 and April 14, 2010, respectively.

## III.    REPORT ON MEET AND CONFER

Two meetings of counsel to attempt to resolve remaining disputes, as required by Paragraph 3 of the Discovery Motion Protocol Order, were conducted on April 14 and April 19, 2010. Counsel who attended the April 14 meeting were Kevin Reed for AIG and Tim Rooney and Norm Beck for Travelers. Counsel who attended the April 19 meeting were Kevin Reed for AIG and Norm Beck for Travelers

The parties continue to have the same disagreement regarding the proper scope of both Topic 1 listed on Schedule A of AIG's deposition notice and Request Nos. 1-5 of AIG's Third Requests for Production. The parties therefore ask the Court for its assistance in resolving this disagreement.

### A.     Scope of Topic 1 and Requests for Production Nos. 1-5

*Topic 1: The identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present.*

*Request No. 1: Documents sufficient to show the organization and structure of all departments, divisions, profit centers, subsidiaries, or management companies of Travelers that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.*

*Request No. 2: Documents sufficient to show the years of operation of, and the identities and responsibilities of all executive-level employees in, all of the Travelers departments, divisions, profit centers, subsidiaries, or management companies that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.*

*Request No. 3: Documents sufficient to describe all databases and other repositories of electronic data that contain compilations of policy-level data, including claims arising under particular policies, used in Travelers' workers compensation business during the period from 1970 to the present.*

*Request No. 4: Documents sufficient to describe the relationships between Travelers' information technology systems and electronic data repositories used in Travelers' workers compensation business.*

*Request No. 5: Documents sufficient to provide a graphic representation, visual depiction, network topology, or system schematic revealing the relationships and data flows between Travelers' information technology systems and electronic data repositories used in Travelers' workers compensation business.*

AGREEMENTS:

While reserving its rights to seek further discovery beyond this limitation, AIG has agreed to limit testimony on Topic 1 to the 1985-1996 time period; similarly, AIG has agreed to receive documents responsive to Request Nos. 1-5 for the same time period.

Travelers has asked AIG to clarify the meaning of the terms "information technology systems" and "electronic data repositories," as used in Request Nos. 1-5. The parties agree that the former shall mean electronic or computer-based systems that perform functions such as calculating, analyzing, moving or reporting data, and the latter shall mean electronic or computer-based databases or collections of information. Further, both terms shall be defined so as to be limited to systems and repositories used in underwriting, pricing and billing workers compensation policies and booking and reporting premium and losses for such policies.

Travelers has agreed to be substantially complete with its production of documents responsive to Request Nos. 1-2 by May 7, 2010 and will begin production of documents responsive to Request Nos. 3-5 on May 14, 2010.

DISAGREEMENTS:

Travelers seeks to limit Topic 1 and Request Nos. 1-5 to testimony and documents concerning the divisions, profit centers, and management companies of Travelers that (1) wrote multi-line accounts with at least $100,000 in premium; and (2) that wrote loss-sensitive accounts. AIG disagrees with these proposed limitations.

**AIG's Position:**

Topic 1 and Request Nos. 1-5 constitute threshold discovery designed to help AIG learn about the organization of Travelers' workers compensation business.  AIG believes that by gaining a "big picture" understanding of how Travelers structured its business from 1985-1996, it will be able to more effectively and directly tailor its future discovery requests to seek relevant information.   It is for this reason that AIG proposed to bifurcate Topic 1 from the remaining systems-related topics listed on Schedule A of AIG's deposition notice and proceed first with testimony on this topic.  Indeed, the Court has previously supported this type of threshold discovery in order to help the parties better understand each other's business structure and assist the parties in targeting relevant information through future discovery requests.

Travelers suggests that Topic 1 and Request Nos. 1-5 should be limited to Travelers business units that wrote policies with an aggregate annual premium of $100,000 or more. Travelers suggests that this limitation is appropriate because it will focus discovery on the large policies that are supposedly of most interest to AIG.  However, AIG is not seeking information about policies through this discovery; it seeks to learn about the structure of Travelers' business – *i.e.*, the various types of workers compensation business that Travelers wrote and how and

where Travelers wrote it. Once AIG has that information (and the policy level information Travelers will provide through the sampling process), AIG expects to focus additional discovery on particular business units or particular types of policies. But at the outset, AIG should be permitted to obtain a basic understanding about Travelers' workers compensation business across the company. Contrary to Travelers' suggestion, this does not require Travelers to prepare a witness to testify about, or to produce documents concerning, every dollar of workers compensation business Travelers wrote during the period at issue. Rather, if the Court sustains AIG's position, Travelers will only have to prepare a witness to testify about, and produce documents concerning, the organization and structure of the business units that wrote workers compensation coverage as a regular part of their business during the relevant time period, and the nature of the business those units wrote. This is a limited amount of information and, given its relevance to AIG's claims and its threshold nature, AIG does not believe any burden objection is well taken. Indeed, pursuant to the Court's order of October 2, 2008, AIG gave the very same deposition about the nature and structure of AIG's workers compensation business and produced a witness prepared to testify about the workers compensation business written by more than 50 AIG divisions. *See* Transcript of October 2, 2008 Hearing before the Honorable Sidney I. Schenkier at 73:11-74:4 (ordering AIG to produce a 30(b)(6) witness to testify to the kinds and amount of workers compensation business written by divisions outside Divisions 50 and 55).[1]

Travelers also asserts that Topic 1 and Request Nos. 1-5 should be limited only to business units that wrote loss-sensitive policies. Travelers bases this position on an assertion that AIG's underreporting claims against Travelers relate only to loss-sensitive policies. This is

---

[1] Travelers refers to a June 25, 2008 letter from Andrew Fleming and argues that AIG first suggested the $100,000 limitation. However, as that letter makes clear, AIG suggested that limitation as a means to narrow the production of business practices documents. It never had any applicability to the sort of threshold discovery sought here.

simply incorrect. AIG specifically alleges in its First Amended Complaint ("FAC") that "Travelers' underreporting was not limited to retrospectively rated [i.e. loss sensitive] policies" and that Travelers' underreporting practices extended to guaranteed cost policies as well. FAC ¶¶ 131 and 132. Travelers challenges the sufficiency of those allegations by arguing that the practices they describe – i.e., the failure to report residual market charges ("RMLs") passed on to insureds as workers compensation premium – do not constitute underreporting. AIG disagrees and has alleged to the contrary in the First Amended Complaint. However, more importantly for present purposes, Travelers' challenge to the sufficiency of AIG's allegations is not a proper basis upon which to resist discovery. Travelers has already made and lost a motion to dismiss AIG's underreporting claims against it. AIG's underreporting claims survived, and AIG has no burden at this point to provide further legal authority in support of its claims in order to obtain discovery.[2] Finally, insofar as Travelers states that business units that wrote only guaranteed cost policies represent a small fraction of Travelers business, the burden associated with providing information about those business units is incremental at most. And it bears noting again in this context that AIG gave a 30(b)(6) deposition about the nature and structure of AIG's workers compensation business (not just its loss-sensitive business) and produced a witness prepared to testify about the workers compensation business written by more than 50 AIG divisions.

AIG believes that its 30(b)(6) deposition should take place on or before May 10, 2010. AIG first noticed this deposition on December 3, 2009 and it has now been nearly four weeks since AIG proposed to bifurcate this deposition and proceed promptly with testimony concerning

---

[2] That said, AIG will be interested to hear whether NCCI or the Pool cares to offer an opinion at the next status conference on whether NWCRP participants are required to report RMLs charged to insureds to NCCI as workers compensation premium.

Topic 1.  Accordingly, AIG believes that Travelers has had a sufficient amount of time to locate and prepare the appropriate witness.

With respect to Request Nos. 1-5, AIG asks that Travelers be required to complete its production of responsive documents by May 17, 2010.

**Travelers' Position:**

As a preliminary matter, Travelers objects to the implication that it has failed to identify an appropriate witness or has otherwise wasted time by sitting on its hands during the "nearly four week" period since AIG initially proposed bifurcating the deposition.  Travelers has consistently made clear to AIG, both in its letters and at the meet and confer, that it is willing to present a 30(b)(6) witness to testify on Topic 1 subject to both the time period and the "$100,000 premium" and "loss sensitive multi-line accounts" limitations and is in the process of educating a witness on this narrower Topic.  Further, Travelers has also stated its intention to work with AIG to supplement its 30(b)(6) witness' testimony, should AIG feel that additional information is required to sufficiently respond to its notice.  Thus, there is no basis for AIG's suggestion that Travelers has somehow failed to use the four week period to locate an "appropriate witness."

Travelers also disputes the notion that, because AIG proposed to bifurcate its deposition notice "nearly four weeks" ago, that it is reasonable to expect a deposition to take place on or before May 10, 2010.  First, May 10 is an arbitrary date.  Indeed, Travelers is presenting another 30(b)(6) witness on May 11.  Second, and more importantly, if Travelers' objections are upheld, a 30-day window would reasonably accommodate the parties' and witness' schedules.  In the event the Court accepts AIG's arguments and expands the scope of Topic 1, Travelers needs reasonable additional time to make a good faith determination regarding the scope of additional inquiry and information that must be gathered in order to adequately prepare and present its 30(b)(6) witness.

As the parties' correspondence indicates, Travelers timely responded to this proposal by reiterating and clarifying that such a deposition could promptly occur subject to the reasonable limitations Travelers imposed via its objections to AIG's notice. Travelers further stated that the breadth of information sought by AIG would necessitate additional time to properly prepare its witness. Given this dispute, the parties have been actively engaged in discussing their disagreements, as evidenced by the issues contained in this Joint Statement. As Travelers stated at the meet and confer, should AIG's position be accepted by the Court, Travelers will endeavor to educate its witness on the broader scope to the extent responsive information exists. However, as Travelers made clear, AIG's broader scope would also result in substantially more work, as Travelers would have to first locate information about these smaller business units and then identify who and where such information would reasonably likely be found, assuming, of course, that such responsive information still exists within the Company.

Turning to the first dispute regarding the $100,000 annual premium limitation, as Travelers stated in its April 13 and 14 letters and at the meet and confer, this limitation is a sensible one that both balances AIG's right to seek discovery and Travelers' right to be free of unduly burdensome requests. Indeed, it was AIG who first suggested this limitation in crafting seeking Business Practices Discovery. *See* A. Fleming June 25, 2008 letter, attached to AIG's Motion to Compel as Exhibit P. If, as AIG admits, Topic 1 will be used to focus in on particular business units or types of policies, then the $100,000 annual premium limitation will enable AIG to get discovery on information that is directly relevant to its allegations without overly burdening Travelers. This is a sensible and more focused approach to discovery, as it allows Travelers to identify both the business units and the policies that would be of interest to AIG, in light of the allegations they have made. Given that AIG's discovery to date suggests that it is primarily interested in insureds with multiple lines of coverage that include workers

compensation coverage, the $100,000 premium limitation is a fair way to ensure that smaller insureds are excluded. Conversely, if AIG's open door approach is accepted, this would expand both the scope of Topic 1 to include all of Travelers' workers compensation business and would require Travelers to prepare a 30(b)(6) witness to testify on any number of other business units that wrote workers compensation policies, which would also include searching for responsive documents, if any.

With respect to the "loss sensitive" limitation it has imposed, Travelers maintains that there is no basis to expand the scope of Topic 1 to include guaranteed cost policies because there is no factual basis to do so. FAC ¶¶ 131 and 132 allege that Travelers failed to report Residual Market Loads ("RMLs") as workers compensation premium to NCCI. However, this position has never been articulated by NCCI, and despite Travelers' specific request to AIG that it provide *any* authority for this belief, it has never done so. Put differently, AIG's allegations regarding RMLs and underreporting have never been adopted as the stated position of NCCI. Indeed, Travelers has expressly asked AIG to identify documents, or any basis in law whatsoever, to support the legal basis for its belief that RMLs constitute premium required to be reported to NCCI, and AIG has declined to do so, presumably because it cannot identify such documents. Thus, if NCCI – which administrates the NWCRP and calculates each company's share of the residual market pool ("the Pool") based in part what each company reports in workers compensation premium – has never publicly stated that RMLs need to be reported as workers compensation premium in order to allocate each company's share of the Pool, then AIG's subjective and unsupportable assertion on this issue cannot support baseless fishing expedition into any and all of Travelers' workers compensation guaranteed cost policies, especially in light of the burden associated with educating a witness on what will essentially be every type of workers compensation policy that Travelers wrote.

Furthermore, limiting discovery to Travelers' loss sensitive workers compensation business will again strike an appropriate balance between AIG's search for relevant information and Travelers' right to be free from undue burdens in connection with searching for documents in order to both respond to AIG's RFPs and prepare a 30(b)(6) witness(es).  Reasonably limiting loss sensitive information allows Travelers to identify the major business units that wrote workers compensation and to identify and locate documents in order to both respond to the RFPs and prepare a 30(b)(6) witness on this topic, while allowing AIG to gain information related to the allegations in its FAC.  This limitation is a more sensible limitation that the one AIG has offered above, which purports to "limit" Topic 1 to business units that wrote workers compensation coverage as a "regular part of their business" during the 1985 to 1996 time period.  When AIG's "limitation" is employed, a cursory review of Travelers' available loss data shows that, outside of the main business units it has identified which wrote loss sensitive workers compensation policies, there may be as many as *twenty-three* divisions where Travelers wrote workers compensation during the 1985 to 1996 time period.  Moreover, it appears that these twenty-three other divisions comprise only 9 percent of the losses incurred during this time period.  Conversely, the losses associated with Travelers' loss sensitive business units comprise the other 91 percent of Travelers' workers compensation losses during the 1985 to 1996 time period.  Thus, while Travelers is able to roughly identify different divisions with associated workers compensation losses, tracking down the information and documents needed to respond to the RFPs and educate a 30(b)(6) witness about the "organization" and "structure" of these twenty-three divisions will require substantial effort – especially given the age of the data – and will not be an exercise that Travelers can complete by May 10 or anywhere close to that date. Thus, a preliminary review of the limited data available on these other business units and divisions supports Travelers' contention that the benefit to AIG of learning about these lines of

business is far outweighed by Travelers' burden of having to locate, identify, and gather

documents and information that would be needed to prepare a 30(b)(6) witness and respond to

these RFPs.


Dated:  April 20, 2010                              Respectfully submitted,

/s/ Stephen Novack                                 /s/ Michael B. Carlinsky
Stephen Novack                                     Michael B. Carlinsky
P. Andrew Fleming                                  Kevin S. Reed
NOVACK AND MACEY LLP                               Jennifer J. Barrett
100 North Riverside Plaza                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
Chicago, IL 60606                                  51 Madison Avenue, 22nd Floor
(312) 419-6900                                     New York, New York 10010
                                                   (212) 849-7000
Attorneys for American International Group,
Inc.                                               Attorneys for American International Group,
                                                   Inc.


/s/ Timothy Rooney
Timothy J. Rooney (trooney@winston.com)
Norman K. Beck (nbeck@winston.com)
Courtney M. Oliva (coliva@winston.com)
Samantha L. Maxfield
(smaxfield@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Attorneys for Travelers

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | Case No. 07 CV 2898 |
| Plaintiffs, | Judge Robert W. Gettleman |
| v. | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | |
| Defendants. | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | |
| Counter-Claimants, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Counter-Defendants. | |
| SAFECO INSURANCE COMPANY OF AMERICA, et al., | Case No. 09 CV 2026 |
| | Judge Robert W. Gettleman |
| Plaintiffs, | Magistrate Judge Sidney I. Schenkier |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | |
| Defendants. | |

## PLAINTIFFS' THIRD REQUEST FOR
## THE PRODUCTION OF DOCUMENTS TO
## <u>TRAVELERS INSURANCE GROUP</u>

Plaintiffs, by their undersigned counsel, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Northern District of Illinois, hereby demand that Travelers Insurance Group produce the following articles, documents, or things for inspection and copying within thirty days, at the offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue, New York, New York 10010. The documents requested for discovery and inspection are to be produced according to the definitions and instructions herein.

## <u>DEFINITIONS</u>

1.     "NWCRP" shall refer to the National Workers Compensation Reinsurance Pool, its Board of Governors (and any committees thereof), employees, agents, and advisors, and any other person acting on behalf of, or in the name of the NWCRP, including, without limitation, business consultants, bankers, or advisors (including Huron Consulting Group).

2.     "Participating Company" or "Participating Companies" shall refer to those insurance companies that are currently or have at any time been a party to the NWCRP Articles of Agreement, adopted January 1, 1970, and as amended thereafter.

3.     "NCCI" shall refer to the National Council on Compensation Insurance, Inc., and each and all of its present and former subsidiaries, affiliates, divisions, joint ventures, partners, officers, directors, board of directors (and any committees thereof), board of governors (and any committees thereof), employees, agents, and advisors, and any other person acting or purporting to act for, on behalf of, or in the name of the NCCI, including, without limitation, business consultants, bankers, advisors (including Huron Consulting Group), attorneys, accountants and

2

any other person of any description retained or employed by the NCCI for business or financial reasons of any kind.

4.     "You," "Your," "Defendant", or "Travelers" shall refer to Travelers Insurance Group and all of its parent companies, subsidiaries, and affiliates.

5.     The "Board" shall refer to the NWCRP's Board of Governors.

6.     "Document" is used herein in the broadest possible sense permitted by the Federal Rules of Civil Procedure and means any written, graphic or other recorded (whether visibly, electronically, magnetically or otherwise) matter of whatever kind or nature, including computer files, or discs, or any other means of preserving thought or expression and all tangible things from which information can be processed, transcribed, copied or retrieved, whether originals, copies or drafts (including, without limitation, non-identical copies), however produced or reproduced. All documents shall include all meta-data.

7.     The singular includes the plural and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including without limitation."

## INSTRUCTIONS

1.     Unless otherwise indicated, the documents requested to be inspected include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of the following: the NWCRP; the Board; any Participating Company; the clients, principals, employers, prospective employers, employees,

3

representatives, relatives, friends, agents, independent contractors, consultants, attorneys or any other person or public or private entity that is an agent of the NCCI, the NWCRP, the Board, or any Participating Company that has actual physical possession thereof.

2.    With respect to the documents produced, You shall produce them as they are kept in the usual course of business.

3.    All documents must be produced in electronic form and, upon request of Defendants, produced in native format, including all meta-data.

4.    Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined.

5.    File folders with tabs or labels or directories of files identifying documents must be produced intact with such documents.

6.    Documents attached to each other shall not be separated.

7.    A document with handwritten, typewritten, or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions. The term "original" includes the file copy or copies of any document if there is no actual original or ribbon copy.

8.    If You withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, You must comply with the requirements of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, and the Case Management Procedures of Magistrate Judge Schenkier.

9.    If Your response to a particular request is a statement that You lack the ability to comply with that request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information or category of information must be identified.

10.    These requests shall be deemed continuing so as to require further and supplemental responses by You in the event that You obtain or discover additional information after the time of Your initial response.

11.    Unless otherwise stated in a specific request, these requests seek responsive information and documents authored, generated, disseminated, drafted, produced, reproduced, or otherwise created or distributed during, or relating to, the period January 1, 1970 through the present.

12.    These requests are in addition to, and shall not limit, any materials already ordered to be produced by Magistrate Judge Schenkier.

## REQUESTS

1.    Documents sufficient to show the organization and structure of all departments, divisions, profit centers, subsidiaries, or management companies of Travelers that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.

2.    Documents sufficient to show the years of operation of, and the identities and responsibilities of all executive-level employees in, all of the Travelers departments, divisions, profit centers, subsidiaries, or management companies that wrote workers compensation policies,

5

or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.

3.    Documents sufficient to describe all databases and other repositories of electronic data that contain compilations of policy-level data, including claims arising under particular policies, used in Traveler's workers compensation business during the period from 1970 to the present.

4.    Documents sufficient to describe the relationships between Traveler's information technology systems and electronic data repositories used in Traveler's workers compensation business.

5.    Documents sufficient to provide a graphic representation, visual depiction, network topology, or system schematic revealing the relationships and data flows between Traveler's information technology systems and electronic data repositories used in Traveler's workers compensation business.

Dated: March 2, 2010

                         Respectfully submitted,

                         PLAINTIFFS AMERICAN INTERNATIONAL
                         GROUP, INC., et al.

                         By: _____
                                One of Their Attorneys

Stephen Novack
P. Andrew Fleming
Andrew Campbell
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
QUINN EMANUEL URQUHART OLIVER
   & HEDGES, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 2, 2010, a copy of the foregoing **THIRD SET OF FED. R. CIV. P. 34(a) REQUESTS TO TRAVELERS INSURANCE GROUP** was served electronically on counsel for all parties pursuant to the written consent of the parties under Fed. R. Civ. P. 5(b)(2)(E).

Christopher A. Stanton

# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |  |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al.</u>, | ) ) ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., <u>et al.</u>, | ) ) ) | |
| Defendants. | ) ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, <u>et al.</u>, | ) ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al.</u>, | ) ) ) ) | |
| Counter-Defendants. | ) ) | |
| SAFECO INSURANCE COMPANY OF AMERICA, <u>et al.</u>, | ) ) ) ) | Case No. 09 CV 2026 |
| Plaintiffs, | ) ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| AMERICAN INTERNATIONAL GROUP, INC., <u>et al.</u>, | ) ) ) ) | |
| Defendants. | ) ) | |

**CERTAIN SUBSIDIARIES OF THE TRAVELERS COMPANIES, INC.'S RESPONSES
AND OBJECTIONS TO PLAINTIFFS' THIRD REQUEST FOR
THE PRODUCTION OF DOCUMENTS**

Certain subsidiaries of The Travelers Companies, Inc. (collectively "Travelers"), by their undersigned counsel, respond to AIG's Third Request for the Production of Documents as follows:

**GENERAL OBJECTIONS**

1.     Travelers objects to AIG's characterization of these requests as the "Third Request for the Production of Documents. Prior to serving these Requests, AIG served the following document requests: the "First Request for the Production of Documents" on October 4, 2007; the "Second Request for the Production of Documents" on January 31, 2008; the "Third Request for the Production of Documents" on March 25, 2008; the "Fourth Requests for the Production of Documents to Plaintiffs" on August 14, 2008; the "First Request for the Production of Documents to Travelers Insurance Group" and the "Second Request for the Production of Documents to Travelers Insurance Group" on October 30, 2009.

2.     Travelers objects to AIG's use of a caption that includes *SafeCo Ins. Co. v. AIG*, Case No. 09 C 2026 ("the 2009 Class Action") because the 2009 Class Action and this action have not been consolidated.

3.     Travelers objects to AIG's Third Requests as not reasonably calculated to lead to the discovery of admissible evidence to the extent they fail to describe the information sought with reasonable particularity, reference documents that do not exist, or are argumentative or unfairly worded and may, therefore, make responses misleading and/or incorrect.

4.     Travelers objects to all of the requests below to the extent AIG is seeking the production of documents or things covered by the attorney-client privilege, the attorney work

product doctrine, the joint prosecution/defense privilege existing between Travelers and other non-AIG parties to the above-captioned actions, and any other privilege or protection available under applicable law.

5. Travelers objects to Definition No. 1, "NWCRP" as overly broad and unduly burdensome. As used herein, NWCRP shall mean the agreement referred to in AIG's Complaint as the National Workers Compensation Reinsurance Pool and its agents. Travelers further objects to this Definition to the extent it includes Huron Consulting Group. As a non-testifying expert, Huron Consulting Group's information and documents, including its reports, notes, and records developed in connection with its engagement by the Pool, is not subject to discovery or disclosure under Federal Rule of Civil Procedure 26(b)(4)(B) absent exceptional circumstances, which AIG has not shown here. *See*, *e.g.*, *Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1153 (N.D. Ill. 2001).

6. Travelers objects to Definition No. 3, "NCCI" as overly broad and unduly burdensome. As used herein, NCCI shall mean the agreement referred to in AIG's Complaint as the National Workers Compensation Reinsurance Pool and its agents. Travelers further objects to this Definition to the extent it includes Huron Consulting Group. As a non-testifying expert, Huron Consulting Group's information and documents, including its reports, notes, and records developed in connection with its engagement by the Pool, is not subject to discovery or disclosure under Federal Rule of Civil Procedure 26(b)(4)(B) absent exceptional circumstances, which AIG has not shown here. *See*, *e.g.*, *Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1153 (N.D. Ill. 2001).

7. Travelers objects to Definition No. 4 to the extent it refers to "Travelers Insurance Group." Travelers Insurance Group is not a legal entity. Travelers responds herein only on

behalf of certain of their subsidiaries and their employees and officers who participate or have participated in the NWCRP at certain points in time. Travelers further objects to these Requests to the extent they call for any information from any non-Travelers legacy entity.

8.      Travelers objects to these Requests to the extent they are phrased in absolute terms.  Where Requests ask for documents sufficient to show, describe, and/or provide certain information, Travelers will undertake to locate and produce documents that are reasonably locatable and known to it at the time of its responses.  Travelers objects to these instructions to the extent AIG attempts to impose any obligation, whether express or implied, to represent that the response includes all documents that might be responsive to these Requests.

9.      Travelers objects to these Requests to the extent they seek production of documents already in AIG's possession or that have already been produced in the above-captioned action, on the ground that such production would be duplicative and unduly burdensome.

10.     Travelers objects to Instruction No. 1. as improper, overly broad, and unduly burdensome to the extent it seeks production of documents that are (a) in the possession, custody or control of third parties from whom, if discovery is proper, such documents should be obtained; (b) as accessible to AIG as they are to Travelers; (c) can reasonably be obtained more conveniently from another source than from Travelers; or (d) already in AIG's possession, custody or control.  Travelers further objects to Instruction No. 1 to the extent it attempts to impose obligations beyond those that the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois, or the standing orders of Judge Gettleman and Magistrate Judge Schenkier require.

11.     Travelers objects to Instruction No. 3.  To the extent documents are produced in response to these Requests, such production will be made either in electronic format or in any other format in which those documents were kept in the ordinary course of business.

12.     Travelers objects to Instruction No. 9.  Travelers will produce responsive, non-privileged documents to the extent they currently exist and are currently in Travelers' possession, custody or control.  Travelers will not undertake to identify whether information ever existed, has been destroyed, has been lost, misplaced, stolen, or has never been, or is no longer in, Travelers' possession, custody or control.  Likewise, Travelers will not identify who, if anyone, has possession, custody or control of the information requested.

13.     Travelers objects to Instruction No. 11 to the extent it seeks documents from the time period January 1, 1970 to the present.  There are no allegations in the Corrected First Amended Complaint ("FAC") that Travelers engaged in the same type of misconduct over the same time period to which AIG has admitted.  As pled in the FAC, AIG has alleged underreporting by Travelers from a much narrower period that "stretch[ed] from the mid-1980s to the mid-1990s."  Accordingly, a request for documents dating back to 1970 is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  In fact, AIG has elsewhere acknowledged that a request from 1970 to the present is overbroad and unduly burdensome when it withdrew its request for information from this same time period in connection with its First Set of Interrogatories served on Travelers.  *See* Joint Statement of Results of March 2, 2010 Meet and Confer Regarding AIG's First Set of Interrogatories to Travelers [D.E. 578].  Subject to these objections, Travelers will produce documents in response to these Requests for the time period from 1985-1996.

5

14.     Travelers objects to Instruction No. 12.  To the extent any of the Requests seek production of documents that are the subject of prior orders entered by Magistrate Judge Schenkier, Travelers will produce documents pursuant to those orders.

15.     Travelers objects to the requests to the extent they purport to be propounded on other Participating Companies, the NCCI, the Board, or anyone other than Travelers.  Travelers' responses to the requests are made solely for and on its own behalf.

16.     Travelers objects to these Requests to the extent that they seek the disclosure of information that contains trade secrets or other research, development, proprietary or commercial information except in accordance with the December 13, 2007 Protective Order and the November 5, 2009 Modified Protective Order and HIPAA Qualified Protective Order entered in the above-captioned actions.

17.     Travelers objects to these Requests to the extent that they call for the production of electronic mail and computer files that are stored solely on backup tapes, on the grounds that retrieval of such information is unduly burdensome and oppressive and is not reasonably calculated to lead to the discovery of admissible evidence.  Travelers further objects to the production of electronic documents in native form, including metadata.

18.     Travelers objects to each request, definition and instruction to the extent it is inconsistent with the Federal Rules of Civil Procedure or seeks to impose burdens beyond those allowed by the Federal Rules of Civil Procedure and the rules and orders of the Court.

19.     A response indicating that Travelers will produce non-privileged documents is not intended to imply that such documents exist, but instead only to indicate that such responsive, non-privileged documents as do exist will be produced, subject to any asserted objection.

6

20.     Travelers reserves all evidentiary objections under the Federal Rules of Evidence. By responding to these Requests, Travelers does not admit the admissibility or relevance of any fact or document referenced, or admit the truth or accuracy of any characterization contained in these Requests.

21.     The repetition of any General Objection in response to a specific request does not waive the objection for any other request to which it is also applicable.

22.     The responses set forth herein are based on information presently known to Travelers.  In providing these responses, Travelers reserves the right to amend, modify, or supplement its responses and objections.

## **REQUESTS**

1.     Documents sufficient to show the organization and structure of all departments, divisions, profit centers, subsidiaries, or management companies of Travelers that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.

**RESPONSE:**

Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present.  Travelers further objects to this Request as vague and ambiguous, particularly as to the term "multi-line accounts."  Subject to and without waiving these and its General Objections, Travelers will produce non-privileged documents, to the extent any exist, that are sufficient to show the organization and structure of business units that wrote multiple lines of insurance coverage that included workers compensation coverage, for loss-sensitive accounts with at least $100,000 in annual aggregate premium, during the period 1985 to 1996.

7

2.     Documents sufficient to show the years of operation of, and the identities and responsibilities of all executive-level employees in, all of the Travelers departments, divisions, profit centers, subsidiaries, or management companies that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.

**RESPONSE:**

Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to "all" Travelers departments, divisions, profit centers, subsidiaries, or management companies that write workers compensation policies without regard to the type or size of policies written.  Travelers further objects to this Request as vague and ambiguous, particularly as to the undefined term "executive-level employees."  Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a request that clarifies the term "executive-level employees" and is narrowed to seek documents related to Travelers' business units that write multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium for the period 1985 to 1996.

3.     Documents sufficient to describe all databases and other repositories of electronic data that contain compilations of policy-level data, including claims arising under particular policies, used in Traveler's workers compensation business during the period from 1970 to the present.

**RESPONSE:**

Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to "all" Travelers departments, divisions, profit centers, subsidiaries, or management companies that workers compensation policies.  Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a more narrowly drawn request that seeks documents related to Travelers' business units that wrote multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium from 1985-1996.

4.      Documents sufficient to describe the relationships between Traveler's information technology systems and electronic data repositories used in Traveler's workers compensation business.

**RESPONSE:**

Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to all information technology systems and electronic data repositories used in Travelers' workers compensation business, without regard to the size or type of workers compensation coverage written.  Travelers further objects to this Request as vague and ambiguous, particularly as to the undefined terms "information technology systems" and "electronic data repositories."  Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a request that clarifies the terms "information technology systems" and "electronic data repositories" and is narrowed to seek documents relating to Travelers' workers compensation

business that wrote multiple lines of insurance that included workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium from 1985-1996.

5.     Documents sufficient to provide a graphic representation, visual depiction, network topology, or system schematic revealing the relationships and data flows between Traveler's information technology systems and electronic data repositories used in Traveler's workers compensation business.

**RESPONSE:**

Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to all information technology systems and electronic data repositories used in Travelers' workers compensation business, without regard to the size or type of workers compensation coverage written. Travelers further objects to this Request as vague and ambiguous, particularly as to the undefined terms "information technology systems" and "electronic data repositories." Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a request that clarifies the terms "information technology systems" and "electronic data repositories" and is narrowed to seek documents relating to Travelers' workers compensation business that wrote multiple lines of insurance that included workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium from 1985-1996.

Dated:  April 1, 2010

Respectfully submitted,

One of the Attorneys for Travelers

10

Timothy J. Rooney (trooney@winston.com)
Norman K. Beck (nbeck@winston.com)
Courtney M. Oliva (coliva@winston.com)
Samantha L. Maxfield (smaxfield@winston.com)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on April 1, 2010, a copy of the foregoing **CERTAIN SUBSIDIARIES OF THE TRAVELERS COMPANIES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD REQUEST FOR THE PRODUCTION OF DOCUMENTS** was served electronically on counsel for all parties pursuant to the written consent of the parties under Fed. R. Civ. P. 5(b)(2)(E).

_____

Courtney M. Oliva

# EXHIBIT L

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S INTERNET ADDRESS
kevinreed@quinnemanuel.com

April 7, 2010

<u>VIA E-MAIL</u>

Courtney M. Oliva, Esq.
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Re:     *American International Group, Inc. v. ACE/INA Holdings, Inc.*, 07 CV 2898 (N.D. Ill.)

Dear Courtney:

We write regarding certain subsidiaries of The Travelers Companies, Inc. ("Travelers")
Objections and Responses to AIG's Third Request for the Production of Documents
("Requests"), dated March 2, 2010. This letter sets forth AIG's response to Travelers'
objections, the majority of which appear to be baseless. We write this letter pursuant to the
Court's discovery protocol in the hopes of reaching a resolution on these issues. We look
forward to your prompt response.

**General Objections**

**General Objection No. 3**

> <u>Travelers' Objection:</u> "Travelers objects to AIG's Third Requests as not
> reasonably calculated to lead to the discovery of admissible evidence to the extent
> they fail to describe the information sought with reasonable particularity,
> reference documents that do not exist, or are argumentative or unfairly worded
> and may, therefore, make responses misleading and/or incorrect."

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

AIG's Response: This objection is an improper ground on which to withhold documents. First, AIG disputes the notion that any of the Requests "fail to describe the information sought with reasonable particularity . . . or are argumentative or unfairly worded." If, however, Travelers believes that any request fits either of these criteria, AIG expects Travelers to raise these concerns—with specificity—in response to the specific requests at issue so that AIG may provide appropriate clarification.

Please confirm that Travelers will not withhold documents on these grounds but will instead raise any of these concerns in response to the specific document requests.

## General Objection No. 4

> Travelers' Objection: "Travelers objects to all of the requests below to the extent AIG is seeking the production of documents or things covered by the attorney-client privilege, the attorney work product doctrine, the joint prosecution/defense privilege existing between Travelers and other non-AIG parties to the above-captioned actions, and any other privilege or protection available under applicable law."

AIG's Response: AIG expects that Travelers will not withhold documents on the basis of privilege without so specifying. Therefore, please confirm that Travelers intends to provide a privilege log that will include all documents withheld, specifying for each document the privilege asserted, a detailed explanation of the applicability of the privilege to the document withheld, and (where available) the date, author, recipient, and subject matter of the document withheld, such that AIG, and the Court, can address the claim of privilege.

## General Objection No. 5

> Travelers' Objection: "Travelers objects to Definition No. 1, 'NWCRP' as overly broad and unduly burdensome. As used herein, NWCRP shall mean the agreement referred to in AIG's Complaint as the National Workers Compensation Reinsurance Pool and its agents. Travelers further objects to this Definition to the extent it includes Huron Consulting Group. As a non-testifying expert, Huron Consulting Group's information and documents, including its reports, notes, and records developed in connection with its engagement by the Pool, is not subject to discovery or disclosure under Federal Rule of Civil Procedure 26(b)(4)(B) absent exceptional circumstances, which AIG has not shown here. See, e.g., Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co., 128 F. Supp. 2d 1148, 1153 (N.D. Ill. 2001)."

AIG's Response: AIG believes this objection is without merit, but because none of the Requests appears to turn significantly on AIG's definition of "NWCRP," AIG does not challenge Travelers' objection at this time. For the same reason, please confirm that Travelers will not withhold any documents on the basis of this objection.

2

**General Objection No. 6**

> Travelers' Objection: "Travelers objects to Definition No. 3, 'NCCI' as overly
> broad and unduly burdensome. As used herein, NCCI shall mean the agreement
> referred to in AIG's Complaint as the National Workers Compensation
> Reinsurance Pool and its agents. Travelers further objects to this Definition to the
> extent it includes Huron Consulting Group. As a non-testifying expert, Huron
> Consulting Group's information and documents, including its reports, notes, and
> records developed in connection with its engagement by the Pool, is not subject to
> discovery or disclosure under Federal Rule of Civil Procedure 26(b)(4)(B) absent
> exceptional circumstances, which AIG has not shown here. See, e.g., Spearman
> Indus., Inc. v. St. Paul Fire and Marine Ins. Co., 128 F. Supp. 2d 1148, 1153
> (N.D. Ill. 2001)."

AIG's Response: AIG believes this objection is without merit, but because none of the Requests
appears to turn significantly on AIG's definition of "NCCI," AIG does not challenge Travelers'
objection at this time. For the same reason, please confirm that Travelers will not withhold any
documents on the basis of this objection.

**General Objection No. 7**

> Travelers' Objection: "Travelers objects to Definition No. 4 to the extent it refers
> to 'Travelers Insurance Group.' Travelers Insurance Group is not a legal entity.
> Travelers responds herein only on behalf of certain of their subsidiaries and their
> employees and officers who participate or have participated in the NWCRP at
> certain points in time. Travelers further objects to these Requests to the extent
> they call for any information from any non-Travelers legacy entity."

AIG's Response: AIG directs its requests to those companies that comprise the Travelers
Companies Inc. and participate or have participated in the NWCRP. With this clarification, AIG
requests that Travelers withdraw this objection and confirm that it will not withhold any
documents or information based on this objection.

**General Objection No. 8**

> Travelers' Objection: "Travelers objects to these Requests to the extent they are
> phrased in absolute terms. Where Requests ask for documents sufficient to show,
> describe, and/or provide certain information, Travelers will undertake to locate
> and produce documents that are reasonably locatable and known to it at the time
> of its responses. Travelers objects to these instructions to the extent AIG attempts
> to impose any obligation, whether express or implied, to represent that the
> response includes all documents that might be responsive to these Requests."

AIG's Response: This objection is without merit. AIG is aware of, and Travelers cites to no
authority that would allow Travelers merely to pluck the low-hanging fruit and claim to have met

3

its discovery obligations. Indeed, within the bounds of Rule 26(b)'s relevancy requirement, Rule 34 allows a party to seek production of documents "in the responding party's possession, custody or control . . . ." Fed. R. Civ. P. 34(1). AIG requests that Travelers withdraw this objection and confirm that it will not withhold any documents or information based on this objection.

**General Objection No. 9**

> Travelers' Objection: "Travelers objects to these Requests to the extent they seek production of documents already in AIG's possession or that have already been produced in the above- captioned action, on the ground that such production would be duplicative and unduly burdensome."

AIG's Response: AIG disagrees that this objection is an appropriate ground upon which to withhold the production of documents. Nevertheless, to the extent that Travelers believes that responsive documents have been produced previously in the above-captioned actions, AIG requests that Travelers provide Bates numbers identifying the responsive documents.

**General Objection No. 13**

> Travelers' Objection: "Travelers objects to Instruction No. 11 to the extent it seeks documents from the time period January 1, 1970 to the present. There are no allegations in the Corrected First Amended Complaint ('FAC') that Travelers engaged in the same type of misconduct over the same time period to which AIG has admitted. As pled in the FAC, AIG has alleged underreporting by Travelers from a much narrower period that 'stretch[ed] from the mid-1980s to the mid-1990s.' Accordingly, a request for documents dating back to 1970 is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In fact, AIG has elsewhere acknowledged that a request from 1970 to the present is overbroad and unduly burdensome when it withdrew its request for information from this same time period in connection with its First Set of Interrogatories served on Travelers. See Joint Statement of Results of March 2, 2010 Meet and Confer Regarding AIG's First Set of Interrogatories to Travelers [D.E. 578]. Subject to these objections, Travelers will produce documents in response to these Requests for the time period from 1985-1996."

AIG's Response: Without prejudice to its ability to press for discovery from other years at a later point, AIG will accept a production in response to these Requests for the years 1985-1996.

**General Objection No. 14**

> Travelers' Objection: "Travelers objects to Instruction No. 12. To the extent any of the Requests seek production of documents that are the subject of prior orders entered by Magistrate Judge Schenkier, Travelers will produce documents pursuant to those orders."

AIG's Response: To the extent that Travelers believes that responsive documents have been produced previously or will be produced pursuant to a prior order entered by Magistrate Judge

Schenkier in the above-captioned actions, AIG requests that Travelers provide Bates numbers identifying the responsive documents. To the extent that Travelers is asserting that a prior order relieves it of the obligation to respond to any particular requests addressed herein, AIG asks Travelers to clarify which requests it believes to be so affected.

**General Objection No. 16**

> Travelers' Objection: "Travelers objects to these Requests to the extent that they seek the disclosure of information that contains trade secrets or other research, development, proprietary or commercial information except in accordance with the December 13, 2007 Protective Order and the November 5, 2009 Modified Protective Order and HIPAA Qualified Protective Order entered in the above-captioned actions."

AIG's Response: Travelers' objections on confidentiality and trade secret grounds are without merit. The Confidentiality Order in place in this litigation more than adequately protects Travelers' interest in protecting such information. Under the November 5, 2009 Modified Protective Order and HIPAA Qualified Protective Order parties are allowed to designate categories of information, including trade secrets, proprietary and/or confidential information, as "confidential" or "highly confidential."

**General Objection No. 17**

> Travelers' Objection: "Travelers objects to these Requests to the extent that they call for the production of electronic mail and computer files that are stored solely on backup tapes, on the grounds that retrieval of such information is unduly burdensome and oppressive and is not reasonably calculated to lead to the discovery of admissible evidence. Travelers further objects to the production of electronic documents in native form, including metadata."

AIG's Response: This objection is without merit. Rule 34 requires Travelers to produce documents "stored in any medium from which information can be obtained either directly or, if necessary, after translation by [Travelers] into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(a). Further, Rule 34 allows AIG to "specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Travelers' rote recitation of these general objections fails to elaborate at all on the reasons underlying them, let alone with the specificity required by law. *See Boyer v. Gildea*, No. 1:05-CV-129, 2008 WL 4911267 at *4 (N.D. Ind. Nov, 13, 2008) ("[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome"). AIG cannot fathom any rationale for Travelers' claim that requests that reach documents stored in a particular manner would per se be "not reasonably calculated to lead to the discovery of admissible evidence." Therefore, please confirm that Travelers does not intend to withhold documents on the basis of this objection.

**General Objection No. 18**

Travelers' Objection: "Travelers objects to each request, definition and instruction to the extent it is inconsistent with the Federal Rules of Civil Procedure or seeks to impose burdens beyond those allowed by the Federal Rules of Civil Procedure and the rules and orders of the Court."

AIG's Response: This objection is an improper ground on which to withhold documents. First, AIG disputes the notion that any of the Requests, Definitions or Instructions are "inconsistent with the Federal Rules of Civil Procedure or seek to impose burden beyond those allowed by the Federal Rules of Civil Procedure and the rules and orders of the Court." If, however, Travelers believes that any specific request, definition or instruction fits either of these criteria, AIG expects Travelers to raise these concerns—with specificity—in response to the specific requests, definitions or instructions at issue so that AIG may provide appropriate clarification.

Please confirm that Travelers will not withhold documents on these grounds but will instead raise any of these concerns in response to the specific document requests.

**Specific Objections**

**Request No. 1:** Documents sufficient to show the organization and structure of all departments, divisions, profit centers, subsidiaries, or management companies of Travelers that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.

Travelers' Response: "Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present. Travelers further objects to this Request as vague and ambiguous, particularly as to the term 'multi-line accounts.' Subject to and without waiving these and its General Objections, Travelers will produce non-privileged documents, to the extent any exist, that are sufficient to show the organization and structure of business units that wrote multiple lines of insurance coverage that included workers compensation coverage, for loss-sensitive accounts with at least $100,000 in annual aggregate premium, during the period 1985 to 1996."

AIG's Response: As detailed in my letter of yesterday to Tim Rooney regarding AIG's 30(b)(6) notice to Travelers, we reject Travelers' attempt to limit the discovery it provides in response AIG's requests to divisions writing loss sensitive accounts with at least $100,000 in annual aggregate premium.

The discovery sought through this Request and the others addressed herein is threshold discovery, designed to allow AIG to gain a "big picture" understanding of the workers compensation business written by Travelers so that we can work with you more effectively to tailor future discovery in a way that seeks information related to the claims and defenses asserted by AIG. The Court has approved of this sort of threshold discovery in the past in order allow the parties to better understand each other's business structure to promote more efficient discovery. (*See, e.g.,* Transcript of October 2, 2008 Hearing before the Honorable Sidney I. Schenkier at

73:11-74:4 (ordering AIG to produce a 30(b)(6) witness to testify to the kinds and amount of workers compensation business written by divisions outside 50 and 55).)

With respect to Travelers' attempt to limit its production to documents relating to business units that wrote accounts with at least $100,000 in annual premium, Travelers has not yet offered a rationale to support that limitation. We suspect it was intended simply to mirror a limitation that was once in place for 30(b)(6) testimony AIG was to provide to Plaintiffs in the '07 Action regarding the structure of its workers compensation business. If so, Travelers should be aware that that limitation is no longer in place, as AIG, Liberty and the Class Plaintiffs have negotiated an alternative framework for this type of threshold discovery. If Travelers nonetheless believes that the $100,000 limitation should remain for discovery against Travelers, please explain why that is so. In AIG's view, there is nothing about the allegations of underreporting made against Travelers in the Corrected First Amended Complaint that supports such a limitation. In particular, there is nothing about Travelers' misallocation of workers compensation premium to "open policies" or its failure to report residual market charges assessed to insured as workers compensation premium (*see* FAC ¶¶ 123-136) that inherently restricts such behavior to accounts with at least $100,000 in annual premium.

Travelers' attempt to limit its production to documents relating to business units that wrote loss-sensitive accounts is also unjustified. Paragraph 131 of the FAC explicitly alleges that "Travelers' underreporting was not limited to retrospectively rated [*i.e.*, loss sensitive] policies. In fact, it's procedures provided that, "If, however, the Workers Compensation is on a Guaranteed Cost or Option V, the [residual market charges (which themselves should have been reported as workers compensation premium)] should be included in other casualty lines." Paragraph 132 contains a similar allegation. Given those allegations, AIG does not believe that any relevance or burden objection to providing testimony concerning units that wrote guaranteed cost multi-line business would be well taken. Moreover, even putting those specific allegations aside, AIG believes that the mere fact that Travelers is alleged to have underreported at all makes requests for documents sufficient to show the basic structure of Travelers' workers compensation business appropriate and well-within the permissible bounds of discovery.

**Request No. 2:** Documents sufficient to show the years of operation of, and the identities and responsibilities of all executive-level employees in, all of the Travelers departments, divisions, profit centers, subsidiaries, or management companies that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.

> Travelers' Response: "Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to 'all' Travelers departments, divisions, profit centers, subsidiaries, or management companies that write workers compensation policies without regard to the type or size of policies written. Travelers further objects to this Request as vague and ambiguous, particularly as to the undefined term 'executive- level employees.' Subject to and without waiving these and its General Objections, Travelers is willing to produce

7

> documents in response to a request that clarifies the term 'executive-level employees' and is narrowed to seek documents related to Travelers' business units that write multiple lines of insurance coverage that include workers compensation coverage for loss- sensitive accounts with at least $100,000 in annual aggregate premium for the period 1985 to 1996."

<u>AIG's Response:</u> Travelers objects that the phrase "executive-level employees" is undefined and "vague and ambiguous." Black's Law Dictionary defines an "executive employee" as "[a]n employee whose duties include some form of managerial authority and active participation in the control, supervision, and management of the business." *Black's Law Dictionary* 610 (8th Ed. 2004). We trust this clarification addresses Travelers' objection.

With respect to Travelers' proposal to limit documents produced in response to this Request to those concerning Travelers' business units that write multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium, I refer you to the discussion of this topic above.

**Request No. 3:** Documents sufficient to describe all databases and other repositories of electronic data that contain compilations of policy-level data, including claims arising under particular policies, used in Traveler's workers compensation business during the period from 1970 to the present.

> <u>Travelers' Response:</u> "Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to 'all' Travelers departments, divisions, profit centers, subsidiaries, or management companies that workers compensation policies. Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a more narrowly drawn request that seeks documents related to Travelers' business units that wrote multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium from 1985-1996."

<u>AIG's Response:</u> With respect to Travelers' proposal to limit documents produced in response to this Request to those concerning Travelers' business units that write multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium, I refer you to the discussion of this topic above.

**Request No. 4:** Documents sufficient to describe the relationships between Traveler's information technology systems and electronic data repositories used in Traveler's workers compensation business.

> <u>Travelers' Response:</u> "Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and

8

to the extent it seeks documents related to all information technology systems and electronic data repositories used in Travelers' workers compensation business, without regard to the size or type of workers compensation coverage written. Travelers further objects to this Request as vague and ambiguous, particularly as to the undefined terms 'information technology systems' and 'electronic data repositories.' Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a request that clarifies the terms 'information technology systems' and 'electronic data repositories' and is narrowed to seek documents relating to Travelers' workers compensation business that wrote multiple lines of insurance that included workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium from 1985-1996."

AIG's Response: Travelers has requested a clarification as to the meaning of "information technology systems" and "electronic data repositories." AIG believes these terms are sufficiently clear, and we therefore do not understand what clarification you are seeking. If Travelers can provide a more detailed explanation of what exactly it considers to be unclear about these terms, AIG will attempt to provide the requested clarification.

With respect to Travelers' proposal to limit documents produced in response to this Request to those concerning Travelers' business units that write multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium, I refer you to the discussion of this topic above.

**Request No. 5:** Documents sufficient to provide a graphic representation, visual depiction, network topology, or system schematic revealing the relationships and data flows between Traveler's information technology systems and electronic data repositories used in Traveler's workers compensation business.

Travelers' Response: "Travelers objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents from the period 1970 to the present, and to the extent it seeks documents related to all information technology systems and electronic data repositories used in Travelers' workers compensation business, without regard to the size or type of workers compensation coverage written. Travelers further objects to this Request as vague and ambiguous, particularly as to the undefined terms 'information technology systems' and 'electronic data repositories.' Subject to and without waiving these and its General Objections, Travelers is willing to produce documents in response to a request that clarifies the terms 'information technology systems' and 'electronic data repositories' and is narrowed to seek documents relating to Travelers' workers compensation business that wrote multiple lines of insurance that included workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium from 1985-1996."

9

AIG's Response: Travelers has requested a clarification as to the meaning of "information technology systems" and "electronic data repositories." AIG believes these terms are sufficiently clear, and we therefore do not understand what clarification you are seeking. If Travelers can provide a more detailed explanation of what exactly it considers to be unclear about these terms, AIG will attempt to provide the requested clarification.

With respect to Travelers' proposal to limit documents produced in response to this Request to those concerning Travelers' business units that write multiple lines of insurance coverage that include workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium, I refer you to the discussion of this topic above.


Sincerely,

Kevin Reed /bmm

Kevin S. Reed


cc:     All Counsel of Record (via email only)

10

# EXHIBIT M

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S INTERNET ADDRESS
**kevinreed@quinnemanuel.com**

April 8, 2010

**VIA E-MAIL**

Courtney M. Oliva, Esq.
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Re:    *American International Group, Inc. v. ACE/INA Holdings, Inc.*, 07 CV 2898 (N.D. Ill.)

Dear Courtney:

I refer you to my letter of yesterday, identifying deficiencies in Travelers' response to AIG's Third Request for Production of Documents.  In addition to the limitations addressed in my letter of yesterday, Travelers also proposed to limit its production in response to each of the Requests to business units (*i.e.*, divisions, departments, profit centers, etc.) that wrote multiple lines of insurance that included workers compensation coverage.  We write to clarify our understanding that this limitation will not operate to prevent the production of documents relating to any business unit that participated in any process or program through which workers compensation coverage and other lines of coverage were underwritten and/or priced in a coordinated way but through separate business units.  We would expect Travelers' production of documents in response to the Requests to include those relating to all such business units (including those that wrote the non-workers compensation coverages written through such processes or programs). We believe it appropriate to construe the Requests in this manner because, when multiple lines of coverage are provided to insureds in a coordinated way, the potential for misreporting and misallocation of premium is the same or similar regardless of whether the coverages are written

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

through one business unit or multiple business units. If you disagree, please address this point and explain why in your response to my letter of yesterday.

Sincerely,

Kevin S. Reed

cc:     All Counsel of Record (via email only)

2

# EXHIBIT N

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S INTERNET ADDRESS
**kevinreed@quinnemanuel.com**

April 9, 2010

**VIA E-MAIL**

Courtney M. Oliva, Esq.
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Re:     *American International Group, Inc. v. ACE/INA Holdings, Inc.*, 07 CV 2898 (N.D. Ill.)

Dear Courtney:

In your April 1, 2010 Objections & Responses to AIG's Third Request for Production, Travelers agreed to produce certain documents subject to its objections. Please provide a date by which Travelers will produce these documents.

Sincerely,

Kevin Reed

Kevin S. Reed

cc:     All Counsel of Record (via email only)

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

# EXHIBIT O

# WINSTON & STRAWN LLP

<table>
<tr><td>43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND</td><td>35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703</td><td>200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193</td></tr>
<tr><td>99 GRESHAM STREET<br>LONDON EC2V 7NG</td><td>(312) 558-5600</td><td>25 AVENUE MARCEAU<br>75116 PARIS, FRANCE</td></tr>
<tr><td>333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543</td><td>FACSIMILE (312) 558-5700</td><td>101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894</td></tr>
<tr><td></td><td>www.winston.com</td><td>1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817</td></tr>
</table>

TIMOTHY J. ROONEY
(312) 558-5972
trooney@winston.com

April 14, 2010

**BY E-MAIL**

Kevin S. Reed
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

Re:  *AIG, et al. v. ACE INA, et al.,* **Case No. 07-C-2898 (N.D. Ill.)**

Dear Kevin:

We write in response to your April 7, 8, and 9, 2010 letters setting forth your objections to Travelers' responses to AIG's Third Request for Production of Documents (the "Third RFPs"); seeking clarification on Travelers' use of the term "business units," and requesting that Travelers identify a date by which it will produce responsive documents, to the extent any exist, in response to the Third RFPs. We will address each of your objections in turn and will respond to your request for a production deadline below.

**General Objection Nos. 1, 4-6, 8-9, 14, 16-18**

Travelers declines to withdraw these General Objections and instead confirms that it is not withholding any documents on the basis of these objections. To the extent AIG seeks identification, by bates label, of previously produced documents that are responsive to these Requests, we refer you Jennifer Barrett's February 3, 2010 letter regarding AIG's responses and objections to The Hartford's Request for Production of Documents:

> Regarding Hartford's Request for bates numbers, AIG is not aware of – nor does Hartford cite to – any obligation to provide opposing parties with bates numbers identifying which documents are responsive to any particular request. Here, where the documents previously produced to NCCI were not produced in a manner that tied particular documents to specific requests, it would be unduly burdensome to provide such information on response to Hartford's request.

AIG has also recently reiterated this position in responding to a request from Class Plaintiffs that AIG identify previously produced documents that are responsive to recently propounded

WINSTON & STRAWN LLP

Kevin S. Reed
April 14, 2010
Page 2

requests. *See* April 6, 2010 C. Stanton email to E. Magnusson. In light of AIG's position that the Federal Rules do not impose any obligation to identify previously produced documents that are responsive to any given document request, Travelers declines AIG's request to identify previously produced documents by bates number.

## General Objection No. 7

Travelers declines to withdraw this objection. As previously explained in its January 22, 2010 letter regarding AIG's prior document requests, Travelers confirms that, in responding to the Third Document Requests, it is not producing documents that belong to non-legacy Travelers' entities against whom there are no specific allegations in the First Amended Complaint ("FAC").

Travelers also reiterates its objection on the grounds that AIG's proposed definition in its April 7, 2010 letter would be overly broad and not reasonably calculated to lead to the discovery of admissible evidence. For example, AIG's definition would encompass documents related to Aetna's workers compensation business practices. (Travelers acquired Aetna in 1996.) However, AIG voluntarily dismissed Aetna from this litigation on March 31, 2008. *See* March 31, 2008 Voluntary Dismissal Order. [D.E. 143.] Accordingly, it would be nonsensical, not to mention unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, to produce documents on behalf of an entity whom AIG voluntarily dismissed from the litigation.

## Responses and Objections to RFPs 1-4

It appears that the parties have a recurring disagreement with respect to all of Travelers' responses to the Third RFPs. The first disagreement relates to Travelers' application of the $100,000 annual aggregate premium limitation and the second disagreement relates to Travelers' application of the loss-sensitive policies limitation. This disagreement is substantially similar, if not identical, to the disagreement the parties have with respect to Topic 1 of AIG's 30(b)(6) "systems" deposition. Accordingly, while we refer you to our April 13, 2010 letter and incorporate the substance of that letter here, we will also discuss these disagreements below.

## $100,000 Premium Limitation

Without repeating the substance of our April 13 letter, we disagree with your contention that Travelers was repeating a limitation initially imposed by AIG in discovery conducted by the Class, and that Travelers has yet to offer a rationale for this limitation. To the contrary, AIG initially offered Travelers the $100,000 limitation during PPGM discovery conducted in June 2008, and Travelers has consistently applied this limitation since then. AIG ostensibly agreed to this limitation because it felt it struck an appropriate balance, and it cannot be heard to complain now that it made a strategic decision to abandon that limitation in the context of discovery sought by the Class and Liberty.

WINSTON & STRAWN LLP

Kevin S. Reed
April 14, 2010
Page 3

Travelers also disagrees with AIG's implicit suggestion that, because it has abandoned the $100,000 limitation, Travelers should as well. This retributive, tit-for-tat discovery is inappropriate and improper under the Federal Rules, and Travelers reiterates its position from its February 26, 2010 letter that the case law supports this conclusion. *See, e.g.,* *Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co.*, 90 Civ. 7811, 1993 U.S. Dist. LEXIS 1163, at *8 (S.D.N.Y. Feb. 4, 1993) (rejecting the notion that parties should reflexively adopt a "tit-for-tat" approach to discovery).

Travelers believes the $100,000 premium limitation provides a more focused approach to discovery, and in particular allows Travelers to identify the policies that would be of interest to AIG, *i.e.*, the larger customers that would have wanted to purchase multiple lines of insurance coverage, including workers compensation coverage, from Travelers. Removing the $100,000 premium limitation would open up *all* of Travelers' workers compensation business and would result in an enormous burden in its attempt to locate documents responsive to the Third RFPs, as it would essentially be searching every business unit for documents relating to every dollar of workers compensation business that Travelers ever wrote during the 1985 to 1996 time period.

## Loss Sensitive Accounts

Travelers also disputes the notion that AIG is entitled to discovery outside of Travelers' loss sensitive business. Despite AIG's belief to the contrary, paragraphs 131 and 132 of the FAC do not support the notion that workers compensation premium underreporting occurred with respect to Travelers' guaranteed cost policies. In actuality, Paragraphs 131 and 132 allege that Travelers failed to report residual market loads ("RMLs") as premium. However, AIG has offered no authority from NCCI, the National Association of Insurance Commissioners, or any other state or federal regulatory insurance agency to support its belief that RMLs are properly considered "premium" for purposes of reporting workers compensation premium to NCCI. Indeed, when NCCI initially brought its lawsuit, it did not specifically allege that AIG failed to report RMLs as premium and did not specifically seek to recoup RMLs as premium. We therefore reiterate the request made in our April 13 letter and invite AIG to provide the legal authority which it believes supports the proposition that RMLs were required to be reported to NCCI as premium during the 1985 to 1996 time period. Unless and until AIG is able to do so, there is no basis for Travelers to search for documents about its guaranteed cost policies while engaging in the highly burdensome and expensive fishing expedition you are now requesting.

Furthermore, as with the $100,000 limitation, limiting discovery to loss sensitive business strikes an appropriate balance between AIG's search for relevant information and Travelers' right to be free from undue burdens in connection with responding to the Third RFPs. Put another way, the vast majority of Travelers' workers compensation business was written by business units that wrote loss-sensitive policies, which is where AIG has focused most of its allegations. Conversely, business units that wrote only workers compensation guaranteed cost policies represent a small fraction of Travelers business. The benefit to AIG of learning about

WINSTON & STRAWN LLP

Kevin S. Reed
April 14, 2010
Page 4

these lines of business is far outweighed by Travelers' burden of having to locate, identify, and gather documents that would be responsive to the Third RFPs.

**Specific Objections to Travelers' Responses to RFP Nos. 2 and 4**

Aside from the global disagreements above, AIG has also noted certain objections to Travelers' responses to the Third RFP Nos. 2-4. We will address each of these in turn.

**RFP No. 2**

AIG has clarified that the phrase "executive-level employees" encompasses all employees with "some form" of authority and "active participation in the control, supervision, and management of the business." Based on this clarification, Travelers agrees to produce documents sufficient to respond to this Request, to the extent any exist, for business units that wrote multiple lines of insurance coverage that included workers compensation coverage for loss-sensitive accounts with at least $100,000 in annual aggregate premium for the 1985 to 1996 time period.

**RFP No. 4**

Travelers has expressed confusion over the undefined terms "information technology systems" and "electronic data repositories," which AIG has refused to define. Travelers reiterates its request for clarification for two reasons. First, Travelers' workers compensation business relies on a host of different software and organizational data systems, and AIG cannot fairly believe that "all" of these data systems are relevant, or even likely to lead to the discovery of admissible evidence. For example, there are various marketing, advertising, internal human resources, and other record keeping functions in any company that utilize IT systems or data systems. These are just a few examples of programs and data systems that fall within Third RFP No. 4 as written, yet they are clearly irrelevant to the issues in this litigation.

Second, Travelers is still unable to understand the difference that AIG sees between "information technology systems" and "electronic data repositories." Travelers acknowledges that it stores information about its workers compensation business in various databases. However, it is obvious from the face of AIG's request that AIG sees a difference between these types of databases and something known as "information technology systems." For instance, it is unclear whether "information technology systems" is meant to encompass the types of data systems that house workers compensation information, or whether this is something entirely different, such as processing systems. Travelers cannot be expected to begin searching for documents showing this "relationship" between these "information technology systems" and the "electronic data repositories" until it understands what AIG is referring to when it uses these technical terms and how these terms are different. Travelers would also like to reiterate that it is not opposed to searching for and producing responsive documents, subject to its objections, once AIG clarifies these terms.

WINSTON & STRAWN LLP

Kevin S. Reed
April 14, 2010
Page 5

**"Business Unit" Terminology and Production Deadline**

By separate letters dated April 8 and 9, 2010, AIG requested clarification that Travelers was not withholding documents on the basis of the phrase "business unit" and requested that Travelers provide a deadline for the production of documents responsive to the Third RFPs for which it had agreed to produce documents. Travelers confirms that it does not anticipate withholding production of documents on the basis of the phrase "business units." Traveler also anticipates producing documents responsive to the Third RFPs for which it had agreed to produce documents by Friday, May 7, 2010.

*       *       *       *

We are available to meet and confer on these issues and look forward to hearing from you regarding dates and times of your availability.

Best regards,

Timothy J. Rooney

TJR:cmo
cc:      counsel of record

# EXHIBIT P

## novack▸macey

P. Andrew Fleming
andrewf@novackmacey.com

June 25, 2008

**VIA E-MAIL AND U.S. MAIL**

To:   Counsel of Record   (Distribution attached)

Re:   <u>NCCI v. AIG</u>, No. 07 C 2898 (N.D. Ill.)

Dear Counsel:

We write to identify and address certain categories of documents sought by AIG's First Request for the Production of Documents (the "First Request") that have not yet been produced.  As directed by Magistrate Judge Schenkier during the June 17, 2008 conference, it is our sincere hope that, after identifying the categories in this letter and engaging in a good faith attempt to address the items, we can promptly schedule an in-person meeting during which the parties can attempt to resolve any disputes concerning these categories of outstanding documents and information.  Please understand that we are very interested in moving forward with bilateral discovery, including the commencement of depositions, and we believe that resolution of outstanding issues arising out of the parties' document requests will allow us to do so.

### Board Materials (Requested from Plaintiffs and Third-Party Defendants)

Requests Nos. 1-3 and 8-9 seek the production of various materials related to the Board of Governors of the NWCRP.  These requests, quite naturally, are directed both to Plaintiffs and to the Third-Party Defendants.  AIG seeks the production of all minutes and agendas for the Pool Board for the period at issue in the Complaint (which Plaintiffs have stated as 1970 to the present).  (Request 3.)  In addition, AIG seeks all documents, which includes not only agenda and minutes, but also handouts, handwritten notes, memos, emails, and any other writings that relate to:

      i)        NCCI's appointment as Attorney-in-Fact (Request 1);

      ii)     the Board's evaluation of and decision to prosecute this litigation (Request 2); and

      iii)    AIG's alleged underreporting of premium (Request 8).

While we understand from your remarks during the Court hearing that these documents will be produced, we have not yet received any of these materials.  We expect Plaintiffs' production to include documents possessed by the Participating Companies who have served on the Pool Board, but are not Third-Party Defendants.  We assume that counsel for the Third-Party

**novack►macey**

Defendants will handle the collection and production of documents from their clients, but we note that Magistrate Judge Schenkier did not relieve counsel for Plaintiffs from this shared obligation. If there are any issues concerning coordination that you would like to discuss, please feel free to contact one of us. Again, we very much appreciate that there will have to be coordination among Plaintiffs' counsel and counsel for the Participating Companies, and are prepared to work with you in any reasonable manner to allow for the most effective means of production.

Please advise as to how you wish to proceed and an estimated time frame for production.

## Participation Ratio Documents (Requested from Plaintiffs)

AIG has requested documents sufficient to show the participation ratio for each Participating Company for each of the years at issue in Plaintiffs' complaint. (See Request 44.) This data will show each Participating Company's percentage of the total voluntary premium written in a state for a given year. This data directly corresponds to that company's applicable percentage of residual market obligations for the same state and year, which is directly relevant to Plaintiffs' damages, in addition to AIG's affirmative defenses and counterclaims.

Our understanding is that NCCI should be in a position to produce this information on behalf of all companies, as the data is in its possession. Therefore, assuming this is correct, we do not see a need for the Third-Party Defendants to respond to this request. To date, however, we have not received the requested information from NCCI or any other party and AIG reserves its rights to seek it from all parties. We ask that Plaintiffs please advise when we can expect to receive this information for each of the Participating Companies.

## Business Practices Documents (Requested from Plaintiffs and Third-Party Defendants)

AIG has requested documents from the relevant time period regarding the Participating Companies' knowledge of other companies' -- including AIG's -- business practices. AIG has also requested documents regarding the Participating Companies' own business practices. These requests, which are set forth in Request Nos. 45-59 are also applicable to the Third-Party Defendants.

We recognize that Plaintiffs and third-party defendants have objected to producing documents concerning their own business practices. While we do not agree with those objections, we would like to propose, solely as a compromise for the time being, that we proceed in the following manner, which we believe will greatly reduce the scope of each company's search (without prejudice to our rights to seek further documents in the future):

    i)   With regard to the parameters of your initial search for documents, we would agree to limit the scope of that search to documents within or concerning the particular division(s) of each Participating Company that wrote multi-line insurance coverage, where any of the insured's aggregate premium payments for a given effective year exceeded $100,000.

2

**novack·macey**

ii) With regard to the types of documents that should be collected, we propose, as part of the first phase, to limit those to:

- Documents concerning methods or business practices (whether considered, proposed, or actually implemented) of structuring workers compensation policies and/or the premium charged for workers compensation coverage;

- Documents concerning the reporting of (including methods of reporting or classifying) workers compensation premium by any Participating Company (including AIG, the third-party defendants, or any other Participating Company);

- Communications with insurance brokers, policyholders and any entity with which the Participating Company discussed pricing or means for pricing (including discussions about being competitive with other companies) workers compensation insurance;

- Documents discussing, reflecting, or addressing the propriety or lawfulness of any practice or procedure by any Participating Company concerning the structuring, offer for sale, or reporting of workers compensation insurance or premium; and

- Documents discussing the practice (alleged or actual) by any Participating Company of misreporting or underreporting workers compensation premium or avoiding or reducing RMLs.

Although AIG reserves its right to seek further discovery at a later point in time, we believe that this proposal strikes an appropriate balance between AIG's need for discovery and any relevance or burden-related concerns expressed by counsel for the Plaintiffs and Third-Party Defendants.

We look forward to discussing this proposal with you at your earliest convenience.

Yours sincerely,

*P. Andrew Fleming*

P. Andrew Fleming

PAF

**novack▸macey**

<u>DISTRIBUTION:</u>

Rowe W. Snider, Esq.
John F. Kloecker (by email only)
Matthew T. Furton (by email only)
Harry N. Arger (by email only)
Michael Cullen Borders, Esq. (by email only)
Elizabeth Coker Osborne, Esq. (by email only)
Rosa Maria Tumialan-Lady, Esq. (by email only)
Amy B. Kelly, Esq. (by email only)
James A. Morsch, Esq. (by email only)
James I. Rubin, Esq. (by email only)
Jason S. Dubner, Esq. (by email only)
Norman K. Beck, Esq. (by email only)
Courtney M. Oliva (by email only)
Timothy John Rooney, Esq. (by email only)
Harry N. Arger, Esq. (by email only)
Michael D. Sher (by email only)
Edward P. Gibbons (by email only)
Christopher Wadley (by email only)
Anthanasios Papdopoulos (by email only)
Meredith Deddish Schacht (by email only)
Richard Partick Darke (by email only)
Daniel Richard Formeller (by email only)
Katherine Louise Haennicke (by email only)
Christopher Thompson (by email only)
David T. Moran (by email only)
Todd S. Schenk (by email only)
Daniel Lichtfield (by email only)
Omar Odland (by email only)
Mark A Schwartz (by email only)
Hal R. Morris (by email only)
Jeffrey D. Pilgrim (by email only)
Nicole A. Gross (by email only)
Dan L. Boho (by email only)
David Alfini (by email only)
James Constantine Vlahakis (by email only)
Jeffery R. Johnson (by email only)
Edward W. Feldman (by email only)
Marc Oliver Beem (by email only)
Roger J. Perlstadt (by email only)