# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | Case No. 07 CV 2898 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| ACE INA HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) ) ) ) | |
| Counter-Claimants, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) ) | |
| Counter-Defendants. | ) ) ) | |
| SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool, | ) ) ) ) ) ) ) ) | Case No. 09 CV 2026<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Sidney I. Schenkier |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) | |

**JOINT STATEMENT REPORTING ON RESULTS OF APRIL 14 AND APRIL 19, 2010
MEET AND CONFERS REGARDING AIG'S 30(B)(6) DEPOSITION NOTICE AND
THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO TRAVELERS**

Pursuant to the Court's December 11, 2009 revised procedure applicable to discovery

motions in the above-captioned cases (the "Discovery Motion Protocol Order"), Defendant

Travelers Insurance Group ("Travelers") and Plaintiff American International Group, Inc. ("AIG") file this Joint Statement reporting on their meet-and-confer in an attempt to resolve their disputes concerning AIG's 30(b)(6) deposition notice to Travelers and AIG's Third Set of Requests for Production to Travelers.

## I. AIG'S 30(B)(6) NOTICE

In accordance with the Court's October 6, 2009 Order scheduling merits discovery, AIG served its 30(b)(6) notice upon Travelers on December 3, 2009. Travelers served its Objections to AIG's 30(b)(6) notice on December 21, 2009.

On March 22, 2010, counsel for AIG sent counsel for Travelers a letter proposing to bifurcate the 30(b)(6) deposition noticed on December 3, 2009. AIG proposed that the parties proceed first with testimony concerning Topic 1 listed in Schedule A of AIG's deposition notice. Topic 1 seeks testimony concerning "[t]he identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present." Topics 2-4 listed in Schedule A of AIG's deposition notice, on the other hand, focus primarily on Travelers' workers compensation booking and reporting systems and data availability. AIG suggested that the parties would be able to engage in a more efficient meet and confer regarding the scope of the remaining systems-related topics once AIG gained an understanding of Travelers' business structure through deposition testimony on Topic 1.

On March 30, 2010, counsel for Travelers responded to AIG's March 22, 2010 letter proposing to bifurcate the 30(b)(6) deposition. Travelers agreed to produce a witness to testify on Topic 1, but only as to "loss sensitive multi-line accounts." Travelers requested AIG to confirm whether it believed this objection would require a meet and confer. On April 1, 2010, counsel for AIG requested by email a meeting to discuss the scope of the 30(b)(6) deposition on

Topic 1. In response to this email, counsel for Travelers sent counsel for AIG a letter on April 2, 2010 asserting that prior to any meet and confer, AIG must send Travelers a letter pursuant to the Court's discovery protocol setting forth its position on Travelers' objections to the proper scope of Topic 1. Accordingly, counsel for AIG and Travelers exchanged letters pursuant to the discovery protocol on April 6, 2010 and April 13, 2010, respectively.

## II.  AIG'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

In accordance with the Court's October 6, 2009 Order scheduling merits discovery, AIG served its Third Set of Requests for the Production of Documents upon Travelers on March 2, 2010. Travelers served its Responses and Objections to AIG's requests on April 1, 2010. Counsel for AIG and Travelers exchanged letters pursuant to the discovery protocol on April 7, 2010 and April 14, 2010, respectively.

## III.  REPORT ON MEET AND CONFER

Two meetings of counsel to attempt to resolve remaining disputes, as required by Paragraph 3 of the Discovery Motion Protocol Order, were conducted on April 14 and April 19, 2010. Counsel who attended the April 14 meeting were Kevin Reed for AIG and Tim Rooney and Norm Beck for Travelers. Counsel who attended the April 19 meeting were Kevin Reed for AIG and Norm Beck for Travelers

The parties continue to have the same disagreement regarding the proper scope of both Topic 1 listed on Schedule A of AIG's deposition notice and Request Nos. 1-5 of AIG's Third Requests for Production. The parties therefore ask the Court for its assistance in resolving this disagreement.

### A.  Scope of Topic 1 and Requests for Production Nos. 1-5

*Topic 1: The identification, organization, and structure of all divisions, profit centers, or management companies of Travelers that wrote multi-line accounts that included workers compensation coverage during the period from 1970 to the present.*

*Request No. 1:  Documents sufficient to show the organization and structure of all departments, divisions, profit centers, subsidiaries, or management companies of Travelers that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.*

*Request No. 2: Documents sufficient to show the years of operation of, and the identities and responsibilities of all executive-level employees in, all of the Travelers departments, divisions, profit centers, subsidiaries, or management companies that wrote workers compensation policies, or multi-line accounts that included workers compensation coverage, during the period from 1970 to the present.*

*Request No. 3: Documents sufficient to describe all databases and other repositories of electronic data that contain compilations of policy-level data, including claims arising under particular policies, used in Travelers' workers compensation business during the period from 1970 to the present.*

*Request No. 4: Documents sufficient to describe the relationships between Travelers' information technology systems and electronic data repositories used in Travelers' workers compensation business.*

*Request No. 5: Documents sufficient to provide a graphic representation, visual depiction, network topology, or system schematic revealing the relationships and data flows between Travelers' information technology systems and electronic data repositories used in Travelers' workers compensation business.*

AGREEMENTS:

While reserving its rights to seek further discovery beyond this limitation, AIG has agreed to limit testimony on Topic 1 to the 1985-1996 time period; similarly, AIG has agreed to receive documents responsive to Request Nos. 1-5 for the same time period.

Travelers has asked AIG to clarify the meaning of the terms "information technology systems" and "electronic data repositories," as used in Request Nos. 1-5.  The parties agree that the former shall mean electronic or computer-based systems that perform functions such as calculating, analyzing, moving or reporting data, and the latter shall mean electronic or computer-based databases or collections of information.  Further, both terms shall be defined so as to be limited to systems and repositories used in underwriting, pricing and billing workers compensation policies and booking and reporting premium and losses for such policies.

Travelers has agreed to be substantially complete with its production of documents responsive to Request Nos. 1-2 by May 7, 2010 and will begin production of documents responsive to Request Nos. 3-5 on May 14, 2010.

DISAGREEMENTS:

Travelers seeks to limit Topic 1 and Request Nos. 1-5 to testimony and documents concerning the divisions, profit centers, and management companies of Travelers that (1) wrote multi-line accounts with at least $100,000 in premium; and (2) that wrote loss-sensitive accounts. AIG disagrees with these proposed limitations.

**AIG's Position:**

Topic 1 and Request Nos. 1-5 constitute threshold discovery designed to help AIG learn about the organization of Travelers' workers compensation business. AIG believes that by gaining a "big picture" understanding of how Travelers structured its business from 1985-1996, it will be able to more effectively and directly tailor its future discovery requests to seek relevant information. It is for this reason that AIG proposed to bifurcate Topic 1 from the remaining systems-related topics listed on Schedule A of AIG's deposition notice and proceed first with testimony on this topic. Indeed, the Court has previously supported this type of threshold discovery in order to help the parties better understand each other's business structure and assist the parties in targeting relevant information through future discovery requests.

Travelers suggests that Topic 1 and Request Nos. 1-5 should be limited to Travelers business units that wrote policies with an aggregate annual premium of $100,000 or more. Travelers suggests that this limitation is appropriate because it will focus discovery on the large policies that are supposedly of most interest to AIG. However, AIG is not seeking information about policies through this discovery; it seeks to learn about the structure of Travelers' business – *i.e.*, the various types of workers compensation business that Travelers wrote and how and

where Travelers wrote it. Once AIG has that information (and the policy level information Travelers will provide through the sampling process), AIG expects to focus additional discovery on particular business units or particular types of policies. But at the outset, AIG should be permitted to obtain a basic understanding about Travelers' workers compensation business across the company. Contrary to Travelers' suggestion, this does not require Travelers to prepare a witness to testify about, or to produce documents concerning, every dollar of workers compensation business Travelers wrote during the period at issue. Rather, if the Court sustains AIG's position, Travelers will only have to prepare a witness to testify about, and produce documents concerning, the organization and structure of the business units that wrote workers compensation coverage as a regular part of their business during the relevant time period, and the nature of the business those units wrote. This is a limited amount of information and, given its relevance to AIG's claims and its threshold nature, AIG does not believe any burden objection is well taken. Indeed, pursuant to the Court's order of October 2, 2008, AIG gave the very same deposition about the nature and structure of AIG's workers compensation business and produced a witness prepared to testify about the workers compensation business written by more than 50 AIG divisions. *See* Transcript of October 2, 2008 Hearing before the Honorable Sidney I. Schenkier at 73:11-74:4 (ordering AIG to produce a 30(b)(6) witness to testify to the kinds and amount of workers compensation business written by divisions outside Divisions 50 and 55).[1]

Travelers also asserts that Topic 1 and Request Nos. 1-5 should be limited only to business units that wrote loss-sensitive policies. Travelers bases this position on an assertion that AIG's underreporting claims against Travelers relate only to loss-sensitive policies. This is

---

[1] Travelers refers to a June 25, 2008 letter from Andrew Fleming and argues that AIG first suggested the $100,000 limitation. However, as that letter makes clear, AIG suggested that limitation as a means to narrow the production of business practices documents. It never had any applicability to the sort of threshold discovery sought here.

simply incorrect. AIG specifically alleges in its First Amended Complaint ("FAC") that "Travelers' underreporting was not limited to retrospectively rated [i.e. loss sensitive] policies" and that Travelers' underreporting practices extended to guaranteed cost policies as well. FAC ¶¶ 131 and 132. Travelers challenges the sufficiency of those allegations by arguing that the practices they describe – i.e., the failure to report residual market charges ("RMLs") passed on to insureds as workers compensation premium – do not constitute underreporting. AIG disagrees and has alleged to the contrary in the First Amended Complaint. However, more importantly for present purposes, Travelers' challenge to the sufficiency of AIG's allegations is not a proper basis upon which to resist discovery. Travelers has already made and lost a motion to dismiss AIG's underreporting claims against it. AIG's underreporting claims survived, and AIG has no burden at this point to provide further legal authority in support of its claims in order to obtain discovery.[2] Finally, insofar as Travelers states that business units that wrote only guaranteed cost policies represent a small fraction of Travelers business, the burden associated with providing information about those business units is incremental at most. And it bears noting again in this context that AIG gave a 30(b)(6) deposition about the nature and structure of AIG's workers compensation business (not just its loss-sensitive business) and produced a witness prepared to testify about the workers compensation business written by more than 50 AIG divisions.

AIG believes that its 30(b)(6) deposition should take place on or before May 10, 2010. AIG first noticed this deposition on December 3, 2009 and it has now been nearly four weeks since AIG proposed to bifurcate this deposition and proceed promptly with testimony concerning

---

[2] That said, AIG will be interested to hear whether NCCI or the Pool cares to offer an opinion at the next status conference on whether NWCRP participants are required to report RMLs charged to insureds to NCCI as workers compensation premium.

Topic 1. Accordingly, AIG believes that Travelers has had a sufficient amount of time to locate and prepare the appropriate witness.

With respect to Request Nos. 1-5, AIG asks that Travelers be required to complete its production of responsive documents by May 17, 2010.

**Travelers' Position:**

As a preliminary matter, Travelers objects to the implication that it has failed to identify an appropriate witness or has otherwise wasted time by sitting on its hands during the "nearly four week" period since AIG initially proposed bifurcating the deposition. Travelers has consistently made clear to AIG, both in its letters and at the meet and confer, that it is willing to present a 30(b)(6) witness to testify on Topic 1 subject to both the time period and the "$100,000 premium" and "loss sensitive multi-line accounts" limitations and is in the process of educating a witness on this narrower Topic. Further, Travelers has also stated its intention to work with AIG to supplement its 30(b)(6) witness' testimony, should AIG feel that additional information is required to sufficiently respond to its notice. Thus, there is no basis for AIG's suggestion that Travelers has somehow failed to use the four week period to locate an "appropriate witness."

Travelers also disputes the notion that, because AIG proposed to bifurcate its deposition notice "nearly four weeks" ago, that it is reasonable to expect a deposition to take place on or before May 10, 2010. First, May 10 is an arbitrary date. Indeed, Travelers is presenting another 30(b)(6) witness on May 11. Second, and more importantly, if Travelers' objections are upheld, a 30-day window would reasonably accommodate the parties' and witness' schedules. In the event the Court accepts AIG's arguments and expands the scope of Topic 1, Travelers needs reasonable additional time to make a good faith determination regarding the scope of additional inquiry and information that must be gathered in order to adequately prepare and present its 30(b)(6) witness.

As the parties' correspondence indicates, Travelers timely responded to this proposal by reiterating and clarifying that such a deposition could promptly occur subject to the reasonable limitations Travelers imposed via its objections to AIG's notice. Travelers further stated that the breadth of information sought by AIG would necessitate additional time to properly prepare its witness. Given this dispute, the parties have been actively engaged in discussing their disagreements, as evidenced by the issues contained in this Joint Statement. As Travelers stated at the meet and confer, should AIG's position be accepted by the Court, Travelers will endeavor to educate its witness on the broader scope to the extent responsive information exists. However, as Travelers made clear, AIG's broader scope would also result in substantially more work, as Travelers would have to first locate information about these smaller business units and then identify who and where such information would reasonably likely be found, assuming, of course, that such responsive information still exists within the Company.

Turning to the first dispute regarding the $100,000 annual premium limitation, as Travelers stated in its April 13 and 14 letters and at the meet and confer, this limitation is a sensible one that both balances AIG's right to seek discovery and Travelers' right to be free of unduly burdensome requests. Indeed, it was AIG who first suggested this limitation in crafting seeking Business Practices Discovery. *See* A. Fleming June 25, 2008 letter, attached to AIG's Motion to Compel as Exhibit P. If, as AIG admits, Topic 1 will be used to focus in on particular business units or types of policies, then the $100,000 annual premium limitation will enable AIG to get discovery on information that is directly relevant to its allegations without overly burdening Travelers. This is a sensible and more focused approach to discovery, as it allows Travelers to identify both the business units and the policies that would be of interest to AIG, in light of the allegations they have made. Given that AIG's discovery to date suggests that it is primarily interested in insureds with multiple lines of coverage that include workers

-9-

compensation coverage, the $100,000 premium limitation is a fair way to ensure that smaller insureds are excluded. Conversely, if AIG's open door approach is accepted, this would expand both the scope of Topic 1 to include all of Travelers' workers compensation business and would require Travelers to prepare a 30(b)(6) witness to testify on any number of other business units that wrote workers compensation policies, which would also include searching for responsive documents, if any.

With respect to the "loss sensitive" limitation it has imposed, Travelers maintains that there is no basis to expand the scope of Topic 1 to include guaranteed cost policies because there is no factual basis to do so. FAC ¶¶ 131 and 132 allege that Travelers failed to report Residual Market Loads ("RMLs") as workers compensation premium to NCCI. However, this position has never been articulated by NCCI, and despite Travelers' specific request to AIG that it provide *any* authority for this belief, it has never done so. Put differently, AIG's allegations regarding RMLs and underreporting have never been adopted as the stated position of NCCI. Indeed, Travelers has expressly asked AIG to identify documents, or any basis in law whatsoever, to support the legal basis for its belief that RMLs constitute premium required to be reported to NCCI, and AIG has declined to do so, presumably because it cannot identify such documents. Thus, if NCCI – which administrates the NWCRP and calculates each company's share of the residual market pool ("the Pool") based in part what each company reports in workers compensation premium – has never publicly stated that RMLs need to be reported as workers compensation premium in order to allocate each company's share of the Pool, then AIG's subjective and unsupportable assertion on this issue cannot support baseless fishing expedition into any and all of Travelers' workers compensation guaranteed cost policies, especially in light of the burden associated with educating a witness on what will essentially be every type of workers compensation policy that Travelers wrote.

Furthermore, limiting discovery to Travelers' loss sensitive workers compensation business will again strike an appropriate balance between AIG's search for relevant information and Travelers' right to be free from undue burdens in connection with searching for documents in order to both respond to AIG's RFPs and prepare a 30(b)(6) witness(es). Reasonably limiting loss sensitive information allows Travelers to identify the major business units that wrote workers compensation and to identify and locate documents in order to both respond to the RFPs and prepare a 30(b)(6) witness on this topic, while allowing AIG to gain information related to the allegations in its FAC. This limitation is a more sensible limitation that the one AIG has offered above, which purports to "limit" Topic 1 to business units that wrote workers compensation coverage as a "regular part of their business" during the 1985 to 1996 time period. When AIG's "limitation" is employed, a cursory review of Travelers' available loss data shows that, outside of the main business units it has identified which wrote loss sensitive workers compensation policies, there may be as many as *twenty-three* divisions where Travelers wrote workers compensation during the 1985 to 1996 time period. Moreover, it appears that these twenty-three other divisions comprise only 9 percent of the losses incurred during this time period. Conversely, the losses associated with Travelers' loss sensitive business units comprise the other 91 percent of Travelers' workers compensation losses during the 1985 to 1996 time period. Thus, while Travelers is able to roughly identify different divisions with associated workers compensation losses, tracking down the information and documents needed to respond to the RFPs and educate a 30(b)(6) witness about the "organization" and "structure" of these twenty-three divisions will require substantial effort – especially given the age of the data – and will not be an exercise that Travelers can complete by May 10 or anywhere close to that date. Thus, a preliminary review of the limited data available on these other business units and divisions supports Travelers' contention that the benefit to AIG of learning about these lines of

business is far outweighed by Travelers' burden of having to locate, identify, and gather documents and information that would be needed to prepare a 30(b)(6) witness and respond to these RFPs.

Dated: April 20, 2010

Respectfully submitted,

/s/ Stephen Novack
Stephen Novack
P. Andrew Fleming
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Attorneys for American International Group, Inc.

/s/ Michael B. Carlinsky
Michael B. Carlinsky
Kevin S. Reed
Jennifer J. Barrett
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Attorneys for American International Group, Inc.

/s/ Timothy Rooney
Timothy J. Rooney (trooney@winston.com)
Norman K. Beck (nbeck@winston.com)
Courtney M. Oliva (coliva@winston.com)
Samantha L. Maxfield
(smaxfield@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Attorneys for Travelers

CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the foregoing **JOINT STATEMENT REPORTING ON RESULTS OF APRIL 14 AND APRIL 19, 2010 MEET AND CONFERS REGARDING AIG'S 30(B)(6) DEPOSITION NOTICE AND THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO TRAVELERS** by causing copies thereof to be sent by U.S. District Court CM/ECF e-filing system on the 20th day of April, 2010.

/s/ Rebekah H. Parker