**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

AMERICAN INTERNATIONAL GROUP, INC., et al.,

Plaintiffs,

v.

ACE INA HOLDINGS, INC., et al.,

Defendants.

Case No. 07 CV 2898

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier

---

LIBERTY MUTUAL INSURANCE COMPANY, et al.,

Counter-Claimants,

v.

AMERICAN INTERNATIONAL GROUP, INC., et al.,

Counter-Defendants.

---

SAFECO INSURANCE COMPANY OF AMERICA and OHIO CASUALTY INSURANCE COMPANY, individually, and on behalf of a class consisting of members of the National Workers Compensation Reinsurance Pool,

Plaintiff,

v.

AMERICAN INTERNATIONAL GROUP, INC., et al.,

Defendants.

Case No. 09 CV 2026

Judge Robert W. Gettleman

Magistrate Judge Sidney I. Schenkier

**MEMORANDUM REGARDING SUBMISSION OF UNREDACTED NWCRP BOARD MEETING MINUTES AND NOTES OF BOARD MEMBERS FOR *IN CAMERA* REVIEW**

Pursuant to the Court's April 23 Order [Dkt. 632, ¶ 2], NWCRP submits the following explanatory memorandum accompanying its *in camera* submission of Pool Board meeting minutes and notes taken by Board members concerning information sought in AIG's First Set of Interrogatories to All Pool Board Members, Nos. 13-14, 20-22, and 24-25 ("Interrogatories").

## I. BACKGROUND

The Interrogatories seek information regarding whether certain topics were discussed at NWCRP Board meetings and if so, when. Defendants objected to the disclosure of specific subject matters discussed with counsel for the purpose of obtaining legal advice on privilege grounds, and AIG moved to compel further answers to the Interrogatories [Dkt. 604]. The Court deferred its ruling on this aspect of the motion pending submission of NWCRP Board minutes and notes taken by NWCRP Board members at meetings.

NWCRP produced copies of Board meeting minutes to AIG beginning in 2008. The minutes that have been produced to AIG relate to Board meetings that occurred from 1981 through early 2010. The minutes were produced in redacted form to preserve the Pool's privilege claims. The redacted copies, however, disclose the names of the individual Board member representatives[1] present at each meeting as well as non-privileged information.

## II. THE NWCRP BOARD GENERALLY MEETS IN EXECUTIVE SESSION TO DISCUSS CONFIDENTIAL MATTERS.

[1] The Pool Board "members" are NWCRP Participating Companies elected to three-year terms of service on the Board. The Board member companies are represented by individual representatives at Board meetings.

The twelve-member NWCRP Board typically meets in person quarterly and on occasion by telephone. At times, the Board meets in Executive Session with only Board member representatives, certain NCCI representatives (as Pool administrator), Board counsel and NCCI counsel in attendance (excluding administrative personnel and, generally, any representatives of Participating Companies other than Board members). The Executive Sessions are normally called to discuss confidential matters, including privileged conversations about legal matters (although in the past certain confidential and sensitive matters have also been discussed on occasion in general session meetings when attendance was appropriately limited).

## III. THE NWCRP BOARD TREATED AIG'S UNDERREPORTING AS A LEGAL MATTER.

From the outset the NWCRP Board viewed AIG's underreporting to be a legal matter and treated it accordingly. AIG's workers compensation premium underreporting came to the Pool Board's attention in or about May of 2005, when the New York attorney general ("NYAG") filed a public complaint against AIG and certain officers**.** The NYAG's alleged wrongdoing involved compliance with a variety of state laws and regulations. As such, the NWCRP immediately sought and relied heavily on the Pool Board lawyers' advice in regard to this matter.

In January 2006, AIG entered a settlement with the NYAG and New York Department of Insurance ("NYAG Settlement") relating to their investigations of AIG's premium underreporting. NWCRP did not participate in the negotiations that led to the NYAG Settlement and was not a party to it. As part of the NYAG Settlement, AIG created the Workers Compensation Fund ("WCF"), from which states could receive compensation for AIG's premium underreporting in exchange for releases of liability on behalf of both the state and NWCRP.

The NWCRP Board viewed its response to the NYAG Settlement to be a legal matter.

As such, it relied heavily on the NWCRP's attorneys for advice about how best to respond. The Workers' Compensation Fund ("WCF") established as a result of the NYAG Settlement was, at its core, a proposed settlement that would involve the release of the NWCRP's claims. Any assessment of whether to accept or reject that proposal involved an analysis of the New York enforcement action and settlement, the upsides and downsides of separate litigation, quantification of appropriate historical premium within the regulatory framework, and the need for interaction with regulators in conjunction with a remedy for the Pool. To determine whether the NWCRP would allow its participating companies' claims to be released, the Pool Board looked to the NWCRP's lawyers for advice. Virtually every aspect of the assessment directly involved a legal issue.

## IV. THE POOL BOARD'S DISCUSSIONS WITH ITS ATTORNEYS ABOUT THE SPECIFIED TOPICS SHOULD BE PROTECTED FROM DISCOVERY.

The notes and minutes subject to an *in camera* review reflect privileged communications. The frequency with which the Pool Board discussed certain topics, including in particular whether to accept the WCF, and when the Board may have discussed those topics relative to other events, may reveal a great deal of litigation strategy. As such, the Pool Board Member Defendants should not be required to identify when the Board discussed those topics.

### A. Privileged Information Includes The Board's Direction To Counsel.

Because the Board treated AIG's underreporting to be a legal matter, the Board's attorneys frequently led the discussion of the topic by reporting on the status of their investigation and analysis. In addition to Board counsel's discussion of legal matters with the Board, the minutes and notes reflect that the Board also provided counsel with direction on how it wanted counsel to proceed. A client's direction to counsel is protected by the attorney-client privilege, just as the lawyer's advice is protected. *See, e.g., Nguyen v. Excel Corp.*, 197 F.3d

200, 206-7 (5th Cir. 1999)(a client's request to an attorney or directions given to the attorney ordinarily fall within the privilege, unless waived). In this context, the Board's actions, *e.g.*, authorizations to proceed with a certain legal strategy, meeting, or pleading, are communications of direction to counsel that are protected by the attorney-client privilege.

**B. The Board's Discussions With Consulting Experts And The Examiner In Charge Of The Multistate Examination Are Confidential And Should Be Protected.**

The Pool Board's attorneys retained outside experts and consultants to assist them in many of their tasks. To date, none of those consultants has been identified as a trial witness, and the NWCRP considers the identity and work of those consultants to be confidential and protected. *See* Fed. R. Civ. P. 26(b)(4)(B)("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.") At times, the Pool Board's lawyers would ask those consultants to assist them in their discussions with the Board. To the extent certain minutes reflect the identity and work of those consultants, they should be protected.

Various states and state insurance commissioners also had, or have, a direct stake in the WCF because it called for the states to receive compensation and execute releases. Many of those states have initiated their own investigations into AIG's underreporting. In connection with those investigations, AIG, the NWCRP and the Examiner in Charge of the Multistate Examination have agreed to keep certain information exchanged between those parties confidential, including oral discussions. To the extent that the minutes or notes submitted for an *in camera* review may reflect discussions involving the Examiner in Charge, Mr. David Leslie, those discussions are confidential and should also be protected from disclosure.


**C. Privileged Information Includes Counsel's Selection Of Developments And Facts To Be Shared With The Board.**

The Board minutes frequently reflect the information or developments that the Board's counsel considered to be sufficiently significant to share with the Board. That information is not only privileged, but also reflects the mental impressions of counsel. Attorney work product includes the selection of topics or relevant events to be communicated with a client, even where the occurrence or existence of specific events and facts may not alone be privileged or confidential. *U.S. v. Gen. Dynamics*, 231 F.R.D. 378, 384 (N.D. Ill. 2005) ("[S]election and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly protected category of opinion work product", *citing Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985)); *Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 647 (N.D. Ill. 1994) ("Selection of certain pieces of evidence from a mass of evidence is an important part of an attorney's preparations", also citing *Sporck*). For example, if Board counsel were to report to the Board that it met with AIG or asked AIG to provide additional data on a certain date, the fact that counsel chose to share that development with the Board may suggest an importance or significance of the meeting at issue, in contrast to other meetings that may have taken place but were not reported. The information relating to litigation, or potential litigation, that a lawyer considers sufficiently significant to share is itself sensitive and deserving of protection.

**D. Whether Board Discussions Are Privileged Does Not Depend On Whether Particular Communications Were Made To/From Board Counsel As Opposed To Board Members.**

Board discussions that involved the active participation of counsel are privileged, even where a particular exchange was between two Board member representatives as opposed to a representative and Board counsel. *See Weeks v. Samsung Heavy Indus. Co.*, No. 93-4899, 1996 WL 341537, *4 (N.D. Ill. Jun. 20, 1996) ("Management personnel should be able to discuss the

legal advice rendered to them as agents of the corporation"; privilege upheld for communication between two non-attorney employees summarizing legal advice from counsel where they "shared responsibility for the subject matter under consultation.") Here, Board members shared decision-making authority with respect to litigation strategy, and their discussions with counsel on these issues – regardless of whether specific statements were made between Board members or to and from counsel – are privileged. The Interrogatories are an attempt to invade this privilege by seeking answers to narrow questions that would reveal the specific topics and legal options discussed by the Board.

Respectfully submitted,

National Workers Compensation Reinsurance Pool

By: /s/ Charles H.R. Peters

William M. Hannay
Marci A. Eisenstein
Charles H.R. Peters
Lisa M. Natter
SCHIFF HARDIN LLP
233 S. Wacker Dr., Suite 6600
Chicago, IL 60606

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Memorandum Regarding Submission Of Unredacted NWCRP Board Meeting Minutes And Notes Of Board Members For *In Camera* Review** was served upon all counsel of record in this action via the U.S. District Court CM/ECF e-filing system on the 14th day of May, 2010.

/s/ Charles H.R. Peters